**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHUN HUANG, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>       v.<br><br><br><br>CANNTRUST HOLDINGS INC., PETER ACETO, and GREG GUYATT,<br><br>                Defendants. | Civ. A. No. 1:19-cv-06396-JPO |

(Additional Captions on Following Page)

**MEMORANDUM OF LAW IN SUPPORT OF NICK HAILA'S MOTION FOR CONSOLIDATION OF THE RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF HIS SELECTION OF LEAD COUNSEL**

| | |
|---|---|
| GUSTAVO ALVARADO, on Behalf of Himself and All Others Similarly Situated, | |
| Plaintiff, | Civ. A. No. 1:19-cv-6438-JPO |
| v. | |
| CANNTRUST HOLDINGS INC., PETER ACETO, GREG GUYATT, and IAN ABRAMOWITZ, | |
| Defendants. | |
| RONALD E. JONES, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civ. A. No. 1:19-cv-06883-JPO |
| v. | |
| CANNTRUST HOLDINGS INC., PETER ACETO, and GREG GUYATT, | |
| Defendants. | |
| SCOTT JUSTISS, Individually and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | Civ. A. No. 1:19-cv-07164-JPO |
| v. | |
| CANNTRUST HOLDINGS INC., PETER ACETO, GREG GUYATT, and IAN ABRAMOWITZ, | |
| Defendants. | |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF THE PROCEDURAL BACKGROUND AND THE RELATED
        ACTIONS ........................................................................................................... 3

III.    ARGUMENT ...................................................................................................... 6

        a.     The Related Actions Should Be Consolidated............................................ 6

        b.     The PLSRA Standard for Appointing Lead Plaintiff................................. 7

        c.     Mr. Haila Is the "Most Adequate Plaintiff" under the Exchange Act ....... 8

               1.     Mr. Haila Has Satisfied the PSLRA's Procedural Requirements.....................8

               2.     Mr. Haila Has the Largest Financial Interest in the Relief Sought by
                      the Class ...................................................................................................9

        d.     Mr. Haila Is Qualified Under Rule 23 ....................................................... 9

               1.     Mr. Haila's Claims Are Typical of the Claims of the Class ...........................10

               2.     Mr. Haila Will Fairly and Adequately Represent the Class' Interests.............11

               3.     This Court Should Approve Mr. Haila's Choice of Counsel...........................12

IV.     CONCLUSION.................................................................................................. 13

i

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page**

*Baughman v. Pall Corp.,*
   250 F.R.D. 121 (E.D.N.Y. 2008) ....................................................................................... 6

*Faig v. Bioscrip, Inc.*,
   13-cv-6922, 2013 WL 6705045 (S.D.N.Y. 2013) ...................................................................... 6

*Huang v. Airmedia Group Inc.*,
   1:15-cv-4966 (ALC), 2015 WL 10846763 (S.D.N.Y. 2015)............................................... 11,12

*In re Bear Stearns Co. Inc. Deriv., & ERISA Litig.*,
   No. 08 M.D.L. 1963, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009)................................................. 1

*IIn re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
   No. 16cv03495, 2016 WL 5867497 (S.D.N.Y. Oct. 4, 2016) ...................................... 10, 11,12

*In re Drexel Burnham Lambert*,
   960 F.2d 285 (2d Cir. 1992)............................................................................................... 11

*Indergit v. Rite Aid Corp.*,
   293 F.R.D. 632 (S.D.N.Y. 2013) ....................................................................................... 11

*Johnson v. Celotex Corp.,*
   899 F.2d 1281, 1284 (2d Cir. 1990)..................................................................................... 6

*Kaplan v. Gelfond,*
   240 F.R.D. 88 (S.D.N.Y. 2007) ......................................................................................... 6

*KuxKardos v. Vimpelcom, LTD.*,
   151 F. Supp. 3d 471 (S.D.N.Y. 2016) .......................................................................... 6,9,10

*Logan v. QRx Pharma Ltd.*,
   No. 15 CIV. 4868, 2015 WL 5334024 (S.D.N.Y. Sept. 14, 2015).......................................... 11

*Peters v. Jinkosolar Holding Co., Ltd.*,
   2012 WL 946875, at *11 (S.D.N.Y. 2012) ...................................................................... 10,11

