**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHIN HUANG, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> vs. <br><br> CANNTRUST HOLDINGS, INC., PETER ACETO and GREG GUYATT, <br><br> Defendants. | Case No. 1:19-cv-06396-JPO |
| GUSTAVO ALVARADO, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br> vs. <br><br> CANNTRUST HOLDINGS, INC., PETER ACETO, GREG GUYATT, and IAN ABRAMOWITZ, <br><br> Defendants. | Case No. 1:19-cv-06438-JPO |
| RONALD E. JONES, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> vs. <br><br> CANNTRUST HOLDINGS, INC., PETER ACETO and GREG GUYATT, <br><br> Defendants. | Case No. 1:19-cv-06883-JPO |
| SCOTT JUSTISS, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-7164-JPO |

Plaintiff,

vs.

CANNTRUST HOLDINGS, INC., PETER ACETO and GREG GUYATT,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ERIC GLASSON, MIKE HOPSON, JOSHUA SMITH, AND RAY BRUBAKER FOR APPOINTMENT AS LEAD PLAINTIFFS, APPROVAL OF THEIR SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTION**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 3

III.  ARGUMENT ..................................................................................................... 5

      A.    The Glasson Plaintiffs Should Be Appointed to Lead This Litigation. ................. 5

          1.    The Glasson Plaintiffs Have Timely Moved for Appointment .................. 5

          2.    The Glasson Plaintiffs Have the Largest Financial Interest in the Relief Sought by the Class ........................................................................... 6

          3.    The Glasson Plaintiffs Satisfy the Requirements of Rule 23 ...................... 8

      B.    Joint Appointment of the Glasson Plaintiffs Is Appropriate and Will Best Serve the Interests of the Class. ......................................................... 9

      C.    The Glasson Plaintiffs' Selection of Counsel Should Be Approved. .................... 11

      D.    The Related Actions Should Be Consolidated. ....................................................... 13

IV.   CONCLUSION ................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Berger v. Compaq Computer Corp.*
257 F.3d 475 (5th Cir. 2001) .............................................................................. 7

*Bhojwani v. Pistiolis*
2007 WL 9228588 ............................................................................................ 7

*Billitteri v. Securities America, Inc.*
2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)....................................................... 11

*Bo Young Cha v. Kinross Gold Corp.*
2012 WL 20258506 (S.D.N.Y. May 31, 2012) ..................................................... 9

*Brady v. Top Ships Inc.*
324 F. Supp. 3d 335 (E.D.N.Y. 2018) .............................................................. 7, 9

*Faig v. BioScrip, Inc.*
2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ...................................................... 8

*Fox v. Camelot Info. Sys., Inc.*
2012 U.S. Dist. LEXIS 89486 (S.D.N.Y. June 6, 2012) ...................................... 10

*Goldstein v. Puda Coal, Inc.*
2011 WL 6075861 (S.D.N.Y. Dec. 6, 2011) ...................................................... 10

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*
258 F.R.D. 260 (S.D.N.Y. 2009) .................................................................. 9, 10

*In re Blue Apron Holdings, Inc. Sec. Litig.*
2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) ...................................................... 7

*In re Centerline Holding Co. Sec. Litig.*
2008 WL 1959799 (S.D.N.Y. May 5, 2008) ....................................................... 6

*In re Doral Fin. Corp. Sec. Litig.*
414 F. Supp. 2d 398 (S.D.N.Y. 2006) ................................................................ 1

*In re Lehman Bros. Holdings Sec. & ERISA Litig.*
MDL No. 2017, Case No. 09 MD 2017 (S.D.N.Y.) ............................................ 12

*In re Oxford Health Plans, Inc. Sec. Litig.*
182 F.R.D. 42 (S.D.N.Y. 1998) ...................................................................... 7, 8

*In re Peregrine Fin. Grp. Customer Litig.*
Case No. 1:12-cv-5546 (N.D. Ill.) ................................................................... 11

*In re SLM Corp. Sec. Litig.*
   Case No. 08-Civ-1029-WHP (S.D.N.Y.) ................................................................. 12

