**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CHUN HUANG, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 1:19-cv-06396-JPO |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CANNTRUST HOLDINGS INC., PETER ACETO, and GREG GUYATT, | ) ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| GUSTAVO ALVARADO, on behalf of himself and all others similarly situated, | ) ) ) | Civil Action No. 1:19-cv-06438-JPO |
| | ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| CANNTRUST HOLDINGS INC., PETER ACETO, GREG GUYATT, and IAN ABRAMOWITZ, | ) ) ) ) | |
| Defendants. | ) ) | |

*(Case caption continues on following page)*

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION**
**OF MARK PETERSEN FOR APPOINTMENT AS LEAD PLAINTIFF,**
**APPROVAL OF HIS SELECTION OF LEAD COUNSEL,**
**AND CONSOLIDATION OF RELATED ACTIONS**

|  |  |  |
|---|---|---|
| RONALD E. JONES, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 1:19-cv-06883-JPO |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | |
| CANNTRUST HOLDINGS INC., PETER ACETO and GREG GUYATT, | ) ) ) | |
| Defendants. | ) ) | |
| SCOTT JUSTISS, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 1:19-cv-07164-JPO |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) ) | |
| CANNTRUST HOLDINGS INC., PETER ACETO, and GREG GUYATT | ) ) ) | |
| Defendants. | ) ) ) | |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

SUMMARY OF THE RELATED ACTIONS ......................................................................... 2

ARGUMENT ............................................................................................................................ 4

    A.      Petersen Is the Most Adequate Plaintiff............................................................. 5

          1.      Petersen Believes He Has The Largest Financial Interest In The Relief Sought By The Class ............................................................................................6

          2.      Petersen Otherwise Satisfies The Requirements Of Rule 23 ..................................6

    B.      Petersen Selected Well-Qualified Lead Counsel To Represent The Class ...................... 8

    C.      Consolidation Of All Related Actions Is Warranted ......................................................... 9

CONCLUSION ........................................................................................................................ 9

## TABLE OF AUTHORITIES

**Cases**

*Chilton v. Chiumento Grp.*, 365 F. App'x 298 (2d Cir. 2010)........................................................ 6

*Stitt v. On Deck Capital, Inc.*,
  No. 15 Civ. 6126 (AT), 2016 WL 889535 (S.D.N.Y. Feb. 17, 2016) ................................. 6, 7, 9

*Villella v. Chemical & Mining Co. of Chile Inc.*,
  No. 15 Civ. 2106 (ER), 2015 WL 6029950 (S.D.N.Y. Oct. 14, 2015) ................................... 5, 9

**Statutes**

15 U.S.C. § 78......................................................................................................................... passim

17 C.F.R. § 240.10b-5 ..................................................................................................................... 1

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................................... 2, 6, 7

Fed. R. Civ. P. 42 .......................................................................................................................... 1, 9

Mark Petersen ("Petersen") respectfully submits this memorandum of law in support of his motion (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of his selection of Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel for the Class; (3) for consolidation of all related securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above-captioned related securities class actions allege that CannTrust Holdings Inc. ("CannTrust" or the "Company") and certain of its senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, the related actions alleged that from November 14, 2018 through July 12, 2019 (the "Class Period"), Defendants misrepresented that CannTrust maintained all necessary licenses to serve as a producer of medical and recreational cannabis in Canada. In truth, CannTrust did not maintain the necessary licenses, was growing cannabis in unlicensed rooms in violation of Canadian regulations, and was shipping unlicensed cannabis in violation of the Canadian Cannabis Act.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C.

§ 78u-4(a)(3)(B)(iii)(I).  For the reasons set forth below, Petersen is the "most adequate plaintiff" by virtue of, among other things, the approximately $146,000 in losses he incurred on his investments in CannTrust securities during the Class Period.  Petersen also satisfies the relevant requirements of Rule 23 because his claims are typical of all members of the Class, and he will fairly and adequately represent the Class.  Indeed, Petersen fully understands the Lead Plaintiff's obligations to the Class under the PSLRA and is willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee the vigorous prosecution of this action.  *See* Declaration of Javier Bleichmar ("Bleichmar Decl."), Ex. A.

Further, Petersen has selected BFA, a law firm with substantial experience in successfully prosecuting securities class actions, to serve as Lead Counsel for the Class.  Accordingly, Petersen respectfully requests that the Court appoint him Lead Plaintiff and otherwise grant his motion.

