**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHUN HUANG, Individually and On Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>    v.<br><br>CANNTRUST HOLDINGS INC., PETER ACETO, and GREG GUYATT,<br><br>           Defendants. | No. 1:19-cv-06396-JPO<br><br>Judge J. Paul Oetken<br><br><u>CLASS ACTION</u><br><br><br><br><u>ORAL ARGUMENT REQUESTED</u> |
| GUSTAVO ALVARADO, on behalf of himself and all others similarly situated,<br><br>           Plaintiff,<br><br>    vs.<br><br>CANNTRUST HOLDINGS INC., PETER ACETO, GREG GUYATT, and IAN ABRAMOWITZ,<br><br>           Defendants. | No. 1:19-cv-06438-JPO<br><br>Judge J. Paul Oetken |
| RONALD E. JONES, Individually and on Behalf of All Others Similarly Situated,<br><br>           Plaintiff,<br><br>    vs.<br><br>CANNTRUST HOLDINGS INC., PETER ACETO and GREG GUYATT,<br><br>           Defendants. | No. 1:19-cv-06883-JPO<br><br>Judge J. Paul Oetken |

SCOTT JUSTISS, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

CANNTRUST HOLDINGS INC., PETER ACETO, and GREG GUYATT,

Defendants.

No. 1:19-cv-07164-JPO

Judge J. Paul Oetken

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF GRANITE POINT CAPITAL MASTER FUND, LP AND GRANITE POINT CAPITAL SCORPION FOCUSED IDEAS FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT ..................................................................................................................... 6

I.      THE ACTIONS SHOULD BE CONSOLIDATED ............................................... 6

II.     GRANITE POINT SHOULD BE APPOINTED LEAD PLAINTIFF ............................. 8

        A.      The PSLRA Standard for Appointing Lead Plaintiff.............................. 8

        B.      Granite Point Is the "Most Adequate Plaintiff" ....................................... 9

                1.      Granite Point's Motion Is Timely ................................................. 9

                2.      Granite Point Has a Substantial Financial Interest ..................... 9

                3.      Granite Point Satisfies Rule 23's Typicality and Adequacy
                        Requirements ............................................................................... 10

                        a.      Granite Point's Claims Are Typical of Those of the Class........... 10

                        b.      Granite Point Satisfies the Adequacy Requirement of
                                Rule 23 ....................................................................... 11

                4.      Granite Point Is Precisely the Type of Lead Plaintiff Congress
                        Envisioned When It Passed the PSLRA ..................................... 12

III.    GRANITE POINT'S SELECTION OF LEAD COUNSEL MERITS APPROVAL ....... 13

CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert Fadem Trust v. Citigroup Inc.*,
239 F. Supp. 2d 344 (S.D.N.Y. 2002)...................................................................................7

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) .......................................................................................6, 7

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)...............................................................................................13

*In re Elan Corp. Sec. Litig.*,
No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) ..............................11

*Faig v. Bioscrip, Inc.*,
No. 13 Civ. 06922 (AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013)........................10, 11

*Glauser v. EVCI Career Colls. Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) .........................................................................................2

*Kemp v. Universal Am. Fin. Corp.*,
No. 05 Civ. 9883 (JFK), 2006 WL 1190691 (S.D.N.Y. May 1, 2006) ...................................9

*In re KIT Dig., Inc. Sec. Litig.*,
293 F.R.D. 441 (S.D.N.Y. 2013) .......................................................................................13

*Kux-Kardos v. VimpelCom, Ltd.*,
151 F. Supp. 3d 471 (S.D.N.Y. 2016)..................................................................................10

*Lowinger v. Global Cash Access Holdings, Inc.*,
No. 08 Cv. 3516 (SWK), 2008 WL 2566558 (S.D.N.Y. June 26, 2008) .................................7

*Micholle v. Ophthotech Corp.*,
No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)........................9, 11, 13

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 8, 2008) ....................................7

