**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHIN HUANG, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-06396-JPO |
| Plaintiff, | |
| vs. | |
| CANNTRUST HOLDINGS, INC., PETER ACETO and GREG GUYATT, | |
| Defendants. | |
| GUSTAVO ALVARADO, on behalf of himself and all others similarly situated, | Case No. 1:19-cv-06438-JPO |
| Plaintiff, | |
| vs. | |
| CANNTRUST HOLDINGS, INC., PETER ACETO, GREG GUYATT, and IAN ABRAMOWITZ, | |
| Defendants. | |
| RONALD E. JONES, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-06883-JPO |
| Plaintiff, | |
| vs. | |
| CANNTRUST HOLDINGS, INC., PETER ACETO and GREG GUYATT, | |
| Defendants. | |
| SCOTT JUSTISS, individually and on behalf of all others similarly situated, | Case No. 1:19-cv-7164-JPO |

Plaintiff,

vs.

CANNTRUST HOLDINGS, INC., PETER
ACETO and GREG GUYATT,

Defendants.

**RESPONSE IN SUPPORT OF MOTION OF ERIC GLASSON, MIKE HOPSON,
JOSHUA SMITH, AND RAY BRUBAKER FOR
APPOINTMENT AS LEAD PLAINTIFFS, APPROVAL OF THEIR
SELECTION OF LEAD COUNSEL, AND CONSOLIDATION OF RELATED ACTION**

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 1

II.   ARGUMENT.................................................................................................. 2

    A.    The Presumption That the Movant with the Highest Net Loss Constitutes
        the Most Adequate Lead Plaintiff Is Rebutted......................................................... 2

        1.    Granite Point Funds Will Not Fairly or Adequately Protect the
            Interests of the Class. ..................................................................... 3

            a.    Granite Point Funds' Status as a Sophisticated Short Seller
                Exposes It to Unique Defenses. ......................................................... 3

            b.    The Granite Point Funds' PSLRA Certification Is
                Deficient........................................................................................ 6

        2.    The Kobzar Plaintiffs Are Not Cohesive and Are Therefore Poorly
            Suited to be Lead Plaintiff. .......................................................... 7

        3.    A Group of Individuals, Not a Lone Investor Like Silva, Is
            Optimally Positioned to Lead This Case. .................................................. 9

III.  CONCLUSION.............................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*
  222 F.3d 52 (2d Cir. 2000)...................................................................................... 5

*Beck v. Maximus, Inc.*
  457 F.3d 291 (3d Cir. 2006)..................................................................................... 3

*Collier v. Aksys Ltd.*
  2005 WL 1949868 (D. Conn. Aug. 15, 2005)
  *aff'd*, 179 F. App'x 770 (2d Cir. 2006)................................................................ 4, 5

*D'Hondt v. Digi Intern. Inc.*
  1997 WL 405668 (D. Minn. 1997) .......................................................................... 9

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
  903 F.2d 176 (2d Cir. 1990)..................................................................................... 3

*Gordon v. Sonar Capital Mgt. LLC*
  2012 WL 1193844 (S.D.N.Y. 2012)........................................................................ 9

*In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*
  712 F. Supp. 994 (D. Mass. 1989) ........................................................................ 10

*In re Bally Total Fitness Sec. Litig.*
  2005 WL 627960 (N.D. Ill. Mar. 15, 2005)............................................................. 2

*In re Cardinal Health, Inc. Sec. Litig.*
  226 F.R.D. 298 (S.D. Ohio 2005) ............................................................................ 4

*In re Critical Path, Inc.*
  156 F. Supp. 2d 1102 (N.D. Cal. 2001) ................................................................... 4

*In re Diamond Foods, Inc.*
  295 F.R.D. 240 (N.D. Cal. 2013)............................................................................. 4

*In re Enzymotec Ltd. Sec. Litig.*
  2015 WL 918535 (D.N.J. Mar. 3, 2015)................................................................... 6

*In re Omnicom Grp., Inc. Sec. Litig.*
  2007 WL 1280640 (S.D.N.Y. Apr. 30, 2007).......................................................... 5

