**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHUN HUANG, Individually and on Behalf of and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANNTRUST HOLDINGS INC., PETER ACETO, and GREG GUYATT,<br><br>Defendants. | Civil Action No.: 1:19-cv-06396-JPO<br><br>CLASS ACTION<br><br>Hon. J. Paul Oetken |
| GUSTAVO ALVARADO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANNTRUST HOLDINGS INC., PETER ACETO, GREG GUYATT, and IAN ABRAMOWITZ,<br>Defendants. | Civil Action No.: 1:19-cv-06438-JPO<br><br>CLASS ACTION<br><br>Hon. J. Paul Oetken |
| RONALD E. JONES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANNTRUST HOLDINGS INC., PETER ACETO and GREG GUYATT,<br><br>Defendants. | Civil Action No.: 1:19-cv-06883-JPO<br><br>CLASS ACTION<br><br>Hon. J. Paul Oetken |

*[Caption continued on following page]*

| | |
|---|---|
| SCOTT JUSTISS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CANNTRUST HOLDINGS INC., PETER ACETO, and GREG GUYATT,<br><br>Defendants. | Civil Action No.: 1:19-cv-07164-JPO<br><br>CLASS ACTION<br><br>Hon. J. Paul Oetken |

**JOSE A SILVA'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**

# **TABLE OF CONTENTS**

ARGUMENT ................................................................................................................................... 2

   I.      If Granite Point Is Found Inadequate or Atypical, Then Mr. Silva Must Be
         Appointed As Lead Plaintiff ........................................................................................... 2

      A.     Mr. Silva Complied with the PSLRA Certification Requirements and Has
             Demonstrated He Satisfies Rule 23 ....................................................................... 2

      B.     The Glasson Plaintiffs' Argument Against Mr. Silva Is Meritless ......................... 4

CONCLUSION ............................................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**

*Chahal v. Credit Suisee Grp. AG*,
No. 18CIV2268ATSN, 2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018)....................................5

*Chandler v. Ulta Beauty, Inc.*,
No. 18-CV-1577, 2018 WL 3141763 (N.D. Ill. June 26, 2018)................................................3

*D'Hondt v. Digi Intern. Inc.*,
Nos. CIV 97-5 JRT RLE *et al.*, 1997 WL 405668 (D. Minn. 1997) ........................................6

*Desilvio v. Lion Biotech., Inc.*,
No. 17-cv-2086 (N.D. Cal. July 7, 2017).................................................................................2

*Foley v. Transocean Ltd., et al.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ..............................................................................................3

*Goldstein v. Puda Coal, Inc.*,
827 F. Supp. 2d 348 (S.D.N.Y. 2011).......................................................................................7

*Gordon v. Sonar Capital Mgmt. LLC*,
No. 11 CIV. 9665 JSR, 2012 WL 1193844 (S.D.N.Y. Apr. 9, 2012) ......................................6

*In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*,
712 F. Supp. 994 (D. Mass. 1989) ............................................................................................7

*In re Aqua Metals Sec. Litig.*,
No. 17-CV-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018)..................................3

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
No. 17CV4846WFKPK (E.D.N.Y. Dec. 15, 2017) ..................................................................4

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ............................................................................................ 1, 4, 5

*In re Gemstar-Tv Guide Int'l Sec. Litig.*,
209 F.R.D. 447 (C.D. Cal. 2002)..............................................................................................2

*In re Kit Dig., Inc. Sec. Litig.*,
293 F.R.D. 441, 443 (S.D.N.Y. 2013) ......................................................................................1

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................................6

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ..........................................................................................3, 4

*Kapur v. Usana Health Scis., Inc.*,
    No. 2:07 CV177DAK, 2007 WL 3046664 (D. Utah Oct. 17, 2007) ....................................... 2

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................................ 4, 5

*Marsch v. Feng,*
    No. 12 Civ. 9456 (JSR), 2013 WL 3204193 (S.D.N.Y. June 12, 2013).................................. 3

