### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHUN HUANG, Individually and On Behalf of All Others Similarly Situated, | No. 1:19-cv-06396-JPO |
| Plaintiff, | Judge J. Paul Oetken |
| v. | CLASS ACTION |
| CANNTRUST HOLDINGS INC., PETER ACETO, and GREG GUYATT, | |
| Defendants. | ORAL ARGUMENT REQUESTED |
| GUSTAVO ALVARADO, on behalf of himself and all others similarly situated, | No. 1:19-cv-06438-JPO |
| Plaintiff, | Judge J. Paul Oetken |
| vs. | |
| CANNTRUST HOLDINGS INC., PETER ACETO, GREG GUYATT, and IAN ABRAMOWITZ, | |
| Defendants. | |
| RONALD E. JONES, Individually and on Behalf of All Others Similarly Situated, | No. 1:19-cv-06883-JPO |
| Plaintiff, | Judge J. Paul Oetken |
| vs. | |
| CANNTRUST HOLDINGS INC., PETER ACETO and GREG GUYATT, | |
| Defendants. | |

SCOTT JUSTISS, Individually and On
Behalf of All Others Similarly Situated,

                    Plaintiff,

      v.

CANNTRUST HOLDINGS INC.,
PETER ACETO, and GREG GUYATT,

                  Defendants.

No. 1:19-cv-07164-JPO

Judge J. Paul Oetken

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION
OF GRANITE POINT CAPITAL MASTER FUND, LP AND GRANITE POINT
CAPITAL SCORPION FOCUSED IDEAS FUND FOR CONSOLIDATION,
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION
OF LEAD COUNSEL; AND IN OPPOSITION TO COMPETING MOVANTS**

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

I.      GRANITE POINT REMAINS THE PRESUMPTIVE LEAD PLAINTIFF .................... 2

        A.      Granite Point's Limited Short Transactions Have no Bearing on Its
                Typicality or Adequacy.......................................................................................... 2

        B.      Attacks on the Certification of Granite Point Are Not Based on Fact or
                Law ................................................................................................................... 5

II.     THE MOTIONS OF COMPETING MOVANTS SHOULD BE DENIED ...................... 7

        A.      The Plain Text of the PSLRA Mandates the Denial of Competing Movants ......... 7

        B.      The Glasson Group's Fatal Lawyer-Driven Nature Independently Merits
                the Denial of Its Motion .................................................................................... 7

CONCLUSION ....................................................................................................................... 9

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abouzied v. Applied Optoelectronics, Inc,*
  No. 4.17-CV-2399, 2018 WL 539362 (S.D. Tex. Jan. 22, 2018)............................................8

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988)..............................................................................................................4

*Beckman v. Ener1, Inc.,*
  No. 11 Civ. 5794 PAC, 2012 WL 512651 (S.D.N.Y. Feb. 15, 2012) ..................................8, 9

*In re Cephalon Sec. Litig.,*
  No. CIV.A. 96-0633, 1998 WL 470160 (E.D. Pa. Aug. 12, 1998) .........................................4

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.,*
  No. 18-CV-3608 (VSB), 2019 WL 364570 (S.D.N.Y. Jan. 30, 2019)....................................2

*Danis v. USN Commc'ns, Inc.,*
  189 F.R.D. 391 (N.D. Ill. 1999)............................................................................................3

*In re Diamond Foods, Inc., Sec. Litig.,*
  295 F.R.D. 240 (N.D. Cal. 2013)..........................................................................................3

*Fields v. Biomatrix, Inc.,*
  198 F.R.D. 451 (D.N.J. 2000)............................................................................................3, 4

*Glavan v. Revolution Lighting Techs., Inc.,*
  No. 19-CV-980 (JPO), 2019 WL 3406582 (S.D.N.Y. July 29, 2019)....................................3

*In re Host Am. Corp. Sec. Litig.,*
  236 F.R.D. 102 (D. Conn. 2006)............................................................................................5

