**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: CANNTRUST HOLDINGS INC. SECURITIES LITIGATION | No. 1:19-cv-06396-JPO<br><br>Judge J. Paul Oetken |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL**
**OF PROPOSED CLASS ACTION SETTLEMENTS**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................... 4

I.      Procedural History ........................................................................................................ 4

II.     Terms of the Settlements ............................................................................................... 9

ARGUMENT ............................................................................................................................... 14

I.      PRELIMINARY APPROVAL OF THE SETTLEMENTS IS WARRANTED .............. 14

        A.      Standards for Preliminary Approval of a Proposed Class Action
                Settlement ........................................................................................................ 14

        B.      Rule 23(e)(2)(A): Zealous Representation............................................................ 16

        C.      Rule 23(e)(2)(B): The Settlements Are the Product of Good Faith,
                Informed, and Arm's-Length Negotiations by Experienced Counsel ................. 17

        D.      Rule 23(e)(2)(C): The Settlements Provide Significant and Certain
                Benefits .............................................................................................................. 18

                1.      Despite Strong Claims, Risks to Achieving a Recovery Remained ........ 18

                2.      The Effective Process for Distributing Relief to the Settlement
                        Class .................................................................................................... 22

                3.      The Settlements Do Not Excessively Compensate Lead Counsel........... 23

        E.      Rule 23(e)(2)(D): Class Members Are Treated Equitably Relative to
                One Another....................................................................................................... 23

II.     PRELIMINARY CERTIFICATION OF THE U.S. SETTLEMENT CLASS................. 24

III.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ........................... 26

IV.     PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ........................... 28

CONCLUSION............................................................................................................................. 29

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................................17, 19

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) ...............................................................................................................25

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    293 F.R.D. 459 (S.D.N.Y. 2013) ...........................................................................................14

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988) ...............................................................................................................25

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ...........................................................................................14

*In re Comverse Techs. Inc. Sec. Litig.*,
    No. 06-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ..................................................23

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...................................................................................................15

*In re Deutsche Telekom AG Sec. Litig.*,
    No. 00-CV-9475 (NRB), 2005 U.S. Dist. LEXIS 45798 (S.D.N.Y. June 14,
    2005) .......................................................................................................................................23

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ...........................................................................................26

*In re Indep. Energy Holdings PLC*,
    No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .............................17

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    246 F.R.D. 156 (S.D.N.Y. 2007) ...........................................................................................21

*In re Merrill Lynch Tyco Research Sec. Litig.*,
    249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................................................................24

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ...............................................................................................................26

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) .............................................................................................17

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................17

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x. 760 (2d Cir. 2020) ......................................................................21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................16

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ............21

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05-MDL-01695(CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)..............18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005).........................................................................14, 26

*Yang v. Focus Media Holding Ltd.*,
    No. 11-9051, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ................................14

**Docketed Case**

*In re NQ Mobile, Inc. Sec. Litig.*,
    Case No. 1:13-cv-07608-WHP, slip op. (S.D.N.Y. Mar. 11, 2016) ....................23

**Statutes**

15 U.S.C. §78u-4(a)(7)(A)-(F)................................................................................27

**Rules**

Fed. R. Civ. P. 23 ................................................................................................15

Fed. R. Civ. P. 23(a) .....................................................................................24, 25

Fed. R. Civ. P. 23(b)(3)..................................................................................24, 25

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................26

Fed. R. Civ. P. 23(e) ......................................................................................3, 14

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................14

Fed. R. Civ. P. 23(e)(2)..................................................................................14, 15

Fed. R. Civ. P. 23(e)(2)(A) ...................................................................................16

Fed. R. Civ. P. 23(e)(2)(B) ...................................................................................17

Fed. R. Civ. P. 23(e)(2)(C) ...........................................................................................18

Fed. R. Civ. P. 23(e)(2)(C)(iv) ....................................................................................15

Fed. R. Civ. P. 23(e)(2)(D) ...........................................................................................23

Fed. R. Civ. P. 23(e)(3) .................................................................................................15


**Other Authority**

Internal Revenue Code §501(c)(3) ................................................................................22

WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS  (5th Ed. 2015) ....................................14

## PRELIMINARY STATEMENT

Court-appointed Lead Plaintiffs Granite Point Master Fund, LP and Granite Point Capital Scorpion Focused Ideas Fund ("Lead Plaintiffs," or "U.S. Class Action Lead Plaintiffs"), on behalf of themselves and all other members of the proposed settlement class (the "U.S. Settlement Class"), submit this memorandum of law in support of their motion for preliminary approval of eight proposed settlements (the "Settlements"), as they relate to this action.  After extensive negotiations over the course of many months and under the auspices of a court-appointed mediator, defendant CannTrust Holdings Inc. ("CannTrust") and the majority of the defendants in this class action (the "U.S. Class Action") have reached a global resolution of the claims asserted against them in this case, as well as actions pending in Canada and California (the "Actions").[1]  It is respectfully submitted that the proposed Settlements, as they relate to this U.S. Class Action, are eminently fair, reasonable, and adequate and should be preliminarily approved by the Court.

The proposed Settlements will be implemented pursuant to CannTrust's Fourth Amended & Restated Plan of Compromise, Arrangement and Reorganization, as amended and restated from time to time (the "CCAA Plan"), under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended, which was approved by the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") by a "sanction order" entered on July 16, 2021 (the

---

[1] The Settlements involve all defendants in this U.S. Class Action, except for KPMG LLP. Defendants CannTrust; Cannamed Financial Corp.; Cajun Capital Corporation; Mark Dawber; Greg Guyatt; John Kaden; Robert Marcovitch; Shawna Page; Mitchell Sanders; Eric Paul; Mark Ian Litwin; Ian Abramowitz; Peter Aceto; Canaccord Genuity LLC; Citigroup Global Markets Inc.; Credit Suisse Securities (USA) LLC; Jefferies LLC; Merrill Lynch, Pierce, Fenner & Smith Incorporated; and RBC Dominion Securities Inc. are collectively the "Settling Defendants," for purposes of this memorandum.  U.S. Class Action Lead Plaintiffs and the Settling Defendants are collectively referred to as the "Settling Parties."

