# Exhibit 3

Court File No. CV-20-00638930-00CL

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**CANNTRUST HOLDINGS INC., CANNTRUST INC.,**
**CTI HOLDINGS (OSOYOOS) INC., AND ELMCLIFFE INVESTMENTS INC.**

Applicants

---

**FOURTH AMENDED & RESTATED**
**PLAN OF COMPROMISE, ARRANGEMENT AND REORGANIZATION**
**OF**
**CANNTRUST HOLDINGS INC.,**
**CANNTRUST INC., and**
**ELMCLIFFE INVESTMENTS INC.**

---

July 7, 2021

MT MTDOCS 41518312

ii

## TABLE OF CONTENTS

**Page**

ARTICLE 1 INTERPRETATION..................................................................................................1

  1.1     Definitions.........................................................................................................1
  1.2     Certain Rules of Interpretation........................................................................14
  1.3     Successors and Assigns....................................................................................15
  1.4     Governing Law and Jurisdiction......................................................................15
  1.5     Schedules .........................................................................................................15

ARTICLE 2 PURPOSE AND EFFECT OF THE CCAA PLAN................................................16

  2.1     Purpose.............................................................................................................16
  2.2     Affected Claims and Released Claims..............................................................16
  2.3     Unaffected Claims ...........................................................................................16
  2.4     Equity Claims...................................................................................................18

ARTICLE 3 CLASSIFICATION AND TREATMENT OF AFFECTED CREDITORS AND
RELATED MATTERS.................................................................................................18

  3.1     Claims Procedure .............................................................................................18
  3.2     Classification of Creditors ...............................................................................18
  3.3     Meetings of Affected Creditors .......................................................................18
  3.4     Treatment of General Unsecured Claims..........................................................19
  3.5     Treatment of Securities Claims........................................................................20
  3.6     Insured Claims .................................................................................................20
  3.7     Unresolved General Unsecured Claims ............................................................21
  3.8     Extinguishment of Claims................................................................................21
  3.9     Guarantees and Similar Covenants ..................................................................22
  3.10    Set-Off.............................................................................................................22

ARTICLE 4  DEFINITIVE  DOCUMENTS,  LITIGATION  ARRANGEMENTS  AND
RESTRUCTURING STEPS.........................................................................................22

  4.1     Securities Claimant Trust.................................................................................22
  4.2     Settlement-Related Agreements.......................................................................22
  4.3     U.S. Class Action and California Action ..........................................................23
  4.4     Litigation Cooperation of CannTrust Holdings ...............................................24
  4.5     Articles of Reorganization ...............................................................................26
  4.6     Restructuring Steps ..........................................................................................26
  4.7     Corporate Approvals ........................................................................................27

ARTICLE 5 CASH POOL AND UNRESOLVED GENERAL UNSECURED CLAIMS .....27

  5.1     GUC Distribution Pool .....................................................................................27
  5.2     Unresolved General Unsecured Claims Reserve ..............................................27

MT MTDOCS 41518312

iii

ARTICLE 6 DISTRIBUTIONS, PAYMENTS AND CURRENCY .......................................28

6.1      Distributions Generally.............................................................................28
6.2      Payments of Certain Unaffected Claims and Other Amounts .........................28
6.3      Distribution Mechanics for Affected Claims.................................................28
6.4      Distributions in Respect of Unresolved General Unsecured Claims ................29
6.5      Allocation of Distributions .......................................................................29
6.6      Treatment of Unclaimed Distributions ........................................................29
6.7      Withholding Rights...................................................................................30
6.8      Cancellation of Certificates and Notes, etc..................................................31
6.9      Calculations.............................................................................................31
6.10     Currency Matters .....................................................................................31

ARTICLE 7 RELEASES AND ADDITIONAL SETTLEMENT PARTIES ...........................31

7.1      Additional Settlement Parties ....................................................................31
7.2      Plan Releases ..........................................................................................32
7.3      Injunctions..............................................................................................32

ARTICLE 8 COURT SANCTION.....................................................................................34

8.1      Application for CCAA Sanction Order.........................................................34
8.2      CCAA Sanction Order ..............................................................................34

ARTICLE 9 PLAN CONDITIONS PRECEDENT AND IMPLEMENTATION ...................40

9.1      Conditions Precedent to Plan Implementation...............................................40
9.2      CannTrust Plan Companies' Certificate – Plan Implementation......................41
9.3      Monitor's Certificate – Plan Implementation ...............................................41

ARTICLE 10 GENERAL ..................................................................................................41

10.1     Binding Effect..........................................................................................41
10.2     Deeming Provisions..................................................................................42
10.3     Modification of the CCAA Plan .................................................................43
10.4     Paramountcy ...........................................................................................44
10.5     Severability of Plan Provisions..................................................................44
10.6     Protections of the Monitor ........................................................................44
10.7     Different Capacities .................................................................................45
10.8     Notices ...................................................................................................45
10.9     Further Assurances...................................................................................46
10.10    Language.................................................................................................46
10.11    Acts to Occur on Next Business Day...........................................................46
10.12    Non-Consummation of the CCAA Plan .......................................................47

**FOURTH AMENDED & RESTATED**
**PLAN OF COMPROMISE, ARRANGEMENT**
**AND REORGANIZATION**

This is the fourth amended & restated plan of compromise, arrangement and reorganization of CannTrust Holdings, CannTrust Opco and Elmcliffe pursuant to the CCAA and OBCA.

## ARTICLE 1
## INTERPRETATION

### 1.1    Definitions

In the CCAA Plan:

"**Actions**" means the actions and other litigation set out in Schedule A.

"**Additional RSA**" means a restructuring support agreement or other form of settlement agreement between CannTrust Holdings, the CCAA Representatives and an Additional Settlement Party that, among other things, designates such Additional Settlement Party as an Additional Settlement Party for the purposes of this CCAA Plan.

"**Additional Settlement Party**" means each of:

(i)   Brady Green;

(ii)  Ian Abramowitz;

(iii) the Underwriters;

(iv)  Eric Paul and the Paul Family Trust;

(v)   Mark Ian Litwin, Fred Litwin, Stan Abramowitz, Cannamed Financial Corp., Forum Financial Corporation, Mar-Risa Holdings Inc., York Capital Funding Inc. and Sutton Management Limited;

(vi)  the Insurers listed in Schedule E (in their capacity as an Insurer in relation to the Insurance Policies) who have executed and delivered to CannTrust Holdings and the CCAA Representatives the Additional RSA for the applicable group of Insurers prior to the Plan Implementation Date; and

(vii) Peter Aceto, provided that he has executed and delivered his Additional RSA to CannTrust Holdings and the CCAA Representatives prior to the Plan Implementation Date; and

(viii) any Co-Defendant or Insurer that has been designated as an Additional Settlement Party in accordance with Section 7.1 of the CCAA Plan.

"**Affected Claim**" means a Securities Claim or General Unsecured Claim.

"**Affected Creditor**" means a Creditor with an Affected Claim.

2

"**Allocation and Distribution Scheme**" means the allocation and distribution scheme attached as Schedule B, to be included within the terms of, or attached as a schedule to, the Trust Declaration and approved by the CCAA Court pursuant to the CCAA Sanction Order, or such other or different allocation and distribution scheme that is devised by the Trustees and approved by the CCAA Court or the Ontario Court.

"**Applicable Law**" means:

(i)    any applicable domestic or foreign law including any statute, subordinate legislation or treaty, as well as the common law; and

(ii)    any applicable and enforceable rule, regulation, requirement, order, judgment, injunction, award or decree of a Governmental Authority.

"**Articles of Reorganization**" means articles of reorganization of CannTrust Holdings to effect, among other things, a change of the name of CannTrust Holdings, the form of which will be approved in the manner specified by the CCAA Sanction Order.

"**Assigned Claims**" means (i) the claims of CannTrust Holdings and CannTrust Opco against any Co-Defendant that is a Non-Settlement Party, other than claims barred by the CCAA Sanction Order in the manner contemplated by Section 7.3(3) and, if applicable, (ii) the claims of CannTrust Holdings and the other Settlement Parties against any Insurer that is a Non-Settlement Party, in each case to the extent such claims are for loss or damage up to the date of the CCAA Sanction Order and arise from or relate to the Securities-Related Matters;

"**Assigned Claims Related Agreement**" is defined in Section 8.2(s).

"**Business Day**" means a day other than a Saturday, Sunday, statutory or civic holiday in Toronto, Ontario.

"**California Action**" means *Owens v. CannTrust Holdings Inc. et al.,* Court File No. 19CV352374 (California Superior Court, Santa Clara County).

"**CannTrust Group**" means the applicants in the CCAA Proceedings.

"**CannTrust Holdings**" means CannTrust Holdings Inc.

"**CannTrust Opco**" means CannTrust Inc.

"**CannTrust Plan Companies**" means CannTrust Holdings, CannTrust Opco and Elmcliffe.

"**Cash Contributions**" means, collectively:

(i)    the contribution of $50 million to the Securities Claimant Trust to be made by CannTrust Holdings pursuant to the CCAA Plan; and

MT MTDOCS 41518312

> (ii)    each cash contribution to the Securities Claimant Trust to be made by an Additional Settlement Party, in the amount agreed between the Additional Settlement Party, CCAA Representative Counsel and CannTrust Holdings.

"**CCAA**" means the *Companies' Creditors Arrangement Act* (Canada).

"**CCAA Canadian Representative Counsel**" is defined in the CCAA Representation Order.

"**CCAA Charges**" means all court-ordered charges created by the Initial Order or any subsequent Order in the CCAA Proceedings.

"**CCAA Court**" means the Ontario Superior Court of Justice (Commercial List), in its capacity as the court supervising the CCAA Proceedings.

"**CCAA Plan**" means this plan of compromise, arrangement and reorganization of the CannTrust Plan Companies pursuant to the CCAA and OBCA, including all Schedules.

"**CCAA Priority Payment Claims**" means the claims described in sections 6(3), (5) and (6) of the CCAA.

"**CCAA Proceedings**" means the proceedings commenced by the Initial Order under the CCAA in respect of the CannTrust Group.

"**CCAA Representation Order**" means the Order of the CCAA Court made on January 29, 2021 appointing the CCAA Representatives and CCAA Representative Counsel in the CCAA Proceedings.

"**CCAA Representative Counsel**" is defined in the CCAA Representation Order.

"**CCAA Representatives**" is defined in the CCAA Representation Order.

"**CCAA Sanction Order**" means the Order of the CCAA Court to be made under the CCAA and OBCA, among other things, sanctioning the CCAA Plan, approving the Articles of Reorganization, approving the Allocation and Distribution Scheme, and providing for the releases, injunctions and other relief contemplated in the CCAA Plan, in form and content satisfactory to the CannTrust Plan Companies.

"**CCAA Termination Order (CTI)**" means the Order of the CCAA Court to be made under the CCAA, among other things, terminating the CCAA Proceedings in respect of CTI, in form and content satisfactory to the CannTrust Group.

"**CCAA U.S. Representative Counsel**" is defined in the CCAA Representation Order.

"**Certificate of Amendment**" means the certificate of amendment to be issued under section 186 of the OBCA in respect of the Articles of Reorganization.

"**Channelled Claims**" means the Insured Securities Claims, the Insured Securities-Related Claims and the Securities-Related Section 5.1(2) Claims.

4

"**Claim**" means any right or claim of any Person that may be asserted or made in whole or in part against any of the CannTrust Plan Companies, whether or not asserted or made, in connection with any indebtedness, liability or obligation of any kind whatsoever, and any interest accrued thereon or costs payable in respect thereof, including by reason of the commission of a tort (intentional or unintentional), by reason of any breach of contract or other agreement (oral or written), by reason of any breach of duty (including any legal, statutory, equitable or fiduciary duty) or by reason of any right of ownership of or title to property or assets or right to a trust or deemed trust (statutory, express, implied, resulting, constructive or otherwise), and whether or not any such indebtedness, liability or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, perfected, unperfected, present or future, known or unknown, by guarantee, surety or otherwise, and whether or not such right or claim is executory or anticipatory in nature (including any right or claim in connection with the sale of any securities by CannTrust Holdings or others pursuant to the public distribution of its securities or any right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future), which indebtedness, liability or obligation, and any interest accrued thereon or costs payable in respect thereof (A) is based in whole or in part on facts existing prior to the Filing Date, (B) relates to a time period prior to the Filing Date, or (C) is a right or claim of any kind that would be a claim provable in bankruptcy within the meaning of the *Bankruptcy and Insolvency Act* (Canada) had such CannTrust Plan Company become bankrupt on the Filing Date, including any Restructuring Claim, any Securities Claim, any Securities-Related Indemnity Claim and any other Equity Claim against any of the CannTrust Plan Companies.

"**Claims Officer Order**" means the claims officer order of the CCAA Court made in the CCAA Proceedings on February 19, 2021 in respect of the appointment of a claims officer and the determination of certain Claims.

"**Claims Procedure Order**" means the claims procedure order of the CCAA Court made in the CCAA Proceedings on May 8, 2020 and any other order of the CCAA Court made in the CCAA Proceedings in respect of the process governing the proof of claims.

"**Class Action Counsel**" is defined in the RSA.

"**Class Action Lead Plaintiffs**" is defined in the RSA.

"**Co-Defendant**" means, at the relevant time:

    (i)   any Person named as a defendant in an Action that is not a Settlement Party, and

    (ii)  any Person that could be named as a co-defendant in an Action based on or arising out of the Securities-Related Matters who is not a Settlement Party and has or could have a Securities-Related Indemnity Claim against a Released Party.

"**Convenience Creditor**" is defined in Section 3.4(2)(a).

"**Cooperation Agreement**" means an agreement between the RSA Parties consistent with the general principles set out in Schedule C, in form and content satisfactory to the RSA Parties.

5

"**Creditor**" means a Person having a Claim and includes the transferee or assignee of a transferred Claim that is recognized as a Creditor by the Monitor in accordance with the Claims Procedure Order, or a trustee, liquidator, receiver, receiver and manager or other Person acting on behalf of such Person.

"**CRO**" means FTI Consulting Canada Inc.

"**Cross-Border Action**" is defined in Section 4.4(a).

"**CTI**" means CTI Holdings (Osoyoos) Inc.

"**D&O Claim**" is defined in the Claims Procedure Order.

"**Defence Costs Indemnity Claim**" means any claim against CannTrust Holdings for indemnification, reimbursement or advancement of defence costs incurred by any Person who is not a Settlement Party in connection with defending against the Actions or any other Securities-Related Claim.

"**Definitive Documents**" means the CCAA Plan, the Settlement-Related Agreements, the CCAA Sanction Order, the U.S. Approval Order and all other agreements, consents, releases, documents and orders contemplated by, or necessary or desirable to implement the transactions contemplated by, any of the foregoing or the RSA or the RSA Supplemental Letter Agreement.

"**DIP and Exit Lender**" means the lender or lenders of any DIP and Exit Loan.

"**DIP and Exit Loan**" means any loan or loan facility made available to the CannTrust Group for working capital purposes during and/or after exit from the CCAA Proceedings that is authorized by an Order of the CCAA Court during the CCAA Proceedings.

"**Director**" means any Person who, as at the Effective Time, is a former or current director or officer of any of the CannTrust Plan Companies or any other Person of a similar position or who by Applicable Law is deemed to be or is treated similarly to a director or officer of any of the CannTrust Plan Companies or who currently manages or supervises the management of the business and affairs of any of the CannTrust Plan Companies or did so in the past.

"**Distribution Date**" means a Business Day upon which distributions are made by the CannTrust Plan Companies to General Unsecured Creditors in accordance with the provisions of the CCAA Plan.

"**Distribution Record Date**" means the date that is seven (7) Business Days prior to the Distribution Date.

"**Effective Time**" means such time on the Plan Implementation Date as the CannTrust Plan Companies may determine and designate in the certificate contemplated by Section 9.2.

"**Election Amount**" means $2,500.

6

**"Election Notice"** means a duly and timely filed election in the form contemplated by the Meeting Order pursuant to which a General Unsecured Creditor with Proven Claims that are General Unsecured Claims (Opco) exceeding in aggregate the Election Amount elects to receive, subject to the terms and implementation of the CCAA Plan, payment of the Election Amount as a Convenience Creditor in full satisfaction of such Proven Claims pursuant to Section 3.4(3).

**"Elmcliffe"** means Elmcliffe Investments Inc.

"**Encumbrance**" means any mortgage, charge, pledge, lien (statutory or otherwise), hypothec, security interest (whether contractual, statutory or otherwise), encumbrance, statutory or possessory lien, trust or deemed trust (whether contractual, statutory or otherwise), execution, levy, charge, interest in property, or other financial or monetary claim or lease of personal property that creates a security interest, in respect of any assets that any of the CannTrust Plan Companies owns or to which any of the CannTrust Plan Companies is entitled or that secures payment or performance of an obligation, or similar charge of any kind.

"**Equity Claim**" means a Claim that constitutes an "equity claim" as that term is defined in section 2 of the CCAA, excluding any Claim by a member of the CannTrust Group against another member of the CannTrust Group.

**"Existing Agreement"** is defined in Section 8.2(t).

"**Existing Shares**" means, in the case of CannTrust Holdings, the common shares and any other shares or similar securities in its capital immediately prior to the Plan Implementation Date.

"**Filing Date**" means March 31, 2020.

**"General Unsecured Claim"** means a Claim against any of the CannTrust Plan Companies that is not a Securities Claim, a Securities-Related Indemnity Claim, another Equity Claim or an Unaffected Claim.

"**General Unsecured Claim (CannTrust Holdings)**" means a General Unsecured Claim against CannTrust Holdings.

"**General Unsecured Claim (Elmcliffe)**" means a General Unsecured Claim against Elmcliffe.

"**General Unsecured Claim (Opco)**" means a General Unsecured Claim against CannTrust Opco.