*Pompano Beach Police & Firefighters' Ret. Sys. Comtech Telecomms. Corp.*
   CV-09-3007(SJF)(AKT), 2010 WL 3924862 (E.D.N.Y. 2010)................................................. 6

*Stone v. Agnico-Eagle Mines Ltd.*,
   280 F.R.D. 142, 144 (S.D.N.Y. 2012) ................................................................................. 6

**Statutes**

15 U.S.C. § 78j(b) ............................................................................................................... 1

15 U.S.C. § 78t(a) ............................................................................................................... 1

15 U.S.C. § 78u-4, *et seq*. ........................................................................................... passim

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... 11

Fed. R. Civ. P. 23(a) .......................................................................................................... 10.11

Fed. R. Civ. P. 23(a)(4) ....................................................................................................... 2,8,9

Putative class member Nick Haila, by his counsel, respectfully submits this memorandum of law pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an order: (1) consolidating the above-captioned securities class actions (the "Related Actions"); (2) appointing Mr. Haila as lead plaintiff for the Related Actions; and (3) approving his selection of the law firm of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") to serve as lead counsel under 15 U.S.C. § 78u-4(a)(3)(B)(v).

Mr. Haila believes that he has the largest financial interest in the outcome of this litigation and is thus presumptively entitled to be appointed lead plaintiff and that his choice of counsel should be approved.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

## I.      INTRODUCTION

Presently pending in this District are four related securities class actions brought pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, against CannTrust Holdings Inc. ("CannTrust" or the "Company") and certain of its current or former executives for violations of federal securities laws on behalf of all persons and entities who purchased CannTrust securities between November 14, 2018 and July 12, 2019 both dates inclusive (the "Class Period").[1]

---

[1] The longest possible class period alleged is November 14, 2018 through July 12, 2019.  The actions styled *Huang v. CannTrust Holdings, Inc. et al.,* 1:19-cv-06396-JPO; *Alvarado v. CannTrust Holdings, Inc. et al.,* 1:19-cv-06438-JPO; and *Justiss v. CannTrust Holdings, Inc. et al.,* 1:19-cv-07164-JPO, are brought on behalf of investors that acquired CannTrust securities between November 14, 2018 and July 5, 2019.  The action styled *Jones v. CannTrust Holdings, Inc. et al.,* 1:19-cv-006883-JPO, is brought on behalf of investors that acquired CannTrust securities between February 25, 2019 and July 12, 2019.  For the purposes of appointing the lead plaintiff, the longest class period governs. *See e.g.*, *In re Bear Stearns Co. Inc. Deriv., & ERISA Litig.*, No. 08 M.D.L. 1963, 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009) (noting that when

1

As a preliminary matter, the Related Actions should be consolidated because they involve "a common question of law or fact."  Fed. R. Civ. P. 42(a) ("Rule 42(a)"); *see infra*, Section III.A.

Once the Related Actions are consolidated, pursuant to the PSLRA, this Court must appoint the member or members of the class "most capable of adequately representing the interests of class members" to serve as lead plaintiff.  15 U.S.C. §§ 78u-4(a)(3)(B)(i).

Mr. Haila is the "most adequate plaintiff" under the PSLRA's analysis and should be appointed lead plaintiff on behalf of all investors who purchased CannTrust securities during the Class Period. Mr. Haila incurred losses of approximately $126,120 on his Class Period transactions in CannTrust securities as calculated on a first-in-first-out ("FIFO") basis and on a last-in-first-out ("LIFO") basis. *See* Exhibit A (Mr. Haila's Sworn certification pursuant to the PSLRA) to the Declaration of Jeffrey P. Campisi in Support of Nick Haila's Motion for Consolidation of the Related Actions, Appointment as Lead Plaintiff and Appointment of Lead Counsel, dated September 9, 2019 ("Campisi Decl."); Exhibit B (Chart reflecting Nick Haila's estimated losses).

In addition to asserting the largest financial interest in this litigation, Mr. Haila also meets the applicable requirements of Rule 23 because (1) his claims arise from the same course of events as those of the other Class members, (2) he relies on similar legal theories to prove Defendants' liability, and (3) he has retained experienced counsel and is committed to vigorously prosecuting the Action.