*La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*
   2012 U.S. Dist. LEXIS 89192 (D. Vt. Apr. 27, 2012) ............................................. 9

*Marsch v. Rui Feng*
   2013 WL 3204193 (S.D.N.Y. June 13, 2013) ......................................................... 8

*Paeste v. Government of Guam*
   798 F.3d 1228 (9th Cir. 2015) ............................................................................ 12

*Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*
   2011 WL 4831209 (S.D.N.Y. Oct. 12, 2011) ......................................................... 8

*Quan v. Advanced Battery Techs., Inc.*
   2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ......................................................... 13

*Reimer v. Ambac Fin. Grp., Inc.*
   2008 WL 2073931 (S.D.N.Y. May 9, 2008) ........................................................... 11

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*
   2015 WL 1499657 (S.D.N.Y. Mar. 27, 2015) .................................................... 9, 11

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................... 6

*Weltz v. Lee*
   199 F.R.D. 129 (S.D.N.Y. 2001) ......................................................................... 7

**Statutes**

15 U.S.C. § 78j ................................................................................................... 1

15 U.S.C. § 78t ................................................................................................... 1

15 U.S.C. § 78u-4 ........................................................................................ *passim*

17 C.F.R. § 240.10b-5 ......................................................................................... 1

**Rules**

Fed. R. Civ. P. 23 ..................................................................................... 1, 2, 8, 10

Eric Glasson, Mike Hopson, Joshua Smith, and Ray Brubaker (together, the "Glasson Plaintiffs") respectfully submit this memorandum of law in support of their motion for: (i) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (ii) approval of their selection of Girard Sharp LLP and Gibbs Law Group as Lead Counsel for the Class; and (iii) for consolidation of all related securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

## I.    INTRODUCTION

The above-captioned actions (the "Related Actions") allege that from November 14, 2018 through July 12, 2019,[1] CannTrust Holdings Inc. ("CannTrust" or the "Company") and certain of its senior officers defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). CannTrust investors, including the four investors in the Glasson Plaintiff group, incurred substantial losses when the price of CannTrust's stock plummeted on news that its cannabis-growing facilities were not properly licensed by the Canadian authorities as had been represented to investors.

The PSLRA requires the Court to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). To do so, the Court determines which movant has the "largest financial interest" in the relief sought by the class in the litigation and whether that

---

[1] For purposes of appointing a Lead Plaintiff, the longest class period governs. *See In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402 (S.D.N.Y. 2006). As such, the end date of the class period alleged in *Jones v. CannTrust Holdings Inc. et al.*, No. 1:19-cv-06883 (S.D.N.Y. filed July 24, 2019), is relied upon here.

1

movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Glasson Plaintiffs submit that they are the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff. The Glasson Plaintiffs believe they have the largest financial interest in this action by virtue of their large investments in CannTrust common stock. Specifically, the Glasson Plaintiffs incurred estimated losses of over $437,000 from their Class Period purchases of approximately 230,000 shares of CannTrust common stock.[2] By comparison, Plaintiff Huang purchased 309 shares (Huang Compl. at p. 23 of 23); Plaintiff Alvarado purchased 104 shares (Alvarado Compl. at p. 22 of 22); Plaintiff Jones purchased 2,000 shares (Jones Compl. at p. 28 of 28); and Plaintiff Justiss purchased 223 shares (Justiss Compl. at p. 25 of 25).

Before seeking a role as Lead Plaintiff, the Glasson Plaintiffs held a joint conference call to discuss the merits of the CannTrust action, together with their common goals and commitment to the litigation, and agreed to actively supervise and monitor its prosecution. Joint Decl., ¶ 7. The Glasson Plaintiffs meet the applicable requirements of Rule 23 because their claims are typical of those of absent class members and they will fairly and adequately represent the interests of the Class. These Plaintiffs have both the incentive and ability to supervise and monitor counsel by virtue of their significant CannTrust holdings. And as discussed in their Joint

---

[2] The Glasson Plaintiffs' PSLRA-required certification statements comprise Exhibit B to the Declaration of Dena C. Sharp in support of this motion ("Sharp Decl."). In addition, a chart setting forth calculations of the Glasson Plaintiffs' estimated losses is annexed to the Sharp Declaration as Exhibit A.