## SUMMARY OF THE RELATED ACTIONS

CannTrust is a Canada-based producer of medical and recreational cannabis.  ¶2.[1]  During the Class Period, the Company represented that it was a licensed producer of medical and recreational cannabis in Canada and that it maintained all necessary licenses.  ¶3.  This includes the Company's 450,000 sq. ft. Niagara Perpetual Harvest Facility greenhouse in Pelham, Ontario, as well as its 60,000 sq. ft. manufacturing "centre of excellence" in Vaughan, Ontario.  ¶¶2-3.  The Company made similar representations in the offering documents for its secondary offering of 36 million CannTrust shares conducted on or around May 3, 2019, allowing Defendants to raise nearly $200 million in gross proceeds.  *See Jones v. CannTrust Holdings Inc.*, 1:19-cv-6883, ECF No. 1, at ¶¶10, 45-46 (S.D.N.Y. filed July 24, 2019) ("*Jones*").

---

[1] All citations to ¶__ refer to the complaint filed in *Alvarado v. CannTrust Holdings Inc*, 1:19-cv-6438, ECF No. 1 (S.D.N.Y. filed, July 11, 2019) ("*Alvarado*"), unless otherwise indicated.

While the Company represented that its facilities were licensed, the Company was actually growing cannabis in five unlicensed rooms from October 2018 through March 2019, causing the Company's Niagara Perpetual Harvest Facility to violate Canadian regulations. ¶4. The Company had also shipped unlicensed cannabis from the Company's Niagara Perpetual Harvest Facility in violation of the Canadian Cannabis Act. ¶4.

On July 8, 2019, CannTrust announced that it received a compliance report from Health Canada notifying the Company that its Niagara Perpetual Harvest Facility violated Canadian regulations. ¶5. CannTrust accepted Health Canada's non-compliance findings and admitted that it was growing cannabis in unlicensed rooms. ¶¶5-6. As a result, Health Canada placed a hold on CannTrust's inventory which included approximately 5,200kg of dried cannabis that was harvested in the unlicensed rooms, and the Company instituted a voluntary hold of approximately 7,500kg of dried cannabis equivalent housed in its Vaughn manufacturing facility that was produced in the unlicensed rooms. *Id.* On this news, the price of CannTrust stock declined by $1.11 per share, or over 22%, from $4.94 per share on July 5, 2019, to $3.83 per share on July 8, 2019. ¶7.

Also on or around July 8, *MarketWatch* reported that investment and research firm Harvest Moon Research stated that the inventory hold was likely due to the Company's "overall disregard for Health Canada regulations and its licensing systems." ¶¶8, 48. Harvest Moon reportedly stated that "the issue was brought to Health Canada's attention by former employees who were irked when the company's human resources department leaked its entire payroll information to every employee. That sparked a mini revolt, that led some of its staff to go to Health Canada to disclose how the company was breaking rules . . . Harvest Moon said a more serious issue is that CannTrust may have exported some of the illicit cannabis to markets it serves, which include Denmark and

Australia.  Under the Canadian Cannabis Act, that would be an indictable offense that could come with a prison term."  ¶8.

On July 9, 2019, *MarketWatch* reported that BMO Capital Markets downgraded CannTrust stock as "[i]t is unclear how the company would have commenced cultivation in unlicensed rooms and we are surprised by this development and the inability of CannTrust's internal operational controls to prevent this."  ¶10.  Also on July 9, the *Financial Post* reported that the Company's Chief Executive Officer, Defendant Peter Aceto, confirmed that some of the cannabis grown in unlicensed rooms had already been shipped to provinces across Canada.  ¶11.  This news caused the price of the Company's stock to decline from $3.83 per share on July 8 to $3.60 per share on July 9, or approximately 6%.  ¶13.

On July 10, a whistleblower who said he worked at the Niagara Facility, alleged that CannTrust had created fake walls to conceal from regulators that the Company was growing cannabis in unlicensed rooms.  *See Jones* at ¶13.  Then, on July 12, 2019, it is alleged that CannTrust announced that it had implemented a voluntary and indefinite hold on all of its products pending an internal review and the results of the investigation by Health Canada.  *Id.* ¶14.  On this news, the price of CannTrust stock declined from $3.11 per share on July 11 to $2.58 per share on July 12, or over 17%.  *Id.*

## ARGUMENT

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A).  On July 10, 2019, Plaintiff Chun Huang filed the first of the related actions alleging that Defendants defrauded investors during the period of November 14, 2018 and July 5, 2019.  *See Huang v. CannTrust Holdings Inc.*, No. 1:19-cv-6396-JPO, ECF