*Peifa Xu v. Gridsum Holding Inc.*,
No. 18 Civ. 3655 (ER), 2018 WL 4462363 (S.D.N.Y. Sept. 17, 2018) ..................................7

*Randall v. Fifth St. Fin. Corp.*,
No. 15-cv-7759, 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ................................................10

*Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*,
    68 F. Supp. 3d 390 (S.D.N.Y. 2014)............................................................................13

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
    No. 16-cv-02758 (PKC), 2016 WL 2986235 (S.D.N.Y. May 13, 2016)................................10

**Rules & Statutes**

Fed. R. Civ. P. 23 ........................................................................................... *passim*

Rule 42(a)...............................................................................................................7, 8

15 U.S.C. § 78u-4 *et seq*. ............................................................................ *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    No. 04-cv-08141 (S.D.N.Y.)......................................................................................14

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
    No. 08-md-01963 (S.D.N.Y.) ....................................................................................14

*In re Fannie Mae 2008 Sec. Litig.*,
    No. 08-cv-07831 (S.D.N.Y.)......................................................................................14

*In re Prothena Corp. plc Sec. Litig.*,
    No. 18-cv-06435 (S.D.N.Y.) .....................................................................................13

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
    No. 09-md-02027 (S.D.N.Y.) ....................................................................................14

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ......................2, 12, 14

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679..................................................2

Proposed Lead Plaintiff Granite Point Capital Master Fund, LP and Granite Point Capital Scorpion Focused Ideas Fund (together, "Granite Point") respectfully submit this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for the entry of an Order: (i) consolidating the above-captioned actions (the "Action"); (ii) appointing Granite Point as Lead Plaintiff on behalf of the Class of all persons and entities that acquired CannTrust Holdings Inc. ("CannTrust" or the "Company") securities between November 14, 2018 and July 12, 2019, inclusive (the "Class Period"); (iii) approving Granite Point's selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Granite Point—a sophisticated institutional investor—respectfully submits that it should be appointed Lead Plaintiff on behalf of all investors who acquired CannTrust securities during the Class Period (the "Class"), and who were damaged as a result of Defendants' alleged fraud. The Action alleges violations of Sections 10(b) and 20(a) of the Exchange Act against CannTrust and certain of its executive officers (collectively, the "Defendants").

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court must determine which movant has the "largest financial interest" in the relief sought by the Class, and also whether such movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

1

For the reasons discussed below, Granite Point respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff. Granite Point incurred losses of **$2,135,246** on its Class Period transactions in CannTrust securities as calculated on a last-in-first-out ("LIFO") basis.[1] Accordingly, Granite Point has a substantial financial interest in directing this litigation and recovering losses attributable to Defendants' violations of federal securities laws—an interest believed to be greater than that of any other qualified movant.

In addition to asserting a substantial financial interest in this litigation, Granite Point also meets the typicality and adequacy requirements of Rule 23 because: (i) its claims arise from the same course of events as those of the other Class members, (ii) it relies on similar legal theories to prove Defendants' liability, and (iii) it has retained experienced counsel and is committed to vigorously prosecuting the Action. Furthermore, the PSLRA's legislative history shows that a large, sophisticated institutional investor like Granite Point is precisely the type of investor that Congress intended to empower to lead securities class action litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 6 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 685; *see also Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("the PSLRA was passed . . . to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one") (citation omitted).

---

[1] A copy of the Certification of Granite Point, signed by C. David Bushley, a Principal and Chief Operating Officer of Granite Point Capital ("Certification"), is attached as Exhibit A to the Declaration of Francis P. McConville (the "McConville Decl."). The Certification sets forth all transactions of Granite Point in CannTrust securities during the Class Period. In addition, a table reflecting the calculation of financial losses sustained by Granite Point on its Class Period transactions in CannTrust securities ("Loss Analysis") is attached as Exhibit B to the McConville Decl.