*In re Oxford Health Plans, Inc. Sec. Litig.*
  182 F.R.D. 42 (S.D.N.Y. 1998) .......................................................................... 9, 10

ii

*In re Star Gas Sec. Litig.*
   2005 WL 818617 (D. Conn. Apr. 8, 2005) ................................................................. 8

*In re Telxon Corp. Sec. Litig.*
   67 F. Supp. 2d 803 (N.D. Ohio 1999) ...................................................................... 7

*J.H. Cohn & Co. v. Am. Appraisal Assocs.*
   628 F.2d 994 (7th Cir. 1980) .................................................................................... 3

*Kamerman v. Ockap Corp.*
   112 F.R.D. 195 (S.D.N.Y. 1986) ............................................................................. 5

*Metro Servs. Inc. v. Wiggins*
   158 F.3d 162 (2d Cir. 1998) ..................................................................................... 2

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*
   229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................................... 10

*Singer v. Nicor, Inc.*
   2002 WL 31356419 (N.D. Ill. 2002) ....................................................................... 7

*Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*
   2012 WL 3638629 (D.N.J. Aug. 22, 2012) ........................................................ 3, 6, 7

*Steginsky v. Xcelera, Inc.*
   2015 WL 1036985 (D. Conn. Mar. 10, 2015)
   *aff'd*, 658 F. App'x 5 (2d Cir. 2016) ....................................................................... 5

*Weisz v. Calpine Corp.*
   2002 WL 32818827 (N.D. Cal. 2002) ...................................................................... 4

*Weltz v. Lee*
   199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................. 7

*Wilamowsky v. Take-Two Interactive Software*, Inc.
   818 F. Supp. 2d 744 (S.D.N.Y. 2011) ...................................................................... 6

**Statutes**

15 U.S.C. § 78u-4 ......................................................................................... 2, 6

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................. 2

**Other Authorities**

*Cognitive Loafing, Social Conformity, and Judicial Review of Agency Rulemaking*
    87 CORNELL L. REV. 486 (2002) ............................................................................................. 10

*Small-Group Decision Making and Complex Information Tasks*
    (Fed. Judicial Ctr. 1981) ...................................................................................................... 10

## I.    <u>INTRODUCTION</u>

The Glasson Plaintiffs—Eric Glasson, Mike Hopson, Joshua Smith, and Ray Brubaker— together lost approximately $470,000 as a result of CannTrust's alleged securities fraud. *See* Dkt. No. 32-1 (LIFO method). Three other lead-plaintiff applicants report greater losses: (1) Granite Point Capital Master Fund LP and Granite Point Capital Scorpion Focused Ideas Fund ("Granite Point Funds"), *see* Dkt. No. 44 ($2,135,246.00); (2) Jose Silva, *see* Dkt. No. 23 ($1,057,999.92); and (3) Igor Kobzar, Lyss Murphey, Robert Patraulea, and Ming Li (the "Kobzar Plaintiffs"), *see* Dkt. No. 50 ($676,343).

The Glasson Plaintiffs respectfully submit that they are best positioned to represent the investor Class for the following reasons:

- **Granite Point.** The Granite Point Funds—sophisticated hedge funds—executed large short sales of CannTrust stock during the class period. Their investment strategy subjects these funds to unique knowledge defenses and renders them inadequate to represent the Class, which mostly consists of ordinary individual investors.[1] Additionally, the funds' declarant failed to establish his authority to act for the funds in this litigation.

- **Kobzar Group.** The Kobzar Plaintiffs include investors in locations ranging from Siberia to the Cayman Islands. They did not hold a joint conference call with all members of their group before filing their motion. *See* Dkt. No. 53-5. The Glasson Plaintiffs, in contrast, are a cohesive group of individuals who live within one time zone of each other and have communicated effectively about the prosecution and management of this case.

---

[1] Documents showing the ownership breakdown of CannTrust common shares, and the Granite Point Funds' status as a sophisticated short seller, comprise Exhibit A and B to the Supplemental Declaration of Dena C. Sharp, filed herewith ("Suppl. Sharp Decl.").

- **Silva.** The Glasson Plaintiffs also are superior to Silva because a group of individual investors, as opposed to a single individual, is best situated to make decisions on behalf of the Class and direct lead counsel.

Plaintiffs respectfully ask the Court to appoint them as lead plaintiff because, under the circumstances presented, they are best equipped to prosecute these claims responsibly and effectively for the benefit of the Class.