*Murphy v. JBS S.A.*,
    No. 17-CV-3084, 2017 WL 4480751 (E.D.N.Y. Oct. 6, 2017)................................................ 4

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
    No. 17CV06130LTSSN, 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ................................. 5

*Peters v. Jinkosolar Holding Co.*,
    No. 11 CIV. 7133 JPO, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012).................................. 3, 7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................................ 6

**Statutes**

15 U.S.C. § 78u-4(a)(2) ............................................................................................................. 2

**Other Authorities**

Mark Seidenfeld, *Cognitive Loafing, Social Conformity, and Judicial Review of Agency
    Rulemaking*, 87 CORNELL L. REV. 486, 530 (2002)................................................................ 7

Of the thirteen movants who originally sought lead plaintiff appointment, only three remain.[1] As demonstrated by his initial motion,[2] his Opposition, and his supplemental declaration filed herewith[3] Mr. Silva lost approximately $1.01 million as a result of the allegations against Defendants—a figure that went unchallenged—and otherwise satisfies the typicality and adequacy requirements of Rule 23. While Granite Point claims higher losses than Mr. Silva, the Glasson Plaintiffs argue that Granite Point may be subject to unique defenses rendering it unable to adequately represent the Class. *See* Dkt. No. 65 at p. 3-7 (the Glasson Plaintiffs' Response to Granite Point). If the Court finds that Granite Point is incapable of serving as lead plaintiff, then the sequential process of the PSLRA requires Mr. Silva's appointment because "[t]he court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continue in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (describing the "sequential" statutory process of the PSLRA).[4]

Indeed, the only "opposition" to Mr. Silva's motion articulated by Granite Point and the Glasson Plaintiffs, respectively, is that: (1) Granite Point is not satisfied with the information contained in Mr. Silva's opening motion; and (2) that an incohesive lawyer-driven group of investors represented by ***three different law firms*** is somehow "in a superior position" to serve as lead plaintiff. Both of these arguments are entirely without merit.

---

[1] *See* Jose A. Silva's Memorandum of Law in Opposition to Competing Motions for Appointment as Lead Plaintiff ("Opposition"). Dkt. No. 64. Four motions remained at the time the Opposition was filed, but Integral Capital Management SARL ("ICM") (Dkt. Nos. 15-16, 18, 21, and 24) failed to file an opposition or argument in further support of its motion. Accordingly, ICM has abandoned its motion and the Court should consider it withdrawn. *See In re Kit Dig., Inc. Sec. Litig.*, 293 F.R.D. 441, 443, n. 2 (S.D.N.Y. 2013) (equating failure to file oppositions briefs as abandonment or withdrawal of motion) (collecting cases).

[2] Unless otherwise defined herein, all defined terms shall have the same meaning ascribed to them in Mr. Silva's Opening Memorandum of Law in Support of his Motion and his Opposition. Dkt. Nos. 23, 64.

[3] *See* Exhibit A to the Declaration of Shannon L. Hopkins in Support of Movant's Reply Memorandum of Law ("Hopkins Decl.").

[4] Unless otherwise noted, all internal citations and quotations are omitted and all emphasis is added.

1

## ARGUMENT

I.    **If Granite Point Is Found Inadequate or Atypical, Then Mr. Silva Must Be Appointed As Lead Plaintiff**

A.    **Mr. Silva Complied with the PSLRA Certification Requirements and Has Demonstrated He Satisfies Rule 23**

In its Opposition, Granite Point argues that Mr. Silva failed to provide any information demonstrating his adequacy and typicality under Rule 23. *See* Dkt. No. 67 ("Granite Point Opposition") at 9-10. In support of this argument, Granite Point cites *Desilvio v. Lion Biotech., Inc.*, No. 17-cv-2086 (N.D. Cal. July 7, 2017), Dkt. No. 35, an unpublished, out-of-circuit decision where the court required lead plaintiff movants to supply additional information about themselves with no reasoning. *See also* Granite Point Opposition at 10 (citing *In re Gemstar-Tv Guide Int'l Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002)) (denying investor group's motion where it did not claim largest financial interest and where the court perceived that the group lacked sophistication).