*In re Imax Sec. Litig.,*
  No. 06 Civ. 6128(NRB), 2011 WL 1487090 (S.D.N.Y. Apr. 15, 2011) .................................4

*Jakobsen v. Aphria, Inc.,*
  No. 18 Civ. 11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) .............................8

*Khunt v. Alibaba Grp. Holding Ltd.,*
  102 F. Supp. 3d 523 (S.D.N.Y. 2015)....................................................................................7

*Levie v. Sears, Roebuck & Co.,*
  496 F. Supp. 2d 944 (N.D. Ill. 2007) .....................................................................................4

*Metro Servs. Inc. v. Wiggins*,
    158 F.3d 162 (2d Cir. 1998)..................................................................2

*Nakamura v. BRF S.A.*,
    No. 18-cv-2213 (PKC), 2018 WL 3217412 (S.D.N.Y. July 2, 2018) ......................................8

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
    No. 07-02830, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) ......................................4, 5, 6

*Roby v. Ocean Power Techs., Inc.*,
    No. 14-cv-3799 (FLW) (LHG), 2015 WL 1334320 (D.N.J. Mar. 17, 2015) ..........................1

*Schleicher v. Wendt*,
    No. 1:02–cv–1332-DFH-TAB, 2009 WL 761157 (S.D. Ind. Mar. 20, 2009) ........................4

*Steamfitters Local 449 Pension Fund v. Cent. European Distribution Grp.*,
    No. CIV.A. 11-6247 (JBS/KMW), 2012 WL 3638629 (D.N.J. Aug. 22, 2012) ...................6

*Stone v. Agnico-Eagle Mines Ltd.*,
    280 F.R.D. 142 (S.D.N.Y. 2012) (Oetken, J.) ...................................................................5, 7

*In re Terayon Commc'ns Sys., Inc.*,
    No. C 00-01967 MHP, 2004 WL 413277 (N.D. Cal. Feb. 23, 2004) ..................................3, 4

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ......................................................................................5, 6

*Vladimir v. Bioenvision, Inc.*,
    No. 07 CIV. 6416(SHS)(AJP), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) .......................2

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche, LLP*,
    549 F.3d 100 (2d Cir. 2008).............................................................................................5, 6

**Rules & Statutes**

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .............................................................................. *passim*

Proposed Lead Plaintiff Granite Point respectfully submits this reply memorandum in further support of its motion for consolidation of the above-captioned actions, appointment as Lead Plaintiff, and approval of Labaton Sucharow as Lead Counsel for the Class (ECF No. 40),[1] and in opposition to all competing lead plaintiff motions.[2]

## PRELIMINARY STATEMENT

Granite Point, as the movant with the largest financial interest who also satisfies the typicality and adequacy requirements of Rule 23, is entitled to appointment as Lead Plaintiff under the PSLRA's sequential criteria. Opposing movants have only offered speculative arguments in an attempt to rebut Granite Point's presumption as the most adequate plaintiff. These contentions are lacking any evidence, and therefore fail.

Granite Point's limited short position fails to give rise to any potential unique defenses. Granite Point's short transactions comprised only 14 percent of its Class Period transactions, and its short position was closed well before the corrective disclosures at issue in this litigation. Additionally, any accusations as to the deficiency of Granite Point's certification are lacking any evidence whatsoever.  Granite Point's certification clearly states that it was the beneficial owner of the securities at issue, and that the signatory on the certification was authorized to execute it on Granite Point's behalf.  Thus Granite Point, a sophisticated institutional investor and the presumptive lead plaintiff under the PSLRA, should be appointed.

---

[1]     All definitions and abbreviations used herein remain unchanged from Granite Point's previous submission before the Court.  *See* ECF Nos. 44, 67.