"CCAA Sanction Order").[2]  Among other things, in the CCAA Sanction Order, the Canadian Court concluded that the CCAA Plan had been approved by the requisite majority of creditors, and that "the CCAA Plan and all of the matters and transactions contemplated thereby are fair and reasonable."  Johnson Decl. Ex. 2, CCAA Sanction Order ¶5.  Accordingly, the Canadian Court approved the CCAA Plan, and directed that all steps be taken to implement the CCAA Plan.  (*Id.* ¶7.)  The Canadian Court also approved the releases and injunctions requested as part of implementing the Settlements, to become effective upon "the Effective Time" of the plan (as defined in the CCAA Sanction Order) (*id.* ¶¶21-33), and approved the proposed Allocation and Distribution Scheme. *Id.* ¶6.  The Canadian Court further requested "the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, or abroad, to give effect to this Sanction Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Sanction Order and the CCAA Plan."  *Id.* ¶70.

The CCAA Plan, and the proposed Settlements reached to date to be implemented through the CCAA Plan, will create, among other things, a Class Compensation Fund for eligible investors in the amount of approximately C$83,000,000, before the deduction of approved fees, expenses,

---

[2] The primary terms of the Settlements are set forth in the CCAA Plan, the Restructuring Support Agreement, effective as of January 19, 2021 (as amended from time to time, the "RSA"), and the minutes of settlement with the other settling parties, each of which are annexed as exhibits to the Declaration of James W. Johnson ("Johnson Decl."), filed herewith.  A list of the settlement agreements is Exhibit 1 to the Johnson Declaration. All exhibits referenced herein are attached to the Johnson Declaration.

All capitalized terms not defined herein have the same meanings as defined in the CCAA Plan (Ex. 3), the RSA (Ex. 4), the proposed preliminary approval order ("Preliminary Approval Order"), or the Allocation and Distribution Scheme governing the calculation of investors' claims ("A&DS")(Ex. 5).

taxes, and set-offs required by the Settlements.[3]   The Class Compensation Fund will be administered by a Securities Claimant Trust for the benefit of Securities Claimants both within and outside the United States. Any additional settlements and recoveries obtained through ongoing claims against non-Settlement Parties will also be administered by the Securities Claimant Trust.

Implementation of the CCAA Plan requires, among other things, approval of the Settlements as they relate to the U.S. Class Action by this Court (the "Court" or "U.S. Court"). The CCAA Plan provides for, *inter alia*, the restructuring of CannTrust so that it can emerge from its insolvency proceedings under the CCAA, the administration of the Settlements for the benefit of CannTrust's investors, and the handling of unsettled claims related to the alleged wrongdoing at issue in the Actions.  The proposed Settlements are a key part of the CCAA Plan.  Lead Plaintiffs respectfully submit that the Settlements, as they relate to this case, warrant preliminary approval by this Court given that they are the result of lengthy vigorous arm's-length negotiations by experienced counsel overseen by a court-appointed mediator, represent a favorable recovery that falls well within the range of possible approval, and are likely to meet all of the approval factors required by Fed. R. Civ. P. 23(e) and Second Circuit precedent.  Through the Court's grant of preliminary approval, Lead Plaintiffs will be able to provide notice of the Settlements to potential members of the U.S. Settlement Class.  A final approval hearing (the "Settlement Hearing") will then be conducted so that the Court can make a final determination as to whether the Settlements, as they relate to the U.S. Class Action, are fair, reasonable, and adequate.

The proposed Preliminary Approval Order will, among other things: (i) preliminarily

---

[3] For informational purposes, at the time the Settlements were reached (January 19, 2021 to May 24, 2021), the C$/US$ exchange rate ranged from C$1.20 to C$1.28 per US$1.00 with an average of C$1.25 per US$1.00.  Accordingly, at the time of the Settlements, C$83,000,000 was equivalent to approximately US$66,400,000.

approve the Settlements, as they relate to the U.S. Class Action; (ii) preliminarily certify the U.S. Settlement Class and appoint Lead Plaintiffs as class representatives and Lead Counsel Labaton Sucharow LLP as class counsel, for purposes of the Settlements as they relate to the U.S. Class Action only; (iii) approve the form and content of the Notice of Pendency of U.S. Class Action and Proposed Settlements ("Notice"), Securities Claimant Proof of Claim and Release Form ("Claim Form"), and Summary Notice, attached as Exhibits 1, 2 and 3 to the Preliminary Approval Order; (iv) find that the procedures for distribution of the Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable to the U.S. Settlement Class under the circumstances and comply with due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (v) set a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlements; and (vi) appoint Epiq Class Action and Claims Solutions, Inc. ("Epiq") to administer the settlement process.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural History

CannTrust is a publicly traded company and its shares were primarily traded on the Toronto Stock Exchange ("TSX") and on the New York Stock Exchange ("NYSE").  Its share price declined following the announcement by CannTrust on July 8, 2019 that it had received a compliance report from Health Canada notifying it that its greenhouse facility in Pelham, Ontario was non-compliant with certain regulations as a result of observations by the regulator regarding the growing of cannabis in five unlicensed rooms and inaccurate information provided to the regulator by CannTrust employees. Class actions in Canada and the United States were commenced against, among others, CannTrust, certain of its directors and officers, the

underwriters of its May 2019 initial share offering ("Offering Shares"), and its auditors, KPMG LLP.

### The Canadian Actions

Following CannTrust's disclosures on July 8, 2019, several class actions were commenced in Ontario making substantially similar allegations on behalf of CannTrust shareholders. By Order dated January 28, 2020, carriage of the CannTrust securities class actions was granted to Ontario Class Action Counsel and all other proposed class actions in Ontario relating to the same subject matter were stayed.  Proposed class actions were also commenced in British Columbia, Alberta and Québec.  Several individual actions were also filed in Canada.

### The U.S. Class Action

On July 10, 2019, a class action complaint was filed in this Court under the caption *Huang v. CannTrust Holdings Inc., et al.*, No. 19-cv-06396-JPO.  ECF No. 1.  Three other class action complaints were subsequently filed setting forth substantially the same allegations against CannTrust and its officers and directors: *Alvarado v. CannTrust Holdings, Inc., et al.*, No. 19-cv-6438; *Jones v. CannTrust Holdings, Inc., et al.*, No. 19-cv-6883; and *Justiss v. CannTrust Holdings, Inc., et al.*, No. 19-cv-7164 (JPO).