"**General Unsecured Creditor**" means a Creditor with a General Unsecured Claim.

"**Governmental Authority**" means any domestic or foreign legislative, executive, judicial or administrative body or Person having jurisdiction in the relevant circumstances.

"**GUC Distribution Pool**" means $900,000 to fund distributions to General Unsecured Creditors (Opco) with Proven Claims as provided in the CCAA Plan, which amount includes the amount to be held in the Unresolved General Unsecured Claims Reserve in respect of General Unsecured Claims (Opco) that are Unresolved General Unsecured Claims.

"**Initial Distribution Date**" means the first Distribution Date determined by the CannTrust Plan Companies, which will be as soon as practicable following the Plan Implementation Date.

"**Initial Order**" means the order obtained from the CCAA Court upon application by the CannTrust Group on the Filing Date commencing the CCAA Proceedings.

"**Insurance Policies**" means the insurance policies listed in Schedule E.

"**Insured Non-Securities Claim**" means that portion of a Claim that is not a Securities Claim or Securities-Related Indemnity Claim arising from a cause of action for which the applicable CannTrust Plan Company is covered by insurance, only to the extent of such coverage and limited to the actual recovery received from the applicable insurer(s) by the CannTrust Plan Company after the Effective Time in respect of such Claim.

"**Insured Securities Claim**" means that portion of a Claim that is a Securities Claim for which CannTrust Holdings is covered by insurance provided by one or more Insurers who are not Settlement Parties, only to the extent of such coverage and limited to the actual recovery received from such Insurer(s) by CannTrust Holdings (or by the Securities Claimant Trust pursuant to any Assigned Claim(s) against such Insurer(s)) after the Effective Time in respect of such Claim.

"**Insured Securities-Related Claim**" means that portion of a claim that is a Securities-Related Claim for which a Settlement Party is covered by insurance provided by one or more Insurers who are not Settlement Parties, only to the extent of such coverage and limited to the actual recovery received from such Insurer(s) by the Settlement Party (or by the Securities Claimant Trust pursuant to any Assigned Claim(s) against such Insurer(s)) after the Effective Time in respect of such claim.

"**Insurer**" means an insurer that has provided insurance with respect to any Securities-Related Matters (including with respect to a Securities Claim or Securities-Related Claim) to (i) a Settlement Party or (ii) a Co-Defendant that is or was a Director of CannTrust Holdings and/or CannTrust Opco.

"**Meeting**" means each of the meetings of Affected Creditors to consider and vote on the CCAA Plan held pursuant to the Meeting Order.

"**Meeting Order**" means the order directing the calling and holding of the Meetings of Affected Creditors to consider and vote on the CCAA Plan in form and content satisfactory to the CannTrust Plan Companies.

"**Monitor**" means Ernst & Young Inc., in its capacity as the monitor appointed pursuant to the Initial Order, and any successor thereto appointed in accordance with any further order of the CCAA Court.

"**Non-Released CannTrust Claims**" means:

(i)     the right to enforce against the applicable CannTrust Plan Company its obligations under the CCAA Plan;

8

(ii)     the right to enforce the Unaffected Claims against the applicable CannTrust Plan Company (subject to the injunction and related treatment contemplated by this CCAA Plan and the CCAA Sanction Order in respect of any Unaffected Claims that are Channelled Claims);

(iii)    solely as against a Director in his or her capacity as such, any claim that is not permitted by section 5.1(2) of the CCAA to be compromised;

(iv)    any claim against a CannTrust Plan Company for the purchase or supply of goods or services delivered after the Filing Date; and

(v)     the right to enforce against the applicable CannTrust Plan Company any agreement in force at the Effective Time that was entered into by such CannTrust Plan Company between the Filing Date and the Plan Implementation Date, or that was entered into prior to the Filing Date and not disclaimed during the CCAA Proceedings pursuant to the applicable paragraph of the Initial Order and related provision of the CCAA or otherwise terminated, subject to the compromise and/or release of any Claim held by the applicable counterparty under such agreement pursuant to the CCAA Plan or the CCAA Sanction Order.

"**Non-Settlement Party**" means, at the relevant time, any Co-Defendant or Insurer that is not a Settlement Party.

"**OBCA**" means the *Business Corporations Act* (Ontario).

"**Ontario Class Action**" means *Hrusa et al. v. CannTrust Holdings Inc. et al.,* Court File No. CV-19-00623567-00CP (ON SC).

"**Ontario Court**" means the Ontario Superior Court of Justice (Commercial List).

"**Order**" means any order, injunction, judgment, decree, ruling, writ, assessment or arbitration award of a Governmental Authority.

"**Original Settlement Parties**" means each member of the CannTrust Group, Mark Dawber, Greg Guyatt, John Kaden, Robert Marcovitch, Shawna Page, Ilana Platt, Mitchell Sanders and Cajun Capital Corporation.

"**Person**" means any individual, corporation, limited or unlimited liability company, general or limited partnership, association, trust, unincorporated organization, joint venture, government or any agency, officer or instrumentality thereof or any other entity.

"**Plan Implementation Conditions**" is defined in Section 9.1.

"**Plan Implementation Date**" means the date of the Certificate of Amendment.

"**Proof of Claim**" means a valid proof of claim filed in accordance with the Claims Procedure Order.

9

"**Proven Claim**" means a Claim (or the portion thereof) that has been finally determined:

(i)      in the case of a General Unsecured Claim, in accordance with the Claims Procedure Order for voting and distribution purposes;

(ii)     in the case of a Securities Claim, in accordance with the Meeting Order for voting purposes and in accordance with the Allocation and Distribution Scheme for distribution purposes; and

(iii)    in the case of an Unaffected Claim, in accordance with the Claims Procedure Order for the purpose of any payment thereof or another purpose contemplated by the CCAA Plan.

"**Released Additional Settlement Parties**" means the Additional Settlement Parties and their respective Representatives.

"**Released CannTrust Claims**" means (A) any and all Claims and (B) any and all other demands, claims (including claims for contribution or indemnity and D&O Claims (as defined in the Claims Procedure Order)), actions, causes of action, counterclaims, suits, debts, sums of money, liabilities, accounts, covenants, damages, judgments, orders (including orders for injunctive relief or specific performance and compliance orders), expenses, executions, encumbrances and recoveries on account of any liability, obligation, demand or cause of action of whatever nature (including for, alleged oppression, misrepresentation, wrongful conduct, fraud or breach of fiduciary duty by any Released CannTrust Party) that any Affected Creditor or other Person has or may be entitled to assert against any of the Released CannTrust Parties, whether known or unknown, matured or unmatured, contingent or actual, direct, indirect or derivative, at common law, in equity or under contract or statute, foreseen or unforeseen, existing or hereafter arising, in any jurisdiction, based in whole or in part on any act, omission, transaction, duty, responsibility, indebtedness, liability, obligation, dealing, matter or occurrence existing or taking place at or prior to the Effective Time that in any way relate to or arise out of or in connection with:

(i)      any Claim, including any Claim that is enumerated in section 19(2) of the CCAA and that is compromised under the CCAA Plan in accordance with such section as a consequence of the applicable creditor's vote in favour of or other form of consent to the CCAA Plan;

(ii)     any of the assets, obligations, business, operations or affairs of a member of the CannTrust Group; or

(iii)    the CCAA Proceedings or any matter or transaction involving any member of the CannTrust Group occurring in or in connection with the CCAA Proceedings (including the CCAA Plan and the development of it),

but excluding Non-Released CannTrust Claims and Channelled Claims.

"**Released CannTrust Parties**" means the Original Settlement Parties, the other entities in which CannTrust Holdings owns directly or indirectly not less than 50% of the common equity,

10

the Monitor, and their respective Representatives, but excluding the Directors named as defendants in one or more of the Actions who are not Settlement Parties and the Representatives of each such excluded Director.

"**Released Claims**" means the Released CannTrust Claims, the Released Securities-Related Claims and, subject to Section 7.1(4), the Released Insurance Claims.

"**Released Insurance Claims**" means any past, present, or future claim against any Insurers that are Additional Settlement Parties for coverage, damages, or any other benefit by any insured party, or by any other individual or entity, under or in connection with the Insurance Policies, including: (i) any claims under or in connection with the Insurance Policies for indemnity, damages, advancement, defence costs, or any payment of funds of any kind related to any civil, criminal, administrative, extradition, or regulatory proceeding, or formal or informal investigation by an external body or person, including any appeal therefrom; and (ii) any other claims under or in connection with the Insurance Policies concerning any subject-matter whatsoever, including any extra-contractual claims.

 "**Released Parties**" means the Released CannTrust Parties and the Released Additional Settlement Parties.

"**Released Securities-Related Claims**" means (A) any and all Securities Claims and Securities-Related Claims against any of the Released Parties, (B) any and all Securities-Related Indemnity Claims against any of the Released Parties, and (C) any and all other demands, claims (including claims for contribution or indemnity), actions, causes of action, counterclaims, suits, debts, sums of money, liabilities, accounts, covenants, damages, judgments, orders (including orders for injunctive relief or specific performance and compliance orders), expenses, executions, encumbrances and recoveries on account of any liability, obligation, demand or cause of action of whatever nature (including for, alleged oppression, misrepresentation, wrongful conduct, fraud or breach of fiduciary duty by any Settlement Party) that any Securities Claimant, Co-Defendant or other Person has or may be entitled to assert against any of the Released Parties, whether known or unknown, matured or unmatured, contingent or actual, direct, indirect or derivative, at common law, in equity or under contract or statute, foreseen or unforeseen, existing or hereafter arising, in any jurisdiction, based in whole or in part on any act, omission, transaction, duty, responsibility, indebtedness, liability, obligation, dealing, matter or occurrence existing or taking place at or prior to the Effective Time that in any way relate to or arise out of or in connection with:

(i)     any of the Actions;

(ii)    any of the Securities Claims, Securities-Related Claims, Securities-Related Indemnity Claims or Securities-Related Matters; or

(iii)   the CCAA Proceedings or any matter or transaction involving any member of the CannTrust Group occurring in or in connection with the CCAA Proceedings (including the CCAA Plan and the development of it),

but excluding Non-Released CannTrust Claims and Channelled Claims.

MT MTDOCS 41518312

11

"**Representatives**" means, in relation to a Person, such Person's current and former directors, officers, partners, employees, consultants, legal counsel, advisers and agents, including their respective heirs, executors, administrators and other legal representatives, successors and assigns, and each of their respective employees and partners.

"**Restructuring Claim**" means any right of any Person against any of the CannTrust Plan Companies in connection with any indebtedness, liability or obligation of any kind owed to such Person arising out of the disclaimer, restructuring, repudiation or termination after the Filing Date of any contract, lease, agreement or other arrangement, whether written or oral, including any such right of an employee arising as a result of the termination of employment of such employee on or after the Filing Date, provided that a "Restructuring Claim" does not include any Unaffected Claim.

"**Restructuring Steps**" is defined in Section 4.6.

"**RSA**" means the restructuring support agreement between made as of January 19, 2021 and the related joinder agreement made as of January 29, 2021 between the RSA Parties.

"**RSA Parties**" means the CannTrust Group, the Class Action Lead Plaintiffs, Class Action Counsel, the CCAA Representatives and CCAA Representative Counsel.

"**RSA Supplemental Letter Agreement**" means the supplemental letter agreement dated January 19, 2021 and the related joinder letter made as of January 29, 2021 between the RSA Parties.

"**Schedules**" is defined in Section 1.5.

"**Secured Claims**" means all Proven Claims of a Creditor to the extent that they are secured by a valid Encumbrance that is duly and properly registered or otherwise perfected in accordance with Applicable Law in the appropriate jurisdiction as of the Filing Date or thereafter to the extent permitted by the Initial Order or a further Order of the CCAA Court, to the extent of the value of such Encumbrance as at the Filing Date (having regard to the value of the assets subject to such Encumbrance and the priority of such Encumbrance) and which Claims are entitled to be proven as secured claims pursuant to the provisions of the CCAA.

"**Securities Claim**" means:

(i) any Claim against CannTrust Holdings asserted by a plaintiff or putative plaintiff in an Action; and

(ii) any other Claim against CannTrust Holdings that has been or could be asserted by or on behalf of a current or former shareholder of CannTrust Holdings or another Person in relation to the purchase, sale or ownership by such Person (including as a legal, registered or beneficial purchaser, seller or owner) on or before the Filing Date of an equity interest (as defined in the CCAA) in CannTrust Holdings,

other than a Securities-Related Indemnity Claim.

12

"**Securities Claimant Trust**" means the trust, to be established pursuant to the Trust Declaration on or before the Plan Implementation Date, to which the Cash Contributions will be paid and the Assigned Claims will be assigned on the Plan Implementation Date for the benefit of Securities Claimants, among others.

"**Securities Claimants**" means the holders of Securities Claims.

"**Securities-Related Claim**" means:

(i)    any claim against a Settlement Party or Co-Defendant asserted by a plaintiff or putative plaintiff in an Action; and

(ii)   any other claim against a Settlement Party or a Co-Defendant that has been or could be asserted by or on behalf of a current or former shareholder of CannTrust Holdings or another Person in relation to the purchase, sale or ownership by such Person (including as a legal, registered or beneficial purchaser, seller or owner) on or before the Filing Date of an equity interest (as defined in the CCAA) in CannTrust Holdings,

other than a Securities Claim or Securities-Related Indemnity Claim.

"**Securities-Related Indemnity Claim**" means any claim of any Person that has been or could be asserted against a Settlement Party (whether pursuant to an agreement, under applicable law or otherwise) for indemnity, advancement, contribution, reimbursement, set-off or otherwise, arising from or in connection with any Securities Claim or Securities-Related Claim asserted or that could be asserted against such Person or arising from or in connection with any other claim asserted or that could be asserted against such Person by any other Person that is not a Settlement Party in relation to a Securities-Related Matter, including, for greater certainty, a Defence Costs Indemnity Claim.

"**Securities-Related Matters**" means the facts, events and transactions alleged in one or more of the Actions giving rise to the claims asserted therein or that could give rise to claims similar to the ones asserted therein.

"**Securities-Related Section 5.1(2) Claim**" means a Securities-Related Claim against a Director who is a Settlement Party and which claim is not permitted by section 5.1(2) of the CCAA to be compromised.

"**Settlement Parties**" means the Original Settlement Parties and the Additional Settlement Parties.

"**Settlement-Related Agreements**" means the Trust Declaration, the Allocation and Distribution Scheme, the Cooperation Agreement and all other agreements, releases, consents or other documents contemplated by, or necessary or desirable to implement the transactions contemplated by, the CCAA Plan, the RSA or the RSA Supplemental Letter Agreement in relation to the settlement of or otherwise addressing the Securities Claims, the other Released Claims and the Channelled Claims, in each case in form and content satisfactory to the RSA Parties.

13

"**Tax Act**" means the *Income Tax Act* (Canada).

"**Trust Declaration**" means the declaration of trust in respect of, among other things, the creation of the Securities Claimant Trust and appointment of the Trustees, in form and content satisfactory to the RSA Parties, acting reasonably.

"**Trustees**" means the individuals appointed as the trustees of the Securities Claimant Trust pursuant to the Trust Declaration on the basis contemplated in Section 4.1.

"**Unaffected Claim**" is a Claim identified in Section 2.3.

"**Unaffected Creditor**" means a Creditor with an Unaffected Claim.

"**Uncashed Distribution**" is defined in Section 6.6(2).

"**Undeliverable Distribution**" is defined in Section 6.6(1).

"**Underwriters**" means Canaccord Genuity Corp., Canaccord Genuity LLC, Citigroup Global Markets Inc., Citigroup Global Markets Canada Inc., Credit Suisse Securities (Canada) Inc., Credit Suisse Securities (USA) LLC, Jefferies Securities, Inc, Jefferies LLC, Merrill Lynch Canada Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and RBC Dominion Securities Inc.

"**Unresolved General Unsecured Claim**" means a General Unsecured Claim (or the portion thereof) that at the relevant time is not a Proven Claim and is not barred pursuant to the Claims Procedure Order, but in respect of which a Proof of Claim has been filed in a proper and timely manner in accordance with the Claims Procedure Order.

"**Unresolved General Unsecured Claims Reserve**" is defined in Section 5.2(1).

"**U.S. Approval Order**" means a court order entered in the U.S. Class Action in form and content satisfactory to the CannTrust Group and CCAA U.S. Representative Counsel:

      (i)   approving a settlement and final judgment in the U.S. Class Action;

      (ii)  containing a bar order in customary form containing such judgment reduction provisions as may be required by the *Private Securities Litigation Reform Act*; and

      (iii) approving customary broad releases by the putative class of any claims that were or could have been asserted in the Actions (including the California Action).

"**U.S. Class Action**" means *In Re: CannTrust Holdings Inc. Securities Litigation*, No. 1:19-CV-06396 (JPO).

"**U.S. Class Action Counsel**" is defined in the RSA.

"**U.S. Class Action Lead Plaintiffs**" is defined in the RSA.

"**U.S. Court**" means the United States District Court for the Southern District of New York.

MT MTDOCS 41518312

14

"**U.S. Securities Claimants**" means all Securities Claimants who purchased the publicly traded common shares of CannTrust Holdings on the New York Stock Exchange or on any other U.S. based trading platform.