Further, Mr. Haila fully understands the lead plaintiff's obligations under the PSLRA, and is willing and able to undertake the responsibilities of a lead plaintiff to guarantee vigorous prosecution of the Action.  *See* Campisi Decl. Ex. A.  Therefore, Mr. Haila respectfully requests

---

initial complaints allege multiple class periods, "the lead plaintiff analysis should utilize the most inclusive class period because it encompasses more potential class members") (citation omitted).

that the Court approve his choice of Kaplan Fox as lead counsel for the Class. *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Kaplan Fox is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for defrauded investors. *See* Campisi Decl., Ex. C.

Accordingly, Mr. Haila respectfully requests that the Court consolidate the Related Actions, appoint him lead plaintiff for the proposed Class, and approve his selection of lead counsel.

## II.   SUMMARY OF THE PROCEDURAL BACKGROUND AND THE RELATED ACTIONS

CannTrust is a Canada-based producer of medical and recreational cannabis. *See Alvarado v. CannTrust Holdings, Inc. et al.,* 1:19-cv-06438-JPO, ECF No. 1, Compl., ¶ 2. During the Class Period, the Company represented that it operated its 450,000 sq. ft. Niagara Perpetual Harvest Facility greenhouse in Pelham, Ontario, and prepared and packaged its product portfolio at its 60,000 sq. ft. manufacturing "centre of excellence" in Vaughan, Ontario. *Id.* Further, the Company represented that it established its international footprint through a strategic partnership with Cannatrek Ltd. in Australia and a joint venture with StenoCare A/S ("StenoCare") in Denmark. *Id.*

Throughout the Class Period, the Company represented that it was a licensed producer of medical and recreational cannabis in Canada and that it maintained all necessary licensing. *Id.* ¶ 3 Proper licensing is important to the Company, in material part, because the Canadian Cannabis Act forbids the export of unlicensed cannabis and provides that anyone who does so is guilty of an indictable offense and liable to imprisonment or fines. *Id.* While the Company represented that its facilities were licensed, unknown to investors, from October 2018 through and March 2019, the Company was growing cannabis in five unlicensed rooms causing the Company's Niagara

3

Perpetual Harvest Facility to be noncompliant with certain Canadian regulations, and the Company had shipped unlicensed cannabis from the Company's Niagara Perpetual Harvest Facility to at least StenoCare in Denmark in violation of the Canadian Cannabis Act. *Id.* ¶ 4.

On July 8, 2019, before the market opened, CannTrust shocked investors when it disclosed that it received a compliance report from Health Canada notifying the Company that the Niagara Perpetual Harvest Facility greenhouse facility in Pelham, Ontario is non-compliant with certain regulations. *Id.* ¶ 5. Following this disclosure, the price of CannTrust's common stock declined on the NYSE by $1.11 per share or over 22%, from a closing price of $4.94 per share on July 5, 2019, to close at $3.83 per share on July 8, 2019 on heavy trading volume. *Id.* ¶ 7.

Also on July 8, 2019, according to MarketWatch, investment and research firm Harvest Moon Research said the seizure was likely due to the Company's "overall disregard for Health Canada regulations and its licensing systems." *Id.* ¶ 8. Harvest Moon reportedly stated that "the issue was brought to Health Canada's attention by former employees who were irked when the company's human resources department leaked its entire payroll information to every employee. That sparked a mini revolt, that led some of its staff to go to Health Canada to disclose how the company was breaking rules . . . Harvest Moon said a more serious issue is that CannTrust may have exported some of the illicit cannabis to markets it serves, which include Denmark and Australia. Under the Canadian Cannabis Act, that would be an indictable offense that could come with a prison term." *Id*.