Declaration, submitted herewith, the Glasson Plaintiffs fully understand the Lead Plaintiff's duties to the Class under the PSLRA, and are able and willing to take on these responsibilities.[3]

The Glasson Plaintiffs have further demonstrated their adequacy through their selection of Girard Sharp LLP and Gibbs Law Group LLP as proposed Lead Counsel for the Class. Girard Sharp and Gibbs Law Group are nationally recognized securities class action firms that are well qualified to prosecute this case, having recovered billions of dollars for the benefit of injured investors. The Glasson Plaintiffs chose Girard Sharp and Gibbs Law Group to serve as Lead Counsel based on their proven track record in achieving substantial recoveries in similar matters. Joint Decl., ¶ 6.

Accordingly, based on the Glasson Plaintiffs' substantial financial interest and their commitment to responsibly oversee this action, these Plaintiffs respectfully ask the Court to appoint them as Lead Plaintiff and otherwise grant this motion.

## II.    FACTUAL BACKGROUND

Defendant CannTrust ("CannTrust" or the "Company") is a producer and distributor of medical and recreational cannabis. CannTrust's common stock was traded over the counter until February 25, 2019, when it became listed on the NYSE under the ticker symbol "CTST."

As alleged in the Related Actions, throughout the Class Period, Defendants repeatedly stressed that CannTrust was a licensed producer of medical and recreational cannabis in Canada and that it maintained all necessary permits. For example, CannTrust stated in its registration statement that it believed it was "in material compliance with all laws and regulations" and that it

---

[3] *See* Joint Declaration of Eric Glasson, Mike Hopson, Joshua Smith, and Ray Brubaker in support of this motion ("Joint Decl.").

was officially "licensed" to produce Canadian cannabis. Unbeknownst to investors, however, CannTrust grew cannabis in *un*licensed rooms from October 2018 through March 2019.

On July 8, 2019, CannTrust disclosed that Health Canada—regulator of the cannabis industry in Canada—had determined that CannTrust's operation of its greenhouse in Pelham, Ontario (the "Niagara Facility") violated governing regulations. CannTrust had previously represented in an SEC filing that it had "obtained all necessary permits from the Town of Pelham" and that "the Cannabis Licence for the Niagara Facility expires on October 6, 2020." Yet Health Canada's report issued on July 3 found that CannTrust had been growing cannabis in five unlicensed rooms in the Niagara Facility. As a result, Health Canada placed an inventory hold on approximately 5,200 kilograms of dried cannabis harvested from the unlicensed facility, and CannTrust agreed to place a voluntary hold on an additional 7,500 kilograms of its product. CannTrust is now unable to sell the held inventory and is subject to considerable inventory holding costs. In the press release announcing the Company's non-compliance, CannTrust's then-CEO Peter Aceto admitted "errors in judgment."

CannTrust's share price fell more than 22%, closing at $3.83 per share, on the day it disclosed the Health Canada action. On July 9, Aceto confirmed that some of the cannabis grown in the unlicensed facility had been shipped across Canada and exported internationally, potentially in violation of Canadian and international law, causing CannTrust stock to decline an additional 6% to close at $3.60. On July 12, CannTrust announced that it was suspending the sale and shipment of all cannabis products pending the completion of Health Canada's investigation, causing the Company's stock to drop another 17%, to close at $2.58.

Then on July 24, reports surfaced that senior CannTrust executives—including Aceto and Paul—knew the Company was growing marijuana plants in unlicensed rooms well before

4

regulators discovered this violation in early July. In a November 2018 email to Aceto and other executives that was later forwarded to Paul, Graham Lee, CannTrust's director of quality and compliance, advised that Health Canada had completed its investigation and had discovered compliance shortfalls, but that it had not noticed the plants growing in the unlicensed rooms. Thus, according to Lee, "[w]e dodged some bullets. [Health Canada] did not ask about RG8E/W, which are unlicensed rooms currently full of plants." The news of its executives' active concealment caused CannTrust's stock to decline another 22%, to close at $2.04 on July 24, 2019.