No. 1 at ¶1.  On the same day, counsel for Mr. Huang published a notice on *Business Wire*, which alerted investors to the pendency of the action and set the deadline to seek Lead Plaintiff status by September 9, 2019.  *See* Bleichmar Decl. Ex. B.[2]

On July 24, 2019, Plaintiff Ronald E. Jones filed a substantially similar action against CannTrust which expanded the end of the Class Period from July 5, 2019 to July 12, 2019.  *See Jones* ECF No. 1 at ¶1.[3]  Also on July 24, counsel for Mr. Jones published a notice on *Business Wire* alerting investors to the expanded Class Period and reminding them of the September 9, 2019 deadline to seek to serve as Lead Plaintiff.  *See* Bleichmar Decl. Ex. C.  Accordingly, Petersen satisfies the PSLRA's 60-day requirement through the filing of this motion.

### A.    Petersen Is the Most Adequate Plaintiff

Petersen respectfully submits that he is entitled to be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief

---

[2] On July 11, 2019, Plaintiff Gustavo Alvarado filed a substantially related securities class action against CannTrust which similarly alleges that Defendants defrauded investors during the period of November 14, 2018 and July 5, 2019.  *See Alvarado*, ECF No. 1 at ¶1.  On July 31, 2019, Plaintiff Scott Justiss also filed a substantially related securities class action against CannTrust which similarly alleges that Defendants defrauded investors during the November 14, 2018 to July 5, 2019 period.  *See Justiss v. CannTrust Holdings Inc.*, No. 1:19-cv-07164-JPO, ECF No. 1 at ¶1 (S.D.N.Y. filed July 31, 2019) ("*Justiss*").

[3] While the actions assert different class periods, for purposes of appointing a Lead Plaintiff, the broadest potential class period governs.  *See Villella v. Chemical & Mining Co. of Chile Inc.*, No. 15 Civ. 2106 (ER), 2015 WL 6029950, at *5 n.5 (S.D.N.Y. Oct. 14, 2015).  That said, *Jones* expanded the end of the Class Period to July 12, 2019 based on the issuance of a press release titled "CannTrust Voluntary Hold On Product Sales and Formation of Independent Special Committee of the Board of Directors" that *Jones* alleges was published on July 12.  *Jones* ECF No. 1 at ¶58.  That press release, however, was actually published after the market closed on July 11.  *See* Bleichmar Decl. Ex. D.  As such, the Class Period should end on July 11 for purposes of appointing a Lead Plaintiff, and Petersen's financial interest is calculated using that end-date.

sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for Lead Plaintiff presumption).

### 1. Petersen Believes He Has The Largest Financial Interest In The Relief Sought By The Class

Petersen should be appointed Lead Plaintiff because he believes he has the largest financial interest in the relief sought by the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  As demonstrated herein, Petersen incurred total losses of approximately $146,000 from his investments in CannTrust securities during the Class Period.[4]  To the best of Petersen's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation.  Accordingly, Petersen believes that he has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 2. Petersen Otherwise Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Petersen otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  On a motion to serve as Lead Plaintiff, the movant must make only "a preliminary showing" that it satisfies the adequacy and typicality requirements of Rule 23.  *Stitt v. On Deck Capital, Inc.*, No. 15 Civ. 6126 (AT), 2016 WL 889535, at *2 (S.D.N.Y. Feb. 17, 2016) (citation omitted).  Here, Petersen unquestionably satisfies both requirements.

Petersen's claims are typical of the claims of other purchasers of CannTrust securities. Typicality is satisfied when each Class member's claims "arise from the same course of events,

---

[4] Petersen's PSLRA-required Certification is attached as Exhibit A to the Bleichmar Decl. submitted herewith.  A chart setting forth calculations of Petersen's financial interest is attached as Exhibit E to the Bleichmar Decl.

and the other class members make similar legal arguments to prove liability." *Id.* Here, Petersen's and all other Class members' claims arise from the same course of events and their legal arguments to prove Defendants' liability are nearly identical. Like all other Class members, Petersen: (1) purchased CannTrust securities during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) was damaged as a result. *Id.* at *3 (typicality satisfied when movant "claims that [defendant] issued false and misleading statements that caused the company's shares to trade at an artificially inflated price [and] claims arise from the same course of conduct affecting each member of the proposed class"). As such, Petersen is a typical Class representative.