Finally, pursuant to the PSLRA, Granite Point respectfully requests that the Court approve the selection of Labaton Sucharow Lead Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class"). Labaton Sucharow is a nationally recognized securities class action firm that has recovered billions of dollars for the benefit of injured investors, and has the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, Granite Point respectfully requests that the Court appoint it as Lead Plaintiff for the Class and approve its choice of Lead Counsel.

## FACTUAL BACKGROUND

CannTrust produces and distributes recreational and medicinal cannabis products. CannTrust's products include dried flower, capsules, oil tinctures, and topicals, along with products for the pet and coffee markets.

CannTrust operates under a multi-layered legal framework in Canada. The Canadian market for medicinal products is primarily regulated at the federal level. CannTrust is a "Licensed Producer" of medicinal cannabis under Canada's Access to Cannabis for Medical Purposes Regulations ("ACMPR"). This designation subjects CannTrust to certain regulations (*e.g.*, requiring security for facilities) and reporting requirements, as well as to unscheduled site inspections by Health Canada, the agency primarily responsible for regulating the cultivation and marketing of cannabis products in Canada.

The ACMPR also requires the Company to obtain facility- and room-specific licenses for each location in which it cultivates, processes, and stores its products. According to the Company, it has sought and received its ACMPR Licenses for two facilities, one located in

3

Pelham, Ontario, which the Company refers to as the "Pelham Facility" or "Niagara Facility," and the other located in Vaughan, Ontario, which the Company calls the "Vaughan Facility."

At the start of the Class Period, Health Canada had licensed these facilities for certain activities, such as the indoor cultivation of cannabis, but not for other activities, such as outdoor cultivation. In addition, not all rooms within each facility were licensed for certain activities, such as cultivation. Nevertheless, CannTrust improperly used these facilities to cultivate cannabis without the necessary licenses and included the proceeds from illegally grown cannabis in the Company's financial results. The failure of CannTrust to receive the proper licenses for the cultivation of cannabis at these facilities was of material importance to investors, because such failure negatively impacted the Company's ability to generate and grow revenues and subjected the Company to adverse regulatory actions. CannTrust's revenues are derived almost entirely from the sale of dried cannabis and cannabis extracts.

On October 17, 2018, Canada legalized the distribution of recreational cannabis. In doing so, the federal government required companies to be federally licensed, but largely delegated other regulatory matters to the Canadian provinces, including responsibility for regulating sale and distribution, minimum age requirements, places where cannabis can be consumed, and other matters. On November 14, 2018, Defendants reported that CannTrust was "one of only four producers with at least nine provincial agreements" permitting the cultivation and sale of recreational cannabis products.

Defendants have declared their intention to expand CannTrust internationally, especially after Canada and other countries loosened regulation of recreational cannabis products. Health Canada requires companies to apply for licenses to export such products. On November 6, 2017, CannTrust received Health Canada approval to export medical marijuana internationally to

4

countries where medical marijuana is legalized, and the Company began shipping to Australia. On March 13, 2018, the Company announced it had entered into a joint venture with a company in Denmark to distribute its products. During the Class Period the Company announced its intention to begin exporting to the United States, beginning with the state of California.

Defendants' expansion plans were fueled in significant measure by the desire to seize the market opportunity created by the legalization of recreational cannabis in Canada and in other countries (as well as states within the United States). The other key component of defendants' growth plans was their strategy to significantly expand CannTrust's production of cannabis. Prior to and during the Class Period defendants laid out to investors a three-phase plan to support this strategy.

In early 2019, CannTrust also began listing its common shares on the NYSE, which increased liquidity and demand for CannTrust stock. These actions and statements to investors pushed the price of CannTrust stock to near record highs. Then, in May 2019, defendants conducted a public offering of CannTrust common shares (the "Secondary Offering"). In the Secondary Offering, defendants sold over 36 million CannTrust shares at $5.50 per share, for nearly $200 million in gross proceeds.