## II.    ARGUMENT

### A.    The Presumption That the Movant with the Highest Net Loss Constitutes the Most Adequate Lead Plaintiff Is Rebutted.

Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), this Court is required to appoint as Lead Plaintiff the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA establishes a presumption that the "most adequate plaintiff" is the "person or group of persons" that has the "largest financial interest in the relief sought by the class" and that "satisfies the requirement of Rule 23 of Federal Rules of Civil Procedure." *Id*. The presumption is rebuttable. *Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 164 (2d Cir. 1998).

The presumption may be rebutted if the movant with the most losses (1) will not fairly and adequately protect the interests of the class *or* (2) is subject to unique defenses that render it incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); Fed. R. Civ. P. 23(a). To overcome the presumption, a movant need only identify potential risks tied to one or both of the rebuttal factors. *See, e.g.*, *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005). There is accordingly no need to "prove a defense"—only to "show a degree of likelihood that a unique defense might play a significant

2

role at trial." *Steamfitters Local 449 Pension Fund v. Cent. European Distrib. Corp.*, Nos. 11-6247 *et al.*, 2012 WL 3638629, at \*10 (D.N.J. Aug. 22, 2012).

The presumption is rebutted here for the Granite Point Funds, the Kobzar Plaintiffs, and Silva.

> **1.    Granite Point Funds Will Not Fairly or Adequately Protect the Interests of the Class.**

Unique defenses bear on the typicality and adequacy of a proposed class representative. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("Regardless of whether the issue is framed in terms of the typicality of the representative's claims . . . or the adequacy of its representation . . . there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *J.H. Cohn & Co. v. Am. Appraisal Assocs.*, 628 F.2d 994, 999 (7th Cir. 1980) ("[T]he presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representative.").

Courts have thus expressed concern about "the challenge presented by a defense unique to a class representative—the representative's interests might not be aligned with those of the class, and the representative might devote time and effort to the defense at the expense of issues that are common and controlling[.]" *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006). Therefore, courts will not appoint a class representative who "is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging*, 903 F.2d at 180.

> **a.    Granite Point Funds' Status as a Sophisticated Short Seller Exposes It to Unique Defenses.**

Because Granite Point Funds took substantial short positions on CannTrust stock during the class period, they will be subject to unique defenses. As a result, they are not qualified to be

3

lead plaintiff. *See, e.g.*, *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 304 (S.D. Ohio 2005) (finding the PSLRA presumption rebutted when a movant's trading patterns exposed it to the unique defense that it did not rely on the defendants' alleged misrepresentations when purchasing the stock).

Short selling is an "extremely risky securities trading practice." *Collier v. Aksys Ltd.*, No. 3:04CV1232(MRK), 2005 WL 1949868, at *2 (D. Conn. Aug. 15, 2005), *aff'd*, 179 F. App'x 770 (2d Cir. 2006). Short sellers "sell stock that they borrow from brokers but do not own, incurring the obligation to 'cover' their sales in the future. Such traders purchase shares with the expectation that the share price will decline." *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 258 (N.D. Cal. 2013) (excluding short sellers from the class).

Many courts have recognized that "[i]t is a poor choice to appoint a class representative who engaged in a trading practice premised on the belief the stock would fall." *In re Critical Path, Inc.*, 156 F. Supp. 2d 1102, 1109-11 (N.D. Cal. 2001) (history of short selling stock disqualified investor from appointment as lead plaintiff because "[s]hort sales raise the question of whether the seller was actually relying on the market price, and the class is not served by its representative coming under such scrutiny"); *see also Weisz v. Calpine Corp.*, No. 4:02-CV-1200, 2002 WL 32818827, at *8 (N.D. Cal. 2002) ("Hickam is disqualified from serving as a lead plaintiff by virtue of the fact that he admittedly sold Calpine stock 'short'").

The Granite Point Funds—Granite Point Capital Master Fund, LP, and Granite Point Capital Scorpion Focused Ideas Fund—are sophisticated hedge funds that employ an investment strategy of high-frequency long/short trading. According to its Firm Brochure filed with the SEC, Granite Point Funds' parent company, Granite Point Capital Management, L.P., is an investment adviser whose investment objective is "to maximize returns while seeking

4

preservation of capital by *pursuing a long/short strategy* focused on equities." Suppl. Sharp Decl., Ex. B at 4 (emphasis added).