However, the PSLRA only requires that lead plaintiff movants sign a "sworn certification" attesting that, *inter alia*, the movant is willing to serve as a representative party and will not accept any additional payment (besides what the PSLRA provides) for serving as a representative party. *See* 15 U.S.C. § 78u-4(a)(2); *see also Kapur v. Usana Health Scis., Inc.*, No. 2:07 CV177DAK, 2007 WL 3046664, at *3 (D. Utah Oct. 17, 2007) (rejecting similar argument and holding that it would be "contrary to prevailing PSLRA jurisprudence" to force an individual to "demonstrate her education, experience in the stock market, or experience in securities class actions" as a "lead plaintiff has no such burden.").

Importantly, Granite Point does not argue that there are errors in Mr. Silva's certification or that he did not comply with the PSLRA. Court's interpreting Rule 23's adequacy requirement deem the following to be sufficient at the lead plaintiff stage: "that '(1) class counsel is qualified,

experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Peters v. Jinkosolar Holding Co.*, No. 11 CIV. 7133 JPO, 2012 WL 946875, at \*11 (S.D.N.Y. Mar. 19, 2012) (Oetken, J.) (quoting *Foley v. Transocean Ltd., et al.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011)).

Mr. Silva plainly satisfies the foregoing criteria. *First*, in support of his motion, Mr. Silva attached Levi & Korsinsky's firm résumé demonstrating that his choice of counsel is qualified to serve as lead counsel in the Actions. *See* Dkt. No. 25-4; *see also Chandler v. Ulta Beauty, Inc.*, No. 18-CV-1577, 2018 WL 3141763, at \*6 (N.D. Ill. June 26, 2018) (appointing Levi & Korsinsky as counsel "[g]iven the extensive experience of [Levi & Korsinsky] in the area of securities law"); *In re Aqua Metals Sec. Litig.*, No. 17-CV-07142-HSG, 2018 WL 4860188, at \*4 (N.D. Cal. May 23, 2018) (same).

*Second*, as demonstrated by Mr. Silva's Certification, Mr. Silva has no conflicts with the Class as he seeks lead plaintiff appointment to recover the same losses suffered by the absentee class members. *See* Dkt. No. 25-1 ("I am willing to serve as a representative party on behalf of the class…"); *see also Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (there is "no evidence of antagonism between the interests of the [movant] and those of the proposed Class members, since their claims arise from the same course of conduct.").

*Third*, Mr. Silva lost approximately $1.01 million due to purchasing artificially-inflated CannTrust securities during the Class Period, thus ensuring he has a sufficient interest to vigorously pursue the claims against Defendants. *See* Dkt. No. 25-2; *see also Marsch v. Feng,* No. 12 Civ. 9456 (JSR), 2013 WL 3204193, at \*2 (S.D.N.Y. June 12, 2013) (adequacy satisfied where movants suffered heavy losses to "ensure vigorous advocacy on behalf of the class.").

Accordingly, the evidence submitted with Mr. Silva's motion demonstrates satisfaction of the adequacy requirement of Rule 23.

Typicality is "established where each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17CV4846WFKPK, 2017 WL 6403513, at *3 (E.D.N.Y. Dec. 15, 2017) (quoting *Janbay*, 272 F.R.D. at 120). Mr. Silva has clearly demonstrated that his claims are typical with the claims of the Class. As demonstrated by Mr. Silva's Certification, he: (1) purchased CannTrust shares during the Class Period; (2) at prices artificially inflated by the false and misleading statements and/or omissions by Defendants; and (3) suffered heavy losses as a result. *See* Dkt. No. 25-1; *see also Murphy v. JBS S.A.*, No. 17-CV-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) (finding typicality satisfied where movant brought "the same legal claims, premised on the same alleged facts, as other class members.").