[2]     The only other remaining lead plaintiff movants are Silva (ECF No. 22), and the Glasson Group (ECF No. 47).  Integral Capital (ECF No. 15), failed to file an opposition brief, and its motion is therefore deemed as withdrawn.  *See, e.g. Roby v. Ocean Power Techs., Inc.*, No. 14-cv-3799 (FLW) (LHG), 2015 WL 1334320, at *2 & n.2 (D.N.J. Mar. 17, 2015) (finding that movants who "failed to file opposition or reply briefs" had not "maintained their motions seeking to be appointed as lead plaintiff").  All other movants have filed notices of non-opposition.  *See* ECF Nos. 54, 55, 56, 57, 58, 59, 61, 62, 63.

<u>ARGUMENT</u>

**I.    GRANITE POINT REMAINS THE PRESUMPTIVE LEAD PLAINTIFF**

Granite Point, a sophisticated institutional investor with losses of **$2,135,246** who also satisfies the typicality and adequacy requirements of Rule 23, is the presumptive Lead Plaintiff under the "sequential" selection process adopted by this Circuit.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Competing movants' speculative assertions against the typicality and adequacy of Granite Point should be disregarded as baseless.  *See City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-CV-3608 (VSB), 2019 WL 364570, at *7 (S.D.N.Y. Jan. 30, 2019) (rejecting arguments for "provid[ing] no evidence to support their claims"); *see also Vladimir v. Bioenvision, Inc.*, No. 07 CIV. 6416(SHS)(AJP), 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007) (collecting cases).  As no competing movant has, or will be able to, rebut Granite Point's presumption with the requisite "proof," Granite Point is entitled to appointment as Lead Plaintiff.  *Metro Servs. Inc. v. Wiggins*, 158 F.3d 162, 164 (2d Cir. 1998).

> **A.    Granite Point's Limited Short Transactions Have no Bearing on Its Typicality or Adequacy**

The Glasson Group makes the muddled argument that because Granite Point engaged in comparatively minimal short transactions during a fraction of the Class Period, that it cannot represent the Class.  In essence, the Glasson Group requests that the Court adopt the proposition that if a lead plaintiff movant engages in *any* short selling activity, that it be automatically disqualified.  This argument is not only incorrect, but would threaten to substantially deter sophisticated institutional investors from serving as lead plaintiff.

As a preliminary matter, approximately ***86 percent*** of Granite Point's Class Period investments in CannTrust securities were traditional long purchases.  Further, Granite Point only

had an open short position for less than a quarter of the Class Period, which position was closed on April 22, 2019.  Therefore, Granite Point closed its short position and purchased CannTrust securities inflated by Defendants' false and misleading statements well before the July 2019 corrective disclosures, which disclosures caused Granite Point over $2 million in losses.  Finally, the Glasson Group shortsightedly attempts to challenge Granite Point's dominant financial interest by arguing that Granite Point had a gain on its brief short position.[3]  This gain, however, was transparently reported by Granite Point in its certification and loss chart, and has been correctly subtracted from its loss figure.  *See* ECF Nos. 45-1, 45-2; *see also Glavan v. Revolution Lighting Techs., Inc.*, No. 19-CV-980 (JPO), 2019 WL 3406582, at *4 (S.D.N.Y. July 29, 2019) (appointing lead plaintiff, finding that movant's loss figure was correctly "offset" by any potential gains during the class period).

    As a predominantly long investor, any potential typicality concerns based on Granite Point's short selling activity are baseless.  *See Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391, 396 (N.D. Ill. 1999) (finding movant typical because "[a]fter his initial short sales, [movant] also made ordinary purchases of [defendant's] stock during the class period, stock which he held and on which he sustained a loss"); *Fields v. Biomatrix, Inc.*, 198 F.R.D. 451, 461 (D.N.J. 2000) (finding that a movant who "may have made *some* short sales does not render its claims atypical of the other plaintiffs in the putative class or subject to unique defenses such that it is incapable of adequately representing the case.") (emphasis added).[4]

---

[3]    Confusingly, several paragraphs later in its Opposition, the Glasson Group inconsistently argues that Granite Point may have difficulty *proving loss causation* on its short transactions. *See* ECF No. 65, at 5–6.