By Order dated April 16, 2020, this Court ordered that the cases be consolidated and recaptioned as *In re CannTrust Holdings Inc. Securities Litigation,* Civil Action No. 1:19-cv-06396-JPO; appointed Granite Point Master Fund, LP and Granite Point Capital Scorpion Focused Ideas Fund as lead plaintiffs; and appointed Labaton Sucharow LLP as lead counsel for a proposed U.S. class ("Lead Counsel"). ECF No. 80.

On June 26, 2020, U.S. Class Action Lead Plaintiffs filed and served their Consolidated Class Action Complaint (the "Complaint").  ECF No. 89.  The Complaint asserts claims under

Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act allegations") against CannTrust; CannTrust's auditor, KPMG LLP; and several of CannTrust's senior executives and directors: former Chief Executive Officer Peter Aceto, former Chief Financial Officer and current CEO Greg Guyatt, former CFO Ian Abramowitz, former President and Chief Operating Officer Brad Rogers, former Chairman of the Board and CEO Eric Paul, and members of CannTrust's Board of Directors: Mark E. Dawber, Mitchell J. Sanders, John T. Kaden, Mark I. Litwin, Shawna Page, and Robert F. Marcovitch.  The Complaint separately asserts claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act allegations") against Defendants: CannTrust, KPMG, Paul, Aceto, Guyatt, Litwin, Sanders, Marcovitch, Dawber, Page, Kaden, as well as against Merrill Lynch, Pierce, Fenner & Smith Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Jefferies LLC, RBC Dominion Securities Inc., Canaccord Genuity LLC, Cannamed Financial Corp. and Cajun Capital Corp.

Among other things, the Complaint alleges that Defendants made materially false and misleading statements and omissions concerning CannTrust's compliance with relevant cannabis regulations and an alleged scheme to increase the Company's cannabis production.  The Complaint's Exchange Act allegations allege that the price of CannTrust publicly traded common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was allegedly revealed from July 8, 2019 through September 17, 2019.  The Complaint's Securities Act allegations allege that the Company's registration statement and related documents incorporated therein (the "Offering Documents") issued in connection with the Company's Offering Shares contained materially false and misleading statements, allegedly injuring investors when the truth was revealed.

On July 6, 2020, the parties to the U.S. Class Action filed a letter and stipulation with the

Court requesting that the Court stay the U.S. Class Action pending ongoing mediation in the CCAA Proceeding. ECF No. 126.  On July 7, 2020, the Court entered a Stipulation and Order staying the U.S. Class Action until such time as (a) the court-appointed Mediator declared that the mediation process had concluded; or (b) the Canadian Court lifted the stay of proceedings in Canada. ECF No. 127.

### The California State Court Action

On August 5, 2019, a proposed shareholder class action entitled *Owens v. CannTrust Holdings Inc., et al*., Court File No. 19CV352374, was filed in California Superior Court, Santa Clara County (the "California Action").  The California Action alleges claims under the Securities Act against CannTrust, Merrill Lynch, Pierce, Fenner & Smith Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, RBC Dominion Securities Inc., Jefferies LLC, Canaccord Genuity LLC, Peter Aceto, Greg Guyatt, and Eric Paul, arising out of CannTrust's May 6, 2019 secondary offering as a result of the alleged wrongdoing that is the subject of the Class Actions.  On November 14, 2019, the California Action was stayed, pending further proceedings in the U.S. Class Action.

### CCAA Proceedings

On March 31, 2020, defendant CannTrust and certain other related parties commenced insolvency proceedings under the Companies' Creditors Arrangement Act in the Canadian Court, and obtained an order for a stay of proceedings against them, including stays of the Actions.

On May 8, 2020, the Canadian Court appointed the Hon. Dennis O'Connor, Q.C. (the "Court-Appointed Mediator") as a neutral third party to mediate a global settlement of the various actions and claims made against CannTrust and others (the "Mediation Process").

Ontario and U.S. Class Action Counsel agreed to work together as a single negotiating unit

(the "Coalition") to advance the interests of all Securities Claimants represented by them in the Mediation Process.  On January 29, 2021, the Canadian Court issued an order (the "CCAA Representation Order") appointing the Ontario Class Action and U.S. Class Action Lead Plaintiffs as CCAA Representatives and their counsel as CCAA Representative Counsel.

In tandem with the Mediation Process, CCAA Representative Counsel conducted an extensive legal and factual investigation, which included: (i) reviewing CannTrust's public disclosure documents and other publicly available information regarding CannTrust; (ii) holding discussions with an alleged CannTrust whistleblower and obtaining relevant emails; (iii) retaining and communicating with private "fact" investigators; (iv) identifying and interviewing potential "fact" witnesses; (v) communicating, to date, with over 1,300 individual Securities Claimants; (vi) retaining a cannabis consultant to advise counsel; (vii) considering expert opinion regarding applicable accounting standards by Cyrus Khory, managing director at Froese Forensic Partners Ltd.; (viii) considering expert opinion regarding applicable auditing standards by Professor Efrim Boritz, Ph.D., FCPA, FCA, CISA; (ix) retaining James Miller to provide an expert opinion regarding applicable underwriting standards; (x) retaining Sunita Surana, Ph.D., of Forensic Economics to provide an expert economic opinion on market efficiency, materiality, and damages; (xi) reviewing CannTrust's responsive insurance policies and other non-public information provided to CCAA Representative Counsel in the course of the Mediation Process; and (xii) considering the written mediation briefs and positions taken by the parties during the Mediation Process and the CCAA Proceedings.

In January 2021, following protracted negotiations over six months, the CCAA Representatives and CannTrust reached a framework for the resolution of all Securities Claims against CannTrust and related claims against co-defendants, which is reflected in the RSA.  In the

eight months since then, seven additional settlements have been reached.

On April 16, 2021, CannTrust and certain other related entities filed a plan of compromise, arrangement and reorganization pursuant to the CCAA (the CCAA Plan) in order to, among other things, implement a global resolution of the Actions and address other claims against the CannTrust entities.  By Order dated July 16, 2021, the Canadian Court entered the CCAA Sanction Order, which, among other things, authorized the implementation of the proposed Settlements, approved the A&DS, and authorized the creation of the Securities Claimant Trust.

## II.    Terms of the Settlements

Since the beginning of the Mediation Process, counsel for the plaintiffs in the Canadian Action and the U.S. Class Action, on behalf of all Securities Claimants, attended numerous formal mediation sessions with counsel to CannTrust, co-defendants, and insurers and participated in countless informal discussions with the Mediator, the CCAA Monitor, and other mediation participants.  In January 2021, following protracted negotiations over six months, Class Action Counsel and CannTrust reached the framework reflected in the RSA.  In the months since then, seven additional settlements have been reached.