## 1.2    Certain Rules of Interpretation

For the purposes of the CCAA Plan:

(a)    any reference in the CCAA Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions;

(b)    any reference in the CCAA Plan to an Order, an existing agreement or an agreement to be made means such Order or agreement as it may have been or may be amended, modified, joined by additional parties or supplemented (in accordance with its terms or this CCAA Plan, if applicable);

(c)    unless otherwise specified, all references to currency are in Canadian dollars;

(d)    the division of the CCAA Plan into "Articles" and "Sections" and the insertion of a table of contents are for convenience of reference only and do not affect the construction or interpretation of the CCAA Plan, nor are the descriptive headings of "Articles" and "Sections" intended as complete or accurate descriptions of the content thereof;

(e)    the use of words in the singular or plural, or with a particular gender, including a definition, will not limit the scope or exclude the application of any provision of the CCAA Plan to such Person (or Persons) or circumstances as the context otherwise permits;

(f)    the words "includes" and "including" and similar terms of inclusion will not, unless expressly modified by the words "only" or "solely", be construed as terms of limitation, but rather will mean "includes but is not limited to" and "including but not limited to", so that references to included matters will be regarded as illustrative without being either characterizing or exhaustive;

(g)    unless otherwise specified, all references to time herein and in any document issued pursuant hereto mean local time in Toronto, Ontario and any reference to an event occurring on a Business Day means prior to 5:00 p.m. (Toronto time) on such Business Day;

(h)    unless otherwise specified, time periods within or following which any payment is to be made or act is to be done will be calculated by excluding the day on which the period commences and including the day on which the period ends and by extending the period to the next succeeding Business Day if the last day of the period is not a Business Day;

15

(i)    unless otherwise provided, any reference to a statute or other enactment of parliament or a legislature or Governmental Authority includes all regulations made thereunder, all amendments to or re-enactments of such statute or regulations in force from time to time, and, if applicable, any statute or regulation that supplements or supersedes such statute or regulation;

(j)    references to a specified "Article" or "Section" will, unless something in the subject matter or context is inconsistent therewith, be construed as references to that specified article or section of the CCAA Plan, whereas the terms "the CCAA Plan", "hereof", "herein", "hereto", "hereunder" and similar expressions will be deemed to refer generally to the CCAA Plan and not to any particular article, section or other portion of the CCAA Plan and includes any documents supplemental hereto; and

(k)    references to "Affected Creditor", "General Unsecured Creditor", "Secured Creditor" or "Unaffected Creditor" refer to Creditors of the applicable CannTrust Plan Company in such capacity.

## 1.3    **Successors and Assigns**

The CCAA Plan will be binding upon and enure to the benefit of the heirs, administrators, executors, legal personal representatives, successors and permitted assigns of any Person named or referred to in or subject to the CCAA Plan.

## 1.4    **Governing Law and Jurisdiction**

The CCAA Plan will be governed by and construed in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein.  All questions as to the interpretation of or application of the CCAA Plan and all proceedings taken in connection with the CCAA Plan and its provisions will be subject to the exclusive jurisdiction of the CCAA Court.

## 1.5    **Schedules**

The following are the schedules to the CCAA Plan (the "**Schedules**"), which are incorporated by reference into the CCAA Plan and form a part of it:

Schedule A – Actions
Schedule B – Allocation and Distributions Scheme
Schedule C – Cooperation Agreement – General Principles
Schedule D – Form of Release in Favour of Released Parties
Schedule E – Insurance Policies

16

# ARTICLE 2
# PURPOSE AND EFFECT OF THE CCAA PLAN

## 2.1  Purpose

The purposes of the CCAA Plan are to:

(a)     complete a restructuring of the CannTrust Group by implementing the Restructuring Steps and filing the Articles of Reorganization of CannTrust Holdings;

(b)     provide for the payment or compromise, as applicable, of all General Unsecured Claims;

(c)     provide for the settlement of all Securities Claims;

(d)     provide for the release of all Released Claims and an injunction in respect of all Channelled Claims; and

(e)     assist the CannTrust Group to continue to operate as a going concern,

in the expectation that Affected Creditors generally will derive a greater benefit from implementation of the CCAA Plan than they would derive from a bankruptcy or liquidation of the CannTrust Group.

## 2.2  Affected Claims and Released Claims

The CCAA Plan provides for the payment or compromise of the Affected Claims (as applicable), a release and discharge of the Released Claims, and an injunction in respect of the Channelled Claims.  The CCAA Plan will become effective at the Effective Time in accordance with its terms and will be binding on and enure to the benefit of the CannTrust Group, the Affected Creditors, the Released Parties and all other Persons named or referred to in, or subject to, the CCAA Plan.

## 2.3  Unaffected Claims

Subject to the express provisions hereof providing for the payment or restructuring by separate arrangement of certain Unaffected Claims and the treatment of Insured Claims, the CCAA Plan does not compromise the following (collectively, the "**Unaffected Claims**"):

(a)     Claims secured by the CCAA Charges;

(b)     Claims that are accepted as or determined to be Secured Claims pursuant to the Claims Procedure Order;

(c)     CCAA Priority Payment Claims;

(d)     Claims of a member of the CannTrust Group against another member of the CannTrust Group;

17

(e)    any Claim for or related to the DIP and Exit Loan;

(f)    Claims of Directors (but excluding the Directors named as defendants in one or more of the Actions who are not Original Settlement Parties) and employees that are owing to them in their capacity as such for or in connection with accrued salary, accrued wages, accrued bonuses, fees and expenses, reimbursement obligations that are not Securities-Related Indemnity Claims, accrued vacation leave and accrued vacation pay and which are not related to the cessation of employment;

(g)    subject to and solely as provided in Section 3.6(1), that portion of a Claim that is an Insured Non-Securities Claim;

(h)    Claims that are not Securities-Related Indemnity Claims by any Director (other than a Director named as a defendant in one or more of the Actions and who is not an Original Settlement Party) under any directors' or officers' indemnity policy or agreement with a CannTrust Plan Company;

(i)    any Defence Costs Indemnity Claim held by a Co-Defendant or other Person who is not a Settlement Party in respect of a Securities-Related Claim, provided that such Defence Costs Indemnity Claim is otherwise valid and enforceable against CannTrust Holdings;

(j)    the portion of any Claim that is an Insured Securities Claim (but subject to the injunction and related treatment contemplated by this CCAA Plan and the CCAA Sanction Order in respect of such Insured Securities Claim);

(k)    Claims that cannot be compromised due to section 19(2) of the CCAA, except any Claims that are compromised under the CCAA Plan in accordance with such section as a consequence of the applicable Creditor's vote in favour of or other form of consent to the CCAA Plan; and

(l)    Claims by the Monitor, counsel to the Monitor, the CRO, or counsel to the CannTrust Group.

Nothing in the CCAA Plan will affect any CannTrust Plan Company's rights and defences, both legal and equitable, with respect to any Unaffected Claims including all rights or entitlements to set-offs or recoupments against such Unaffected Claims. Unaffected Creditors will not be entitled to vote on the CCAA Plan.   Unaffected Claims will be paid in accordance with Section 6.2 (if applicable) or otherwise satisfied in accordance with the applicable agreements and other arrangements between Unaffected Creditors and the applicable CannTrust Plan Company (subject to the treatment of Insured Non-Securities Claims and Insured Securities Claims contemplated by this CCAA Plan and the CCAA Sanction Order).

18

## 2.4   Equity Claims

At the Effective Time, the CCAA Plan will be binding on all holders of Equity Claims.  Except as otherwise expressly provided in this CCAA Plan, the Meeting Order and the CCAA Sanction Order:

(a)   holders of Equity Claims will not receive a distribution or other consideration under the CCAA Plan and will not be entitled to vote on the CCAA Plan in respect of their Equity Claims; and

(b)   all Equity Claims will be fully, finally, irrevocably and forever released, discharged and barred as of the Effective Time without any compensation of any kind whatsoever.

### ARTICLE 3
### CLASSIFICATION AND TREATMENT OF AFFECTED CREDITORS
### AND RELATED MATTERS

## 3.1   Claims Procedure

The procedure for determining the validity and quantum of the Affected Claims for the purposes of the CCAA Plan will be governed by the Claims Procedure Order, the Claims Officer Order, the Meeting Order, the CCAA, the CCAA Plan and any further Order of the CCAA Court.  For the avoidance of doubt, the Claims Procedure Order will remain in full force and effect from and after the Plan Implementation Date.

## 3.2   Classification of Creditors

In accordance with the Meeting Order, Affected Creditors will be divided into four separate classes for the purposes of considering and voting on the CCAA Plan:

(a)   a class of Creditors holding General Unsecured Claims (Opco);

(b)   a class of Creditors holding General Unsecured Claims (Elmcliffe);

(c)   a class of Creditors holding General Unsecured Claims (CannTrust Holdings); and

(d)   a class of Creditors holding Securities Claims.

## 3.3   Meetings of Affected Creditors

The Meetings will be held in accordance with the Meeting Order and any further Order of the Court.  The only Persons entitled to attend a Meeting are those specified in the Meeting Order and any further Order of the CCAA Court.

### 3.4    Treatment of General Unsecured Claims

(1)    At the Effective Time, all General Unsecured Claims will be fully, finally, irrevocably and forever compromised, released, discharged and barred, and General Unsecured Creditors with Proven Claims will have the right to receive distributions pursuant to this Section 3.4.

(2)    On the Initial Distribution Date (or such later date in accordance with Section 6.4 in respect of any Unresolved General Unsecured Claim that becomes a Proven Claim, if any),

    (a)    each General Unsecured Creditor of CannTrust Opco with:

        (i)    Proven Claims that are General Unsecured Claims (Opco) not exceeding in aggregate the Election Amount, or

        (ii)    Proven Claims that are General Unsecured Claims (Opco) exceeding the aggregate of the Election Amount but which General Unsecured Creditor has duly filed an Election Notice with the Monitor,

    will receive, in full satisfaction of such Proven Claims (in each case, a "**Convenience Creditor**"), payment in an amount equal to the lesser of the Election Amount and the actual amount of such Proven Claims;

    (b)    each General Unsecured Creditor of CannTrust Opco with Proven Claims that are General Unsecured Claims (Opco) and that exceed in aggregate the Election Amount, and which General Unsecured Creditor has not duly filed an Election Notice, will receive in full satisfaction of such Proven Claims, the lesser of:

        (i)    such General Unsecured Creditor's *pro rata* share of the balance of the GUC Distribution Pool after deducting (i) the amount held in the Unresolved General Unsecured Claims Reserve in respect of General Unsecured Claims (Opco) that are Unresolved General Unsecured Claims, and (ii) the amounts paid to Convenience Creditors in accordance with Section 3.4(2)(a); and

        (ii)    17% of the amount of such General Unsecured Creditor's Proven Claims that are General Unsecured Claims (Opco);

    (c)    each General Unsecured Creditor of CannTrust Holdings with Proven Claims that are General Unsecured Claims (CannTrust Holdings) will receive in full satisfaction of such Proven Claims, payment of the amount of such Proven Claims; and

    (d)    each General Unsecured Creditor of Elmcliffe with Proven Claims that are General Unsecured Claims (Elmcliffe) will receive in full satisfaction of such Proven Claims, payment of the amount of such Proven Claims pursuant to a

payment schedule to be agreed with the CannTrust Plan Companies and such Creditor.

(3)    For greater certainty, a General Unsecured Creditor with a Proven Claim will receive distributions as set forth in this Section 3.4 only to the extent that such Proven Claim is not an Equity Claim and has not been paid, released or otherwise satisfied prior to the Effective Time.

## 3.5    **Treatment of Securities Claims**

(1)    At the Effective Time:

    (a)    all Securities Claims other than Insured Securities Claims will be fully, finally, irrevocably and forever compromised, released, discharged and barred; and

    (b)    all Insured Securities Claims will be fully, finally, irrevocably and forever enjoined as against CannTrust Holdings and the other Released Parties, provided that nothing in this Section 3.5(1)(b) will prevent a Person with an Insured Securities Claim or Insured Securities-Related Claim from making a claim against a Settlement Party to establish liability (but without recovery from it or its property) solely to the extent necessary to enable the Securities Claimant Trust to enforce Assigned Claims against Insurers who are not Settlement Parties, and

    (c)    Securities Claimants with Securities Claims that are Proven Claims will be entitled to receive distributions from the Securities Claimant Trust in accordance with the Allocation and Distribution Scheme and, to the extent applicable, any other Settlement-Related Agreements to which one or more of the Securities Claimants and the Securities Claimant Trust are parties.

(2)    On or before the Effective Time, CannTrust Holdings will:

    (a)    pay or cause to be paid its Cash Contribution to the Securities Claimant Trust; and

    (b)    assign its Assigned Claims (if any) to the Securities Claimant Trust.

(3)    Subject to the other terms of the CCAA Plan (including the releases and injunctions provided by Article 7), the CCAA Sanction Order and any other Orders of the CCAA Court, the Securities-Related Claims of Securities Claimants against Non-Settlement Parties will not be compromised and Securities Claimants may continue to pursue such Securities-Related Claims against Non-Settlement Parties after the Plan Implementation Date.

## 3.6    **Insured Claims**

(1)    Notwithstanding anything to the contrary herein, from and after the Effective Time, any Person having an Insured Non-Securities Claim will be irrevocably limited to recovery in respect of such Insured Non-Securities Claim solely from the proceeds of the applicable insurance policies received by the applicable CannTrust Plan Company, and any Person

21

with an Insured Non-Securities Claim will have no right to, and will not, directly or indirectly, make any claim or seek any recoveries from any Person, other than enforcing such Person's rights to be paid from the proceeds of the applicable insurance policies. This Section 3.6(1) may be relied upon by the CannTrust Plan Companies and any other Released Party in defence or estoppel of or to enjoin any claim, action or proceeding brought in contravention of this Section. Nothing in the CCAA Plan will compromise, release or otherwise affect any right or defence of any insured or insurer in respect of an Insured Non-Securities Claim. Notwithstanding the forgoing, an Affected Claim that includes an Insured Non-Securities Claim may still receive a distribution in respect of the portion of the Affected Claim, if any, that is not an Insured Non-Securities Claim.

(2)     From and after the Effective Time, any Person having an Insured Securities Claim or Insured Securities-Related Claim will be irrevocably limited to recovery in respect of such Insured Securities Claim or Insured Securities-Related Claim solely by way of distributions from the Securities Claimant Trust pursuant to the Allocation and Distribution Scheme and, if applicable, by way of recovery against any Person that is not a Released Party. Any Person with an Insured Securities Claim or Insured Securities-Related Claim will have no right to, and will not, directly or indirectly, make any claim or seek any recovery from any of the Released Parties, other than making a claim against a Settlement Party to establish liability (but without recovery from it or its property) solely to the extent necessary to enable the Securities Claimant Trust to enforce Assigned Claims against Insurers who are not Settlement Parties. This Section 3.6(2) may be relied upon by the CannTrust Plan Companies and any other Released Party in defence or estoppel of or to enjoin any claim, action or proceeding brought in contravention of this Section.

## 3.7    **Unresolved General Unsecured Claims**

No General Unsecured Creditor will be entitled to receive any distribution hereunder with respect to an Unresolved General Unsecured Claim or any portion thereof unless and until, and then only to the extent that, such Unresolved General Unsecured Claim is finally resolved in the manner set out in the Claims Procedure Order and becomes a Proven Claim entitled to the treatment described in Section 3.4.

## 3.8    **Extinguishment of Claims**

At the Effective Time and in accordance with the terms of this CCAA Plan and the CCAA Sanction Order, the treatment of Affected Claims (including Unresolved General Unsecured Claims), Released Claims and Channelled Claims, in each case as set forth herein, will be final and binding on the CannTrust Plan Companies, Affected Creditors and any Person holding a Released Claim or Channelled Claim. In accordance with this CCAA Plan and to the extent provided in the CCAA Sanction Order, all Affected Claims and all Released Claims will be fully, finally, irrevocably and forever released, discharged and barred or enjoined, as applicable, and the CannTrust Plan Companies and the Released Parties will thereupon have no further obligation whatsoever in respect of the Affected Claims and the Released Claims; provided that (i) nothing herein releases the CannTrust Plan Companies from the obligation to make distributions or payments in the manner and to the extent provided for in the CCAA Plan; and

22

(ii) such release and discharge of the CannTrust Plan Companies will be without prejudice to the right of an Affected Creditor in respect of an Unresolved General Unsecured Claim to prove such Unresolved General Unsecured Claim in accordance with the Claims Procedure Order.

## 3.9    **Guarantees and Similar Covenants**

No Person who has a claim under any guarantee, indemnity or similar covenant in respect of any Claim that is compromised or released under the CCAA Plan or who has any right to claim over in respect of or to be subrogated to the rights of any Person in respect of a Claim that is compromised or released under the CCAA Plan will be entitled to any greater rights as against the CannTrust Plan Companies than the Person whose Claim is compromised or released under the CCAA Plan and such claims and rights of such Person will be subject to the releases, injunctions and other provisions of the CCAA Plan and CCAA Sanction Order.

## 3.10   **Set-Off**

The law of set-off applies to all Claims in accordance with Applicable Law.  Without limiting the generality of the foregoing, the CannTrust Plan Companies will be entitled to set-off from any payments or distributions to be made to a General Unsecured Creditor or Unaffected Creditor hereunder, any amounts that became due and owing to the CannTrust Plan Companies after the Filing Date from such Creditor.

## ARTICLE 4
## DEFINITIVE DOCUMENTS, LITIGATION ARRANGEMENTS AND RESTRUCTURING STEPS

## 4.1    **Securities Claimant Trust**

In relation to the Securities Claimant Trust:

(a)    half of the Trustees will be designated by CCAA Canadian Representative Counsel and half of the Trustees will be designated by CCAA U.S. Representative Counsel for appointment pursuant to the Trust Declaration;

(b)    the Trustees will appoint CCAA Representative Counsel as counsel to the Securities Claimant Trust; and

(c)    from and after the Plan Implementation Date, the Trustees on behalf of the Securities Claimant Trust will have the sole authority to prosecute and resolve the Assigned Claims.