On July 10, 2019, the *Huang* Action, the first of the Related Actions, was filed, alleging violations of Sections 10(b) and 20(a) of the Exchange Act. The *Huang* Action alleges that "[t]hroughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and

prospects. *Huang v. CannTrust Holdings, Inc. et al.,* Civ. A. No. 1:19-cv-06396-JPO, Compl. ¶ 5, ECF No. 1.  Specifically, Defendants failed to disclose to investors: (1) that the Company was growing cannabis in its Pelham greenhouse while applications for regulatory approval were still pending; (2) that the Company's Pelham greenhouse did not comply with certain regulations; (3) that, as a result, the Company was reasonably likely to face an inventory hold by Health Canada until the Pelham facility becomes compliant with applicable regulations; (4) that, as a result, the Company's customers would face shortages and would likely seek product from CannTrust's competitors; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis. *Id.* As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.  *Id.* ¶ 6.

Also on July 10, 2019, in accordance with 15 U.S.C. § 78u-4(a)(3)(A)(i) of the PSLRA, notice of the first-filed action was published to class members on *Business Wire*  (the "Notice") advising purchasers of CannTrust securities of the existence of a lawsuit against Defendants and the nature of Defendants' statements, omissions and alleged conduct.  *See* Campisi Decl. Ex. D. The Notice further advised class members of their right to move to be appointed lead plaintiff by September 9, 2019.  *Id.*

On July 12, 2019, CannTrust announced that it had implemented a voluntary and indefinite hold on all of its products pending an internal review and the results of the investigation by Health Canada.  *See Jones v. CannTrust Holdings, Inc. et al.,* 1:19-cv-006883-JPO, ECF No. 1, Compl. ¶ 14.  On this news, the price of CannTrust common stock dropped from a close of $3.11 per share on July 11, 2019 to a close of $2.58 per share on July 12, 2019, a decline of more than 17%.  *Id.* ¶

### III. ARGUMENT

#### a. The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title [] has been filed," courts shall appoint a lead plaintiff "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also Faig v. Bioscrip, Inc.*, No. 13-cv-6922, 2013 WL 6705045, at *1 (S.D.N.Y. Dec. 19, 2013) ("The Court must decide whether to consolidate the actions before deciding on the competing motions for appointment as lead plaintiff."). There are at least four related securities class actions pending in this District on behalf of investors who purchased CannTrust securities during the Class Period at artificially inflated prices. *See supra*, Section I.

Under Rule 42(a), consolidation is appropriate where the actions involve common questions of law or fact. *See Stone v. Agnico-Eagle Mines Ltd.*, 280 F.R.D. 142, 144 (S.D.N.Y. 2012) (Oetken, J.); *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *KuxKardos v. Vimpelcom, LTD.*, 151 F. Supp. 3d 471, 474 (S.D.N.Y. 2016); *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV 09-3007(SJF)(AKT), 2010 WL 3924862, at *2 (E.D.N.Y. Aug. 17, 2010); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 124 (E.D.N.Y. 2008). The Court has "broad discretion to determine whether consolidation is appropriate" under Rule 42(a). *Bioscrip*, 2013 WL 6705045, at *1 (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *KuxKardos*, 151 F. Supp. 3d at 475 (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)). Courts have recognized that class action shareholder suits are well-suited for consolidation because unification conserves judicial resources, expedites pretrial proceedings, reduces case duplication, and lessens the confusion and delay that may result from

6

prosecuting related class action cases separately.  *See*, *e.g.*, *Kaplan*, 240 F.R.D. at 92 (consolidating securities class actions with common allegations noting "the well[-]recognized principle that the consolidation of stockholders' suits often benefits both the courts and the parties by expediting pretrial proceedings, avoiding duplication of discovery, and minimizing costs") (internal citation omitted).

The Related Actions concern the same or similar parties, arise out of the same or similar courses of misconduct during substantially similar class periods, and involve substantially similar alleged issues of fact and law.  Because consolidation will promote judicial efficiency and conserve the resources of the Class and all other parties, consolidation is appropriate pursuant to Rule 42(a), and the Court should grant the motion for consolidation of the Related Actions.

### b.  The PLSRA Standard for Appointing Lead Plaintiff

The PSLRA sets forth the procedure for the selection of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §§ 78u-4(a)(1), 78u-4(3)(B)(i).  Specifically, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –

> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)    that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as lead plaintiff in response to any such notice within 90 days after the date of publication of the notice, or as soon as practicable after the Court decides any pending motion

to consolidate any actions asserting substantially the same claim or claims.  15 U.S.C. § 78u-4(a)(3)(B).