On July 25, the Company announced it had terminated Aceto with cause and asked Paul to resign.

## III.    ARGUMENT

### A.    The Glasson Plaintiffs Should Be Appointed to Lead This Litigation.

The Glasson Plaintiffs respectfully submit that they should be appointed Lead Plaintiff because they are the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA sets forth the procedure for selecting the Lead Plaintiff in class actions arising under the federal securities laws and establishes a presumption in favor of the person or group of persons with the "largest financial interest" in the relief sought by the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As set forth below, the Glasson Plaintiffs believe they are the "most adequate plaintiff" and therefore should be appointed as Lead Plaintiff.

### 1.    The Glasson Plaintiffs Have Timely Moved for Appointment.

The PSLRA permits putative class members to seek appointment as Lead Plaintiff by so moving within 60 days after publication of notice of the first-filed action asserting substantially similar claims. *See* 15 U.S.C. § 78u-4(a)(3)(A). On July 10, 2019, the first of the Related

5

Actions, *Huang v. CannTrust Holdings Inc. et al.*, No. 1:19-cv-6396, was filed in this District. That same day, a notice of pendency of the *Huang* action was published on *Business Wire*, alerting investors that the deadline to seek appointment as Lead Plaintiff is September 9, 2019. *See* Sharp Decl., Ex. C. As such, the Glasson Plaintiffs' motion is timely.

### 2.   The Glasson Plaintiffs Have the Largest Financial Interest in the Relief Sought by the Class.

The Glasson Plaintiffs should be appointed Lead Plaintiff because, as compared with the existing Plaintiffs, they have the "largest financial interest in the relief sought by the Class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Under the first-in, first-out ("FIFO") method of loss calculation, the Glasson Plaintiffs sustained losses of approximately \$437,700 from their Class Period purchases of approximately 229,230 shares of CannTrust common stock. *See* Sharp Decl., Ex. A. These Plaintiffs' estimated losses are even higher when calculated on a last-in, first-out ("LIFO") basis: \$468,450. *See id.* As noted above, the Glasson Plaintiffs' CannTrust losses significantly exceed those of any of the four Plaintiffs who filed actions in this District. *Contrast* Huang Compl. at p. 23 of 23; Alvarado Compl. at p. 22 of 22; Jones Compl. at p. 28 of 28; Justiss Compl. at p. 25 of 25.

The PSLRA explicitly allows multiple putative class members to be appointed as lead plaintiffs. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Therefore, "[t]he majority of courts, including those in this District . . . permit[] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008); *see also In re Centerline Holding Co. Sec. Litig.*, No. 08 CIV. 1026 (SAS), 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) ("Groups of unrelated investors are acceptable if they otherwise meet the requirements of the PSLRA.").

Further, in ruling on PSLRA lead plaintiff applications, courts have aggregated the losses of investors, such as the Glasson Plaintiffs, who will best serve the class by leading the case prosecution as a group. *See In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-cv-4846, 2017 WL 6403513, at \*3-4 (E.D.N.Y. Dec. 15, 2017); *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 348 (E.D.N.Y. 2018); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001). "In deciding whether aggregation is appropriate, courts consider factors such as the size of the group, whether the group was formed in bad faith, and the relationship among the members of the group." *Bhojwani v. Pistiolis*, No. 06 CIV. 13761 CM NKF, 2007 WL 9228588, at \*1-2 (S.D.N.Y. July 31, 2007); *see, e.g.*, *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (appointing as co-lead plaintiff a group of three unrelated individual investors and an institutional investor, and stating that "in actuality a greater number of plaintiffs allows them, as a group, to wield more control over counsel.").