Petersen likewise satisfies the adequacy requirement of Rule 23. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order for the Class' interests to be fairly and adequately represented, a Lead Plaintiff must not have interests that are antagonistic to the Class that it seeks to represent, must have a sufficient interest in the outcome of the case to ensure vigorous advocacy, and must retain counsel that is capable and qualified to vigorously represent the interests of the Class. *See On Deck Capital*, 2016 WL 889535, at *2. Petersen satisfies these elements because his substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class' claims. Petersen's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Petersen and other Class members.

Indeed, Petersen is well-aware of the Lead Plaintiff's obligations under the PSLRA to oversee and supervise the litigation separate and apart from counsel and submitted a sworn certification as to his willingness and ability to fulfill those duties. *See* Bleichmar Decl., Ex. A.

Further, Petersen has demonstrated his adequacy through his selection of BFA as Lead Counsel to represent the Class in this action.  As discussed more fully below, BFA is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

**B.      Petersen Selected Well-Qualified Lead Counsel To Represent The Class**

The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Lead Plaintiff's choice of counsel is not to be disturbed unless doing so is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

BFA is among the foremost securities class action law firms in the country.  BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of institutional investors in securities class actions, and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades.  *See* Bleichmar Decl. Ex. F.  In this District, the firm recently achieved a $234 million resolution for the benefit of the class in *In re MF Global Holdings Sec. Litig.*, 11-cv-07866 (S.D.N.Y. July 15, 2016), as well as a $120 million recovery in *Freedman v. Weatherford Int'l, Ltd.*, 12-cv-02121 (S.D.N.Y. Nov. 4, 2015).  BFA also recently secured a $219 million resolution in *In re Genworth Fin. Inc. Sec. Litig.*, 14-cv-00682 (E.D. Va. Sept. 26, 2016), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia.

Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.  Accordingly, the Court should approve Petersen's selection of BFA as Lead Counsel for the Class.

## C.     Consolidation Of All Related Actions Is Warranted

There are at least four related actions pending in this District against Defendants:

| Case | Civil No. | Date Filed |
|------|-----------|------------|
| *Huang v. CannTrust Holdings Inc.* | 1:19-cv-06396-JPO | July 10, 2019 |
| *Alvarado v. CannTrust Holdings Inc.* | 1:19-cv-06438-JPO | July 11, 2019 |
| *Jones v. CannTrust Holdings Inc.* | 1:19-cv-06883-JPO | July 24, 2019 |
| *Justiss v. CannTrust Holdings Inc.* | 1:19-cv-07164-JPO | July 31, 2019 |

These actions present virtually identical factual and legal issues because they each allege claims under Sections 10(b) and 20(a) of the Exchange Act against overlapping Defendants, relating to substantially similar periods of time, and are premised upon the same types of misstatements regarding CannTrust's compliance with Canadian regulations.  Rule 42(a) grants broad discretion to consolidate cases that involve common questions of law or fact, as here.  *See On Deck Capital*, 2016 WL 889535, at *2 (consolidating cases "alleging the same violations of the Exchange Act, by similar parties, and based on the same conduct").  While *Jones* asserts a slightly different class period than *Huang*, *Alvarado,* and *Justiss* (see *supra* at 5), that minor difference does not counsel against consolidation.  *See Villella*, 2015 WL 6029950, at *5 (securities class actions asserting different class periods did not "change[] the substantial similar nature of the two actions or mitigate[] the benefits of consolidation").  Accordingly, consolidation is appropriate under Rule 42(a).

## CONCLUSION

For the reasons discussed above, Petersen respectfully requests that the Court:  (1) appoint him to serve as Lead Plaintiff; (2) approve his selection of BFA as Lead Counsel for the Class; (3) consolidate all related actions pursuant to Rule 42(a); and (4) grant any such further relief as the Court may deem just and proper.

Dated:  September 9, 2019

Respectfully Submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Javier Bleichmar*
Javier Bleichmar
Ross Shikowitz
7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960
jbleichmar@bfalaw.com
rshikowitz@bfalaw.com

*Counsel for Proposed Lead Plaintiff Mark Petersen, and Proposed Lead Counsel for the Class*

John A. Kehoe
Michael K. Yarnoff
**KEHOE LAW FIRM, P.C.**
41 Madison Avenue, 31st Floor
New York, New York 10010
Telephone: (212) 804-7700
jkehoe@kehoelawfirm.com
myarnoff@kehoelawfirm.com

*Additional Counsel for Proposed Lead Plaintiff Mark Petersen*

10