But as demand started to outpace supply, unbeknownst to investors, CannTrust had cut corners, lied to regulators, and illegally grown cannabis at its facilities in order to continue to show revenue and sales growth. Then, on July 8, 2019, the Company issued a press release revealing that Health Canada had discovered during an audit of the Company that it had been growing cannabis in five unlicensed rooms at the Niagara Facility over a six-month period and had provided misleading information to the regulator. The Company also announced that Health Canada had placed a hold on a significant quantity of CannTrust's cannabis inventory, and that

5

CannTrust had placed a voluntary hold on additional inventory as Health Canada investigated just how far CannTrust's wrongdoing extended.

On this news, the price of CannTrust common stock dropped from a close of $4.94 per share on Friday July 5, 2019 to a close of $3.83 per share on Monday July 8, 2019, a decline of more than 22%.

Two days later, a whistleblower who said he worked at the Niagara Facility alleged that CannTrust had created fake walls to conceal from regulators the fact that the Company was growing cannabis in unlicensed rooms. CannTrust now faces the possibility of not only fines and criminal charges, but stiffer penalties, up to and including the loss of its licenses to operate, which would pose an existential threat the Company.

Then, on July 12, 2019, CannTrust announced that it had implemented a voluntary and indefinite hold on all of its products pending an internal review and the results of the investigation by Health Canada.

On this news, the price of CannTrust common stock dropped from a close of $3.11 per share on July 11, 2019 to a close of $2.58 per share on July 12, 2019, a decline of more than 17%. This represented a greater than 50% decline from the price at which defendants had sold $200 million worth of CannTrust stock to the investing public only two months before in the Secondary Offering.

## ARGUMENT

### I.   THE ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252

F.R.D. 188, 190 (S.D.N.Y. 2008) ("[T]he Court shall not make the determination of the most adequate plaintiff until after the decision on the motion to consolidate is rendered.") (quotation marks and citation omitted).

Consolidation pursuant to Rule 42(a) is appropriate when actions "involve common questions of law or fact." *Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at *3 (S.D.N.Y. Sept. 17, 2018) (citation omitted). "A determination on the issue of consolidation is left to the sound discretion of the Court." *Albert Fadem Trust v. Citigroup Inc.*, 239 F. Supp. 2d 344, 347 (S.D.N.Y. 2002) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990); *Zicklin v. Breuer*, 534 F. Supp. 745, 749 (S.D.N.Y. 1982)). "'[C]onsolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports.'" *Lowinger v. Global Cash Access Holdings, Inc.*, No. 08 Cv. 3516 (SWK), 2008 WL 2566558, at *1 (S.D.N.Y. June 26, 2008) (citing *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006)). "[S]light differences in the facts alleged and legal issues raised do not preclude consolidation." *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *3 (S.D.N.Y. July 8, 2008).

The Actions are well-suited for consolidation. The complaint filed in each of the Actions alleges that Defendants violated the Exchange Act. Each action sets forth identical allegations relating to similar parties, transactions, and events—primarily Defendants' materially false and misleading statements and omissions concerning the purported regulatory compliance of the Company's cannabis growing operation. Because consolidation will promote judicial efficiency and conserve the resources of the Class and all other parties, consolidation is appropriate

7

pursuant to Rule 42(a).  Accordingly, Granite Point respectfully requests that the Court consolidate the Actions, and any other subsequently-filed action.

## II.  GRANITE POINT SHOULD BE APPOINTED LEAD PLAINTIFF

Granite Point respectfully submits that it should be appointed Lead Plaintiff because it filed the instant motion in a timely manner, has a substantial financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23.

### A.  The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff).  First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as Lead Plaintiff and appoint the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(i).  In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (1) filed a complaint or timely filed a motion to serve as Lead Plaintiff; (2) has the largest financial interest in the relief sought

by the class; and (3) who otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *4 (S.D.N.Y. Mar. 13, 2018).  Under the framework established by the PSLRA, Granite Point is the most adequate plaintiff and should be appointed Lead Plaintiff.