With respect to CannTrust stock, Granite Point Funds purchased a total of 200,000 shares on a short position and gained $455,898 upon covering that purchase. Dkt. No. 45-1 at 4. In contrast to Granite Point Funds, the Glasson Plaintiffs and most other CannTrust investors bet that the share price would rise, not fall. Granite Point Funds is vulnerable to knowledge-based defenses that are unique, and do not apply to individual investors, because of the funds' status as sophisticated short sellers. *See, e.g.*, *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197–98 (S.D.N.Y. 1986) (denying class certification where the sole proffered class representative did not rely on the market but instead learned of misleading statements on his own); *Steginsky v. Xcelera, Inc.*, No. 3:12-CV-188 SRU, 2015 WL 1036985, at \*5 (D. Conn. Mar. 10, 2015), *aff'd*, 658 F. App'x 5 (2d Cir. 2016) (finding atypical a putative class representative whose "apparent lack of reliance will subject her to unique defenses that will 'unacceptably detract from the focus of the litigation to the detriment of absent class members.'") (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 CIV. 4483 (RCC), 2007 WL 1280640, at \*4 (S.D.N.Y. Apr. 30, 2007) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).

The evidence required to prove loss causation for Granite Point Funds may also differ from that required to prove that element for the ordinary CannTrust investors: "Assessing loss causation in a short selling setting is further complicated because the standard model of a securities fraud class action based on misrepresentations or omissions is inverted." *Collier*, 2005 WL 1949868, at \*11. "Thus, the actionable misstatement in the short-selling context would conceal positive rather than negative information about the company—such as the pendency of a

5

favorable merger—and would depress rather than inflate stock prices." *Wilamowsky v. Take-Two Interactive Software*, Inc., 818 F. Supp. 2d 744, 753 (S.D.N.Y. 2011).

In short, the Court should not appoint Granite Point Funds to represent a Class of investors who are primarily individuals[2] without unique knowledge or short sales. The evidence of record demonstrates that both rebuttal factors are satisfied as to Granite Point.

### b.      The Granite Point Funds' PSLRA Certification Is Deficient.

The PSLRA requires a lead plaintiff movant to submit a sworn certification to assure the Court that the plaintiff, among other things, is interested and able to serve as lead plaintiff, is willing to act as a representative party, and has made transactions in relevant securities during the class period. *Steamfitters*, 2012 WL 3638629, at \*12 (citing 15 U.S.C. § 78u-4(a)(2)). Given the importance of this certification to the statutory scheme, courts have rejected lead plaintiff applications because the relevant PSLRA certification did not establish that its signatory had the requisite authority. *See, e.g.*, *In re Enzymotec Ltd. Sec. Litig.*, No. 14-5556, 2015 WL 918535, at \*2-4 (D.N.J. Mar. 3, 2015) (PSLRA presumption rebutted where an institutional movant's certification provided no indication that the signer was authorized to sign on the company's behalf).

In *Steamfitters*, a group of nine related investment entities sought appointment as lead plaintiff. 2012 WL 3638629, at \*2-3. One entity, PCM, was the investment manager for four different funds, each of which had a wholly-owned subsidiary. *Id.* at \*3. The managing director of PCM attempted to execute a PSLRA certification for all the subsidiaries, which were the actual owners of the defendant's stock. *Id.* The court refused to appoint the subsidiaries as lead

---

[2] Only about one in five CannTrust common shares is owned by institutional investors. Suppl. Sharp Decl., Ex. A. Unsurprisingly, the Granite Point Funds are the only institutional movant out of twelve candidates here.

plaintiff, finding that they would be subject to unique defenses because the certification did "not establish that the Subsidiaries alone are willing to serve as representative parties." *Id*. at \*12.