Courts require nothing more when finding Rule 23 satisfied at the lead plaintiff stage. Indeed, courts in this Circuit have stated that "a district court's belief that another plaintiff may be 'more typical' or 'more adequate' is of no consequence." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535 (S.D.N.Y. 2015) (quoting *In re Cavanaugh*, 306 F.3d at 732). In the abundance of caution, Mr. Silva submits herewith his supplemental declaration, providing the Court with additional (extraneous) details including his current residence, occupation, and educational background. *See* Hopkins Decl. at Ex. A.

### B.       The Glasson Plaintiffs' Argument Against Mr. Silva Is Meritless

Recognizing that Mr. Silva has a greater financial interest than all of the Glasson Plaintiffs combined, the Glasson Plaintiffs resort to arguing that a group should be appointed over an individual investor with a higher loss—in direct contravention to the PSLRA, the decisions of this Court, the well-established caselaw in this Circuit, and the prevailing law in most jurisdictions

across the U.S.—because purportedly "studies show groups" "make more accurate decisions." *See* Dkt. No. 65 at 9-10 ("Glasson Plaintiffs Opposition"). That is not the law. *See Chahal v. Credit Suisee Grp. AG*, No. 18CIV2268ATSN, 2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job."); *Nurlybaev v. ZTO Express (Cayman) Inc*., No. 17CV06130LTSSN, 2017 WL 5256769, at *2 (S.D.N.Y. Nov. 13, 2017) ("But the Court does not need to determine whether other plaintiffs may be more typical or adequate than the presumptively adequate plaintiff.").

To be clear, the PSLRA does not ask whether a "group is in a superior position to represent [the] Class." Glasson Plaintiffs Opposition at 9. Rather, the Court must consider the movants, one at a time, from greatest to smallest loss, and then consider whether *that* movant satisfies Rule 23 *before* considering the next movant. *See Khunt*, 102 F. Supp. 3d at 535 ("Once the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone *and be limited to determining whether he satisfies the other statutory requirements*."); *see also Cavanaugh*, 306 F.3d at 731 (if "the presumptive lead plaintiff does not meet the typicality or adequacy requirement, it then must proceed to determine whether the plaintiff with the next lower stake in the litigation has made a prima facie showing of typicality and adequacy."). Here, if Granite Point is found to be inadequate, then the Court must consider Mr. Silva's motion before the Glasson Plaintiffs' motion. As Mr. Silva satisfies Rule 23, there is no reason to even examine the merits of Glasson Plaintiffs' motion.

The Glasson Plaintiffs' authority is unpersuasive. In *Gordon v. Sonar Capital Mgmt. LLC*, two movants originally filed separate motions for appointment as lead plaintiff and then amended their motions to serve together. No. 11 CIV. 9665 JSR, 2012 WL 1193844 (S.D.N.Y. Apr. 9,

2012). Thus in *Gordon*, the group was unopposed and possessed the "largest financial stake in the case"—two important facts not present here. *Id.* at *2. In *In re Oxford Health Plans, Inc. Sec. Litig.*, a decision rendered three years after the passing of the PSLRA, the Court was concerned with the financing of the litigation and decided that appointing "multiple lead plaintiffs . . . will allow for pooling . . . of the resources of plaintiffs' counsel in order to support what could prove to be a costly and time-consuming litigation." 182 F.R.D. 42, 46 (S.D.N.Y. 1998); *see also id.* at 45 ("I find and conclude that **in the circumstances of this particular case**. . . ."). Again, concerns not present here. *See also* Glasson Plaintiffs Opposition (citing *D'Hondt v. Digi Intern. Inc.*, Nos. CIV 97-5 JRT RLE *et al.*, 1997 WL 405668, at *3 (D. Minn. 1997)) (appointing group of **twenty one** lead plaintiffs where motion was unopposed by any other class members and where they claimed the largest financial interest).[5]