[4]    The authority relied upon by the Glasson Group to argue a contrary position is all out-of-Circuit, inapplicable, or outlier opinions.  *See, e.g., In re Diamond Foods, Inc., Sec. Litig.,* 295 F.R.D. 240, 258 (N.D. Cal. 2013) (short sellers excluded from class *based on agreement by all parties*; no legal analysis given).  In addition, *Critical Path* (which is the sole authority relied

In addition, Courts in this District and elsewhere have repeatedly found that shareholders who engage in sophisticated investment strategies, such as short-sales, are not atypical and may still rely upon the fraud-on-the-market presumption of reliance at class certification. *See, Schleicher v. Wendt*, No. 1:02–cv–1332-DFH-TAB, 2009 WL 761157, at *9 (S.D. Ind. Mar. 20, 2009) (applying fraud-on-the-market presumption to short sellers who think the market has overvalued a stock, on the ground that "[t]heir decisions about the value of the stock, however, can still be based on the integrity of the market price"); *Levie v. Sears, Roebuck & Co.*, 496 F. Supp. 2d 944, 949 (N.D. Ill. 2007) ("[T]he roster of shareholders of every large, publicly traded corporation includes institutional investors, short-sellers, arbitragers, etc. The fact that these traders have divergent motivations in purchasing shares should not defeat the fraud-on-the-market presumption absent convincing proof that price paid no part whatsoever in their decision making.").[5]

Finally, the Glasson Group's perplexing insinuation that because approximately 80 percent of CannTrust investors are individuals, that the Class deserves unsophisticated leadership (coincidentally, like the Glasson Group), is directly contrary to the purposes of the PSLRA. *In*

---

upon in *Calpine Corp.*) has been subsequently criticized by the very District that issued the opinion. In *In re Terayon Communications Systems, Inc.*, the court rejected *Critical Path*'s extreme holding in favor of *Fields* (cited above) finding that "**some short sales may not, in and of themselves render a lead plaintiff's claims atypical**." *See* No. C 00-01967 MHP, 2004 WL 413277, at *8 (N.D. Cal. Feb. 23, 2004) (emphasis added).

[5]     *See also Basic Inc. v. Levinson*, 485 U.S. 224, 246–47 (1988) ("It has been noted that 'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?'") (quoting *Schlanger v. Four–Phase Sys. Inc.*, 555 F. Supp. 535, 538 (S.D.N.Y. 1982)); *In re Imax Sec. Litig.*, No. 06 Civ. 6128(NRB), 2011 WL 1487090, at *7 (S.D.N.Y. Apr. 15, 2011) (rejecting argument that a lead plaintiff movant is atypical because of a sophisticated investment strategy); *In re Cephalon Sec. Litig.*, No. CIV.A. 96-0633, 1998 WL 470160, at *3 (E.D. Pa. Aug. 12, 1998) (concluding that the existence of individual questions of reliance do not render atypical the claims of lead plaintiff whose trades included some short sales).

*re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, 2010 WL 5173851, at *8

(W.D. Tenn. Dec. 15, 2010) ("Hedge funds are institutional investors, exactly the type of

sophisticated market participants Congress intended to take on the role of lead plaintiff following

the PSLRA's reforms.").[6]  The Glasson Group therefore, has not offered any reason, yet alone a

compelling one, as to why Granite Point, an experienced lead plaintiff with the largest financial

interest, fails to satisfy Rule 23.  The Glasson Group's arguments should be denied.

## B.    Attacks on the Certification of Granite Point Are Not Based on Fact or Law

The Glasson Group in shotgun fashion attempts to raise myriad issues with the

certification of Granite Point.  These arguments, which are supported by zero evidence

whatsoever, are speculation in its purest form and should be denied.  *In re Tronox, Inc. Sec.*

*Litig.*, 262 F.R.D. at 346–47 (rejecting unsupported arguments as to movant's certification).

Granite Point's certification clearly evidences that the funds comprising Granite Point

were the beneficial holders of the securities at issue, and therefore have standing to pursue claims

against Defendants.  *See Stone v. Agnico-Eagle Mines Ltd.*, 280 F.R.D. 142, 145 (S.D.N.Y.