Overall, in exchange for the releases and dismissals contemplated by the CCAA Plan and the Settlements, the Settling Defendants have agreed to, among other things, cause payments totaling approximately C$83,000,000, which, along with any interest earned, will be distributed after the deduction of court-awarded attorneys' fees and litigation expenses, taxes, notice and administration expenses and fees, ongoing litigation costs, and other fees and expenses allowed by the CCAA Plan and the A&DS (the "Class Compensation Fund"), to U.S. Securities Claimants and Canadian and Non-U.S. Securities Claimants (collectively, "Securities Claimants") who submit valid and timely Claim Forms and are found to be eligible to receive a distribution from

the Class Compensation Fund.  Certain Settling Defendants have also agreed to assign claims that

they have to the Securities Claimant Trust and/or to cooperate with Class Action Counsel so that

the Class Action Lead Plaintiffs can pursue litigation against, or obtain settlements with, non-

settling insurers and KPMG in Canada.

**The RSA --** On January 19, 2021, defendants CannTrust and others entered into the RSA

with the Class Action Plaintiffs in the Canadian Action and the U.S. Class Action, through their

counsel, which created a framework for the settlement of all securities claims against CannTrust

and certain of its officers and directors.  *See* Ex. 4.  The settlement reflected in the RSA is with

CannTrust and the other CCAA applicants, Mark Dawber, Greg Guyatt, John Kaden, Robert

Marcovitch, Shawna Page, Ilana Platt, Mitchell Sanders and Cajun Capital Corporation ("Original

Settlement Parties").   The RSA provided an orderly mechanism for the Class Action Lead

Plaintiffs and Class Action Counsel, with the Original Settlement Parties' help, to obtain additional

settlements and provide releases to additional parties.  In exchange for releases of liability:

1. CannTrust will pay a Cash Contribution of C$50,000,000 to the Securities Claimant Trust;

2. the Original Settlement Parties will assign their Assigned Claims, notably claims against Insurers and KPMG, to the Securities Claimant Trust;

3. CannTrust will provide information and cooperation to the Class Action Plaintiffs in the prosecution of the continuing litigation; and

4. if the aggregate amount recovered by Securities Claimants and the Securities Claimant Trust from Additional Settlement Parties and Non-Settlement Parties, whether pursuant to settlements or continued litigation, exceeds C$250 million net of litigation fees and expenses, then CannTrust Holdings will be entitled to be repaid up to C$50 million in staged amounts from the Securities Claimant Trust (such staged amounts to be agreed upon at a future date).

KPMG was CannTrust's auditor during the period when defendants allegedly issued false

and misleading financial statements.  KPMG is a defendant in the Class Actions and faces statutory

claims by shareholders.  During the Mediation Process, Class Action Counsel determined, in their judgment, that CannTrust also may have a potentially valuable auditor's negligence claim against KPMG.  Class Action Counsel believe that CannTrust has claims against KPMG in connection with its audit of CannTrust's 2018 annual financial statements and Q1 2019 review engagement. Pursuant to the CCAA Plan and CCAA Sanction Order, claims of this nature against KPMG that are not indemnity claims, contribution claims or other claims over will be assigned to the Securities Claimant Trust and will be litigated in Canada.

**Paul Settling Parties Settlement -** The settlement is with defendant Eric Paul and the Paul Family Trust and provides for payment of a Cash Contribution of C$12,000,000 and assignment of Paul's claims against his Insurer to the Securities Claimant Trust in exchange for releases of liability.  *See* Ex. 6.  As a result of the settlement and the transfer of his Assigned Claims, Paul gave up his rights to insurance coverage that would respond to regulatory or criminal proceedings. Accordingly, the settlement provides that the Securities Claimant Trust will reserve C$1 million in respect of legal costs to defend against any such proceedings.  Any funds remaining after the final disposition of such proceedings will revert back to the Securities Claimant Trust.

**The Underwriters Settlement -** The settlement is with defendant Canaccord Genuity LLC, Canaccord Genuity Corp., defendant Citigroup Global Markets Inc., Citigroup Global Markets Canada Inc., Credit Suisse Securities (Canada) Inc., defendant Credit Suisse Securities (USA) LLC, Jefferies Securities, Inc, defendant Jefferies LLC, Merrill Lynch Canada Inc., defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated, and defendant RBC Dominion Securities Inc. and provides for a Cash Contribution of US$8,000,000 in exchange for releases of liability.  *See* Ex. 7.

**Litwin Group Settlement -** The settlement is with defendant Mark Ian Litwin, Fred

Litwin, Stan Abramowitz, defendant Cannamed Financial Corp., Forum Financial Corporation, Mar-Risa Holdings Inc., York Capital Funding Inc., and Sutton Management Limited and provides for a Cash Contribution of C$11,000,000 in exchange for releases of liability.  *See* Ex. 8.  Fred Litwin allegedly controlled Forum Financial Corporation, which was a significant shareholder of CannTrust.  Fred Litwin is not a defendant to any of the Class Actions, however, he faces a claim by the Zola Plaintiffs for negligent misrepresentation in connection with a direct sale of 1,000,000 shares to them in September 2018.

**Abramowitz Settlement -** The settlement is with defendant Ian Abramowitz and provides that he will provide cooperation to the Class Action Lead Plaintiffs and assignment of his claims against his Insurer to the Securities Claimant Trust, excluding any claims, rights or entitlement that he may have to insurance coverage for criminal, regulatory or administrative proceedings, in exchange for releases of liability.  *See* Ex. 9. The settlement provides that the Securities Claimant Trust will pay the costs of Abramowitz's legal representation to aid his cooperation obligations up to a maximum of C$100,000.  Subsequently, Class Action Lead Plaintiffs and Abramowitz reached an agreement whereby Abramowitz will release all claims to insurance coverage and the Securities Claimant Trust will provide indemnification of up to C$1 million for the costs of responding to regulatory or criminal investigations and proceedings, or certain other litigation expenses. *See* Ex. 10.