## 4.2    **Settlement-Related Agreements**

The Settlement-Related Agreements will:

(a)    include releases in favour of the Released Parties in respect of the Released Claims and Securities-Related Section 5.1(2) Claims and, if applicable, confirm

MT MTDOCS 41518312

23

the injunction in respect of Insured Securities Claims and Insured Securities-Related Claims, in each case consistent with the terms of the CCAA Plan;

(b)      provide that the Securities Claimants and the Securities Claimant Trust jointly and severally agree and undertake (i) not to seek any damages from any Co-Defendant nor threaten, make or settle any claim or take any proceeding against any other Person, which in either case could result in a Securities-Related Indemnity Claim or any other claim for damages against any of the Released Parties in any jurisdiction that is permitted to proceed notwithstanding the CCAA Sanction Order, and (ii) to obtain a full and final release in favour of the Released Parties, in the form and content of Schedule D, if the Securities Claimants or the Securities Claimant Trust settles with any Non-Settlement Parties;

(c)      provide that all fees and costs of the CCAA Representatives, CCAA Representative Counsel, the Trustees and the Securities Claimant Trust, as approved by the CCAA Court, will be paid from amounts held in the Securities Claimant Trust from time to time in accordance with the terms of the Trust Declaration and any other applicable Definitive Document;

(d)      provide that when the aggregate amount recovered by Securities Claimants and the Securities Claimant Trust from Additional Settlement Parties and Non-Settlement Parties, whether pursuant to settlements or prosecution of the Actions, the Cross-Border Action and Assigned Claims, exceeds $250 million net of litigation fees and expenses, then CannTrust Holdings will be entitled to be paid up to $50 million in staged amounts from the Securities Claimant Trust (such staged amounts to be agreed between the RSA Parties, acting reasonably, in the Settlement-Related Agreements);

(e)      without delay after implementation of the CCAA Plan, CCAA Representative Counsel will cause the Actions in Canada to be dismissed against the Settlement Parties without costs; and

(f)      provide that the Securities Claimant Trust and other applicable Persons will take the steps and actions contemplated in Section 4.3.

## 4.3   U.S. Class Action and California Action

(1)     With respect to the U.S. Class Action:

(a)      U.S. Class Action Lead Plaintiffs and the applicable Released Parties will seek preliminary approval in the U.S. Class Action of the settlement of the applicable Securities Claims and related claims contemplated by this CCAA Plan and the Settlement-Related Agreements and thereafter will seek final approval of the settlement of the U.S. Class Action after the CCAA Sanction Order has been granted.  U.S. Class Action Lead Plaintiffs and the applicable Released Parties will cooperate and jointly file any motions in support of preliminary approval and final approval of the settlement in the U.S. Class Action.

MT MTDOCS 41518312

24

(b)    to the extent permitted, notice to the putative class in the U.S. Class Action of the settlement will be given in conjunction with any notice required in connection with the CCAA Plan.  If a joint notice is not permitted or feasible, notice will be given to the putative class in the U.S. Class Action in a form as may be agreed between the RSA Parties or as directed by the U.S. Court;

      (i)    any notice provided in connection with the settlement will caution putative class members that U.S. Class Action Lead Plaintiffs and the applicable Released Parties believe that the claims of any opt-outs will be barred by the CCAA Sanction Order and principles of comity;

      (ii)    any notice or administration expenses incurred prior to the date that the CCAA Sanction Order is granted will be paid by the CannTrust Plan Companies, and any such expenses incurred on or after such date will be paid by the Securities Claimant Trust (or funded by CCAA Representative Counsel and later reimbursed by the Securities Claimant Trust);

(c)    the relevant RSA Parties will jointly seek entry of the U.S. Approval Order and will request that the U.S. Approval Order recite that it is without prejudice to, and does not limit, the applicability of the CCAA Sanction Order;

(d)    U.S. Class Action Lead Plaintiffs will request that the U.S. Class Action be stayed against the Non-Settlement Parties to enable the claims against them to be litigated in the Cross-Border Action; and

(e)    U.S. Class Action Lead Plaintiffs will request that the U.S. Class Action be dismissed once the Cross-Border Action is filed.

(2)    The California Action will be voluntarily dismissed with prejudice.

## 4.4    **Litigation Cooperation of CannTrust Holdings**

After the CCAA Sanction Order and the U.S. Approval Order are granted, CannTrust Holdings (subject to the terms hereof and the RSA Supplemental Letter Agreement) will consent to orders:

(a)    appointing the law firm of Weisz Fell Kour LLP as the Canadian representative for plaintiffs in the U.S. Class Action and allowing U.S. Class Action Counsel, in conjunction with U.S. Class Action Lead Plaintiffs, to, at their option:

      (i)    commence an action (with Weisz Fell Kour LLP as counsel) in the Ontario Court against any Non-Settlement Parties; or

      (ii)    establish a subclass in the Ontario Class Action (with Weisz Fell Kour LLP as counsel),

with a class defined in the same way as the class is defined in the U.S. Class Action and subject to U.S. law in respect of the causes of action (the "**Cross-Border Action**");

25

(b)    continuing the CCAA Representation Order permitting the plaintiffs in the Ontario Class Action, the U.S. Class Action, and the Cross-Border Action to settle such actions or to prosecute the Ontario Class Action and Cross-Border Action against any Non-Settlement Parties under the terms of such order;

(c)    approving (i) any settlement with the Non-Settlement Parties; (ii) any notice to members of the Ontario Class Action and U.S. Class Action further to any such settlement; (iii) a distribution protocol (i.e. plan of allocation) setting forth the distribution of the funds to class members from such settlement (less Class Action Counsel's fees and litigation expenses); and (iv) Class Action Counsel's request for fees to be paid from such settlement;

(d)    permitting the plaintiffs in the Ontario Class Action to apply to the Ontario Court to obtain an expedited hearing for an order granting leave under the *Securities Act* (Ontario) further to their prosecution or settlement of the Ontario Class Action against any Non-Settlement Parties;

(e)    at Class Action Counsel's option, permitting the plaintiffs in the Ontario Class Action and Cross-Border Action to apply to the Ontario Court to obtain an expedited hearing for an order certifying the Ontario Class Action and Cross-Border Action under the *Class Proceedings Act, 1992* (Ontario) (as necessary) against any Non-Settlement Parties;

(f)    directing an expedited hearing date before the Ontario Court of the claims in the Ontario Class Action and Cross-Border Action against any Non-Settlement Parties under the provisions of the *Class Proceedings Act, 1992* (Ontario) (as necessary) or pursuant to the Ontario Court's statutory or discretionary powers on behalf of the classes defined in the Ontario Class Action and Cross-Border Action;

(g)    permitting the Securities Claimant Trust to obtain on an expedited basis a joint trial date for the claims in the Ontario Class Action, Cross-Border Action and any of the Assigned Claims including the claims of the Securities Claimant Trust against any Non-Settlement Parties; and

(h)    prohibiting any other action from being commenced or prosecuted in Canada against any Released Parties or any Non-Settlement Parties alleging facts substantially the same or similar as those alleged in the Ontario Class Action, Cross-Border Action or the Assigned Claims held by the Securities Claimant Trust.

26

### 4.5    Articles of Reorganization

Upon satisfaction or waiver of each of the Plan Implementation Conditions in accordance with Section 9.1, CannTrust Holdings will file its Articles of Reorganization.

### 4.6    Restructuring Steps

At the Effective Time on the Plan Implementation Date, the following will occur and be deemed to have occurred in the order set out below unless otherwise specified in this Section 4.2 and become effective without any further act or formality:

(a)    the Articles of Reorganization of CannTrust Holdings will become effective;

(b)    to the extent not already paid, the CannTrust Plan Companies will set aside (pursuant to arrangements satisfactory to the Monitor) or deliver to the Monitor, in trust, the amount required to satisfy any CCAA Priority Payment Claims that are due and payable but for the stay of proceedings in the Initial Order and all claims secured by the CCAA Charges (other than the DIP and Exit Loan), which claims will be paid by the CannTrust Plan Companies or Monitor, for and on behalf of the CannTrust Plan Companies, to the respective holders of such claims from such funds within five (5) Business Days after the Plan Implementation Date (unless otherwise agreed with a claim holder);

(c)    the CannTrust Plan Companies will set aside (pursuant to arrangements satisfactory to the Monitor) or deliver to the Monitor, in trust, the GUC Distribution Pool (including the amount thereof to be held in the Unresolved General Unsecured Claims Reserve) in accordance with Article 5;

(d)    the CannTrust Plan Companies will pay any other amounts that they are required to pay on or before the Effective Time in accordance with the RSA, the CCAA Plan or other applicable agreement;

(e)    all Affected Claims and Released Claims will be fully, finally, irrevocably and forever released, discharged and barred or enjoined, as applicable, in accordance with Section 3.8 and Article 7, and all notes, certificates and other instruments evidencing Affected Claims (and all guarantees associated with each of the foregoing) will be deemed cancelled and extinguished and be null and void in accordance with Section 6.8;

(f)    all Channelled Claims will be fully, finally, irrevocably and forever enjoined in accordance with Section 3.8 and Article 7 as against the applicable Settlement Parties and thereafter such claims may only be asserted against the Securities Claimant Trust or, if applicable, any Person who is not a Settlement Party, provided that nothing in this Section 4.6(f) will prevent a Person with an Insured Securities Claim or Insured Securities-Related Claim from making a claim against a Settlement Party to establish liability (but without recovery from it or its property) solely to the extent necessary to enable the Securities Claimant Trust to enforce Assigned Claims against Insurers who are not Settlement Parties; and

27

(g)      the arrangements between the DIP and Exit Lender and the CannTrust Group contemplated by Section 9.1(k) in respect of the DIP and Exit Loan will become effective,

(collectively, the "**Restructuring Steps**"). The failure of the CCAA Plan to incorporate any provision of a document evidencing a Restructuring Step will not derogate from the enforceability of such provision.

## 4.7    Corporate Approvals

The execution, delivery, implementation and consummation of all matters contemplated under the CCAA Plan involving corporate action of any of the CannTrust Plan Companies, including the Restructuring Steps and filing of Articles of Reorganization by CannTrust Holdings, will be authorized and approved under the CCAA Plan and by the CCAA Court as part of the CCAA Sanction Order in all respects and for all purposes without any requirement of further action by any Person.

## ARTICLE 5
## CASH POOL AND UNRESOLVED GENERAL UNSECURED CLAIMS

## 5.1    GUC Distribution Pool

At or before the Effective Time, the CannTrust Plan Companies will set aside (pursuant to arrangements satisfactory to the Monitor) or deliver to the Monitor, in trust, the amount of the GUC Distribution Pool (less the portion thereof to be included in the Unresolved General Unsecured Claims Reserve in respect of Unresolved General Unsecured Claims against CannTrust Opco, which amount will be set aside or delivered to the Monitor pursuant to Section 5.2), from which cash distributions will be made to General Unsecured Creditors (Opco) with Proven Claims on and subject to the terms of Article 6.  The Monitor will oversee the distribution of funds from the GUC Distribution Pool in accordance with the provisions of Article 6.

## 5.2    Unresolved General Unsecured Claims Reserve

(1)      At or before the Effective Time, the CannTrust Plan Companies will set aside (pursuant to arrangements satisfactory to the Monitor) or deliver to the Monitor an amount to be held as a reserve for Unresolved General Unsecured Claims (the "**Unresolved General Unsecured Claims Reserve**"), such amount to be agreed by the Monitor and the CannTrust Plan Companies and from which distributions required by the CCAA Plan in respect of Unresolved General Unsecured Claims will be made if such Unresolved General Unsecured Claims (or parts thereof) are determined to be Proven Claims in accordance with the Claims Procedure Order.  In determining the aggregate amount of the Unresolved General Unsecured Claims Reserve, the CannTrust Plan Companies and the Monitor will agree upon a reserve amount in respect of the Unresolved General Unsecured Claims (if any) against each of the CannTrust Plan Companies, with the reserve amount relating to CannTrust Opco being deducted from the GUC Distribution Pool.

MT MTDOCS 41518312

28

(2)    The Unresolved General Unsecured Claims Reserve will be held by the CannTrust Plan Companies or the Monitor, as the case may be, for those entitled to a payment from it under the CCAA Plan (and for the CannTrust Plan Companies to the extent of any surplus), and the Monitor will oversee the distribution of funds from the Unresolved General Unsecured Claims in accordance with the provisions of Section 6.4.

## ARTICLE 6
## DISTRIBUTIONS, PAYMENTS AND CURRENCY

### 6.1   Distributions Generally

All distributions to General Unsecured Creditors and all other payments to be effected pursuant to the CCAA Plan will be made pursuant to this Article 6. Distributions to Securities Claimants will be made pursuant to the Trust Declaration and the Allocation and Distribution Scheme. For greater certainty, all payments and distributions pursuant to this Article 6 will be subject to satisfaction or waiver of the conditions specified in Article 9 and the occurrence of the Effective Time, and will occur or be deemed to occur in accordance with the timing set out in Section 4.6.

### 6.2   Payments of Certain Unaffected Claims and Other Amounts

At or before the Effective Time, the CannTrust Plan Companies will make the following payments by wire transfer of immediately available funds in full satisfaction and discharge of the following:

(a)    payment to each holder of a CCAA Priority Payment Claim that is due and payable but for the Initial Order, of all amounts required to satisfy such CCAA Priority Payment Claim in full;

(b)    payment in full of all claims secured by the CCAA Charges, other than the DIP and Exit Loan; and

(c)    payment of any other amounts required to be paid in accordance with the CCAA or the CCAA Plan at or before the Effective Time (including the Cash Contribution by CannTrust Holdings).

### 6.3   Distribution Mechanics for Affected Claims

In accordance with Section 3.4, the CannTrust Plan Companies, with oversight of and assistance from the Monitor, or the Monitor, for and on behalf of the CannTrust Plan Companies, will distribute to each General Unsecured Creditor with a Proven Claim the amount to which it is entitled hereunder by way of (in the sole discretion of the CannTrust Plan Companies or Monitor, as applicable): (i) cheque sent by prepaid ordinary mail to the address on file with the CannTrust Plan Companies on the Distribution Record Date; or (ii) wire transfer of immediately available funds to an account designated in writing by the General Unsecured Creditor to the CannTrust Plan Companies and the Monitor (with any wire transfer or similar fee being satisfied from the distribution amount). No distribution will be made for an amount less than $10. The CannTrust Plan Companies' liability to a General Unsecured Creditor for any distribution in an amount less than $10 will be forever discharged and extinguished.

### 6.4 Distributions in Respect of Unresolved General Unsecured Claims

(1) The Unresolved General Unsecured Claims Reserve (as may be reduced from time to time as Unresolved General Unsecured Claims are ultimately resolved) will be set aside by the CannTrust Plan Companies (pursuant to arrangements satisfactory to the Monitor) or held by the Monitor, in trust, until the final determination of all Unresolved General Unsecured Claims in accordance with the Claims Procedure Order.

(2) To the extent that an Unresolved General Unsecured Claim becomes a Proven Claim, the CannTrust Plan Companies, with oversight of and assistance from the Monitor, or the Monitor, for and on behalf of the CannTrust Plan Companies, will distribute to the holder thereof an amount from the Unresolved General Unsecured Claims Reserve equal to the amount that such Creditor would have been entitled to receive in respect of its Proven Claim on the Initial Distribution Date had such Unresolved General Unsecured Claim been a Proven Claim on the Initial Distribution Date.

(3) After all Unresolved General Unsecured Claims have been finally resolved in accordance with the Claims Procedure Order and any required distributions have been made with respect to General Unsecured Claims that are Proven Claims, the amounts remaining in the GUC Distribution Pool and Unresolved General Unsecured Claims Reserve will no longer be required to be set aside by the CannTrust Plan Companies and, if held by the Monitor, will be returned to the CannTrust Plan Companies.

### 6.5 Allocation of Distributions

All distributions made pursuant to the CCAA Plan to General Unsecured Creditors will be allocated first towards the repayment of the amount of the General Unsecured Claim attributable to principal and, if greater than the amount of principal, then second towards the repayment of any amount of such General Unsecured Claim attributable to unpaid interest.

### 6.6 Treatment of Unclaimed Distributions

(1) If any distribution to a General Unsecured Creditor under this Article 6 is returned as undeliverable (an "**Undeliverable Distribution**"), then neither the CannTrust Plan Companies nor the Monitor will be required to make further efforts to deliver the distribution to such Creditor unless and until the CannTrust Plan Companies and Monitor are notified in writing by such Creditor of such Creditor's current address at which time all such distributions will be made to such Creditor. The obligations of the CannTrust Plan Companies and Monitor to an Affected Creditor with an Undeliverable Distribution will expire on the first Business Day that is six (6) months following the applicable Distribution Date for the Undeliverable Distribution, after which date any entitlement with respect to such Undeliverable Distribution will be forever discharged and forever barred, without any compensation therefor, notwithstanding any Applicable Laws to the contrary. For greater clarity, nothing herein will require the CannTrust Plan Companies or the Monitor to attempt to locate any Creditor or other Person with respect to an Undeliverable Distribution. No interest will be payable in respect of an Undeliverable Distribution. On the First Business Day that is six (6) months following the applicable

30

Distribution Date for the Undeliverable Distribution, the amount of any Undeliverable Distribution will be released to the CannTrust Plan Companies.

(2)     If any cheque in payment of a distribution to an Affected Creditor under this Article 6 is not cashed within six (6) months after the date of the applicable Distribution Date (an "**Uncashed Distribution**"):

(a)     such cheque may be cancelled by the CannTrust Plan Companies or the Monitor, as applicable, after which date any entitlement with respect to such distribution will be forever discharged and forever barred and the obligations of the CannTrust Plan Companies and Monitor with respect thereto will expire, without any compensation therefor, notwithstanding any Applicable Laws to the contrary; and

(b)     the amount otherwise payable pursuant to such cancelled cheque will be released to the CannTrust Plan Companies.

For greater clarity, nothing herein will require the CannTrust Plan Companies or the Monitor to attempt to locate any Creditor or other Person with respect to an Uncashed Distribution.