Under the relevant sections of the Exchange Act, the Court "shall" appoint the "most adequate plaintiff," and is to presume that plaintiff is the person which:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### c. Mr. Haila Is the "Most Adequate Plaintiff" under the Exchange Act

Mr. Haila is the "most adequate plaintiff" because he has complied with the PSLRA procedural requirements, holds the largest financial interest of any movant, and satisfies Rule 23's typicality and adequacy requirements.  In addition, he has duly signed and filed a certification stating that he is willing to serve as the representative party on behalf of the class.  *See* Campisi Decl., Ex. A.  Finally, Mr. Haila has selected and retained counsel experienced in the prosecution of securities class actions to represent the class. *See id.*, Ex. C (Kaplan Fox Firm Resume).  Accordingly, Mr. Haila satisfies the PSLRA's filing requirements for seeking appointment as lead plaintiff, and therefore, he should be appointed lead plaintiff.

### 1. Mr. Haila Has Satisfied the PSLRA's Procedural Requirements

The first of the Related Actions was filed on July 10, 2019 and Notice was published over *PRNewswire*, a national wire service, the same day.  *See id.*, Ex. D.  Accordingly, the time period in which class members may move to be appointed lead plaintiff in this case expires on  September 9, 2019.  *See* 15 U.S.C. § 78u-4(a)(3)(A).  Pursuant to the PSLRA's provisions, and within the

8

requisite time frame after publication of the required notice, Mr. Haila has timely moved this Court to be appointed lead plaintiff on behalf of all members of the class.

### 2. Mr. Haila Has the Largest Financial Interest in the Relief Sought by the Class

Under the relevant sections of the Exchange Act, a rebuttable presumption exists whereby the plaintiff with the largest financial interest in the litigation and who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff to lead the action. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Specifically, "[C]ourts in this district consider the following factors to determine which party had the largest financial interest: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period…; (3) the net shares purchased during the class period…; (4) the net funds expended during the class period…; and (5) the approximate losses suffered." *KuxKardos*, 151 F. Supp.3d 471, 476 (quoting *Kaplan*, 240 F.R.D. 88, 93). Here, Mr. Haila suffered substantial losses of approximately $126,120 on his Class Period transactions in CannTrust securities as calculated on a FIFO and LIFO basis. *See* Campisi Decl., Ex. B. Mr. Haila purchased 48,600 shares during the Class Period, expending $372,275.98, and held 29,018 shares at the end of the Class Period. *Id.* Mr. Haila is not aware of any other movant with a larger financial interest and believes he has the largest financial interest of any lead plaintiff movant. Therefore, Mr. Haila believes he is presumptively entitled to appointment as the lead plaintiff.

### d. Mr. Haila Is Qualified Under Rule 23

The PSLRA provides that the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

9

> (1)   the class is so numerous that joinder of all members is impracticable;
>
> (2)   there are questions of law or fact common to the class;
>
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representatives. *See In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16cv03495, 2016 WL 5867497, at *4 (S.D.N.Y. Oct. 4, 2016) ("For the purposes of appointment as lead plaintiff pursuant to the PSLRA, however, 'the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.'") (internal citation omitted); *KuxKardos*, 151 F. Supp. 3d at 477 (quoting *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112,120 (S.D.N.Y. 2010) ("[T]he moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met."). Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. As detailed below, Mr. Haila satisfies the typicality and adequacy requirements of Rule 23(a), thereby justifying his appointment as lead plaintiff for the Action.

### 1.   Mr. Haila's Claims Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a) is satisfied when (1) the claims of the proposed lead plaintiff arise from the same course of conduct that gives rise to the other purported class members' claims, (2) the claims are based on the same legal theory, and (3) the purported class members and proposed lead plaintiff were injured by the same conduct. *See Peters v. Jinkosolar*

*Holding Co., Ltd.*, 2012 WL 946875, at *11 (S.D.N.Y. 2012) (Oetken, J.); *In re Deutsche Bank*, 2016 WL 5867497, at *5 ("The typicality requirement is satisfied if each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'") (internal citations omitted); *Huang v. Airmedia Group Inc.*, 1:15-cv-4966 (ALC), 2015 WL 10846763, at *2 (S.D.N.Y. Nov. 10, 2015).