Appointing the Glasson Plaintiff group here is appropriate and consistent with the PSLRA because they chose their attorneys, not the other way around (*see* Joint Decl., ¶ 6), because of their commitment to controlling the litigation as an informed, cohesive group (Joint Decl., ¶¶ 8-10), because CannTrust stock appears to have been primarily marketed to individual investors like these Plaintiffs, and because they do "not present a group so cumbersome as to deliver the control of the litigation into the hands of lawyers." *Weltz*, 199 F.R.D. at 133 (appointing group of seven unrelated plaintiffs); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475, 478 n.2 (5th Cir. 2001) (noting the Securities and Exchange Commission's position that a group of investors appointed to serve as lead plaintiff should normally include between three and five persons). To the best of the Glasson Plaintiffs' knowledge, no other

7

applicant seeking Lead Plaintiff appointment has a larger financial interest in the litigation. Thus, the Glasson Plaintiffs are presumptively the "most adequate." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3. The Glasson Plaintiffs Satisfy the Requirements of Rule 23.

In addition to possessing the largest financial interest in the outcome of the litigation, the Glasson Plaintiffs satisfy the relevant requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a PSLRA motion to serve as Lead Plaintiff, the movant need only make a preliminary showing that it satisfies Rule 23's typicality and adequacy requirements. *See Faig v. BioScrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013) ("At this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (citation omitted).

Typicality is satisfied "where the proposed lead plaintiff's 'claims and injuries arise from the same conduct from which the other class members' claims and injuries arise.'" *Marsch v. Rui Feng*, No. 12 Civ. 9456 (JSR), 2013 WL 3204193, at *2 (S.D.N.Y. June 13, 2013) (quoting *In re Oxford*, 182 F.R.D. at 50). The Glasson Plaintiffs meet this requirement because, like all other proposed class members, they seek recovery for losses incurred as a result of Defendants' misrepresentations and omissions that resulted in subsequent declines in the price of CannTrust stock. *See Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11 Civ. 5097 (JFK), 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011) (finding typicality requirement "easily met" when proposed Lead Plaintiff "asserted that it purchased [the company's] securities during the class period and was injured by false and misleading representations made by defendants").

A representative party must also "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). In short, a Lead Plaintiff must "not have interests that are antagonistic to the class that he seeks to represent" and must have "retained counsel that is capable and qualified

8

to vigorously represent the interests of the class that he seeks to represent." *Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *6 (S.D.N.Y. May 31, 2012) (citation omitted). The Glasson Plaintiffs satisfy these elements as their substantial financial stake in the litigation creates an incentive to vigorously represent the Class. *See Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, No. 14 Civ. 2814 (ER), 2015 WL 1499657, at *11 (S.D.N.Y. Mar. 27, 2015) (appointing investor who "demonstrated substantial losses" that gave him "a strong interest in advocating on behalf of the Class").

Moreover, the Glasson Plaintiffs' interests are aligned with those of the other Class members. No facts suggest any actual or potential conflict of interest or other antagonism between the Glasson Plaintiffs and any other Class member, or any unique defenses to their claims.

Finally, the Glasson Plaintiffs have demonstrated their adequacy through their selection of Girard Sharp LLP and Gibbs Law Group LLP as Lead Counsel. As discussed below and as reflected in their firm resumes, Girard Sharp and Gibbs Law Group are highly experienced in securities class action litigation and have repeatedly demonstrated the ability to bring complex class actions to successful outcomes.

**B.     Joint Appointment of the Glasson Plaintiffs Is Appropriate and Will Best Serve the Interests of the Class.**

Glasson, Hopson, Smith, and Brubaker are committed to working cohesively in the management of this action. *See* Joint Decl., ¶ 8; *cf. Brady*, 324 F. Supp. 3d at 347 (joint declaration "provided evidence of [an investor group's] ability to cohesively manage the litigation"); *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009) (appointing a group in view of "declarations demonstrating cooperative efforts among" its members); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-

9

cv-289, 2012 U.S. Dist. LEXIS 89192, at *11 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation"); *Fox v. Camelot Info. Sys., Inc.*, No. 12 Civ. 86 (PGG), 2012 U.S. Dist. LEXIS 89486, at *10 (S.D.N.Y. June 6, 2012) (appointing a group based on the finding that it was capable of adequately protecting the interests of the class); *Goldstein v. Puda Coal, Inc.*, No. 11 Civ. 02598, 2011 WL 6075861, at *7 (S.D.N.Y. Dec. 6, 2011) (appointing a group of investors).