### B. Granite Point Is the "Most Adequate Plaintiff"

#### 1. Granite Point's Motion Is Timely

Granite Point filed this motion to serve as Lead Plaintiff in a timely manner.  Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the above-captioned action caused notice regarding the pending nature of this case to be published on *BusinessWire,* a widely-circulated, national, business-oriented news wire service, on July 10, 2019.  *See* Notice, McConville Decl., Ex. C.  Thus, pursuant to the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty days after publication of the notice, *i.e.*, on or before September 9, 2019.  Granite Point filed its motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA.

#### 2. Granite Point Has a Substantial Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii); *Kemp v. Universal Am. Fin. Corp.*, No. 05 Civ. 9883 (JFK), 2006 WL 1190691, at *2 (S.D.N.Y. May 1, 2006).

Granite Point incurred a substantial loss of **$2,135,246** on its transactions in CannTrust securities on a LIFO basis during the Class Period.  *See* Loss Analysis, McConville Decl., Ex. B; *see also Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 WL 6705045, at *2 (S.D.N.Y. Dec. 19, 2013) (finding the movant with the largest financial interest to be the presumptive "most adequate plaintiff").  Accordingly, Granite Point has a substantial financial interest as a qualified movant seeking Lead Plaintiff status, and is the presumptive "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759 (LANK), 2016 WL 462479, at *1 (S.D.N.Y. Feb. 1, 2016) (same).

### 3. Granite Point Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Third Ave. Mgmt. LLC Sec. Litig.,* No. 16-cv-02758 (PKC), 2016 WL 2986235, at *1 (S.D.N.Y. May 13, 2016).  At the lead plaintiff selection stage all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Kux-Kardos v. VimpelCom, Ltd.,* 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016); *see also Faig*, 2013 WL 6705045, at *3 ("[A]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.") (citation omitted).  Here, Granite Point unquestionably satisfies both requirements.

#### a. Granite Point's Claims Are Typical of Those of the Class

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and

plaintiff's claims are based on the same legal theory.  *See Faig*, 2013 WL 6705045, at *3.  Rule

23 does not require the lead plaintiff to be identically situated with all class members.  *Id.*

Granite Point's claims are typical of the claims asserted by the proposed Class.  Like all

members of the Class, Granite Point alleges that Defendants made material misstatements and

omissions regarding CannTrust's regulatory compliance in violation of the federal securities

laws.  Granite Point, as did all of the members of the Class, purchased CannTrust securities in

reliance on Defendants' alleged misstatements and omissions and was damaged thereby.

Because Granite Point's claims arise from the same course of events as do the claims of other

class members, the typicality requirement is satisfied.  *See Ophthotech*, 2018 WL 1307285, at

*6.

**b.      Granite Point Satisfies the Adequacy Requirement of
Rule 23**

Granite Point likewise satisfies the adequacy requirement of Rule 23.  The adequacy of

representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes

that it "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

Courts in this District assess a movant's adequacy based on: "(1) the size, available resources

and experience of the proposed lead plaintiff; (2) the qualifications of the proposed class counsel;

and (3) any potential conflicts or antagonisms rising among purported class members."  *In re*

*Elan Corp. Sec. Litig*., No. 1:08-cv-08761-AKH, 2009 WL 1321167, at *2 (S.D.N.Y. May 11,

2009) (citing *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig*., No. 08 MDL No.

1963(RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009)).

Granite Point will fairly and adequately represent the interests of the proposed Class.

Granite Point unquestionably has resources sufficient to pursue the Action to a successful

conclusion.  Granite Point has also retained counsel highly experienced in prosecuting securities

11

class actions vigorously and efficiently, *see infra* Section III, and timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v).