Similarly here, Granite Point Funds' declarant C. David Bushley, the COO of "Granite Point Capital," merely states in conclusory fashion that he is "personally authorized to certify on behalf of" the funds proposing to serve as lead plaintiff. Dkt. No. 45-1 at 2. Bushley does not explain (1) what Granite Point Capital is, (2) whether or how it may be related to the two funds at issue, (3) whether each fund is a subsidiary of Granite Point Capital, and (4) whether each fund purchased the CannTrust stock with its own or outside assets. The certification thus does not establish Bushley's authority to bind or act on behalf of the funds. Nor can Bushley cure the deficiency with a tardy supplement. *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 819 (N.D. Ohio 1999) (noting that the PSLRA calls for a single certification and that "supplementation after the expiration of the sixty (60) day period would not only be inconsistent with the language and purposes of the PSLRA, but would effectively nullify the time limits expressly provided therein."); *Singer v. Nicor, Inc.*, No. 02 C 5168 *et al.*, 2002 WL 31356419, at \*4 (N.D. Ill. 2002) (disallowing amended PSLRA certifications as untimely).

Granite Point Funds' defective certification creates a "substantial likelihood that [they] would be subject to a unique defense regarding invalid or lack of certification because the validity of their purported certification is fairly debatable." *Steamfitters*, 2012 WL 3638629, at \*12. For this reason alone, Granite Point Funds should not be appointed.

### 2. The Kobzar Plaintiffs Are Not Cohesive and Are Therefore Poorly Suited to be Lead Plaintiff.

The PSLRA expressly allows a group of investors to be appointed as lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(i), and such a group should show that it will function as a cohesive and independent unit. *See Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001). Courts in this Circuit

have endorsed "allowing a group of unrelated investors to serve as lead plaintiffs when it would be most beneficial to the class under the circumstances of a given case[.]" *In re Star Gas Sec. Litig.*, No. 3:04CV1766 (JBA), 2005 WL 818617, at \*5 (D. Conn. Apr. 8, 2005) (appointing co-lead plaintiffs, including movants who had smaller losses than the presumptive lead plaintiff).

While the Glasson Plaintiffs appear to have collectively lost about $200,000 less than the Kobzar Plaintiffs, that difference does not create any lesser motivation to recover the substantial losses. Neither does it override the other indicia that the Glasson Plaintiffs will best represent the class of CannTrust investors. As noted in their Joint Declaration, before seeking appointment, all Glasson Plaintiffs together discussed the merits of this litigation and their common goals of returning the investor losses and ensuring that the Class will benefit from their active involvement and supervision of counsel. Dkt. No. 20, Joint Decl., ¶ 7. The Glasson Plaintiffs "also agreed to communicate from time to time, including outside the presence of our counsel, to discuss the progress and status of the litigation and make any necessary strategic decisions." *Id*. ¶ 8. The record demonstrates that these Plaintiffs, "based on their active participation and their close questioning of and interaction with counsel, form a cohesive and collegial group." Dkt. No. 32, Sharp Decl., ¶ 7.

The Glasson Plaintiffs are U.S. citizens who reside in adjacent time zones. Suppl. Sharp Decl., ¶ 4. By contrast, the Kobzar Plaintiffs reside in Siberia, the Cayman Islands, and the U.S. Pacific time zone. Their geographic dispersion and the vast time difference inhibit their ability to communicate as a cohesive group. Not all of the Kobzar Plaintiffs, for example, participated in their conference call convened by their counsel—"Robert R. Patraulea [and] Ming Li were not able to attend . . . ." Dkt. No. 53-5, ¶ 8. Moreover, while the Kobzar Plaintiffs refer in passing to a "decision making structure," their declaration provides no detail on any such structure. *Id*. ¶ 11.

The Glasson Plaintiffs are more cohesive than the Kozbar Plaintiffs and better equipped to lead the case prosecution.

### 3.    A Group of Individuals, Not a Lone Investor Like Silva, Is Optimally Positioned to Lead This Case.

Further, as between a group of individual investors and a single individual investor like Silva, *see* Dkt. No. 23, a group is in a superior position to represent this Class. The advantages of a group of individuals include the pooling of knowledge and experience, as well as representation of a greater cross-section of the Class. *See Gordon v. Sonar Capital Mgt. LLC*, No. 11 Civ. 9665 (JSR), 2012 WL 1193844, at *2 (S.D.N.Y. 2012) (group's combined expertise gave its members a "decided advantage in evaluating the pluses and minuses of various approaches to litigating the case," and challenges to individual plaintiffs' adequacy would be averted by their joint representation). Thus, representation by a group helps to ensure that "the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (appointing a group of three individuals to serve as lead plaintiff with two institutional investors, one with greater and one with smaller losses).