Next, the Glasson Plaintiffs argue that "small groups make better decisions than single individuals" citing to a law review article on the topic of judicial review of agency rulemaking and a District of Massachusetts decision addressing whether the Seventh Amendment provides for a jury trial in claims brought under 42 U.S.C. § 9607(a)(4)(A), the Massachusetts Clean Water Act, and the Massachusetts Oil and Hazardous Material Release Prevention and Response Act. *See* Glasson Plaintiffs Opposition at 10 (citing Mark Seidenfeld, *Cognitive Loafing, Social Conformity,*

---

[5] *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395 (S.D.N.Y. 2004) is likewise inapposite. *Pirelli* was not a traditional stock-drop lawsuit (like the instant Actions) and instead was based on allegations that specialist firms on the New York Stock Exchange "systematically violated" their obligation to "abstain from taking part in orders to purchase or sell stocks that could be executed against each other without the specialist's intervention" by "intervening and trading for their own firm accounts, thereby causing harm to their customers." *Id.* at 399. Due to the specific allegations, it was not "immediately evident . . . how to assess which of the movants has the 'largest financial interest' in the relief sought by the class in this execution price fraud action." *Id.* at 404. Still, in *Pirelli* the court appointed the two movants who had the "largest financial interest" in their respective transactions—something the Glasson Plaintiffs do not claim here. *Id.* at 410 ("CalPERS is deemed to have the largest financial interest in large block transactions and Empire is deemed to have the largest financial interest in market orders placed over SuperDOT."); *see also id.* at 420 (co-lead plaintiff structure appropriate "[p]articularly in light of the novelty of this type of action....").

*and Judicial Review of Agency Rulemaking*, 87 CORNELL L. REV. 486, 530 (2002); *In re Acushnet River & New Bedford Harbor Proceedings re Alleged PCB Pollution*, 712 F. Supp. 994, 1007 n.24 (D. Mass. 1989)). The foregoing argument and authority have no bearing on the appointment of a lead plaintiff under the PSLRA. Whatever the merits or demerits are of the psychology of decision-making in reviewing agency decisions or in providing for a jury trial they do not affect the lead plaintiff procedure prescribed by the PSLRA—or the instant motions.

Under revenant authority "the majority of courts 'have adopted an intermediate position, permitting unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis." *Peters*, 2012 WL 946875, at *6 (quoting *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011)). The "PSLRA favors appointment of class members with the largest financial interests in the litigation" and when the "group comprises the class members with, far and away, the largest financial interest of any individual or group" that policy is not disserved. *Id*. at *9. Those clearly are not the circumstances here as Mr. Silva has significantly more losses than any of the individual Glasson Plaintiffs:

| Silva | Glasson Plaintiffs | Difference |
|---|---|---|
| $1,057,999.92 | Eric Glasson-$157,490.00 | $900.509.92 |
| $1,057,999.92 | Joshua Smith-$126,654.51 | $931,345.41 |
| $1,057,999.92 | Raymond Brubaker-$101,885.46 | $956,114.46 |
| $1,057,999.92 | Mike Hopson-$82,421.42 | $975,578.50 |

Even when aggregating the Glasson Plaintiffs' financial interest, Mr. Silva still lost ***more than double*** ($1,057,999.92 vs. $468,451.39). Finally, as Mr. Silva argued in his Opposition, the Glasson Plaintiffs are not a proper group when applying common factors besides financial interest. *See* Opposition at 7-10. At bottom, the Glasson Plaintiffs are four unrelated individuals, represented by three different law firms, who's financial interest pales in comparison to Mr. Silva's. The Glasson Plaintiffs' motion should be denied.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (1) consolidate the Actions; (2) appoint Movant as Lead Plaintiff on behalf the Class; (3) approve Movant's selection of counsel, Levi & Korsinsky, as Lead Counsel; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: September 30, 2019

Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By*:* /s/ *Shannon L. Hopkins*
Shannon L. Hopkins (SH-1887)
1111 Summer Street, Suite 403
Stamford, CT 06905
Tel: (203) 992-4523
Fax: (212) 363-7171
Email: shopkins@zlk.com

Eduard Korsinsky (EK-8989)
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: ek@zlk.com

*Lead Counsel for Movant and [Proposed]
Lead Counsel for the Class*

8