2012) ("[presumptive lead plaintiff's] assertion that it own[ed] its investments [was] sufficient to

establish its standing, notwithstanding speculative allegations by [opposing movant]") (Oetken,

J.); *cf. W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche, LLP*, 549 F.3d 100, 104 (2d Cir.

2008) (finding *investment advisor* lacked standing to sue as it wasn't the beneficial owner of the

securities at issue).  In addition, Granite Point's certification—executed "*under penalty of*

---

[6]     In the event any competing movant attempts to challenge the funds comprising Granite Point for their status as hedge funds, these arguments should be denied as well.  *See, e.g.*,  *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 347 (S.D.N.Y. 2009) ("courts routinely appoint hedge funds . . . . as lead plaintiffs"); *In re Host Am. Corp. Sec. Litig.*, 236 F.R.D. 102, 108 (D. Conn. 2006) ("hedge funds have been selected as lead plaintiff in other securities fraud cases") (quoting *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 124 (S.D.N.Y. 2001)).

*perjury*"—states in plain terms that "C. David Bushley, in [his] capacity as a Principle and Chief Operating Officer of Granite Point Capital ***[was] personally authorized to enter into and execute [the] certification on behalf of Granite Point***."   ECF No. 45-1; *see also In re Regions Morgan Keegan Closed-End Fund Litig.*, 2010 WL 5173851, at *8 (court found no unique defense that PSLRA certification was invalid because "[n]o party has presented any evidence to cast doubt on [certification signer's]" authority).  Finally, even the most basic investigation by counsel would have revealed that Granite Point Capital is the General Partner of the funds comprising Granite Point, and was therefore undeniably authorized to execute the certification.[7] *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. at 345–47 & n.49 (taking no issue with certification signed by lead plaintiff movant's general partner on its behalf and dismissing speculative standing arguments).

The Glasson Group's reliance on *Steamfitters Local 449 Pension Fund v. Central European Distribution Group*, is misplaced.  No. CIV.A. 11-6247 (JBS/KMW), 2012 WL 3638629 (D.N.J. Aug. 22, 2012).  In *Steamfitters*, the court was faced with a group of nine movants, only four of which were actually the beneficial holders of the securities, and thus the only ones with standing to bring claims.  *Id.* at *3, *11.  Making matters worse, the group's certification indicated that the funds' investment manager, one of the nine parties, was authorized to litigate claims in their stead, in contradiction to well-settled standing principles in securities class actions.  *Id.*; *see also W.R. Huff Asset Mgmt. Co., LLC*, 549 F.3d 100.  This is not

---

[7]     *See* SEC FORM D, SECURITIES AND EXCHANGE COMMISSION (July 12, 2019), https://www.sec.gov/Archives/edgar/data/1636775/000090266419003007/0000902664-19-0030 07-index.htm (SEC filing signed by the *same signatory* on Granite Point's certification indicating that Granite Point Capital is the General Partner of Granite Point Capital Scorpion Focused Ideas Fund); ECF 66-2, at 6, 21 (stating that Granite Point Capital is the General Partner of various Granite Point funds, which funds include Granite Point Capital Master Fund, LP).

the case here.  Granite Point, as the beneficial holder of the securities at issue, is the one pursuing

this litigation.  In addition, the certification was signed on behalf of—not instead of—Granite

Point, by Granite Point Capital in its capacity as General Partner.

Accordingly, the Glasson Group's unfounded and speculative concerns regarding Granite

Point's certification should be rejected.  Therefore, as opposing movants have failed to rebut the

presumption that Granite Point is the most adequate Lead Plaintiff, Granite Point should be

appointed.

## II.     THE MOTIONS OF COMPETING MOVANTS SHOULD BE DENIED

### A.     The Plain Text of the PSLRA Mandates the Denial of Competing Movants

As Granite Point has the largest financial interest out of all competing movants and also

satisfies the typicality and adequacy requirements of Rule 23, it is entitled to appointment as

Lead Plaintiff.  *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535–36 (S.D.N.Y.