**Aceto Settlement -** The Class Action Lead Plaintiffs have agreed to settle with defendant Peter Aceto and release him from liability in exchange for his cooperation.  *See* Ex. 11. A Cash Contribution will be made on his behalf by certain Insurers, assuming the settlement with them is finalized, and he will not be treated as a Released Party unless and until the Cash Contribution has been made.  As a result of the settlement, Aceto will give up his rights to insurance coverage that

would respond to regulatory or criminal proceedings.  Accordingly, the settlement provides that the Securities Claimant Trust will reserve up to C$1 million in respect of legal costs to defend against any such proceedings.

**Green Settlement –** Kenneth Brady Green is a defendant in the Ontario Class Action.  The Class Action Lead Plaintiffs have agreed to settle with Green and release him from liability in exchange for his cooperation.

**Zola Plaintiffs Settlement -** Class Action Lead Plaintiffs have entered into a settlement with opt-out plaintiff Zola Finance Holdings Ltd. and Igor Gimelshtein, who had commenced a separate action against CannTrust in Canada and elected not to be represented by the class representatives. *See* Ex. 12. The Zola Plaintiffs are Securities Claimants and fall under the definition of class members in the Ontario Class Action.  However, they were excluded from the CCAA Representation Order and have their own counsel in the CCAA Proceedings.  The Zola Plaintiffs filed a proof of claim in the CCAA Proceedings of C$45 million. From before the commencement of the CCAA Proceedings, the Zola Plaintiffs announced an intention to opt-out of the Ontario Class Action and pursue their own claims.  The Zola Plaintiffs commenced an individual action against CannTrust and others in November of 2019. The Zola Action makes unique allegations and brings claims based on the Zola Plaintiffs' direct conversations with certain defendants, as well as its direct purchase of shares from Fred Litwin. The Zola Plaintiffs agreed to support the CCAA Plan and assign their claims to the Securities Claimant Trust, in exchange for a defined allocation from the Class Settlement Amount of C$3.25 million and a *pro rata* payment from the Class Compensation Fund, which were authorized by the CCAA Court.

**Dismissal of the California Action -** In light of the Settlements, the plaintiff in the California Action will take action to cause the action to be voluntarily dismissed.

## ARGUMENT

## I.   PRELIMINARY APPROVAL OF THE SETTLEMENTS IS WARRANTED

### A.   Standards for Preliminary Approval of a Proposed Class Action Settlement

Public policy favors settlement of litigation. *See Yang v. Focus Media Holding Ltd.,* No. 11-9051, 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("[W]hen exercising discretion to approve a settlement, courts are 'mindful of 'the strong judicial policy in favor of settlements[.]'"[4] This is especially so in securities class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the court for approval, and the settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see In re Citigroup Inc. Bond Litig.,* 296 F.R.D. 147, 154 (S.D.N.Y. 2013); *In re Am. Int'l Grp., Inc. Sec. Litig.,* 293 F.R.D. 459, 464 (S.D.N.Y. 2013). District court review of a class action settlement proposal is a two-step process. WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS §13:12 (5th Ed. 2015). The first step is a preliminary, pre-notification determination of whether notice of the proposed settlement should be sent to the class. *Id.* at §13:13.

Rule 23(e) was recently amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally approve the settlement, after considering the required factors enumerated in Rule 23(e)(2), and be able to certify the class. Rule 23(e)(1)(B).

---

[4] All internal quotations and citations are omitted, unless otherwise noted.

Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

    (A)    class representatives and counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

        (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv)    any agreement required to be identified under Rule 23(e)(3);[5] and

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6]  The Rule 23 amendment, which became effective in December 2018, has not changed the overall standard for approving a settlement, *i.e.* whether or not the settlement

---

[5] Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the parties in connection with a proposed settlement.  Given the number of Settling Parties and agreements, the Court is respectfully referred to Exhibit 1 of the Johnson Declaration for a list of the agreements, some of which are not being filed publicly due to their sensitive nature.  The confidential agreements can be provided to the Court either *in camera* or under seal.  The documents require confidentiality because they relate to matters that, if disclosed, could incentivize certain persons or entities to undertake litigation positions that would be detrimental to the interests of Lead Plaintiffs and the proposed class.

[6] In assessing these core factors at the final approval stage, the Court may also consider the Second Circuit's long-standing approval factors, many of which overlap with the Rule 23 factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability and damages; (5) the risks of maintaining the class action through the trial; (6) the ability of the defendants to withstand a greater judgment; and (7) the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation.  *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

is fundamentally fair, adequate, and reasonable. The proposed Settlements here readily satisfy all these factors and should be preliminarily approved. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 330 F.R.D. 11, 60 (E.D.N.Y. 2019).

###### B.    Rule 23(e)(2)(A): Zealous Representation

Lead Plaintiffs and Lead Counsel Labaton Sucharow have zealously and pragmatically pursued the claims in this U.S. Action, on behalf of the class, since its inception and will continue to do so throughout additional proceedings in Canada and the administration of the Settlements, in order to secure and deliver the benefits of the Settlements.

Lead Plaintiffs were active and informed participants in the litigation and throughout the course of settlement discussions and the CCAA Proceedings.  Lead Counsel, together with Ontario Class Action Counsel, developed a deep understanding of the facts of the case and merits of the claims through, among other things: (i) reviewing CannTrust's public disclosure documents and other publicly available information regarding CannTrust; (ii) holding discussions with an alleged CannTrust whistleblower and obtaining relevant emails; (iii) retaining and communicating with outside private "fact" investigators, as well as in-house investigators; (iv) identifying and interviewing potential "fact" witnesses; (v) communicating, to date, with over 1,300 individual Securities Claimants; (vi) retaining a cannabis consultant to advise counsel; (vii) considering expert opinion regarding applicable accounting standards by Cyrus Khory, managing director at Froese Forensic Partners Ltd.; (viii) considering expert opinion regarding applicable auditing standards by Professor Efrim Boritz, Ph.D., FCPA, FCA, CISA; (ix) retaining James Miller to provide an expert opinion regarding applicable underwriting standards; (x) retaining Sunita Surana, Ph.D., of Forensic Economics to provide an expert economic opinion on market efficiency, materiality, and damages; (xi) reviewing CannTrust's responsive insurance policies and other non-

public information provided to counsel in the course of the Mediation Process; and (xii) considering the written mediation briefs and positions taken by the parties during the Mediation Process and the CCAA Proceedings.  Accordingly, the proposed U.S. Settlement Class has been, and remains, well represented.