6.7     **Withholding Rights**

The CannTrust Plan Companies and any other Person facilitating payments pursuant to the CCAA Plan will be entitled to deduct and withhold from any such payment to any Person such amounts as may be required to be deducted or withheld under any Applicable Law and to remit such amounts to the appropriate Governmental Authority or other Person entitled thereto. To the extent that amounts are so withheld or deducted and remitted to the appropriate Governmental Authority or other Person, such withheld or deducted amounts will be treated for all purposes hereof as having been paid to such Person as the remainder of the payment in respect of which such withholding or deduction was made. Without in any way limiting the generality of the foregoing, the CannTrust Plan Companies (or the Monitor on their behalf) will deduct from any distribution to a Creditor hereunder any amounts as indicated by Employment and Social Development Canada in a Notice of Debt, and remit such amounts to Employment and Social Development Canada pursuant to the *Employment Insurance Act* (Canada). Any Creditor whose address on file with the CannTrust Plan Companies on the Distribution Record Date is not a Canadian address will be treated as a non-resident of Canada for purposes of any applicable non-resident withholding tax on all payments hereunder, subject to receipt by the CannTrust Plan Companies of information satisfactory to it (in their sole discretion) that such Creditor is not a non-resident. No gross-up or additional amount will be paid on any payment hereunder to the extent any of the CannTrust Plan Companies or any other Person deducts or withholds amounts pursuant to this Section 6.7. Notwithstanding any withholding or deduction, each Person receiving a payment will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Authority (including income and other tax obligations on account of such distribution).

31

### 6.8    Cancellation of Certificates and Notes, etc.

At the Effective Time, all debentures, notes, certificates, indentures, guarantees, agreements, invoices and other instruments evidencing any Affected Claims, Released Claims or Channelled Claims (and all guarantees associated with any of the foregoing) will not entitle any holder thereof to any compensation or participation other than as expressly provided for in the CCAA Plan and, unless relating to a Channelled Claim, will be deemed cancelled and extinguished and be null and void.

### 6.9    Calculations

All amounts to be paid by the CannTrust Plan Companies hereunder will be calculated by the CannTrust Plan Companies, with the assistance of the Monitor.  All calculations made by the CannTrust Plan Companies will be conclusive, final and binding upon the Affected Creditors, the CannTrust Plan Companies and all other Persons, absent manifest error.

### 6.10    Currency Matters

Distributions to General Unsecured Creditors with Proven Claims will be paid in Canadian dollars and any such Claims that are denominated in a currency other than the lawful money of Canada will be converted to the equivalent thereof in the lawful money of Canada at the noon rate of exchange as quoted by the Bank of Canada on the Filing Date, in accordance with the Claims Procedure Order.  Distributions to Securities Claimants will be governed by the Trust Declaration and the Allocation and Distribution Scheme.

### ARTICLE 7
### RELEASES AND ADDITIONAL SETTLEMENT PARTIES

### 7.1    Additional Settlement Parties

(1)    By written agreement between CannTrust Holdings and CCAA Representative Counsel (such agreement not to be unreasonably withheld) entered into prior to the Plan Implementation Date, a Co-Defendant or Insurer may be designated as an Additional Settlement Party for the purposes of the CCAA Plan if such proposed Additional Settlement Party has signed a restructuring support agreement, in form and content satisfactory to the RSA Parties, acting reasonably, pursuant to which such proposed Additional Settlement Party has agreed, among other things:

    (a)    to make a Cash Contribution to the Securities Claimant Trust on the Plan Implementation Date in an amount acceptable to CCAA Representative Counsel;

    (b)    to assign its Assigned Claims (if any) to the Securities Claimant Trust on the Plan Implementation Date; and

    (c)    to support the CCAA Plan in a manner consistent with the RSA.

MT MTDOCS 41518312

32

(2)    Subject to Section 7.1(4), any Co-Defendant or Insurer designated as an Additional Settlement Party pursuant to Section 7.1(1) will be treated as a Released Party pursuant to this CCAA Plan and the CCAA Sanction Order.

(3)    If a Co-Defendant or Insurer is designated as an Additional Settlement Party pursuant to Section 7.1(1), the CannTrust Plan Companies will amend the CCAA Plan:

    (a)    to add such Co-Defendant or Insurer to the definition of Additional Settlement Party; and

    (b)    if the Additional Settlement Party is an Insurer, to treat the Insured Securities Claims, the Insured Securities-Related Claims and the Released Insurance Claims covered by such Insurer as Released Claims,

    and cause the amendment to be filed and posted in accordance with Section 10.3(4).

(4)    If an Additional Settlement Party has not paid its Cash Contribution to the Securities Claimant Trust and/or has not assigned its Assigned Claims (if any) to the Securities Claimant Trust at the Effective Time in accordance with the applicable Additional RSA, then pursuant to the CCAA Plan and the CCAA Sanction Order:

    (a)    such Additional Settlement Party shall not be treated as a Released Party; and

    (b)    if the Additional Settlement Party is an Insurer: (i) the Securities Claims and Securities-Related Claims covered by such Insurer shall continue to be treated as Insured Securities Claims and Insured Securities-Related Claims and shall not be treated as Released Claims; and (ii) the Released Insurance Claims against such Insurer shall not be treated as Released Claims,

    until such Additional Settlement Party has paid its Cash Contribution to the Securities Claimant Trust and has assigned its Assigned Claims (if any) to the Securities Claimant Trust.

7.2    **Plan Releases**

At the Effective Time, the Released Parties will be fully, finally, irrevocably and forever released and discharged from all Released Claims in accordance with this CCAA Plan and to the extent provided in the CCAA Sanction Order.

7.3    **Injunctions**

(1)    From and after the Effective Time, to the extent provided in the CCAA Sanction Order, all Persons will be permanently and forever barred, estopped, stayed and enjoined from: (i) commencing, conducting, continuing or making in any manner, directly or indirectly, any action, suit, claim, demand or other proceeding of any nature or kind whatsoever (including any proceeding in a judicial, arbitral, administrative or other forum) against any of the Released Parties with respect to any and all Released Claims; (ii) enforcing, levying, attaching, collecting or otherwise recovering or enforcing by any manner or

means, directly or indirectly, any judgment, award, decree or order against any of the Released Parties or their property with respect to any and all Released Claims; (iii) commencing, conducting, continuing or making against any other Person in any manner, directly or indirectly, any action, suit, claim, demand or other proceeding of any nature or kind whatsoever (including any proceeding in a judicial, arbitral, administrative or other forum) that relates to a Released Claim if such other Person makes a claim or might reasonably be expected to make a claim, in any manner or forum, including by way of contribution or indemnity or other relief, against one or more of the Released Parties, unless such claim of such other Person is itself a Released Claim; (iv) creating, perfecting, asserting or otherwise enforcing, directly or indirectly, any Encumbrance of any kind against the Released Parties or their property with respect to any and all Released Claims; and (v) taking any actions to interfere with the implementation or consummation of the CCAA Plan with respect to any and all Released Claims.

(2)     From and after the Effective Time, to the extent provided in the CCAA Sanction Order, the recovery of Securities Claimants from a Non-Settlement Party with which any Settlement Party is judicially determined to be jointly and severally liable shall be limited to only that proportion of damages attributable to the liability of the Non-Settlement Party, as finally determined in the Actions.

(3)     From and after the Effective Time, to the extent provided in the CCAA Sanction Order, all claims for contribution, indemnity or other claims over that relate to the Released Claims or the Channelled Claims, which were or could have been brought by a Settlement Party in the Actions or otherwise against a Co-Defendant that is a Non-Settlement Party, will be permanently and forever barred, estopped, stayed and enjoined.

(4)     From and after the Effective Time, to the extent provided in the CCAA Sanction Order, all Persons will be permanently and forever barred, estopped, stayed and enjoined from: (i) commencing, conducting, continuing or making in any manner, directly or indirectly, any action, suit, claim, demand or other proceeding of any nature or kind whatsoever (including any proceeding in a judicial, arbitral, administrative or other forum) against any of Released Parties with respect to any and all Channelled Claims; (ii) enforcing, levying, attaching, collecting or otherwise recovering or enforcing by any manner or means, directly or indirectly, any judgment, award, decree or order against any of the Released Parties or their property with respect to any and all Channelled Claims; (iii) commencing, conducting, continuing or making against any other Person in any manner, directly or indirectly, any action, suit, claim, demand or other proceeding of any nature or kind whatsoever (including any proceeding in a judicial, arbitral, administrative or other forum) that relates to a Channelled Claim if such Person makes a claim or might reasonably be expected to make a claim, in any manner or forum, including by way of contribution or indemnity or other relief, against one or more of the Released Parties, unless such claim of such other Person is itself a Released Claim; (iv) creating, perfecting, asserting or otherwise enforcing, directly or indirectly, any Encumbrance of any kind against any of the Released Parties with respect to any and all Channelled Claims; and (v) taking any actions to interfere with the implementation or consummation of the CCAA Plan with respect to any and all Channelled Claims, provided that nothing in the applicable provision of the CCAA Sanction Order will prevent a Person with an

34

Insured Securities Claim or Insured Securities-Related Claim from making a claim against a Settlement Party to establish liability (but without recovery from it or its property) solely to the extent necessary to enable the Securities Claimant Trust to enforce Assigned Claims against Insurers who are not Settlement Parties.

## ARTICLE 8
## COURT SANCTION

### 8.1    Application for CCAA Sanction Order

If the CCAA Plan is approved by the required majorities of Affected Creditors in accordance with the Meeting Order and the CCAA, the CannTrust Plan Companies will apply for the CCAA Sanction Order on or before the date set for the CCAA Sanction Order hearing in the Meeting Order (if any) or on such other date as the CCAA Court may set.

### 8.2    CCAA Sanction Order

The CannTrust Plan Companies will apply for a CCAA Sanction Order that will, among other things:

(a)    declare that (i) the CCAA Plan has been approved by the required majorities of Affected Creditors in accordance with the Meeting Order and the CCAA; (ii) each member of the CannTrust Group has complied with the provisions of the CCAA and the Orders of the CCAA Court made in the CCAA Proceedings in all respects; (iii) neither the CannTrust Group nor Monitor has done or purported to do anything that is not authorized by the CCAA; and (iv) the CCAA Plan and the transactions contemplated thereby are fair and reasonable;

(b)    declare that the CCAA Plan and all associated steps, compromises, arrangements, releases, injunctions, transactions and reorganizations effected thereby are sanctioned and approved;

(c)    declare that the articles of CannTrust Holdings will be amended as set out in the Articles of Reorganization as of the Effective Time;

(d)    declare that all warrants, options and agreements to purchase Existing Shares are of no further force or effect as of the Effective Time;

(e)    approve and authorize the Restructuring Steps;

(f)    order that the Trust Declaration and the Allocation and Distribution Scheme are each approved and deemed effective as of the Effective Time, and that the Trustees are authorized and directed to take all steps and actions, and to do all things, necessary or appropriate to implement the transactions contemplated by the CCAA Plan, the Trust Declaration and the Allocation and Distribution Scheme in accordance with and subject to their respective terms and conditions;

(g)     order that, as of the Effective Time, any and all Affected Claims (other than Insured Securities Claims) are and are deemed to be fully, finally, irrevocably and forever compromised, released, discharged and barred, and the ability of any Person to proceed against any of the CannTrust Plan Companies in respect of or relating to any Affected Claims, whether directly, indirectly, derivatively or otherwise is forever barred, estopped, stayed and enjoined, and all proceedings with respect to, in connection with or relating to such Affected Claims are permanently stayed, excepting only any proceeding to enforce the obligation of the CannTrust Plan Companies to make payments and distributions in respect of such Affected Claims in the manner and to the extent provided for in the CCAA Plan and the CCAA Sanction Order;

(h)     order that, as of the Effective Time, (i) any and all Released Claims are and are deemed to be fully, finally, irrevocably and forever released, discharged and barred, (ii) the ability of any Person to proceed against any of the Released Parties in respect of or relating to any Released Claims, whether directly, indirectly, derivatively or otherwise is forever barred, estopped, stayed and enjoined, (iii) all proceedings with respect to, in connection with or relating to such Released Claims are permanently stayed and (iv) subject to Section 7.1(4) of the CCAA Plan, there shall be a full policy release in respect of the Insurance Policies in favour of each Insurer that is an Additional Settlement Party;

(i)     order that, from and after the Effective Time, all Persons are permanently and forever barred, estopped, stayed and enjoined from: (i) commencing, conducting, continuing or making in any manner, directly or indirectly, any action, suit, claim, demand or other proceeding of any nature or kind whatsoever (including any proceeding in a judicial, arbitral, administrative or other forum) against any of the Released Parties with respect to any and all Released Claims; (ii) enforcing, levying, attaching, collecting or otherwise recovering or enforcing by any manner or means, directly or indirectly, any judgment, award, decree or order against any of the Released Parties or their property with respect to any and all Released Claims; (iii) commencing, conducting, continuing or making against any other Person in any manner, directly or indirectly, any action, suit, claim, demand or other proceeding of any nature or kind whatsoever (including any proceeding in a judicial, arbitral, administrative or other forum) that relates to a Released Claim if such other Person makes a claim or might reasonably be expected to make a claim, in any manner or forum, including by way of contribution or indemnity or other relief, against one or more of the Released Parties, unless such claim of such other Person is itself a Released Claim; (iv) creating, perfecting, asserting or otherwise enforcing, directly or indirectly, any Encumbrance of any kind against the Released Parties or their property with respect to any and all Released Claims; and (v) taking any actions to interfere with the implementation or consummation of the CCAA Plan with respect to any and all Released Claims;

(j)     order that, from and after the Effective Time, the recovery of Securities Claimants from a Non-Settlement Party with which any Settlement Party is judicially determined to be jointly and severally liable shall be limited to only that

36

proportion of damages attributable to the liability of the Non-Settlement Party, as finally determined in the Actions;

(k)     order that, from and after the Effective Time, all claims for contribution, indemnity or other claims over that relate to the Released Claims or the Channelled Claims, which were or could have been brought by a Settlement Party in the Actions or otherwise against a Co-Defendant that is a Non-Settlement Party, are permanently and forever barred, estopped, stayed and enjoined;

(l)     order that a Co-Defendant on motion to the applicable court on at least thirty (30) days' notice to counsel for each applicable Settlement Party, but not to be brought unless and until the Action against the Co-Defendant has been certified and all appeals or times to appeal have been exhausted if such Action is a class proceeding, may seek orders for the following, determined as if the Settlement Party remained a party to the Action:

   (i)     documentary discovery and an affidavit of documents from the Settlement Party in accordance with the *Rules of Civil Procedure,* RRO 1990, Reg. 1994;

   (ii)    oral discovery of the Settlement Party or a representative of the Settlement Party, as applicable, the transcript of which may be read in at trial;

   (iii)   leave to serve a request to admit on the Settlement Party in respect of factual matters; and

   (iv)    the attendance of the Settlement Party, or the production of a representative of the Settlement Party, as applicable, to testify at trial, with such witness to be subject to cross-examination by counsel for the Co-Defendant;

(m)     order that each Person having a Channelled Claim will be limited to recovering from the Securities Claimant Trust in respect of such Channelled Claim in accordance with the CCAA Plan and Definitive Documents and, if applicable, from any Person who is not a Released Party, and such Person with a Channelled Claim will have no right to and shall not make any claim against or seek any recovery from any Released Party in respect of such Channelled Claim, provided that such order will not prevent a Person with an Insured Securities Claim or Insured Securities-Related Claim from making a claim against a Settlement Party to establish liability (but without recovery from it or its property) solely to the extent necessary to enable the Securities Claimant Trust to enforce Assigned Claims against Insurers who are not Settlement Parties;

(n)     order that, from and after the Effective Time, all Persons are permanently and forever barred, estopped, stayed and enjoined from: (i) commencing, conducting, continuing or making in any manner, directly or indirectly, any action, suit, claim, demand or other proceeding of any nature or kind whatsoever (including any proceeding in a judicial, arbitral, administrative or other forum) against any of the Released Parties with respect to any and all Channelled Claims; (ii) enforcing,

37

levying, attaching, collecting or otherwise recovering or enforcing by any manner or means, directly or indirectly, any judgment, award, decree or order against any of the Released Parties or their property with respect to any and all a Channelled Claims; (iii) commencing, conducting, continuing or making against any other Person in any manner, directly or indirectly, any action, suit, claim, demand or other proceeding of any nature or kind whatsoever (including any proceeding in a judicial, arbitral, administrative or other forum) that relates to a Channelled Claim if such Person makes a claim or might reasonably be expected to make a claim, in any manner or forum, including by way of contribution or indemnity or other relief, against one or more of the Released Parties, unless such claim of such other Person is itself a Released, Claim, Channelled Claim; (iv) creating, perfecting, asserting or otherwise enforcing, directly or indirectly, any Encumbrance of any kind against any of the Released Parties with respect to any and all Channelled Claims; and (v) taking any actions to interfere with the implementation or consummation of the CCAA Plan with respect to any and all Channelled Claims, provided that such order will not prevent a Person with an Insured Securities Claim or Insured Securities-Related Claim from making a claim against a Settlement Party to establish liability (but without recovery from it or its property) solely to the extent necessary to enable the Securities Claimant Trust to enforce Assigned Claims against Insurers who are not Settlement Parties;

(o)   order that any Person that did not file a proof of claim in respect of a Claim by the applicable bar date in accordance with the Claims Procedure Order, and any Person with a General Unsecured Claim that is not a Proven Claim or Unresolved General Unsecured Claim at the Effective Time, is fully, finally, irrevocably and forever barred, estopped, stayed and enjoined from making any such Claim and is not be entitled to any consideration under the CCAA Plan, and such Person's Claim is fully, finally, irrevocably and forever barred and extinguished;