The claims asserted by Mr. Haila are based on the same legal theory and arise out of the same course of events as the other purported class members' claims. Mr. Haila purchased shares of CannTrust securities, as did each member of the proposed class, at prices artificially inflated by Defendants' false and misleading statements and was damaged thereby. *Logan v. QRx Pharma Ltd.*, No. 15 CIV. 4868, 2015 WL 5334024, at *3 (S.D.N.Y. Sept. 14, 2015) (finding the typicality requirement met where movants' claims and injuries arose from the same conduct from which the other class members' claims and injuries arose). Thus, Mr. Haila satisfies the typicality requirement of Rule 23(a).

### 2. Mr. Haila Will Fairly and Adequately Represent the Class' Interests

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, the representative party must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). A lead plaintiff is adequate where it has retained counsel that is "qualified, experienced and generally able to conduct the litigation" and does not have interests that are "antagonistic" to the class that it seeks to represent. *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 654 (S.D.N.Y. 2013) (citing *In re Drexel Burnham Lambert*, 960 F.2d 285, 291 (2d Cir. 1992)). Lastly, the proposed lead plaintiff must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Huang*, 2015 WL 10846763, at *2 (quoting *Kaplan*, 240 F.R.D. 88, 93-94). Here, Mr. Haila's interests are clearly aligned with the members of the proposed class, and there is no evidence of any antagonism

11

between his interests and those of the class.  As detailed above, his claims raise similar questions of law and fact as claims of the members of the class, and Mr. Haila's claims are typical of the members of the class.

Further, Mr. Haila has demonstrated his adequacy and willingness to serve as and assume the responsibilities of a lead plaintiff.  *See* Campisi Decl., Ex. A.  Having suffered substantial losses, Mr. Haila will be a zealous advocate on behalf of the class.  In addition, Mr. Haila has selected Kaplan Fox—counsel highly experienced in prosecuting securities class actions—to represent it. *Id.* Ex. C.  Thus, the close alignment of interests between Mr. Haila and other class members, and his strong desire to prosecute the Related Actions on behalf of the class, provide ample reason to grant his motion for appointment as lead plaintiff in the Related Actions. Accordingly, Mr. Haila satisfies the prerequisites for appointment as lead plaintiff pursuant to the Exchange Act.

### 3.      This Court Should Approve Mr. Haila's Choice of Counsel

The Exchange Act vests authority in the lead plaintiff to select and retain lead counsel, subject only to court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also In re Deutsche Bank*, 2016 WL 5867497, at *5 ("There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'") (internal citations omitted).  Mr. Haila has retained Kaplan Fox to represent him and to serve as lead counsel to pursue this litigation on behalf of himself and the class.  Kaplan Fox possesses extensive experience in the area of securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors. *See* Campisi Decl., Ex. B.  Thus, the Court may be assured that, in the event the instant motion is granted, the members of the class will receive the highest caliber of legal representation available.

## IV. CONCLUSION

For all of the foregoing reasons, Nick Haila respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint him as lead plaintiff; (3) approve his selection of Kaplan Fox as lead counsel; and (4) grant such other relief as the Court may deem just and proper.

Dated:  September 9, 2019                    Respectfully submitted,

                                        */s/ Jeffrey P. Campisi*
                                        Robert N. Kaplan
                                        Jeffrey P. Campisi
                                        Jason A. Uris
                                        **KAPLAN FOX & KILSHEIMER LLP**
                                        850 Third Avenue, 14th Floor
                                        New York, NY 10022
                                        Telephone: (212) 687-1980
                                        Facsimile: (212) 687-7714
                                        Email: rkaplan@kaplanfox.com
                                                jcampisi@kaplanfox.com
                                                juris@kaplanfox.com

                                        *Attorneys for Movant Nick Haila*

13

## CERTIFICATE OF SERVICE

I, Jeffrey P. Campisi, hereby certify that, on  September 9, 2019, I caused the foregoing to be served on all counsel of record by filing the same with the Court using the CM\ECF system which will send electronic notices of the filing to all counsel of record.

/s/        *Jeffrey P. Campisi*
Jeffrey P. Campisi

0