The Joint Declaration provides the reasons that these four investors are collaborating in this litigation and describes how they intend to oversee counsel and the case prosecution. Joint Decl., ¶¶ 3-4, 10. As noted in the Joint Declaration, before seeking appointment as Lead Plaintiff, Glasson, Hopson, Smith, and Brubaker together discussed, among other things, the merits of this CannTrust case and their common goals—which include returning the investor losses and ensuring that the Class will benefit from the active involvement and supervision of Class counsel and the litigation. Joint Decl., ¶ 7. Each of the Glasson Plaintiffs also consulted extensively with their proposed Lead Counsel regarding the merits of the claims against the Defendants and their losses arising from Defendants' misconduct. Joint Decl., ¶ 6. As a result of their shared goals, and the importance of this litigation to all CannTrust investors, the Glasson Plaintiffs agree that their partnership is well-suited for this litigation and respectfully seek joint appointment as Lead Plaintiff. Joint Decl., ¶ 4.

The evidence submitted by the Glasson Plaintiffs demonstrating their commitment to advance the interests of the Class as a Lead Plaintiff group supports their appointment, and confirms that they satisfy the adequacy and typicality requirements of Rule 23. *See, e.g.*, *In re Bank of Am.*, 258 F.R.D. at 270 (concluding that "demonstrated cooperation among plaintiffs" through discussions and declarations memorializing their joint oversight over counsel and the

10

action "satisfies concerns about designating groups as lead plaintiffs that are in fact dominated by counsel"); *Reimer v. Ambac Fin. Grp., Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at \*3 (S.D.N.Y. May 9, 2008) (finding that "joint conference calls" regarding litigation strategy between group members "who have prior working relationships" demonstrated the group was able to function independently of counsel).

    **C.       The Glasson Plaintiffs' Selection of Counsel Should Be Approved.**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also Topping*, 2015 WL 1499657, at \*11 (noting "strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel.") (citation omitted).

Girard Sharp LLP and Gibbs Law Group LLC are among the preeminent securities class action law firms in the country. *See* Sharp Decl., Exs. D & E. Girard Sharp (then Girard Gibbs) served as Lead Counsel, for example, in *Billitteri v. Securities America, Inc.*, No. 3:09-cv-01568-F (N.D. Tex.), a case brought by investors in a failed investment scheme. The firm coordinated settlement negotiations with bankruptcy trustees and competing plaintiff groups, resulting in a global $150 million settlement. U.S. District Judge W. Royal Furgeson wrote that "Class Counsel in this case possess great competence and experience, and the result reached in this case perfectly exemplifies their abilities. The Court has been extremely impressed with the conduct, skill, and accomplishment of class counsel throughout this litigation." 2011 WL 3585983, at \*8 (N.D. Tex. Aug. 4, 2011).

Other examples of the firms' many successes in lead counsel roles include:

- *In re Peregrine Fin. Grp. Customer Litig.*, Case No. 1:12-cv-5546 (N.D. Ill.). The litigation was prosecuted under the Commodities Exchange Act and state-law theories on behalf of futures and commodities investors who lost millions in the collapse of a

commodities futures merchant. The litigation generated recoveries of more than $75 million. In approving a $45 million settlement, the court wrote that counsel "conferred an impressive monetary benefit on the Settlement Class: the funds recovered from U.S. Bank are substantial—both in absolute terms and when assessed in light of the risks of establishing liability and damages" [Dkt. # 441].

- *In re Lehman Bros. Holdings Sec. & ERISA Litig.*, MDL No. 2017, Case No. 09 MD 2017 (S.D.N.Y.). Girard Gibbs served as lead counsel for purchasers of "structured notes" issued by Lehman Brothers and sold by UBS Financial Services. Girard Gibbs also served on the Executive Committee charged with managing the overall litigation arising out of Lehman's collapse, with total recoveries of over $700 million.