Furthermore, no antagonism exists between Granite Point's interests and those of the absent Class members; rather, the interests of Granite Point and Class members are squarely aligned. Granite Point suffered substantial losses due to Defendants' alleged misconduct and, therefore, has a sufficient interest in the outcome of this case to ensure vigorous prosecution of this action.

Finally, there is no proof that Granite Point is "subject to unique defenses that render such plaintiff incapable of representing the class," because no such proof exists. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, Granite Point satisfies the adequacy requirement.

### 4.    Granite Point Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

In addition to satisfying the requirements of Rule 23, Granite Point—a large, sophisticated institutional investor—is precisely the type of investor Congress envisioned, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34. To this end, many courts, including courts in this District, have

12

recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions.  *See, e.g., Reitan v. China Mobile Games & Entm't Grp., Ltd. (China Mobile)*, 68 F. Supp. 3d 390, 396 (S.D.N.Y. 2014) (collecting cases and recognizing that "many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs"); *In re KIT Dig., Inc. Sec. Litig.*, 293 F.R.D. 441, 446 (S.D.N.Y. 2013) (noting the "statutory preference for institutional lead plaintiffs"); *Ophthotech*, 2018 WL 1307285, at *6 (noting that "courts have a preference for appointing institutional investors as lead plaintiffs").

Granite Point is the paradigmatic lead plaintiff as contemplated by the PSLRA.  Granite Point's understanding of the responsibilities of a lead plaintiff is based, in part, on its experience serving as lead plaintiff in securities class actions and its demonstrated history of securing recoveries on behalf of defrauded investors, which will benefit the Class.  *See In re Prothena Corp. plc Sec. Litig.*, No. 18-cv-06435 (S.D.N.Y.) ($15.75 million recovery with Labaton Sucharow serving as co-lead counsel).

Accordingly, Granite Point has the sophistication and resources necessary to effectively litigate this matter and supervise Class counsel.

## III.     GRANITE POINT'S SELECTION OF LEAD COUNSEL MERITS APPROVAL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention").  Consistent with Congressional intent, a court should not disturb the lead plaintiff's

13

choice of counsel unless it is "necessary to protect the interests of the plaintiff class." *See* H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, Granite Point has selected the law firm of Labaton Sucharow to represent the Class. Labaton Sucharow has excelled as lead counsel in numerous actions on behalf of defrauded investors, including noteworthy cases in this District.  For example, Labaton Sucharow served as lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-08141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors; and secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-01963 (S.D.N.Y.), in which the Firm served as co-lead counsel. Labaton Sucharow also served as co-lead counsel in *In re Satyam Computer Services Ltd. Securities Litigation*, No. 09-md-02027 (S.D.N.Y.), through which it helped recover from the company and its auditors a total of $150.5 million for class members, and secured a $170 million recovery as co-lead counsel in *In re Fannie Mae 2008 Securities Litigation*, No. 08-cv-07831 (S.D.N.Y.).   Labaton Sucharow presently serves as lead or co-lead counsel in several significant investor class actions.   *See* Labaton Sucharow Firm Resume, McConville Decl., Ex. D.

In light of the foregoing, the Court should approve Granite Point's selection of Labaton Sucharow as Lead Counsel for the Class.  The Court can be assured that, by approving Granite Point's choice of counsel, the Class will receive the highest caliber of representation.

## CONCLUSION

For the foregoing reasons, Granite Point respectfully requests that the Court grant its motion and enter an Order: (i) consolidating the above-captioned actions; (ii) appointing Granite Point as Lead Plaintiff; (iii) approving Granite Point's selection of Labaton Sucharow as Lead

Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

DATED:  September 9, 2019

Respectfully submitted,

*/s/ Francis P. McConville*

Christopher J. Keller
Eric J. Belfi
David J. Schwartz
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
dschwartz@labaton.com
fmcconville@labaton.com

*Counsel for Lead Plaintiff Movant Granite Point Capital Master Fund, LP and Granite Point Capital Scorpion Focused Ideas Fund, and Proposed Lead Counsel for the Class*

15