Although a single institution may be preferable to a group of institutions under the PSLRA lead-plaintiff inquiry, when it comes to individuals the concerns of the PSLRA favor appointment of a group. A single individual may be idiosyncratic or susceptible to allowing his or her counsel to make key case decisions. By comparison, individuals in a group are more likely to assert themselves, asking questions of counsel and working together to ensure that strategic decisions are in their—and the class members'—best interest. *See D'Hondt v. Digi Intern. Inc.*, Nos. CIV 97-5 JRT RLE *et al.*, 1997 WL 405668, at *3 (D. Minn. 1997) (noting that groups of

9

plaintiffs can "more effectively withstand any supposed effort by the class counsel to seize control of the class claims"); *In re Oxford*, 182 F.R.D. at 49 ("[I]n actuality a greater number of plaintiffs allows them, as a group, to wield more control over counsel.").

In general, too, small groups make better decisions than single individuals because more minds are at work and the ensuing dialogue can serve to test ideas or strategies and develop sensible solutions. "Research on group decision making indicates that groups tend to outperform individuals in making many decisions, including solving problems that require analysis and evaluation." Mark Seidenfeld, *Cognitive Loafing, Social Conformity, and Judicial Review of Agency Rulemaking*, 87 CORNELL L. REV. 486, 530 (2002); *see also In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 994, 1007 n.24 (D. Mass. 1989) ("Most studies show groups . . . to make more accurate decisions and judgments) (quoting M. Saks, *Small-Group Decision Making and Complex Information Tasks* (Fed. Judicial Ctr. 1981). Appointment of the Glasson Plaintiffs would therefore "provide the proposed class with 'the substantial benefits of joint decision-making'" in the conduct of this litigation. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 420 (S.D.N.Y. 2004) (quoting *In re Oxford*, 182 F.R.D. at 45).

The Glasson Plaintiffs have hired well-regarded counsel and are committed to managing the pursuit of these claims in a responsible and efficient manner. *See* Joint Decl., ¶¶ 6-10. The Court can and should exercise its discretion to afford them that opportunity.

III.   **CONCLUSION**

For the reasons set forth above and in their motion (Dkt. Nos. 17, 19–20, 32), the Glasson Plaintiffs respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their motion.

10

Dated: September 23, 2019                    Respectfully submitted,


                                             By:     /s/ *Jessica J. Sleater*

                                             **ANDERSEN SLEATER SIANNI LLC**
                                             Jessica J. Sleater
                                             1250 Broadway, 27th Floor
                                             New York, NY 10001
                                             Telephone: (646) 599-9848
                                             jessica@andersensleater.com

                                             Ralph N. Sianni (admitted in NY)
                                             2 Mill Road, Suite 202
                                             Wilmington, DE 19806
                                             Tel: (302) 510-8528
                                             rsianni@andersensleater.com

                                             **GIRARD SHARP LLP**
                                             Dena C. Sharp (*pro hac* application forthcoming)
                                             Adam E. Polk (*pro hac* application forthcoming)
                                             711 Third Ave, 20th Floor
                                             New York, New York 10017
                                             Telephone: (212)798-0136
                                             Facsimile:  (212) 557-2952
                                             dsharp@girardsharp.com
                                             apolk@girardsharp.com

                                             601 California Street, 14th Floor
                                             San Francisco, CA 94108
                                             Telephone: (415) 981-4800
                                             Facsimile:  (415) 981-4846

                                             **GIBBS LAW GROUP LLP**
                                             Eric H. Gibbs (*pro hac* application forthcoming)
                                             David Stein (*pro hac* application forthcoming)
                                             505 14th Street, Suite 110
                                             Oakland, CA 94612
                                             Telephone: (510) 350-9700
                                             Facsimile:  (415) 350-9701
                                             ehg@classlawgroup.com
                                             ds@classlawgroup.com

                                             *Attorneys for Plaintiffs Eric Glasson, Mike Hopson,*
                                             *Joshua Smith, and Ray Brubaker*


                                  11

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2019, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ *Jessica J. Sleater*


4