2015) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy

requirements, he is entitled to lead plaintiff status . . . .") (quoting *In re Cavanaugh*, 306 F.3d

726, 732 (9th Cir. 2002)).  The Court's inquiry in this instant litigation thus begins and ends with

Granite Point.  *Agnico-Eagle Mines Ltd.*, 280 F.R.D. 142, 146 (S.D.N.Y. 2012) (appointing

movant with largest loss after only analyzing said movant and finding PSLRA criteria satisfied).

Therefore, for this reason alone, the motions of Silva and the Glasson Group should be denied.

### B.     The Glasson Group's Fatal Lawyer-Driven Nature Independently Merits the Denial of Its Motion

Perplexingly, the Glasson Group focuses a significant amount of time in its opposition to

attack the Kobzar Group as an improper lawyer-driven group.[8]  The Glasson Group's attempt to

---

[8]     The Kobzar Group filed a notice of non-opposition prior to the filing of the Glasson Group's opposition.  ECF No. 63.

distinguish itself from the Kobzar Group fails, and further illuminates the Glasson Group as an impermissible product of counsel.

The Glasson Group attacks the Kobzar Group for failing to have a decision making structure in place, even when its own joint declaration is silent on the matter. Indeed, the Glasson Group's so-called commitment "to communicate from time to time," is a hollow assurance, and not one that breathes confidence into the group's ability to act as a cohesive fiduciary for the Class. *Jakobsen v. Aphria, Inc.*, No. 18 Civ. 11376 (GBD), 2019 WL 1522598, at *3 (S.D.N.Y. Mar. 27, 2019) (rejecting "vague and conclusory" "plans for cooperation"). On this point, the Glasson Group has provided ***no guidance*** as to dispute resolution. Therefore, in the event the Glasson Group's four unrelated members reach a material disagreement, a potential stalemate could substantially delay this litigation. *See Abouzied v. Applied Optoelectronics, Inc*, No. 4.17-CV-2399, 2018 WL 539362, at *5 (S.D. Tex. Jan. 22, 2018) (rejecting lead plaintiff group as its "Joint Declaration provide[d] no mechanism for resolving disputes"). In addition, the Glasson Group has failed to set forth any information to indicate whether its members sought counsel, or vice versa. *See Nakamura v. BRF S.A.*, No. 18-cv-2213 (PKC), 2018 WL 3217412, at *4 (S.D.N.Y. July 2, 2018) (rejecting group, in part, because its "joint declaration does not explain whether the members chose outside counsel, and not vice versa.") (internal quotations and citation omitted). On this point, the Glasson Group has three law firms listed on its papers, and has provided no justification as to why the group needs nearly as many law firms as members, further underscoring the group's lack of cohesion. *See Beckman v. Ener1, Inc.,* No. 11 Civ. 5794 PAC, 2012 WL 512651, at *3 (S.D.N.Y. Feb. 15, 2012) (finding "[t]he fact that [proposed lead plaintiff] could not work together to pick a single lead counsel and instead urge the Court to approve three different firms as co-lead counsel for this relatively straight forward

matter demonstrate[d] a lack of cohesion").  Accordingly, based on the above the motion of the Glasson Group should be denied.

**<ins>CONCLUSION</ins>**

For the foregoing reasons, Granite Point respectfully requests that the Court grant its motion and enter an Order: (i) consolidating the above-captioned actions; (ii) appointing Granite Point as Lead Plaintiff; (iii) approving Granite Point's selection of Labaton Sucharow as Lead Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

DATED:  September 30, 2019                                 Respectfully submitted,

*/s/ Francis P. McConville*

Christopher J. Keller
Eric J. Belfi
David J. Schwartz
Francis P. McConville
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
dschwartz@labaton.com
fmcconville@labaton.com

*Counsel for Lead Plaintiff Movant*
*Granite Point Capital Master Fund,*
*LP and Granite Point Capital*
*Scorpion Focused Ideas Fund, and*
*Proposed Lead Counsel for the Class*