### C.     Rule 23(e)(2)(B): The Settlements Are the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel

"Where the proposed settlement appears to be the product of serious, informed, non–collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  A strong presumption of fairness attaches where a settlement is "reached by experienced counsel after arm's length negotiations." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 179 (S.D.N.Y. 2014).  Additionally, "that [a] Settlement was reached . . . with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."  *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003).

The Settlements are entitled to these presumptions because they were achieved after very lengthy and thorough arm's-length negotiations over the course of approximately a year, from their start until now, which involved a court-appointed mediator and well-informed and experienced counsel—on all sides.  *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (Courts give "great weight … to the recommendations of counsel[.]").  Here, Lead Plaintiffs are represented by an experienced and skilled firm in securities class litigation. *See* Ex. 13.  Lead Counsel believes that the Settlements achieved to date are an excellent result for the U.S. Settlement Class given the attendant risks to recovering from the CannTrust related

defendants and the challenges of ongoing litigation and recommends that the Settlements be preliminarily approved.

Additionally, the Settlements were negotiated with the oversight of Lead Plaintiffs, sophisticated institutional investors, which recommend that the Settlements be approved. *See In re Veeco Instruments Inc. Sec. Litig.*, No. 05-MDL-01695(CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007) ("[U]nder the PSLRA, a settlement reached . . . under the supervision and with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'"). Thus, the procedurally fair manner in which the Settlements were reached weighs strongly in favor of granting approval.

**D.    Rule 23(e)(2)(C): The Settlements Provide Significant and Certain Benefits**

**1.    Despite Strong Claims, Risks to Achieving a Recovery Remained**

To determine whether a proposed settlement is fair, reasonable, and adequate, courts balance the continuing risks of litigation against the benefits afforded to class members through settlement. Lead Plaintiffs and Lead Counsel believe that the claims asserted in this case are strong, however in agreeing to the Settlements, they considered a variety of factors and were informed by a detailed factual investigation of public and non-public information, the advice of accounting, auditing, underwriting, and financial economics experts, and information and documents provided through the Mediation Process. Key considerations included: (a) the risks and challenges of continuing litigation, including, principally, CannTrust's ability to satisfy a judgment, other defendants' abilities to pay, and substantive and procedural legal issues; (b) estimates of damages; (c) the potential value of CannTrust Holdings' claim against KPMG; and (d) the value of claims against Insurers.

The primary consideration was that since CannTrust was engaged in the CCAA Proceedings and certain of its insurers had denied coverage, any judgment after trial could result

in a contested liquidation over CannTrust's assets. The individual defendants, other than defendants Paul and Litwin,[7] were believed to not be material sources of recovery because they had limited legal exposure or financial means. The extent to which investors could meaningfully collect on a judgment was therefore questionable and the time it would take to obtain a recovery was unknown.  The RSA with CannTrust and the other Original Settlement Parties also provided an orderly mechanism for the Class Action Lead Plaintiffs to (i) obtain additional settlements with additional parties, and (ii) to prosecute, on an expedited basis, the remaining Class Action claims and Assigned Claims in a single forum.

Settling Defendants also would advance several substantial arguments concerning liability and damages if the case continued to be litigated before the Court.  It is well known that "[s]ecurities class actions present hurdles to proving liability that are particularly difficult for plaintiffs to meet." *In re Advanced Battery*, 298 F.R.D. at 177.

With respect to establishing the Settling Defendants' liability for the Exchange Act claims, in addition to the obstacles involved in continuing to litigate only against those defendants not impacted by stays in connection with future CCAA proceedings, the main challenge Lead Plaintiffs would have faced was pleading and proving that each defendant acted with the required intent to defraud or severe recklessness necessary to establish the element of scienter.  There would have been significant factual disputes concerning, for instance, who had knowledge of the unlicensed cannabis activities, the extent to which operations were not complaint with regulations, and the defendants' knowledge of compliance requirements.

With respect to establishing liability for the Securities Act claims, among other things,

---

[7] The Litwin Group will be contributing C$11 million to the Securities Claimant Trust and the Paul Settling Parties will be contributing C$12 million to the Securities Claimant Trust.

Lead Plaintiffs would need to establish that their, and the class's, purchases were pursuant or traceable to the May 2019 secondary offering, rather than an earlier offering.  While tracing can be straight-forward where claims arise from an initial public offering, here the Settling Defendants would have strenuously contested Lead Plaintiffs' assertions that purchases were traceable to the offering.  Additionally, the Securities Act claims are subject to a "due diligence" defense. Many of the Settling Defendants, in particular the underwriter defendants, would have argued that they had no knowledge of any wrongdoing at CannTrust, that the unlicensed activities were hidden, and that they satisfied their obligations to perform the requisite due diligence, thereby immunizing them from liability.  To overcome the defense, Lead Plaintiffs would have had to convince a jury that these defendants did not conduct a reasonable investigation into whether the offering documents contained misrepresentations.

Furthermore, even once the hurdles to establishing liability were overcome, Lead Plaintiffs would also have confronted challenges in proving loss causation with respect to the Exchange Act claims and damages with respect to both the Exchange Act and Securities Act claims.  Here, Lead Counsel and Ontario Class Action Counsel consulted with an expert in damages and loss causation who has worked on numerous securities class action matters, and who analyzed class wide damages in light of the facts and circumstances presented in the case and developed through the Mediation Process. Damages assessments are very expert driven and depend on the dates of the alleged misrepresentations and corrective disclosures, the price impacts of those events, and the existence of confounding information on the stock price reaction.  Changes to the underlying assumptions, or to the misrepresentation or correction dates, could cause significant differences.

Based on the allegations in this case, Lead Plaintiffs' consulting damages expert, Dr. Surana, has estimated maximum aggregate damages to Securities Claimants of approximately

C$510 million.  Of those damages, approximately C$48 million are attributable to the Offering claims, and C$461.5 million are attributable to secondary market claims.   Using these estimates, the Settlements represent approximately 16% of maximum damages.

This percentage of recovery is well above the ranges of recoveries that have received approval within this District.  *See, e.g.*, *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x. 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages and noting that the settlement amount is "in line with other settlements in securities class actions"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages").

Moreover, the approximately C$83,000,000 (US$66,400,000) recovery is significantly above the median settlement amount of $9 million for securities class actions between 1996 and 2019, is higher than the median recovery in 2020 of $10.1 million, and is well-above the $9.4 million median recovery within the 2nd Circuit from 2011-2020. *See*, Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2020 Review and Analysis*, at 1 and 20 (Cornerstone Research 2021), Ex. 14. Thus, compared to other similarly situated cases in 2020, and during the span of the PSLRA, the Settlements are a very favorable outcome for the U.S. Settlement Class.