(p)   authorize the CannTrust Plan Companies and the Monitor to take all steps and actions, and to do all things, necessary or appropriate to implement the CCAA Plan in accordance with and subject to its terms and conditions, and to enter into, execute, deliver, complete, implement and consummate all of the steps, transactions, distributions, payments, deliveries, allocations, instruments and agreements contemplated by, and subject to the terms and conditions of, the CCAA Plan;

(q)   declare that each of the CCAA Charges will be terminated, discharged, expunged and released at the applicable time set out in the CCAA Sanction Order;

(r)   declare that, notwithstanding: (i) the pendency of the CCAA Proceedings; (ii) any applications for a bankruptcy, receivership or other order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* (Canada), the CCAA or otherwise in respect of any of the CannTrust Plan Companies and any bankruptcy, receivership or other order issued pursuant to any such applications; and (iii) any assignment in bankruptcy made or deemed to be made in respect of any of the CannTrust Plan Companies, the transactions contemplated by the CCAA Plan will

38

be binding on any trustee in bankruptcy or receiver that may be appointed in respect of any of the CannTrust Plan Companies or its assets and will not be void or voidable by creditors of any of the CannTrust Plan Companies, nor will the CCAA Plan, or the payments and distributions contemplated pursuant thereto constitute nor be deemed to constitute a fraudulent preference, assignment, fraudulent conveyance, transfer at undervalue or other reviewable transaction under the *Bankruptcy and Insolvency Act* (Canada), CCAA or any other applicable federal or provincial legislation, nor will the CCAA Plan constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation;

(s)     order that, as of the Effective Time, (i) all of the rights and obligations of CannTrust Holdings and each Settlement Party to and in respect of the Assigned Claims shall be assigned to and assumed by the Securities Claimant Trust and such assignment is valid and binding upon the applicable Non-Settlement Parties in respect of such Assigned Claims notwithstanding any restriction or prohibition contained in any insurance policy, underwriting agreement, audit engagement letter or other agreement relating to the assignment thereof (an "**Assigned Claims Related Agreement**"), including any provision requiring the consent of any party to an assignment, (ii) the counterparties to the Assigned Claims Related Agreements are prohibited from exercising any rights or remedies under the Assigned Claims Related Agreements and shall be forever barred, estopped, stayed and enjoined from taking such action, by reason of:

(A)     any restriction, condition or prohibition contained in any such Assigned Claim Related Agreement relating to the assignment thereof;

(B)     any event that occurred on or prior to the Effective Time and is not continuing that would have entitled such counterparty to enforce those rights or remedies (including defaults or events or default arising as a result of the insolvency of any member of the CannTrust Group);

(C)     the insolvency of any member of the CannTrust Group or the fact that any member of the CannTrust Group sought or obtained relief under the CCAA;

(D)     any compromises or arrangements effected pursuant to the CCAA Plan or any action taken or transaction effected pursuant to the CCAA Plan (including the compromise or release of any Affected Claim or Released Claim arising under such Assigned Claim Related Agreement);

(E)     any change in the control of the CannTrust Group arising from the implementation of the CCAA Plan;

and (iii) such counterparties are hereby deemed to waive any defaults relating thereto.

(t)     declare that all contracts, leases and other agreements and arrangements to which any member of the CannTrust Group or Cannabis Coffee and Tea Pod Company Ltd., Cannatrek Ltd., Elmcliffe Investments [No. 2] Inc. and O Cannabis We Stand on Guard for Thee Corporation (each, an "**Affected Party**" and collectively, the "**Affected Parties**") is a party, whether written or oral (each, including any and all amendments or supplements thereto, an "**Existing Agreement**") that have not been terminated or disclaimed pursuant to the applicable paragraph of the Initial Order and related provision of the CCAA will be and remain in full force and effect, unamended as of the Effective Time (except for all Affected Claims and Released Claims thereunder that have been compromised and released), and no Person who is a party to any such Existing Agreement may accelerate, terminate, rescind, refuse to perform or otherwise repudiate its obligations thereunder, or enforce or exercise any right (including any right of set off, dilution or other remedy) or make any demand under or in respect of any such Existing Agreement and no automatic termination will have any validity or effect, as against any member of the CannTrust Group, an Affected Party or any Released Party that is a party thereto, by reason of (i) any event that occurred on or prior to the Effective Time and is not continuing that would have entitled such Person to enforce those rights or remedies (including defaults or events or default arising as a result of the insolvency of any member of the CannTrust Group); (ii) the insolvency of any member of the CannTrust Group or the fact that any member of the CannTrust Group sought or obtained relief under the CCAA; (iii) any compromises or arrangements effected pursuant to the CCAA Plan (including the compromise or release of any Claim arising under such Existing Agreement) or any action taken or transaction effected pursuant to the CCAA Plan; or (iv) any change in the control of the CannTrust Group or the Affected Parties arising from the implementation of the CCAA Plan;

(u)     declare that the stay of proceedings under the Initial Order continues until the Effective Time;

(v)     approve the conduct of the CRO and the Directors of each member of the CannTrust Group during the CCAA Proceedings;

(w)     approve all conduct of the Monitor and the Monitor's Representatives in relation to the CannTrust Group and bar all claims against them arising from or relating to the services provided to the CannTrust Group up to and including the date of the CCAA Sanction Order; and

(x)     declare that the CannTrust Group and the Monitor may apply to the CCAA Court for advice and direction in respect of any matters arising from or in relation to the CCAA Plan.

40

## ARTICLE 9
## PLAN CONDITIONS PRECEDENT AND IMPLEMENTATION

9.1    **Conditions Precedent to Plan Implementation**

The CCAA Plan is subject to the satisfaction of the following conditions (the "**Plan Implementation Conditions**"), which may be waived (except in the case of Sections 9.1(a) and (b) below which may not be waived) only by the CannTrust Plan Companies in writing:

(a)     the CCAA Plan will have been approved by the Affected Creditors;

(b)     the CCAA Sanction Order will have been issued by the CCAA Court, consistent with the terms of Section 8.2, with such amendments as may be acceptable to the CannTrust Plan Companies;

(c)     the CCAA Termination Order (CTI) will have been issued by the CCAA Court;

(d)     the U.S. Approval Order will have been entered in the U.S. Class Action;

(e)     all applicable appeal periods in respect of the CCAA Sanction Order and the U.S. Approval Order will have expired and any appeals therefrom will have been finally disposed of by the applicable appellate tribunal;

(f)     the Trust Declaration will have been executed, delivered and become effective in accordance with its terms, subject only to the occurrence of the Plan Implementation Date;

(g)     CannTrust Holdings will have paid its Cash Contribution to the Securities Claimant Trust and the Original Settlement Parties will have assigned their Assigned Claims, if any, to the Securities Claimant Trust;

(h)     the terms of the Settlement-Related Agreements and any other Definitive Documents not otherwise expressly addressed in this Section 9.1 will have been settled in form and substance satisfactory to each of the RSA Parties, acting reasonably, and each of the Definitive Documents will have become effective in accordance with its terms, subject only to the occurrence of the Plan Implementation Date (if applicable to such document);

(i)     each of the conditions precedent to the closing of the transaction provided in the RSA will have been satisfied or waived in accordance with the terms of the RSA;

(j)     the matters contemplated in the RSA Supplemental Letter Agreement to be completed before or as a condition to the implementation of the CCAA Plan have been satisfied or waived in accordance with the terms of the RSA Supplemental Letter Agreement;

(k)     arrangements satisfactory to the DIP and Exit Lender and the CannTrust Group in respect of the terms governing the DIP and Exit Loan from and after the Plan

41

Implementation Date will have become effective, subject only to the occurrence of the Plan Implementation Date;

(l)     all relevant Persons will have executed, delivered and filed all documents and other instruments that, in the opinion of the CannTrust Plan Companies acting reasonably, are necessary to implement the provisions of the CCAA Plan, the CCAA Sanction Order and the CCAA Termination Order (CTI);

(m)    no action or proceeding will be pending by any third party to enjoin or prohibit the implementation of the CCAA Plan; and

(n)     all applicable consents, approvals and orders of, and all applicable submissions and filings with, Governmental Authorities having jurisdiction for the completion of the steps and transactions contemplated by the CCAA Plan (including the steps and transactions which are Plan Implementation Conditions) will have been obtained or made, as the case may be, in each case to the extent deemed necessary or advisable by the CannTrust Plan Companies, in form and substance satisfactory to the CannTrust Plan Companies.

## 9.2    CannTrust Plan Companies' Certificate – Plan Implementation

Upon receipt of the Certificate of Amendment, the CannTrust Plan Companies will deliver to the Monitor and file with the CCAA Court, a copy of a certificate (i) stating that each of the Plan Implementation Conditions has been satisfied or waived and that the Articles of Reorganization has been filed and have become effective as of the date set out in the Certificate of Amendment, and (ii) designating an Effective Time on the Plan Implementation Date.

## 9.3    Monitor's Certificate – Plan Implementation

As soon as practicable following the occurrence of the Effective Time, the Monitor will serve on the service list in the CCAA Proceedings and post on the Monitor's website a certificate confirming that the Plan Implementation Date has occurred and the time of the Effective Time, and will file such certificate with the CCAA Court as soon as practicable after it has been served and posted.

### ARTICLE 10
### GENERAL

## 10.1  Binding Effect

At the Effective Time and in accordance with the sequence of steps set out in Section 4.6, the CCAA Plan will become effective and binding on and enure to the benefit of the CannTrust Plan Companies, the Affected Creditors, the Released Parties and any other Person named or referred to in or subject to the CCAA Plan and their respective heirs, executors, administrators and other legal representatives, successors and assigns.  Without limiting the generality of the foregoing, at the Effective Time in accordance with this CCAA Plan and to the extent provided in the CCAA Sanction Order:

42

(a)    the treatment of Affected Claims, Released Claims and Channelled Claims under the CCAA Plan will be final and binding for all purposes upon and enure to the benefit of the CannTrust Plan Companies, the Affected Creditors, the Released Parties and all other Persons named or referred to in or subject to the CCAA Plan and their respective heirs, executors, administrators and other legal representatives, successors and assigns;

(b)    all Affected Claims (other than Insured Securities Claims) will be forever compromised, released, discharged and barred, excepting only with respect to any distribution thereon in the manner and to the extent provided for in the CCAA Plan;

(c)    all Released Claims will be forever released, discharged, enjoined and barred;

(d)    each Affected Creditor and each Person holding a Released Claim or Channelled Claim will be deemed to have:

  (i)    consented and agreed to all of the provisions of the CCAA Plan in its entirety;

  (ii)    executed and delivered to the CannTrust Plan Companies and to the other Released Parties, as applicable, all consents, releases, assignments and waivers, statutory or otherwise, required to implement and carry out the CCAA Plan in its entirety;

  (iii)    waived any default by or rescinded any demand for payment against any CannTrust Plan Company that has occurred on or prior to the Effective Time pursuant to, based on or as a result of any provision, express or implied, in any agreement or other arrangement, written or oral, existing between such Affected Creditor or Person holding a Released Claim or Channelled Claim and the applicable CannTrust Plan Company with respect to an Affected Claim, Released Claim or Channelled Claim (as the case may be); and

  (iv)    agreed that, if there is any conflict between the provisions, express or implied, of any agreement or other arrangement, written or oral, existing as at the moment before the Effective Time between such Affected Creditor or Person holding a Released Claim or Channelled Claim and the applicable CannTrust Plan Company with respect to an Affected Claim, Released Claim or Channelled Claim (as the case may be) and the provisions of the CCAA Plan, then the provisions of the CCAA Plan take precedence and priority and the provisions of such agreement or other arrangement are amended accordingly.

## 10.2  **Deeming Provisions**

In the CCAA Plan, the deeming provisions are not rebuttable and are conclusive and irrevocable.

MT MTDOCS 41518312

43

10.3  **Modification of the CCAA Plan**

(1)    The CannTrust Plan Companies reserve the right, at any time and from time to time, to amend, restate, modify and/or supplement the CCAA Plan (including to address or further address the treatment of claims subject to the Claims Procedure Order), provided that any such amendment, restatement, modification or supplement is contained in a written document which is filed with the CCAA Court and (i) if made prior to or at the Meeting, is communicated to Affected Creditors in the manner contemplated by the Meeting Order; or (ii) if made following the Meeting, is approved by the CCAA Court.

(2)    Notwithstanding Section 10.3(1), after the Meetings and before the Plan Implementation Date the CannTrust Plan Companies may amend, restate, modify and/or supplement the CCAA Plan with the consent of the Monitor, without the consent of the Affected Creditors or approval of the CCAA Court, provided that any such amendment, restatement, modification and/or supplement (i) is filed with the CCAA Court; (ii) is posted on the website maintained by the Monitor and notice thereof is provided to the service list maintained by the Monitor for the CCAA Proceedings; (iii) does not materially decrease the anticipated recovery of General Unsecured Creditors under the CCAA Plan as determined by the Monitor and, in the case of Securities Claimants, is in their financial or other interests as determined by the CCAA Representatives and is consented to by the Monitor; and (iv) does not amend the Plan Implementation Conditions.

(3)    Notwithstanding Sections 10.3(1) and (2), any amendment, restatement, modification or supplement to the CCAA Plan may be made by the CannTrust Plan Companies at any time and from time to time with the consent of the Monitor, without the consent of the Affected Creditors or approval of the CCAA Court, provided that any such amendment, restatement, modification and/or supplement (i) is filed with the CCAA Court; (ii) is posted on the website maintained by the Monitor and notice thereof is provided to the service list maintained by the Monitor for the CCAA Proceedings; and (iii) (A) concerns a matter which is of an administrative nature required to better give effect to the implementation of the CCAA Plan, or (B) is to cure any errors, omissions or ambiguities, and in either case is not materially adverse to the financial or economic interests of the Affected Creditors as determined by the Monitor.

(4)    Notwithstanding Sections 10.3(1), (2) and (3), the CannTrust Plan Companies may amend the CCAA Plan pursuant to Section 7.1(3), provided that such amendment (i) is filed with the CCAA Court; and (ii) is posted on the website maintained by the Monitor and notice thereof is provided to the service list maintained by the Monitor for the CCAA Proceedings.

(5)    Any amended, restated, modified or supplementary CCAA Plan filed with the CCAA Court and, if required by this Section, approved by the CCAA Court, will for all purposes be and be deemed to be a part of and incorporated in the CCAA Plan.

MT MTDOCS 41518312

44

10.4  **Paramountcy**

From and after the Effective Time, any conflict between:

(a)     the CCAA Plan or the CCAA Sanction Order; and

(b)     the covenants, warranties, representations, terms, conditions, provisions or obligations, expressed or implied, of any contract, mortgage, security agreement, indenture, trust indenture, note, loan agreement, commitment letter, agreement for sale, lease or other agreement, written or oral and any and all amendments or supplements thereto existing between one or more of the Affected Creditors and any of the CannTrust Plan Companies as at the moment before the Effective Time,

will be deemed to be governed by the terms, conditions and provisions of the CCAA Plan and the CCAA Sanction Order, which will take precedence and priority.

10.5  **Severability of Plan Provisions**

If, prior to the Plan Implementation Date, any term or provision of the CCAA Plan is held by the CCAA Court to be invalid, void or unenforceable, the CCAA Court, at the request of the CannTrust Plan Companies and with the consent of the Monitor, will have the power to either (a) sever such term or provision from the balance of the CCAA Plan and provide the CannTrust Plan Companies with the option to proceed with the implementation of the balance of the CCAA Plan, or (b) alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as so altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, and provided that the CannTrust Plan Companies proceed with the implementation of the CCAA Plan, the remainder of the terms and provisions of the CCAA Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

10.6  **Protections of the Monitor**

The Monitor is acting and will continue to act in all respects in its capacity as Monitor in the CCAA Proceedings with respect to the CannTrust Group (and not in its personal capacity).  The Monitor will not be responsible or liable for any obligations of the CannTrust Group.  The Monitor will have the powers and protections granted to it by the Initial Order, the CCAA Plan, the CCAA and any other Order made in the CCAA Proceedings.  Ernst & Young Inc. will incur no personal liability whatsoever whether on its own part or in respect of any failure on the part of the CannTrust Group to observe, perform or comply with any of its obligations under the CCAA Plan.  Any release, discharge or other benefit conferred upon the Monitor pursuant to the CCAA Plan will enure to the benefit of Ernst & Young Inc.  The Monitor in its personal capacity will be a third party beneficiary to the CCAA Plan entitled to enforce such releases, discharges and other benefits in accordance with the terms of the CCAA Plan.

MT MTDOCS 41518312

45

## 10.7 **Different Capacities**

Persons who are affected by the CCAA Plan may be affected in more than one capacity.  Unless expressly provided herein to the contrary, a Person will be entitled to participate hereunder in each such capacity.  Any action taken by a Person in one capacity will not affect such Person in any other capacity, unless expressly agreed by the CannTrust Plan Companies and the Person in writing or unless its Claims overlap or are otherwise duplicative.

## 10.8 **Notices**

Any notice or other communication to be delivered hereunder must be in writing and reference the CCAA Plan and may, subject as hereinafter provided, be made or given by personal delivery, ordinary mail or by facsimile or email addressed to the respective parties as follows:

If to any of the CannTrust Plan Companies:

c/o CannTrust Holdings Inc.
3280 Langstaff Road, Unit 1
Vaughan, ON  L4K 4Z8

Attention:	David Blair, Chief Financial Officer

Fax:		647-872-2315
Email:		dblair@canntrust.ca

With copies to (which will not constitute notice)

McCarthy Tétrault LLP
66 Wellington Street West
Suite 5300
Toronto, ON  M5K 1E6

Fax:		416-868-0673

Attention:	James D. Gage and Shane D'Souza
Email:		jgage@mccarthy.ca and sdsouza@mccarthy.ca

If to an Affected Creditor: to the mailing address, facsimile number or email address provided on such Affected Creditor's Proof of Claim or such more recent address particulars of an Affected Creditor as noted in the files of the CannTrust Plan Companies or the Monitor;

If to the Monitor:

Ernst & Young Inc.
100 Adelaide Street West,
Toronto, Ontario
M5H 0B3

MT MTDOCS 41518312

Attention:      Alex Morrison
Email:          canntrust.monitor@ca.ey.com

With copies to (which will not constitute notice)

Aird & Berlis LLP
Brookfield Place
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Attention:      Steven L. Graff and Jonathan Yantzi
Email:          sgraff@airdberlis.com and jyantzi@airdberlis.com

or to such other address as any party may from time to time notify the others in accordance with this section, or, in the case of an address change for the CannTrust Plan Companies or the Monitor, by posting notice of such address change on the Monitor's website (http://www.ey.com/ca/canntrust).  Any such communication so given or made will be deemed to have been given or made and to have been received on the day of delivery if delivered, or on the day of faxing or sending by other means of recorded electronic communication, provided that such day in either event is a Business Day and the communication is so delivered, faxed or sent before 4:00 p.m. (Toronto time) on such day.  Otherwise, such communication will be deemed to have been given and made and to have been received on the next following Business Day.