- *Paeste v. Government of Guam*, No. 1:11-cv-00008 (D. Guam). The action was brought on behalf of the taxpayers of Guam to end the Government of Guam's practice of delaying payment of income tax refunds. Together with Guam co-counsel, Girard Gibbs obtained class certification and a permanent injunction requiring the timely payment of income tax refunds. The injunction was upheld on appeal. 798 F.3d 1228 (9th Cir. 2015).

- *In re SLM Corp. Sec. Litig.*, Case No. 08-Civ-1029-WHP (S.D.N.Y.). Plaintiffs alleged that Sallie Mae, the leading student-loan provider, misled the public about its financial performance in order to inflate the company's stock price. After obtaining nationwide class certification, plaintiffs entered into a settlement that established a $35 million fund to resolve their fraud claims and those of their fellow investors.

By successfully prosecuting these and many other actions (see also the firm resumes submitted as Exhibits D and E to the Sharp Declaration), Girard Sharp LLP and Gibbs Law Group LLP have demonstrated that they are well qualified to represent the proposed class of

12

CannTrust investors. For this reason, the Glasson Plaintiffs' choice of Lead Counsel should be approved.

### D.      The Related Actions Should Be Consolidated.

Four related securities fraud class actions were filed in this District against Defendants:

| Case | Civil No. | Date Filed |
|---|---|---|
| *Huang v. CannTrust Holdings Inc. et al.* | 19-cv-6396 | July 10, 2019 |
| *Alvarado v. CannTrust Holdings Inc. et al.* | 19-cv-6438 | July 11, 2019 |
| *Jones v. CannTrust Holdings Inc. et al.* | 19-cv-6883 | July 24, 2019 |
| *Justiss v. CannTrust Holdings Inc. et al.* | 19-cv-7164 | July 31, 2019 |

These actions present virtually identical factual and legal issues; each arises out of the same alleged misstatements and omissions regarding the Company's scheme to misrepresent and conceal its noncompliance with Canadian cannabis regulations. Consolidation of these actions is therefore appropriate under Rule 42(a) of the Federal Rules of Civil Procedure. *See, e.g.*, *Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279 (CM), 2011 WL 4343802, at *1 (S.D.N.Y. Sept. 9, 2011) (consolidating related actions that "involve[d] securities claims brought on behalf of purchasers of [the company's] securities during the Class Period") (citation omitted).

## IV.      CONCLUSION

For the foregoing reasons, the Glasson Plaintiffs respectfully request that the Court: (i) appoint them as Lead Plaintiff; (ii) approve their selection of Girard Sharp LLP and Gibbs Law Group LLP as Lead Counsel for the Class; (iii) consolidate the related securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure; and (iv) grant such other relief as the Court may deem just and proper.

Respectfully submitted,

By:   ___/s/ *Jessica J. Sleater*___

13

**ANDERSEN SLEATER SIANNI LLC**
Jessica J. Sleater
1250 Broadway, 27th Floor
New York, NY 10001
Telephone: (646) 599-9848
jessica@andersensleater.com

Ralph Sianni (admitted in NY)
2 Mill Road, Suite 202
Wilmington, DE 19806
Tel: (302) 510-8528
rsianni@andersensleater.com

**GIRARD SHARP LLP**
Dena C. Sharp (*pro hac* application forthcoming)
Adam E. Polk (*pro hac* application forthcoming)
711 Third Ave, 20th Floor
New York, New York 10017
Telephone: (212)798-0136
Facsimile:  (212) 557-2952
dsharp@girardsharp.com
apolk@girardsharp.com

601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile:  (415) 981-4846

**GIBBS LAW GROUP LLP**
Eric H. Gibbs (*pro hac* application forthcoming)
David Stein ((*pro hac* application forthcoming)
505 14th Street, Suite 110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile:  (415) 350-9701
ehg@classlawgroup.com
ds@classlawgroup.com

*Attorneys for Plaintiffs Eric Glasson, Mike Hopson,*
*Joshua Smith, and Ray Brubaker*

14

4

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2019, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ *Jessica J. Sleater*