In light of the guaranteed cash recovery to the U.S. Settlement Class and other Securities Claimants, Lead Plaintiffs and U.S. Class Action Counsel believe that the proposed Settlements are fair, reasonable, and adequate, and in the best interests of the U.S. Settlement Class.

### 2.     The Effective Process for Distributing Relief to the Settlement Class

The Settlements, like most securities class action settlements, will be effectuated with the assistance of an established and experienced claims administrator.  The Claims Administrator will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a potential Securities Claimant (whether a member of the U.S. Settlement Class or otherwise) will submit, either by mail, e-mail, or online using the Settlement website, the Court-approved Claim Form.  Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Allocation and Distribution Scheme, and ultimately determine each eligible claimant's *pro rata* portion of the Class Compensation Fund.  *See* A&DS at ¶12, Ex. 5.  Lead Plaintiffs' claims will be reviewed in the same manner.  Claimants will be notified of any defects or conditions of ineligibility and be given the chance to challenge the rejection of their claims.  *Id*. at ¶¶26-30.

After the Settlements become effective and the claims process is completed, eligible Securities Claimants will be issued payments, as long as their payments calculate to C$50.00 or more, given the costs of issuing payments.  *Id*. at ¶14.  If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, taxes, and unpaid notice and administration expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.  At this point, if there are unclaimed funds, Class Counsel will donate the remaining funds to a non-sectarian charitable organization certified under U.S. Internal Revenue Code §501(c)(3) and/or a Canadian charity or other non-profit group to be designated by Class Counsel.

*Id*. at ¶22.

### 3.      The Settlements Do Not Excessively Compensate Lead Counsel

As an initial matter, the Settlements do not contemplate any specific fee award to U.S. or

Canadian Class Counsel.  Class Action Counsel will be compensated out of the aggregate Class

Settlement Amount, and any additional recoveries as a result of ongoing litigation, and will not be

compensated by the Settling Defendants.  The reasonableness of attorneys' fees will be decided

by the Canadian Court after Canadian and U.S. Class Counsel file an application for attorneys'

fees in an amount not to exceed 25% of the aggregate Class Settlement Amount, plus applicable

taxes and accrued interest, if any.[8]  U.S. Class Action Counsel, in its sole discretion, may allocate

a portion of its fee award to Levi & Korsinksy, additional counsel in the U.S. Class Action, and

Girard Sharp LLP and Gibbs Law Group LLP, counsel in the California Action.  Class Action

Counsel will make additional fee applications if additional recoveries are obtained as a result of

litigation.  Class Action Counsel will also apply for payment of their litigation expenses and costs

incurred in prosecuting and settling the Actions, including the hourly legal fees charged by Weisz

Fell Kour LLP and incurred by Labaton and reimbursement to the Class Action Lead Plaintiffs for

their reasonable costs and expenses (including lost wages) related to their representation of the

Securities Claimants.

### E.      Rule 23(e)(2)(D): Class Members Are Treated <u>Equitably Relative to One Another</u>

---

[8] This amount is in line with the fee percentages that courts in the Second Circuit have approved in class actions with comparable recoveries.  *See, e.g., In re Monster Inc. Sec.. Litig.*, 07-cv-2237-JSR (awarding 25% of $47.5 million settlement); *In re NQ Mobile, Inc. Sec. Litig.*, Case No. 1:13-cv-07608-WHP, slip op. (S.D.N.Y. Mar. 11, 2016) (awarding 30% of a $60.5 million settlement); *In re Deutsche Telekom AG Sec. Litig.,* No. 00-CV-9475 (NRB), 2005 U.S. Dist. LEXIS 45798, at *12 (S.D.N.Y. June 14, 2005) (awarding 28% of $120 million settlement); *In re Comverse Techs. Inc. Sec. Litig.,* No. 06-1825, 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) (awarding 25% of $225 million settlement).

The Settlements do not improperly grant preferential treatment to either Lead Plaintiffs or any segment of the U.S. Settlement Class.  Rather, all members of the U.S. Settlement Class, including Lead Plaintiffs, and other Securities Claimants with eligible claims will receive a distribution from the Class Compensation Fund pursuant to the proposed A&DS, which appears at the end of the proposed long-form notice. The proposed A&DS was created by Lead Plaintiffs' consulting damages expert and has been approved by the CCAA Court.

All Securities Claimants that were allegedly harmed as a result of the alleged wrongdoing, and submit timely and valid Claim Forms, will receive their *pro rata* share of the Class Compensation Fund based on their "Recognized Claim" under the A&DS.  The A&DS is designed to provide compensation based on: (a) the period of time during which shares were acquired; (b) the date on which the shares were sold or if they are still held; and (c) whether they were acquired pursuant to the May 2019 Offering or on the secondary market.  Here, the alleged wrongdoing was disclosed from July 8, 2019 through September 17, 2019.  Accordingly, under the A&DS, purchases at or after 3:13 p.m. ET on September 17, 2019 are not eligible for a recovery because the full truth about the wrongdoing alleged in this case was allegedly revealed by this point in time. *See, e.g.*, *In re Merrill Lynch Tyco Research Sec. Litig.,* 249 F.R.D. 124, 135 (S.D.N.Y. 2008) ("A plan of allocation that calls for the pro rata distribution of settlement proceeds on the basis of investment loss is presumptively reasonable.").

## II.    PRELIMINARY CERTIFICATION OF THE U.S. SETTLEMENT CLASS

Lead Plaintiffs respectfully request that the Court preliminarily certify the U.S. Settlement Class for purposes of the Settlements only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed U.S. Settlement Class consists of:

(i) all persons and entities who or which purchased the publicly traded common stock of CannTrust Holdings Inc. on the New York Stock Exchange or on any U.S. based trading platform

during the period from June 1, 2018 through March 31, 2020, inclusive (the "Claim Period");[9] and

(ii) all persons and entitles who or which purchased or otherwise acquired CannTrust Holdings Inc. common stock pursuant or traceable to the Offering Materials (as defined in the Complaint) issued in connection with the secondary public offering, completed on or about May 6, 2019.[10]

Pursuant to Rule 23(a): (i) the U.S. Settlement Class is likely to consist of tens of thousands of class members and is so numerous that joinder of all members is impracticable; (ii) as explained above, there are numerous questions of law or fact common to the U.S. Settlement Class; (iii) the claims or defenses of Lead Plaintiffs are typical of the claims or defenses of the U.S. Settlement Class; and (iv) Lead Plaintiffs and Lead Counsel will fairly and adequately protect the interests of the U.S. Settlement Class.