## 10.9  **Further Assurances**

Each of the Persons named or referred to in, or subject to, the CCAA Plan will execute and deliver all such documents and instruments and do all such acts and things as may be necessary or desirable to carry out the full intent and meaning of the CCAA Plan and to give effect to the transactions contemplated by the CCAA Plan and the Definitive Documents notwithstanding any provision of the CCAA Plan that deems any event or transaction to occur without further formality.

## 10.10 **Language**

This CCAA Plan, as well as any notices, schedules or other documents related thereto has been and will be prepared in the English language only.  To the extent a French language or other translation is prepared, any such translation will be for informational purposes only, it being intended that the English language version will govern and prevail in all respects.

## 10.11 **Acts to Occur on Next Business Day**

If any distribution, payment or act under the CCAA Plan is required to be made or performed on a date that is not a Business Day, then the making of such distribution, payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date.

47

10.12 **Non-Consummation of the CCAA Plan**

If the CCAA Plan is revoked at any time prior to the Effective Time, it will be null and void in all respects.  Nothing contained in the CCAA Plan and no act taken in preparation for the implementation of the CCAA Plan will:

 (a)  constitute or be deemed to constitute a waiver or release of any Claims by or against any member of the CannTrust Group or any other Person;

 (b)  prejudice the rights of any member of the CannTrust Group or any other Person in any further proceeding involving any member of the CannTrust Group; or

 (c)  constitute an admission of any sort by any member of the CannTrust Group or any other Person.

DATED as of the 7th day of July, 2021.

**CannTrust Holdings Inc.**
**CannTrust Inc.**
**Elmcliffe Investments Inc.**

MT MTDOCS 41518312

## SCHEDULE A
## ACTIONS

*Hrusa et al. v. CannTrust Holdings Inc. et al.,* Court File No. CV-19-00623567-00CP (ON SC)

*Webb v. CannTrust Holdings Inc. et al.,* Court File No. CV-19-1554 (ON SC)

*Jeff Dyck v. CannTrust Holdings Inc. et al.,* Court File No. 217559 (BC SC)

*Selanders v. CannTrust Holdings Inc. et al.,* Court File No. 1910983 (AB QB)

*Diran Avedian v. CannTrust Holdings Inc. et al.,* Court File No. 500-06-001011-192 (QC CS)

*Zola Finance Holdings Ltd. v. CannTrust Holdings Inc. et al.,* Court File No. CV-19-00002329-00CP (ON SC)

*In Re:  CannTrust Holdings Inc. Securities Litigation*, No. 1:19-CV-06396 (JPO)

*Alvarado v. CannTrust Holdings Inc. et al.*, 1:19-CV-6438 (JPO)

*Jones v. CannTrust Holdings Inc. et al.*, 1:19-CV-6883 (JPO)

*Justiss v. CannTrust Holdings Inc. et al.*, 1:19-CV-7164 (JPO)

*Huang v. CannTrust Holdings Inc. et al.*, 1:19-CV-6396 (JPO)

*Owens v. CannTrust Holdings Inc. et al.,* Court File No. 19CV352374 (California Superior Court, Santa Clara County)

MT MTDOCS 41518312

## SCHEDULE B
## ALLOCATION AND DISTRIBUTION SCHEME
## DISTRIBUTION OF CLASS COMPENSATION FUND TO MEMBERS

**I.    DEFINITIONS**

1.    The following definitions apply in this Allocation and Distribution Scheme:

(a) **"CannTrust"** means CannTrust Holdings, Inc;

(b) **"CannTrust Group"** means CannTrust, CannTrust Inc., CTI Holdings (Osoyoos) Inc. and Elmcliffe Investments Inc;

(c) **"Claim Form"** means a written claim in the provided form for seeking compensation from the Class Compensation Fund;

(d) **"Claimant"** means any Person making a claim as purporting to be a Class Member or on behalf of a Class Member;

(e) **"Claims Administrator"** means the claims administrator appointed for the purposes of the Allocation and Distribution Scheme, whose appointment will be confirmed by the Court;

(f) **"Class Compensation Fund"** means the Class Settlement Amount less  the Zola Payment, Class Counsel Fees, and all fees, disbursements, expenses, costs, taxes, any other amounts incurred or payable relating to approval, implementation and administration of the settlement including, without limitation, the costs, fees, and expenses of notice to class members, and the fees, expenses, disbursements and taxes paid to the Claims Administrator for administration of the Class Settlement Amount, the Holdback and any other expenses ordered by the courts;

(g) **"Class Counsel"** means Ontario Class Action Counsel and U.S. Class Action Counsel;

(h) **"Class Counsel Fees"** means the aggregate fees and expense disbursements (including taxes) of Class Counsel;

(i) **"Class Member(s)"** means any Person that acquired Shares during the Class Period;

(j) **"Class Period"** means the time period from June 1, 2018 through September 17, 2019, inclusive;

(k) **"Class Settlement Amount"** means CAD $50,000,000 to be contributed to the Securities Claimant Trust by CannTrust pursuant to the Plan, together with the cash contributions of any other Additional Settlement Parties (as defined in the Plan) pursuant to the applicable Additional RSA (as defined in the Plan), plus any accrued interest;

(l) **"Eligible Securities"** means Shares acquired by a Class Member during the Class Period. The date of purchase or acquisition shall be the "contract" or "trade" date as opposed to the "settlement" or "payment" date;

(m) **"Excluded Claim"** means any of the following:

(i) a claim in respect of a purchase or acquisition of securities that are not Eligible Securities; or

(ii) a claim by or on behalf of any Excluded Person;

(n) **"Excluded Person(s)"** means

(i) CannTrust, Cannamed Financial Corp, Cajun Capital Corporation, KMPG LLP, Merrill Lynch Canada Inc., Citigroup Global Markets Canada Inc., Credit Suisse Securities (Canada) Inc., RBC Dominion Securities Inc., Jefferies Securities Inc., Canaccord Genuity Corp., Merrill Lynch, Pierce, Fenner & Smith Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Jefferies LLC, Canaccord Genuity LLC, Paul Family Trust, Mar-Risa Holdings Inc., York Capital Funding Inc., Sutton Management Limited, and their past and present subsidiaries, affiliates, officers, directors, senior employees, legal representatives, heirs, predecessors, successors and assigns (the **"Corporate Defendants"**); and

(ii) Eric Paul, Peter Aceto, Greg Guyatt, Ian Abramowitz, Mark Dawber, John Kaden, Mark Ian Litwin, Fred Litwin Robert Marcovitch, Mitchell J. Sanders, Stan Abramowitz, Brad Rogers, Michael Ravensdale, Shawna Page, Ilana Platt, Graham Lee, Kenneth Brady Green, Andrea Kirk, Norman Paul and any member of their families (**"Individual Defendants"**) and any company under the control of an Individual Defendant;

(o) **"FIFO"** means the method applied to the holdings of Class Members who made multiple purchases/acquisitions or sales. If a Class Member has more than one purchase/acquisition or sale of CannTrust common stock, purchases/acquisitions and sales will be matched on a First In, First Out ("FIFO") basis. Class Period sales will be matched first against any holdings at the beginning of the Class Period, and then against purchases/acquisitions in chronological order, beginning with the earliest purchase/acquisition made during the Class Period. A purchase/acquisition or sale of Shares shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. Option contracts are not securities eligible to participate in the Settlement. With respect to shares of CannTrust common stock purchased or sold through the exercise of an option, the purchase/sale date of the CannTrust common stock is the exercise date of the option and the purchase/sale price of the CannTrust common stock is the exercise price of the option;

(p) **"Holdback"** is the amount held back, at the discretion of the Trustees, to fund litigation expenses, disbursements, taxes, adverse costs awards, and/or other liabilities;

(q) **"Ontario Class Action Counsel"** means Dimitri Lascaris Law Professional Corporation, Henein Hutchinson LLP, Kalloghlian Myers LLP and Strosberg Sasso Sutts LLP;

(r) **"Person"** means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity;

(s) **"Plan"** means the plan of compromise, arrangement and reorganization of the CannTrust Group pursuant to the Companies' Creditors Arrangement Act;

(t) **"Purchase Price"** means the price at which the Claimant purchased or acquired Shares, excluding commissions, taxes, or fees paid in respect of the purchase/acquisition;

(u) **"Recognized Claim"** means a Claimant's nominal losses as calculated pursuant to the formulas set forth herein and which forms the basis for each Claimant's pro rata share of the Class Compensation Fund;

(v) **"Recognized Loss Amount"** is the amount calculated pursuant to paragraph 10(c);

(w) **"Risk Adjusted Loss"** is the amount calculated pursuant to paragraph 10(d);

(x) **"Sale Price"** means the price at which the Claimant disposed of Shares, excluding commissions, taxes, or fees paid in respect of the disposition;

(y) **"Securities Claimant Trust"** has the meaning ascribed to it in the Plan;

(z) **"Share(s)"** means common stock shares of CannTrust;

(aa) **"Share Inflation"** means the artificial inflation per share found in Table C;

(bb) **"Trustees"** has the meaning ascribed to it in the Plan;

(cc) **"U.S. Class Action Counsel"** means Labaton Sucharow LLP and Weisz Fell Kour LLP; and

(dd) **"Zola Payment"** means, subject to the authorization by the court supervising the CCAA Proceedings of the CannTrust Group, the payment to be made by the Trustees to Zola Finance Holdings Ltd. and Igor Gimelshtein (together, "**Zola**") pursuant to the agreement to be entered into between the Trustees and Zola on or before the date that the Plan is implemented, and as contemplated by the Restructuring Support Agreement between Zola, the CannTrust Group, and the CCAA Representatives (as defined in the Plan) dated May 5, 2021.

2.      The Claims Administrator shall distribute the Class Compensation Fund as set out below.

## II.      OBJECTIVE

3.      The objective of this Allocation and Distribution Scheme is to equitably distribute the Class Compensation Fund among Class Members that submit valid and timely claims for Eligible Securities.

## III.     DEADLINE FOR CLAIMS

4.      Any Person that wishes to claim compensation from the Class Compensation Fund shall deliver to, or otherwise provide, the Claims Administrator a Claim Form by the date set by the Court.  If the Claims Administrator does not receive a Claim Form from a Claimant by the deadline, then the Claimant shall not be eligible for any compensation whatsoever from the Class Compensation Fund.  Notwithstanding the foregoing, the Claims Administrator shall have the discretion to permit otherwise-valid late claims without further order of the Court, but only if doing so will not materially delay the distribution of the Class Compensation Fund.

## IV.     PROCESSING CLAIM FORMS

5.      The Claims Administrator shall review each Claim Form and verify that the Claimant is eligible for compensation from the Class Compensation Fund, as follows:

(a) for a Claimant claiming as a Class Member, the Claims Administrator shall be satisfied that:

    (i)      the Claimant is a Class Member; and

    (ii)     the claim is not an Excluded Claim;

(b) for a Claimant claiming on behalf of a Class Member or a Class Member's estate, the Claims Administrator shall be satisfied that:

    (i)      the Claimant has authority to act on behalf of the Class Member or the Class Member's estate in respect of financial affairs;

    (ii)     the Person or estate on whose behalf the claim was submitted was a Class Member; and

    (iii)    the claim is not an Excluded Claim.

MT MTDOCS 41518312                         4

(c) the Claimant has provided all supporting documentation required by the Claim Form or alternative documentation that is acceptable to the Claims Administrator.

6. The Claims Administrator shall take reasonable measures to verify that the Claimants are eligible for compensation and that the information in the Claims Forms is accurate. The Claims Administrator may make inquiries of the Claimants in the event of any concerns, ambiguities or inconsistencies in the Claim Forms and disallow claims that are not eligible.

## V.    ALLOCATION OF CLASS COMPENSATION FUND

7. Only Claimants that the Claims Administrator has determined to be eligible for compensation as set forth herein are entitled to recover compensation from the Class Compensation Fund.

8. Only claims in respect of Eligible Securities are entitled to receive compensation from the Class Compensation Fund.

9. As soon as possible after (i) all timely Claim Forms have been processed (and those otherwise-valid late Claim Forms that the Claims Administrator has exercised its discretion to permit); (ii) the time to request a reconsideration for disallowed claims under paragraphs 26-27 has expired; and (iii) all administrative reviews under paragraphs 28-29 have concluded, the Claims Administrator shall distribute the Class Compensation Fund to eligible Claimants.

10. The Claims Administrator shall determine each Claimant's Recognized Claim as follows, subject to the Additional Rules set out at paragraphs 14-19.

   (a) Purchase/acquisition and sale amounts in currencies other than Canadian dollars will be converted to equivalent Canadian dollar amounts as needed using publicly available currency exchange rates and in consultation with Class Counsel.[1]

   (b) Eligible Securities are those purchased in CannTrust's May 2019 share offering (**"Offering Shares"**) and those purchased on the secondary market (**"Secondary Shares"**).

---

[1] For informational purposes, during the Class Period, the USD/CAD exchange rate ranged from CAD$1.28 to CAD$1.36 per US$1.00 with an average of CAD$1.32 per US$1.00. After the Class Period and through March 4, 2021, the USD/CAD exchange rate ranged from CAD$1.25 to CAD$1.45 per US$1.00 with an average of CAD$1.33 per US$1.00.

(c) The "**Recognized Loss Amount**" per Offering Share and Secondary Share purchased/acquired during the Class Period is calculated as follows, with reference to the Share Inflation as set out in Table C at paragraph 11. The Recognized Loss Amount for any particular disposition of Eligible Securities shall be no less than zero.

**TABLE A**

| Date of Sale of Shares acquired during the Class Period | Recognized Loss Amount per Share |
|---|---|
| June 1, 2018 – July 7, 2019 | $0 |
| July 8, 2019 – September 16, 2019 | The lesser of:<br>(i)  the Share Inflation on the date of purchase minus the Share Inflation on the date of sale; or<br>(ii)  the Purchase Price minus the Sale Price. |
| September 17, 2019 – September 30, 2019 | The lesser of:<br>(i)  the Share Inflation on the date of purchase; or<br>(ii)  the Purchase Price minus the Sale Price. |
| October 1, 2019 – March 5, 2021 | The lesser of<br>(i)  the Share Inflation on the date of purchase;<br>(ii)  the Purchase Price minus CAD$1.70; or<br>(iii)  the Purchase Price minus the Sale Price. |
| Held as of the closing on March 5, 2021 | The lesser of<br>(i)  the Share Inflation on date of purchase; or<br>(ii)  the Purchase Price minus CAD$1.70. |

(d) The Recognized Loss Amounts for Offering Shares and Secondary Shares are multiplied by the risk adjustment in the following chart to obtain the "**Risk Adjusted Loss**":

TABLE B

| Type of Share | Risk Adjustment |
|---|:---:|
| Offering Share | 1 |
| Secondary Share | 0.8 |

(e) A Claimant's Recognized Claim is equal to the sum of the Risk Adjusted Loss for each type of share.

11.    The applicable Share Inflation amounts are as follows:

| TABLE C – SHARE INFLATION | |
|---|:---:|
| June 1, 2018 – September 30, 2018 | CAD$1.29 |
| October 1, 2018 – July 7, 2019 | CAD$5.02 |
| July 8, 2019 – July 9, 2019 | CAD$3.57 |
| July 10, 2019 – July 11, 2019 | CAD$3.05 |
| July 12, 2019 – July 15, 2019 | CAD$2.57 |
| July 16, 2019 – July 23, 2019 | CAD$2.09 |
| July 24, 2019 – August 11, 2019 | CAD$1.41 |
| August 12, 2019 – September 16, 2019 | CAD$0.24 |
| September 17, 2019 before 3:13 p.m. ET[2] | CAD$0.24 |
| September 17, 2019 at or after 3:13 p.m. ET and thereafter | CAD$0.00 |

---

[2] Trading at prices at or below CAD$1.85 will be deemed to have occurred after 3:13 p.m. ET.

12.    The Claims Administrator shall allocate the Class Compensation Fund on a pro-rata basis to eligible Claimants based upon each eligible Claimant's Recognized Claim.

13.    The Claims Administrator shall make payments to the eligible Claimants based on the allocation under paragraph 12, subject to the Additional Rules set forth below.

## VI.    ADDITIONAL RULES

14.    The Claims Administrator shall not make payments to eligible Claimants whose *pro rata* entitlement under this Allocation and Distribution Scheme is less than CAD$50.00.  Such amounts shall instead be allocated *pro rata* to other eligible Claimants whose *pro rata* entitlement under this Allocation and Distribution Scheme is equal or greater than CAD$50.00.