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The proposed U.S. Settlement Class meets this standard: (i) common questions of both fact and law predominate, given the presumptions of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) or *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972); and (ii) a class action would be superior to other methods for the fair and efficient adjudication of the claims.

---

[9] It is alleged that Defendants made false and misleading statements and omissions during the period from June 1, 2018 through September 17, 2019. The Claim Period then extends from September 18, 2019 through March 31, 2020, the date when the CannTrust Group commenced insolvency proceedings under the CCAA.

[10] Certain individuals and entities are excluded from the U.S. Settlement Class by definition. Also excluded from the proposed class are any persons or entities who or which exclude themselves by submitting a timely and valid request for exclusion that is accepted by the Court.

Courts within the Second Circuit have long acknowledged the propriety of certifying settlement classes. "Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re IMAX Sec. Litig.,* 283 F.R.D. 178, 186 (S.D.N.Y. 2012). For the foregoing reasons, Lead Plaintiffs respectfully request that the Court preliminarily certify the U.S. Settlement Class solely for purposes of implementing the proposed Settlements.

## III.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

The proposed Notice and Summary Notice, attached as Exhibits 1 and 3 to the proposed Preliminary Approval Order, would satisfy due process, the federal rules, and the PSLRA. Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Due process is satisfied if the notice "fairly apprise[s] the [prospective] members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.* 396 F.3d  at 114.

Collectively, the proposed forms of notice here describe, *inter alia*: (i) the terms of the Settlements and the recovery; (ii) the reasons for the Settlements; (iii) the maximum attorneys' fees that may be sought in connection with the Settlements; (iv) the procedures for requesting exclusion from the U.S. Settlement Class and objecting; (v) the procedure for submitting a claim; (vi) the proposed A&DS for distributing the settlement proceeds to eligible claimants; and (vii) the date, time and place of the Settlement Hearing (which can be held in-person or remotely, in the Court's discretion).  The Notice also satisfies the PSLRA's separate requirements by, *inter alia,* stating: (i) the amount of the Settlements determined in the aggregate and on an average per

share basis; (ii) that the Settling Parties do not agree on the average amount of damages per share that would be recoverable; (iii) that Class Action Counsel intend to make an application for attorneys' fees (including the amount of such fees on an average per share basis); (iv) the name, telephone number, and address of Lead Counsel; and (v) the reasons why the Settling Parties are proposing the Settlement. 15 U.S.C. §78u-4(a)(7)(A)-(F).

The proposed notice program uses the "gold standard" method in securities cases for notifying class members: individual notice by mail, publication in *The Wall Street Journal*, a national newspaper focusing on investors, and dissemination over the internet using a wire service. To the extent email addresses are provided to the Claims Administrator, the Notice will also be emailed.  Upon entry of the Preliminary Approval Order, the Claims Administrator will mail the Notice and Claim Form to all members of the U.S. Settlement Class who can be identified and located, using information provided by CannTrust's transfer agent, as well as information provided by banks, brokers, and other nominees about their customers who may have eligible purchases.[11] The Notice and Claim Form will be available on the Settlement website and Lead Counsel's website.

Lead Plaintiffs also request that the Court appoint Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Claims Administrator to provide all notices approved by the Court and to process Claim Forms. Epiq is a nationally recognized notice and claims administration firm that has successfully and efficiently administered numerous complex securities class action settlements, including the recent Petrobras settlement, and cross-border cases.  *See* Ex. 15.

---

[11] Because of the availability of name and address data for potential class members from third-parties, and the Claims Administrator's ability to reach class members through individual mailed notice, social media outreach will not be necessary here.

**IV.     PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS**

Lead Plaintiffs respectfully propose the following schedule for settlement-related events. The proposed schedule revolves around the date that the Court enters the Preliminary Approval Order and the date on which the Court schedules the final Settlement Hearing—which Lead Plaintiffs request be approximately 100 days from the date of this motion.  In view of the fact that entry of the judgment approving the Settlements is a condition to implementation of the CCAA Plan which includes, among other things, the restructuring of CannTrust and the administration of the Settlements for the benefit of both United States and Canadian claimants, we respectfully request that the Court schedule the final Settlement Hearing as promptly as practicable after the expiration of the applicable notice periods:

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice and Claim Form to U.S. Settlement Class Members (the "Notice Date") | *No later than 10 business days after entry of Preliminary Approval Order.* |
| Deadline for publishing the Summary Notice | *Within 14 calendar days of the Notice Date.* |
| Deadline for filing motions in support of final approval of the Settlements and the A&DS | *No later than 35 calendar days before the Settlement Hearing.* |
| Deadline for receipt of requests for exclusion or objections | *Received no later than 21 calendar days before the Settlement Hearing.* |
| Deadline for filing reply papers | *No later than 7 calendar days before the Settlement Hearing.* |
| Settlement Hearing | *At the Court's earliest convenience, approximately 100 days from the date of this motion.  The hearing can be held either in-person or remotely, in the discretion of the Court.  Any scheduling updates will be posted on the Settlement website and Lead Counsel's website.* |
| Deadline for submitting Claim Forms | *180 days from the Notice Date in order to allow coordination with Canadian mailing.* |

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, submitted herewith, which will: (i) preliminarily approve the Settlements; (ii) approve the proposed manner and forms of notice to the U.S. Settlement Class; (iii) appoint Epiq as Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlements and related matters, and grant such other and further relief as may be required.

DATED: August 26, 2021

**LABATON SUCHAROW LLP**

*/s/ James W. Johnson*
James W. Johnson
Michael H. Rogers
David J. Schwartz
James T. Christie
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: jjohnson@labaton.com
         mrogers@labaton.com
         dschwartz@labaton.com
         jchristie@labaton.com

*Counsel for Lead Plaintiffs Granite Point*
*Master Fund, LP and Granite Point Capital*
*Scorpion Focused Ideas Fund, and*
*Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

/s/ *James W. Johnson*
JAMES W. JOHNSON