15.    To the extent a Claimant had an aggregate market gain from his, her or its transactions in Eligible Securities, the value of his, her or its total Recognized Claim will be zero.  To the extent that a Claimant suffered an aggregate market loss on transactions in Eligible Securities, but the aggregate market loss was less than the Recognized Claim calculated above, then the Recognized Claim shall be limited to the amount of the aggregate market loss.  For purposes of determining whether a Claimant had a market gain with respect to his, her, or its aggregate transactions in CannTrust common stock during the Class Period or suffered a market loss, the Claims Administrator will determine the difference between (i) the Total Purchase Amount and (ii) the sum of the Total Sales Proceeds and Holding Value.[3]  This difference will be deemed a Claimant's market gain or loss with respect to his, her, or its aggregate transactions in CannTrust common stock during the Class Period.

---

[3] The "Total Purchase Amount" is the total amount the Claimant paid (excluding commissions, taxes, and fees) for CannTrust common stock purchased or acquired during the Class Period. The Claims Administrator will match any sales of CannTrust common stock during the Class Period first against the Claimant's opening position (the proceeds of those sales will not be considered for purposes of calculating market gains or losses).  The total amount received (excluding commissions, taxes, and fees) for the remaining sales of CannTrust common stock sold during the Class Period will be the "Total Sales Proceeds".  The Claims Administrator will ascribe a value of CAD$1.70 per share for CannTrust common stock purchased during the Class Period and still held as of the close of trading on September 17, 2019 (the "Holding Value").  The Holding Value is based on the closing price of CannTrust common stock on September 17, 2019, the last day of the Class Period.

MT MTDOCS 41518312                              8

16.     There shall be no Recognized Loss Amount on (a) short sales of Eligible Securities during the Class Period or (b) purchases/acquisitions during the Class Period that were used to cover short sales; however, the short sale transactions shall be part of the calculation of a Claimant's aggregate market gain or loss.

17.     The receipt or grant by gift, devise or inheritance of Shares during the Class Period shall not be deemed to be a purchase or acquisition of Shares for the calculation of a Claimant's Recognized Loss Amount if the Person from which the Shares were acquired did not themselves acquire the Shares during the Class Period, nor shall it be deemed an assignment of any claim relating to the purchase or acquisition of such Shares unless specifically provided in the instrument or gift or assignment.

18.     Shares transferred between accounts belonging to the same Claimant during the Class Period shall not be deemed to be Eligible Securities for the purpose of calculating a Recognized Loss Amount unless those Shares were initially purchased by the Claimant during the Class Period. The share price for such securities shall be calculated based on the share price initially paid for the Eligible Securities.

19.     The Claims Administrator shall make payment to an eligible Claimant by either bank transfer or by cheque to the Claimant at the address provided by the Claimant or the last known postal address for the Claimant.

## VII.    REMAINING UNCLAIMED AMOUNTS

20.     If, for any reason, a Claimant does not cash a cheque within six months after the date on which the cheque was sent to the Claimant, the Claimant shall forfeit the right to compensation and the funds shall be distributed in accordance with paragraphs 21-22.

21.     If funds remain in the Class Compensation Fund by reason of uncashed distributions or otherwise, then after the Claims Administrator has made reasonable and diligent efforts to have eligible Claimants cash their distributions, and after the payment of any taxes and outstanding fees and expenses of the Claims Administrator, including any fees and expenses to conduct an additional distribution, any balance remaining in the Class Compensation Fund at least six (6) months after the initial distribution of such funds shall be redistributed, if it is economically

feasible to do so, to eligible Claimants who have cashed their initial distributions and would receive at least $50.00 in such additional redistribution, in a manner consistent with this Allocation and Distribution Scheme.

22.    Class Counsel shall, if feasible, continue to reallocate any further balance remaining in the Class Compensation Fund after the redistribution is completed among eligible Claimants in the same manner and time frame as provided for above.  In the event that Class Counsel determine that further redistribution of any balance remaining (following the initial distribution and redistribution) is no longer feasible, thereafter, Class Counsel shall donate the remaining funds, if any, to a non-sectarian charitable organization(s) certified under the United States Internal Revenue Code § 50l(c)(3) and/or a Canadian charity or other non-profit group to be designated by Class Counsel.

**IRREGULAR CLAIMS**

23.    The claims process is intended to be expeditious, cost effective and "user friendly" and to minimize the burden on Claimants.  The Claims Administrator shall, in the absence of reasonable grounds to the contrary, assume the Claimant to be acting honestly and in good faith.

24.    Where a Claim Form contains minor omissions or errors, the Claims Administrator shall correct such omissions or errors if the information necessary to correct the error or omission is readily available to the Claims Administrator.

25.    The claims process is also intended to prevent fraud, abuse, and the payment of ineligible Claim Forms.  If, after reviewing any Claim Form, the Claims Administrator believes that the claim contains errors which cannot be readily corrected with information readily available to the Claims Administrator, then the Claims Administrator may disallow the claim in its entirety or pay it only in part so that an appropriate Recognized Claim is awarded to the Claimant.  If the Claims Administrator believes that the claim is fraudulent or contains intentional errors which would materially exaggerate the Recognized Loss to be awarded to the Claimant, then the Claims Administrator shall disallow the claim in its entirety.

26.    Where the Claims Administrator disallows a claim, the Claims Administrator shall send to the Claimant at the address provided by the Claimant or the Claimant's last known email or postal

address, a notice advising the Claimant that the claim will be disallowed unless it is corrected and that he, she, or it may request the Claims Administrator to reconsider its decision. For greater certainty, a Claimant is not entitled to a notice or a review where a claim is allowed but the Claimant disputes the determination of the Recognized Claim or his or her individual compensation.

27.    Any request for reconsideration must be received by the Claims Administrator within 21 days of the date of the notice advising of the disallowance. If no request for reconsideration is received within this time period, the Claimant shall be deemed to have accepted the Claims Administrator's determination and the determination shall be final and not subject to further review by any court or other tribunal.

28.    Where a Claimant submits a request for reconsideration with the Claims Administrator, the Claims Administrator shall advise Class Counsel of the request and conduct an administrative review of the Claimant's request.

29.    Following its determination in an administrative review, the Claims Administrator shall advise the Claimant of its determination. In the event the Claims Administrator reverses a disallowance, the Claims Administrator shall send the Claimant at the Claimant's last known postal address, a notice specifying the revision to the Claims Administrator's disallowance.

30.    The determination of the Claims Administrator in an administrative review is final and is not subject to further review by any court or other tribunal.

31.    Data from each Claim Form shall be retained such that a Claimant will not be required to file further claim forms in any future distributions, except where the Claims Administrator, in consultation with Class Counsel, determines that further claim forms or information are necessary or desirable for efficient claims administration.

32.    The failure to file a valid Claim Form shall not prejudice any Person's ability to file a claim form in any future distribution.

33.    The Claims Administrator's fees and costs shall be paid from the Class Compensation Fund subject to the approval of Class Counsel, without Court approval.

34.     Any matter not referred to above shall be determined by analogy by the Claims Administrator in consultation with Class Counsel.

## SCHEDULE C
## COOPERATION AGREEMENT – GENERAL PRINCIPLES

All capitalized terms used but not otherwise defined in this Schedule C shall have the meanings given to such terms in the RSA.

A.    A material factor influencing CannTrust's decision to execute the Cooperation Agreement is the desire to limit its burden and expense in complying with the agreement. Accordingly, Prosecution Counsel agree to exercise good faith in seeking cooperation from CannTrust and agree not to seek information that is unnecessary, cumulative or duplicative and agree otherwise to avoid imposing undue or unreasonable burdens or expense on CannTrust.

B.    The scope of CannTrust's cooperation shall be limited to the allegations asserted in the Actions as presently filed and the Assigned Claims.

C.    All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided.

D.    CannTrust shall not be required to provide cooperation: (i) in violation of any law or Order from a court of competent jurisdiction; (ii) that waives any privilege; or (iii) with regard to conduct outside the scope of the Assigned Claims.

E.    As soon as reasonably practicable after the CCAA Plan is implemented:

(a)    CannTrust will provide all non-privileged documents (including electronically stored documents) relevant to the Actions and the Assigned Claims in a form mutually acceptable to the Parties. CannTrust makes no representation regarding, and shall bear no liability with respect to, the accuracy of, or that they have, can or will produce a complete set of any of the documents or information, and the failure to do so shall not constitute a breach or violation of the Cooperation Agreement.

(b)    If any documents protected by any privilege, including solicitor-client, litigation, attorney work product, settlement, common-interest or joint defence privilege, or any other privilege, doctrine or law, and/or any privacy law or other rule or law of Ontario, Quebec or any other jurisdiction, are accidentally or inadvertently disclosed or produced, such documents shall be promptly returned to CannTrust and the documents and the information contained therein shall not be disclosed or used directly or indirectly, except with the express written permission of CannTrust, and the production of such documents shall in no way be construed to have waived in any manner any privilege, doctrine, law, or protection attached to such documents.

(c)    CannTrust's counsel will meet with Prosecution Counsel to provide an evidentiary proffer which will include information that is not covered by privilege, including solicitor-client, litigation, attorney work product, settlement, common-interest or joint defence privilege, or any other privilege relating to the Actions and the Assigned Claims. The Parties agree

that there shall be no audio or video recording or written transcription or record of any statements made or information provided by CannTrust's counsel at the proffer, and that Prosecution Counsel may only make written notes of their own thoughts and impressions at the proffer for the purpose of formulating legal advice, pursuing litigation and/or for the purpose of advancing settlement discussions in the interests of the Securities Claimants and the Securities Claimant Trust, as applicable. Notwithstanding any other provision of the Cooperation Agreement, and for greater certainty, it is agreed that any such written notes, and all statements made and information provided by CannTrust's counsel are privileged, will be kept strictly confidential, may not be directly or indirectly disclosed to any other party, and shall not be used by Prosecution Counsel for any purpose other than for their own internal use in connection with the prosecution of the Actions and Assigned Claims and for no other purpose whatsoever.

F.    Prosecution Counsel agree that all documents and information made available or provided by CannTrust under the Cooperation Agreement shall be used only in connection with the prosecution of the Actions and the Assigned Claims, and shall not be used directly or indirectly for any other purpose, except to the extent that the documents or information are already publicly available prior to the time of production from CannTrust or subsequently become publicly available other than through the actions of Prosecution Counsel, the Securities Claimants or the Securities Claimant Trust. Prosecution Counsel agree they shall not disclose the documents and information provided by CannTrust beyond what is reasonably necessary for the prosecution of the Actions or Assigned Claims or as otherwise required by law, and acknowledge that they are bound by the deemed undertaking and Rule 30.1 of the Rules of Civil Procedure and the equivalent rules in other Provinces or jurisdictions, except to the extent that the documents or information are publicly available.

G.    Prosecution Counsel may request to interview certain of CannTrust's current or former officers, directors or employees under oath. CannTrust will make best efforts to encourage witnesses to attend the interviews but will not compel witnesses to provide witness statements or other testimony under oath.  The Securities Claimant Trust will bear the reasonable costs of counsel retained by CannTrust and witnesses to assist in their interactions with Prosecution Counsel. It shall not be a breach of cooperation if any person or entity asserts any right against self-incrimination or similar privilege.

H.    The Securities Claimants and the Securities Claimant Trust agree that section 7 is the exclusive means by which they may obtain discovery or information or documents from CannTrust's current or former officers, directors or employees. They agree not to pursue any other means of discovery against, or seek to compel the evidence of CannTrust's current or former officers, directors or employees, whether in Canada or elsewhere and whether under the rules or laws of this or any other Canadian or foreign jurisdiction, unless that person does not cooperate pursuant to section 7.

I.    Subject to the rules of evidence or any court Order, CannTrust agrees to use reasonable efforts to produce at trial or through acceptable affidavits for use at trial a current representative qualified to establish the authenticity of the documents provided by

CannTrust pursuant to the Cooperation Agreement (after Class Counsel and counsel for the Securities Claimant Trust, as applicable, has used best efforts to authenticate documents for use at trial without a live witness).

J.      To the extent any of CannTrust's cooperation obligations require any current or former employees of CannTrust to travel from their principal place of business or residence to another location, the Securities Claimant Trust shall reimburse that person for reasonable expenses incurred by any such person in connection with fulfilling CannTrust's cooperation obligations.

K.      The failure of a specific officer, director, employee or former employee of CannTrust to agree to make him or herself available shall not constitute a violation of the Cooperation Agreement.

L.      Any dispute regarding the Cooperation Agreement will not invalidate the CCAA Plan and shall be resolved by way of confidential mediation/arbitration, in a manner to be agreed among the Parties.

MT MTDOCS 41518312

**SCHEDULE D**
**FORM OF RELEASE IN FAVOUR OF RELEASED PARTIES**

**FULL AND FINAL RELEASE**

WHEREAS:

A.    On March 31, 2020, CannTrust Holdings Inc., CannTrust Inc., CTI Holdings (Osoyoos) Inc. and Elmcliffe Investments Inc. (collectively, the "CannTrust Group") commenced proceedings under the Companies' Creditors Arrangement Act (the "CCAA").

B.    Pursuant to the order dated ●, 2021 (the "Sanction Order"), the court supervising the CCAA proceedings of the CannTrust Group approved the plan of compromise, arrangement and reorganization of CannTrust Holdings Inc., CannTrust Inc. and Elmcliffe Investments Inc. dated ●, 2021 (the "CCAA Plan").

C.    Capitalized terms used in this full and final release (the "Release") and not otherwise defined have the meanings given to them in the CCAA Plan.

D.    On ●, 2021, the CannTrust Plan Companies implemented its CCAA Plan and the releases and injunctions set out in the CCAA Plan and the Sanction Order became effective.

E.    The Definitive Documents provide that, following the Effective Time, if the Securities Claimant Trust or Securities Claimants enter into a settlement with a Non-Settlement Party (a "Settlement"), they will obtain a full and final release from the Non-Settlement Party in favour of the Released Parties.

F.    **[The Securities Claimants who are plaintiffs in the ● action / the Securities Claimant Trust]** and the undersigned, a Non-Settlement Party, have entered into a Settlement.

G.    As a term of the Settlement, the undersigned has agreed to provide this Release to the Released Parties.

NOW THEREFORE, in consideration of the Settlement and for other good and valuable consideration, the receipt and sufficiency of which are hereby irrevocably acknowledged, the undersigned agrees in favour of the Released Parties as follows (without limitation to the releases and injunctions set out in the CCAA Plan and the Sanction Order):

1.    The undersigned hereby releases, remises and forever discharges each of the Released Parties from any and all Released Claims and Securities-Related Section 5.1(2) Claims, including without limitation any and all Securities-Related Claims and any and all Securities-Related Indemnity Claims.

2.    The undersigned agrees not to make or threaten any claim or threaten, commence or continue any action or proceeding (including, without limitation, any subrogated claim, action or proceeding) against any other Person who has or could have, or which could result in, a Securities-Related Indemnity Claim or other claim relating to the Released

MT MTDOCS 41518312

Claims or Securities-Related Section 5.1(2) Claims for contribution, indemnity or damages, against any of the Released Parties.

3.  The undersigned agrees to indemnify and save harmless the Released Parties from any costs, expenses, losses or damages whatsoever incurred by the Released Parties in connection with or in any way related to defending or responding to any action or other proceeding brought by any other Person against the Released Parties for contribution, indemnity or damages, or any other claim over as a result of any action or other proceeding brought by the undersigned arising out of any matters relating to the Released Claims or the Securities-Related Section 5.1(2) Claims.

4.  The undersigned represents, warrants and confirms that:

    (a)    it does not hold any Non-Released CannTrust Claims;

    (b)    it has executed this Release voluntarily, without any duress or undue influence on the part of any Person;

    (c)    it has been advised by counsel of its choice with respect to the terms of this Release, the consequences of same, and the legal effects thereof;

    (d)    there is no condition, express or implied, or collateral agreement affecting this Release; and

    (e)    it is duly authorized to enter into this Release, and the performance of this Release by the undersigned requires no further consents or approvals from any Person.

5.  This Release will inure to the benefit of each Released Party and will be binding upon the undersigned and, in each case, their respective heirs, executors, administrator, other legal representatives, successors and permitted assigns.

6.  The rights and obligations of the undersigned under this Release are not assignable in whole or in part.

7.  This Release is intended solely for the benefit of the Released Parties and, except as provided expressly herein, is not intended to (and will not) confer any benefit upon, or create any rights in favour of, any Person other than the Released Parties.

8.  This Release will be governed by and construed in accordance with the laws the Province of Ontario and the laws of Canada applicable therein, without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction.

MT MTDOCS 41518312

IN WITNESS WHEREOF the undersigned has executed this Release this • day of •, 20•.

• 

Per: _____

Name:

Title:

## SCHEDULE E

## INSURERS (ADDITIONAL SETTLEMENT PARTIES) AND INSURANCE POLICIES

| Insurer | Policy # | Policy Period |
|---|---|---|
| Allianz Global Risks US Insurance Company | CAF000845190 | 02/25/2019 - 02/25/2020 |
| Markel Bermuda Limited | MKLB25GPL00008 98 | 02/25/2019 - 02/25/2020 |
| Ascot Bermuda Limited f/k/a Ascot Reinsurance Company Limited Bermuda | UB19NG017C1X | 02/25/2019 - 02/25/2020 |
| Aspen Bermuda Limited | MLAC1E219A0Y | 02/25/2019 - 02/25/2020 |
| Assicurazioni Generali S.p.A. UK Branch | B0509FINMW1900 458 | 02/25/2019 - 02/25/2020 |
| XL Specialty Insurance Company | ELU160098-19 | 02/25/2019 - 02/25/2020 |
| Chubb Insurance Company of Canada | CODA028862 | 02/25/2019 - 02/25/2020 |
| Newline Canada Insurance Limited | CAN19941801A | 02/25/2019 - 02/25/2020 |
| Allied World Assurance Company (Europe) DAC | B0509FINMW1900 454 | 02/25/2019 - 02/25/2020 |
| Arch Insurance Canada Ltd. | ABX0062754-00 | 02/25/2019 - 02/25/2020 |

MT MTDOCS 41518312