# Exhibit 4

## RESTRUCTURING SUPPORT AGREEMENT

THIS AGREEMENT is made as of January 19, 2021 between:

CannTrust Holdings Inc.,
CannTrust Inc.,
CTI Holdings (Osoyoos) Inc. and
Elmcliffe Investments Inc.

(the "**CannTrust Group**")

– and –

Patrick Hrusa and Dharambir Singh

(the "**Ontario Class Action Lead Plaintiffs**")

– and –

A. Dimitri Lascaris Law Professional Corporation,
Henein Hutchinson LLP,
Kalloghlian Myers LLP and
Strosberg Sasso Sutts LLP

("**Ontario Class Action Counsel**")

– and –

Granite Point Master Fund, LP and
Granite Point Capital Scorpion Focussed Ideas Fund

(the "**U.S. Class Action Lead Plaintiffs**", and collectively with the
Ontario Class Action Lead Plaintiffs, the "**Class Action Lead Plaintiffs**")

– and –

Labaton Sucharow LLP and Weisz Fell Kour LLP

("**U.S. Class Action Counsel**", and collectively with Ontario Class
Action Counsel, "**Class Action Counsel**")

- 2 -

RECITALS:

A.  Capitalized terms used in this Agreement and not defined above have the meanings given to them in Section 1.01.

B.  The CannTrust Group commenced the CCAA Proceedings on the Filing Date.

C.  Pursuant to the Mediation being conducted within the CCAA Proceedings, the CannTrust Group has been engaged in negotiations with the Class Action Lead Plaintiffs and Class Action Counsel, among others, regarding the restructuring of the CannTrust Group, including negotiations with respect to the settlement of the Securities Claims and any related claims.

D.  Pursuant to those negotiations, the Agreement Parties have agreed upon terms for the settlement of the Securities Claims that will form part of the restructuring of the CannTrust Group pursuant to a CCAA Plan and related arrangements, which terms are reflected in the Term Sheet.

E.  The Agreement Parties wish to enter into this Agreement to set forth their agreements concerning the CCAA Plan, the related process to implement it, and the commitment of the Class Action Lead Plaintiffs and Class Action Counsel to support the CCAA Plan.

**NOW THEREFORE**, in consideration of the premises, the covenants and agreements herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Agreement Parties, the Agreement Parties agree as follows:

## ARTICLE 1 - INTERPRETATION

1.01    **Definitions**

In this Agreement:

"**Actions**" means the actions and other litigation set out in Schedule A.

"**Additional Settlement Party**" means any Co-Defendant or Insurer that has been designated as an Additional Settlement Party in accordance with Section 3.04 of this Agreement or the terms of the CCAA Plan.

"**Affected Claims**" means the Securities Claims and all other Claims that the CannTrust Group seeks, in its sole discretion, to compromise, settle and/or release pursuant to the CCAA Plan to effect its restructuring.

"**Affected Creditor**" means a holder of an Affected Claim.

"**Agreement**" means this agreement, including its recitals and Schedules, as amended from time to time.

"**Agreement Parties**" means the CannTrust Group, the Class Action Lead Plaintiffs and Class Action Counsel.

- 3 -

"**Allocation and Distribution Scheme**" means the scheme to be developed by the Class Action Lead Plaintiffs and Class Action Counsel and approved by the CCAA Court, for the allocation and distribution by the Trustee (or its designate, as approved by the CCAA Court) of the funds held by the Securities Claimant Trust from time to time among and to Securities Claimants, among others, which scheme will be included within the terms of, or will be a schedule to, the Trust Declaration and/or the CCAA Plan.

"**Assigned Claims**" means the claims of CannTrust Holdings against any Co-Defendant that is a Non-Settlement Party and, if applicable, the claims of CannTrust Holdings and the other Settlement Parties against any Insurer that is a Non-Settlement Party, in each case to the extent such claims are for loss or damage up to the date of the CCAA Sanction Order and arise from or relate to the Securities-Related Matters.

"**Bar Order**" is defined in Section 3.02(c).

"**Business Day**" means a day other than a Saturday or Sunday on which banks are generally open for business in Toronto, Ontario.

"**California Action**" means *Owens v. CannTrust Holdings Inc. et al.,* Court File No. 19CV352374 (California Superior Court, Santa Clara County).

"**Canadian and Non-U.S. Securities Claimants**" means all Securities Claimants other than U.S. Securities Claimants.

"**CannTrust Holdings**" means CannTrust Holdings Inc.

"**Cash Contributions**" means, collectively:

(i)     the contribution of $50 million to the Securities Claimant Trust to be made by CannTrust Holdings pursuant to the CCAA Plan, as contemplated by the Term Sheet; and

(ii)    each cash contribution to the Securities Claimant Trust to be made by an Additional Settlement Party, in the amount agreed between the Additional Settlement Party, the Class Action Lead Plaintiffs and the CannTrust Group.

"**CCAA**" means the *Companies' Creditors Arrangement Act* (Canada).

"**CCAA Canadian Representatives**" is defined in Section 2.02(1).

"**CCAA Canadian Representative Counsel**" is defined in Section 2.02(1).

"**CCAA Court**" means the Ontario Superior Court of Justice (Commercial List).

"**CCAA Plan**" means the plan of compromise, arrangement and reorganization of the CannTrust Group to be proposed by it pursuant to the CCAA, consistent with the Term Sheet and this Agreement, and otherwise in form and content satisfactory to the CannTrust Group in its sole

- 4 -

discretion, as may be amended from time to time in accordance with the provisions of the CCAA Plan and the Meeting Order.

"**CCAA Proceedings**" means the proceedings under the CCAA in respect of the CannTrust Group commenced by the Initial Order.

"**CCAA Representation Order**" is defined in Section 2.02(1).

"**CCAA Representative Counsel**" is defined in Section 2.02(1).

"**CCAA Representatives**" is defined in Section 2.02(1).

"**CCAA Sanction Order**" means the order to be made under the CCAA sanctioning the CCAA Plan and providing for the Bar Order and other relief contemplated in the CCAA Plan, as such order may be amended from time to time, in form and content satisfactory to the CannTrust Group in its sole discretion and otherwise consistent with the Term Sheet and this Agreement.

"**Claim**" means any right or claim of any Person that may be asserted or made in whole or in part against any of member of the CannTrust Group, whether or not asserted or made, in connection with any indebtedness, liability or obligation of any kind whatsoever, and any interest accrued thereon or costs payable in respect thereof, including by reason of the commission of a tort (intentional or unintentional), by reason of any breach of contract or other agreement (oral or written), by reason of any breach of duty (including any legal, statutory, equitable or fiduciary duty) or by reason of any right of ownership of or title to property or assets or right to a trust or deemed trust (statutory, express, implied, resulting, constructive or otherwise), and whether or not any such indebtedness, liability or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, perfected, unperfected, present or future, known or unknown, by guarantee, surety or otherwise, and whether or not such right or claim is executory or anticipatory in nature (including any right or claim in connection with the sale of any securities by CannTrust Holdings or others pursuant to the public distribution of its securities or any right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future), which indebtedness, liability or obligation, and any interest accrued thereon or costs payable in respect thereof (A) is based in whole or in part on facts existing prior to the Filing Date, (B) relates to a time period prior to the Filing Date, or (C) is a right or claim of any kind that would be a claim provable in bankruptcy within the meaning of the *Bankruptcy and Insolvency Act* (Canada) had such member of the CannTrust Group become bankrupt on the Filing Date, including any Securities Claim and any Securities-Related Indemnity Claim.

"**Claims Procedure Order**" means the claims procedure order of the CCAA Court made in the CCAA Proceedings on October 13, 2020 and any supplemental claims procedure order made in respect of the process governing the proof of claims, in each case as amended from time to time.

"**Co-Defendant**" means, at the relevant time (i) any Person named as a defendant in an Action that is not a Settlement Party, and (ii) any Person that could be named as a co-defendant in an Action

- 5 -

based on or arising out of the Securities-Related Matters and who has or could have a Securities-Related Indemnity Claim against a Released Party.

"**Cooperation Agreement**" means an agreement between the Agreement Parties consistent with the general principles set out in Schedule C, in form and content satisfactory to the Agreement Parties.

"**Cross-Border Action**" is defined in Section 3.01(d)(i).

"**Definitive Documents**" means the CCAA Plan, the Settlement-Related Agreements, the CCAA Sanction Order, the U.S. Approval Order, the Bar Order and all other agreements, releases, consents, documents and orders contemplated by, or necessary or desirable to implement the transactions contemplated by, this Agreement, the Supplemental Letter Agreement or any of the foregoing.

"**Director**" means any Person who, as at the Effective Time, is a former or current director or officer of any member of the CannTrust Group or any other Person of a similar position or who by applicable law is deemed to be or is treated similarly to a director or officer of a member of the CannTrust Group or who currently manages or supervises the management of the business and affairs of a member of the CannTrust Group or did so in the past.

"**Effective Time**" means the first moment on the Plan Implementation Date or such other time on the Plan Implementation Date as may be designated by the CannTrust Group in accordance with the CCAA Plan.

"**Filing Date**" means March 31, 2020.

"**Initial Order**" means the initial order made by the CCAA Court on the Filing Date under the CCAA upon application by the CannTrust Group, as amended and/or amended and restated from time to time.

"**Insurer**" means an insurer that has provided insurance with respect to Securities-Related Matters to (i) an Original Settlement Party, or (ii) a Co-Defendant that is or was a Director of CannTrust Holdings.

"**Mediation**" means the mediation being conducted in the CCAA Proceedings pursuant to the order made on May 8, 2020.

"**Meeting Order**" is defined in Section 2.02(1).

"**Meetings**" means, collectively, each meeting of a class of Affected Creditors of the CannTrust Group, including a class that includes Securities Claimants if necessary, called for the purpose of considering and voting on the CCAA Plan.

"**Monitor**" means Ernst & Young Inc., in its capacity as the monitor appointed pursuant to the Initial Order.

- 6 -

"**Non-Released CannTrust Claims**" means:

(i)     the right to enforce against the applicable member(s) of the CannTrust Group its obligations under the CCAA Plan;

(ii)    the right to enforce the Unaffected Claims against the applicable member(s) of the CannTrust Group;

(iii)   solely as against a director in his or her capacity as such, any claim that is not permitted to be compromised pursuant to section 5.1(2) of the CCAA;

(iv)    any claim against a member of the CannTrust Group for the purchase or supply of goods or services delivered after the Filing Date; and

(v)     the right to enforce against the applicable member(s) of the CannTrust Group any agreement in force at the Effective Time that was entered into by such member(s) between the Filing Date and the Plan Implementation Date, or that was entered into prior to the Filing Date and not disclaimed during the CCAA Proceedings pursuant to the applicable paragraph of the Initial Order and related provision by the CCAA.

"**Non-Settlement Party**" means, at the relevant time, any Co-Defendant or Insurer that is not a Settlement Party.

"**Ontario Class Action**" means *Hrusa et al. v. CannTrust Holdings Inc. et al.*, Court File No. CV-19-00623567-00CP (ON SC).

"**Opt Out Claimant**" means, to the extent an opt out process is imposed by the CCAA Representation Order or the Meeting Order, any Securities Claimant that provides notice to the Monitor and CCAA Representative Counsel that they do not want the CCAA Representatives and/or CCAA Representative Counsel to represent them or act as their proxy, as applicable.

"**Original Settlement Parties**" means each member of the CannTrust Group, Mark Dawber, Greg Guyatt, John Kaden, Robert Marcovitch, Shawna Page, Ilana Platt, Mitchell Sanders and Cajun Capital Corporation.

"**Outside Date**" means December 31, 2021.

"**Person**" means any individual, corporation, firm, limited or unlimited liability company, general or limited partnership, association, trust, unincorporated organization, joint venture, government or any agency, officer or instrumentality thereof or any other entity, wherever situate or domiciled, and whether or not having legal status.

"**Plan Implementation Date**" means the date upon which all of the conditions to the CCAA Plan and other Definitive Documents have been satisfied or waived and the transactions contemplated by the CCAA Plan and the other Definitive Documents are to be implemented.

MT DOCS 20899095v11

- 7 -

"**Released Additional Settlement Parties**" means the Additional Settlement Parties and their respective Representatives.

"**Released CannTrust Claims**" means (A) any and all Claims and (B) any and all other demands, claims (including claims for contribution or indemnity), actions, causes of action, counterclaims, suits, debts, sums of money, liabilities, accounts, covenants, damages, judgments, orders (including orders for injunctive relief or specific performance and compliance orders), expenses, executions, encumbrances and recoveries on account of any liability, obligation, demand or cause of action of whatever nature (including for, alleged oppression, misrepresentation, wrongful conduct, fraud or breach of fiduciary duty by any Released CannTrust Party) that any Affected Creditor or other Person has or may be entitled to assert against any of the Released CannTrust Parties, whether known or unknown, matured or unmatured, contingent or actual, direct, indirect or derivative, at common law, in equity or under statute, foreseen or unforeseen, existing or hereafter arising, in any jurisdiction, based in whole or in part on any act, omission, transaction, duty, responsibility, indebtedness, liability, obligation, dealing, matter or occurrence existing or taking place at or prior to the Effective Time that in any way relate to or arise out of or in connection with:

    (i)    any Claim, including any Claim that is enumerated in section 19(2) of the CCAA and that is compromised under the CCAA Plan in accordance with such section as a consequence of the applicable creditor's vote in favour of or other form of consent to the CCAA Plan;

    (ii)    any of the assets, obligations, business or affairs of a member of the CannTrust Group; or

    (iii)    the CCAA Proceedings or any matter or transaction involving any member of the CannTrust Group occurring in or in connection with the CCAA Proceedings (including the CCAA Plan and the development of it),

but excluding Non-Released CannTrust Claims.

"**Released CannTrust Parties**" means the Original Settlement Parties, the Monitor and their respective Representatives, but excluding the Directors named as defendants in one or more of the Actions who are not Original Settlement Parties and the Representatives of each such excluded Director.

"**Released Claims**" means the Released CannTrust Claims and the Released Securities-Related Claims.

"**Released Parties**" means the Released CannTrust Parties and the Released Additional Settlement Parties.

"**Released Securities-Related Claims**" means (A) any and all Securities Claims and Securities-Related Claims against any of the Released Parties, (B) any and all Securities-Related Indemnity Claims against any of the Released Parties, and (C) any and all other demands, claims (including claims for contribution or indemnity), actions, causes of action, counterclaims, suits, debts, sums of money, liabilities, accounts, covenants, damages, judgments, orders (including orders for injunctive

- 8 -

relief or specific performance and compliance orders), expenses, executions, encumbrances and recoveries on account of any liability, obligation, demand or cause of action of whatever nature (including for, alleged oppression, misrepresentation, wrongful conduct, fraud or breach of fiduciary duty by any Settlement Party) that any Securities Claimant or Co-Defendant has or may be entitled to assert against any of the Released Parties, whether known or unknown, matured or unmatured, contingent or actual, direct, indirect or derivative, at common law, in equity or under statute, foreseen or unforeseen, existing or hereafter arising, in any jurisdiction, based in whole or in part on any act, omission, transaction, duty, responsibility, indebtedness, liability, obligation, dealing, matter or occurrence existing or taking place at or prior to the Effective Time that in any way relate to or arise out of or in connection with:

    (i)    any of the Actions;

    (ii)    any of the Securities Claims, Securities-Related Claims, Securities-Related Indemnity Claims or Securities-Related Matters; or

    (iii)    the CCAA Proceedings or any matter or transaction involving any member of the CannTrust Group occurring in or in connection with the CCAA Proceedings (including the CCAA Plan and the development of it),

but excluding Non-Released CannTrust Claims.

"**Representatives**" means, in relation to a Person, such Person's current and former directors, officers, partners, employees, consultants, legal counsel, advisers and agents, including their respective heirs, executors, administrators and other legal representatives, successors and assigns, and each of their respective employees and partners.

"**Represented Securities Claimants**" means all Canadian and Non-U.S. Securities Claimants and all U.S. Securities Claimants, excluding Opt Out Claimants (if any).

"**Schedules**" is defined in Section 1.03.

"**Securities Claim**" means:

    (i)    any Claim against CannTrust Holdings asserted by a plaintiff or putative plaintiff in an Action; and

    (ii)    any other Claim against CannTrust Holdings that has been or could be asserted by or on behalf of a current or former shareholder of CannTrust Holdings or another Person in relation to the purchase, sale or ownership by such Person (including as a legal, registered or beneficial purchaser, seller or owner) on or before the Filing Date of an equity interest (as defined in the CCAA) in CannTrust Holdings,

other than a Securities-Related Indemnity Claim.

"**Securities Claimants**" means the holders of Securities Claims.

- 9 -

"**Securities Claimant Trust**" means the trust, to be established pursuant to the Trust Declaration on or before the Plan Implementation Date, to which the Cash Contributions will be paid and the Assigned Claims will be assigned on the Plan Implementation Date for the benefit of Securities Claimants, among others.

"**Securities-Related Claim**" means:

> (i)     any claim against a Settlement Party or Co-Defendant asserted by a plaintiff or putative plaintiff in an Action; and
>
> (ii)    any other claim against a Settlement Party or a Co-Defendant that has been or could be asserted by or on behalf of a current or former shareholder of CannTrust Holdings or another Person in relation to the purchase, sale or ownership by such Person (including as a legal, registered or beneficial purchaser, seller or owner) on or before the Filing Date of an equity interest (as defined in the CCAA) in CannTrust Holdings,

other than a Securities Claim or Securities-Related Indemnity Claim.

"**Securities-Related Indemnity Claim**" means any claim of any Person that has been or could be asserted against a Settlement Party (whether pursuant to an agreement, under applicable law or otherwise) for indemnity, advancement, contribution, reimbursement, set-off or otherwise, arising from or in connection with any Securities Claim or Securities-Related Claim asserted against such Person or arising from or in connection with any other claim asserted by a Co-Defendant against such Person.

"**Securities-Related Matters**" means the facts, events and transactions alleged in one or more of the Actions giving rise to the claims asserted therein or that could give rise to claims similar to the ones asserted therein.

"**Securities-Related Section 5.1(2) Claims**" means any Securities-Related Claim against a Director who is an Original Settlement Party and which claim is not permitted to be compromised pursuant to Section 5.1(2) of the CCAA.

"**Settlement-Related Agreements**" means the Trust Declaration, the Allocation and Distribution Scheme, the Cooperation Agreement and all other agreements, releases, consents or other documents contemplated by, or necessary or desirable to implement the transactions contemplated by, this Agreement or the CCAA Plan to settle the Securities Claims and any related claims, in each case in form and content satisfactory to the Agreement Parties.

"**Settlement Parties**" means the Original Settlement Parties and the Additional Settlement Parties.

"**Supplemental Letter Agreement**" means the letter agreement dated the date hereof between the Agreement Parties supplemental to this Agreement, containing certain additional terms that are confidential.

"**Term Sheet**" means the term sheet attached as Schedule B.

MT DOCS 20899095v11

- 10 -

"**Trust Declaration**" means the declaration of trust in respect of, among other things, the creation of the Securities Claimant Trust and appointment of the Trustees, in form and content satisfactory to the Agreement Parties, acting reasonably.

"**Trustees**" means the individual lawyers from the firms that comprise Class Action Counsel, in their capacity as the trustees of the Securities Claimant Trust, to be appointed pursuant to the Trust Declaration on the basis contemplated in Section 3.03.

"**Unaffected Claims**" means any Claims designated as unaffected Claims in and for the purposes of the CCAA Plan.

"**U.S. Approval Order**" means a court order entered in the U.S. Class Action, (i) approving a settlement and final judgment in the U.S. Class Action; (ii) containing a bar order in customary form containing such judgment reduction provisions as may be required by the *Private Securities Litigation Reform Act*; and (iii) approving customary broad releases by Securities Claimants within the putative class of any claims that were or could have been asserted in the Actions (including the California Action), in form and content satisfactory to the CannTrust Group and the U.S. Class Action Lead Plaintiffs.

"**U.S. Class Action**" means *In Re:  CannTrust Holdings Inc. Securities Litigation*, No. 1:19-CV-06396 (JPO).

"**U.S. Securities Claimants**" means all Securities Claimants who purchased the publicly traded common shares of CannTrust Holdings on the New York Stock Exchange or on any other U.S. based trading platform.

1.02    **Construction**

In this Agreement, unless otherwise stated or the context otherwise requires:

(a)    the division of this Agreement into Sections and the use of headings are for convenience of reference only and do not affect the construction or interpretation of this Agreement;

(b)    the words "hereunder", "hereof" and similar expressions refer to this Agreement and not to any particular Section or Schedule and references to "Sections" and "Schedules" are to Sections of and Schedules to this Agreement;

(c)    words importing the singular include the plural and *vice versa* and words importing any gender include all genders;

(d)    the word "including" means "including without limiting the generality of the foregoing";

(e)    a reference to any statute is to that statute as now enacted or as the statute may from time to time be amended, re-enacted or replaced and includes any regulation made thereunder;

- 11 -

(f)     references to dollar amounts are to Canadian dollars;

(g)     references to times are to local time in Toronto;

(h)     references to the "CannTrust Group" refer to each member of the CannTrust Group;

(i)     if the CCAA Representation Order is granted, references to the "Class Action Lead Plaintiffs" and "Class Action Counsel" will include the CCAA Representatives and CCAA Representative Counsel after the agreement of the CCAA Class Representatives and CCAA Representative Counsel to become parties to and bound by this Agreement in accordance with Section 2.03(d) has become effective;

(j)     any reference in this Agreement to a requirement or condition that (i) the CCAA Plan or another Definitive Document must be consistent with this Agreement means that such document must be consistent with this Agreement and the Supplemental Letter Agreement, and (ii) something be done as contemplated in or by this Agreement means as contemplated in or by this Agreement or the Supplemental Letter Agreement; and

(k)     if there is a conflict between the terms of a Schedule and this Agreement (excluding the Schedules), the terms of this Agreement (excluding the Schedules) will govern, and any reference in this Agreement to a requirement or condition that the CCAA Plan or another Definitive Document must be consistent with the Term Sheet means that such Definitive Document must be consistent with the terms of this Agreement (excluding the Term Sheet) to the extent of any conflict between this Agreement (excluding the Term Sheet) and the Term Sheet.

1.03    **Schedules**

The following are the schedules (the **"Schedules"**) to this Agreement:

| Schedule A | – | Actions |
| Schedule B | – | Term Sheet |
| Schedule C | – | Cooperation Agreement – General Principles |

**ARTICLE 2 - THE CCAA PLAN**

2.01    **Settlement of Securities Claims Pursuant to CCAA Plan**

Each Agreement Party agrees that:

(a)     all Securities Claims, Securities-Related Claims, Securities-Related Section 5.1(2) Claims and Securities-Related Indemnity Claims against the Released Parties will be settled or otherwise addressed pursuant to and in accordance with the CCAA Plan and the other Definitive Documents;

- 12 -

(b)     the terms of the CCAA Plan and other Definitive Documents that relate to the treatment of the Securities Claims, Securities-Related Claims, Securities-Related Section 5.1(2) Claims and Securities-Related Indemnity Claims against the Released Parties will be consistent with the Term Sheet and this Agreement;

(c)     it will negotiate in good faith with the other Agreement Parties to finalize the terms of the CCAA Plan and the other Definitive Documents on terms consistent with the Term Sheet and this Agreement;

(d)     it will cooperate with the other Agreement Parties in good faith during the Mediation and the pendency of the CCAA Proceedings to seek a contribution from and settlement with each Co-Defendant and Insurer that is acceptable to the Class Action Lead Plaintiffs and Class Action Counsel and to cause it to become an Additional Settlement Party; and

(e)     it will do all such things and take all such actions as may be reasonably necessary to carry out the purposes and intent of this Agreement and will refrain from doing anything or taking any action that would frustrate the purposes and intent of this Agreement, including refraining from bringing motions or supporting motions brought by third parties seeking relief that is not consistent with this Agreement.

2.02    **Process and Timetable to Implement CCAA Plan**

(1)     The CannTrust Group will:

(a)     file a motion on or before January 31, 2021, returnable at a hearing to be held on or before February 12, 2021 (or as soon after that date as the CCAA Court will hear the motion), seeking an order in the CCAA Proceedings (the "**CCAA Representation Order**") that, among other things:

(i)     appoints the Ontario Class Action Lead Plaintiffs (or such other Person(s) as may be agreed by the Agreement Parties) to represent the interests of all Canadian and Non-U.S. Securities Claimants in the CCAA Proceedings in relation to their Securities Claims and any related claims (the "**CCAA Canadian Representatives**");

(ii)    appoints the U.S. Class Action Lead Plaintiffs (or such other Person(s) as may be agreed by the Agreement Parties) to represent the interests of the U.S. Securities Claimants in the CCAA Proceedings in relation to their Securities Claims and any related claims (together with the CCAA Canadian Representatives, the "**CCAA Representatives**");

(iii)   appoints Ontario Class Action Counsel as counsel for the Canadian and Non-U.S. Securities Claimants in the CCAA Proceedings in relation to their Securities Claims and any related claims ("**CCAA Canadian Representative Counsel**");

- 13 -

     (iv)     appoints Weisz Fell Kour LLP in association with Labaton Sucharow LLP as counsel for the U.S. Securities Claimants in the CCAA Proceedings in relation to their Securities Claims and any related claims (together with CCAA Canadian Representative Counsel, "**CCAA Representative Counsel**");

     (v)     authorizes the Class Action Lead Plaintiffs and Class Action Counsel, each in their capacity as such, to agree to become parties to and be bound by this Agreement;

     (vi)     approves the manner in which notice of the CCAA Representation Order and this Agreement is to be provided to Securities Claimants; and

     (vii)     approves the process, if any, by which Securities Claimants may opt out of representation by the CCAA Representatives and CCAA Representative Counsel in the CCAA Proceedings (but on a basis that is without prejudice to, and does not limit or otherwise affect, the treatment that may be proposed by the CannTrust Group in the CCAA Plan of Securities Claims held by Securities Claimants that opt out);

(b)     file a motion on or before February 26, 2021, returnable at a hearing to be held on or before March 12, 2021 (or as soon after such date as the CCAA Court will hear the motion), seeking an order in the CCAA Proceedings (the "**Meeting Order**") that, among other things:

     (i)     authorizes the CannTrust Group to file the CCAA Plan with the Court;

     (ii)     approves the classification of Affected Creditors contemplated by the CCAA Plan;

     (iii)     authorizes the CannTrust Group to send the CCAA Plan and other meeting materials to Affected Creditors in the manner provided in the order;

     (iv)     directs that Meetings of Affected Creditors be held;

     (v)     if necessary, establishes a claims procedure supplemental to the one established by the Claims Procedure Order to require Securities Claimants to prove their claims prior to a claims bar date;

     (vi)     if proofs of claim are required in respect of Securities Claims, authorizes the CCAA Representatives and CCAA Representative Counsel to file one or more proofs of claim on behalf of all Represented Securities Claimants;

     (vii)     if a vote of Securities Claimants is conducted, appoints CCAA Representative Counsel to act as proxy for the Represented Securities Claimants at the applicable Meeting; and

- 14 -

    (viii)    authorizes the Monitor, with the approval of the applicable member of the CannTrust Group, to agree to the amount of any Claim for voting purposes, including the amount of the Securities Claims of Represented Securities Claimants and Opt Out Claimants (if any);

(c)    if the Meeting Order is granted, seek approval of the CCAA Plan by Affected Creditors at the Meetings;

(d)    if the CCAA Plan is approved by the required majorities of Affected Creditors at the Meetings, seek approval of the CCAA Plan by the CCAA Court pursuant to the CCAA Sanction Order within ten (10) Business Days after the Meetings (or the first available date thereafter if the CannTrust Group is unable to obtain a hearing date within such period);

(e)    seek to obtain the final U.S. Approval Order (with the settlement to be effective on the Plan Implementation Date); and

(f)    if the CCAA Sanction Order and U.S. Approval Order are granted, seek to implement the CCAA Plan in the manner contemplated by the CCAA Plan as soon as possible and in any event, on or before the Outside Date.

(2)    Any of the dates referenced in Section 2.02(1), and the Outside Date, may be extended by agreement in writing between CannTrust Holdings and Class Action Counsel.

2.03    **Support for the CCAA Plan**

The Class Action Lead Plaintiffs and Class Action Counsel agree:

(a)    to cooperate with the CannTrust Group in good faith to pursue and support the restructuring of the CannTrust Group and the settlement of the Securities Claims, Securities-Related Claims and Securities-Related Section 5.1(2) Claims against the Released Parties and the treatment of the Securities-Related Indemnity Claims in the manner contemplated by this Agreement;

(b)    to use all reasonable efforts to assist the CannTrust Group to meet the timetable and obtain the orders and approvals contemplated by Section 2.02(1);

(c)    to vote in favour of the CCAA Plan and that, without the consent of the CannTrust Group, they will not in any way support any plan or restructuring in respect of the CannTrust Group other than the CCAA Plan and the restructuring of the CannTrust Group contemplated by this Agreement, and will vote against and otherwise actively oppose any such other plan or restructuring; and

(d)    if the CCAA Representation Order is granted, they will agree to become parties to and be bound by this Agreement in their respective capacities as CCAA Representatives and CCAA Representative Counsel.

- 15 -

## ARTICLE 3 - ADDITIONAL ACKNOWLEDGEMENTS AND AGREEMENTS

3.01    **Additional Acknowledgements and Agreements of CannTrust Holdings**

CannTrust Holdings acknowledges and agrees:

(a)    prior to the Plan Implementation Date, CannTrust Holdings will not compromise or settle any of its potential claims against any Non-Settlement Party in relation to the Actions (whether as an Additional Settlement Party or on another basis) without the consent of the Class Action Lead Plaintiffs and Class Action Counsel;

(b)    it will pay its Cash Contribution and assign its Assigned Claims (if any) to the Securities Claimant Trust on the Plan Implementation Date;

(c)    it will be a condition to the CCAA Plan that the Original Settlement Parties assign their Assigned Claims (if any) to the Securities Claimant Trust on the Plan Implementation Date;

(d)    pursuant to the CCAA Plan and to take effect after the CCAA Sanction Order and the U.S. Approval Order are granted, CannTrust Holdings will consent to orders:

   (i)    appointing the law firm of Weisz Fell Kour LLP as the Canadian representative for plaintiffs in the U.S. Class Action and allowing U.S. Class Action Counsel, in conjunction with U.S. Class Action Lead Plaintiffs to, at their option:

      (A)    file an action (with Weisz Fell Kour LLP as counsel) in the Commercial List against any Non-Settlement Parties; or

      (B)    establish a subclass in the Ontario Class Action (with Weisz Fell Kour LLP as counsel),

      with a class defined in the same way as the class is defined in the U.S. Class Action and subject to U.S. law in respect to the causes of action (the "**Cross-Border Action**");

   (ii)    continuing the CCAA Representation Order permitting the plaintiffs in the Ontario Class Action, U.S. Class Action, and Cross-Border Action to settle such actions or to prosecute the Ontario Class Action and Cross-Border Action against any Non-Settlement Parties under the terms of such order;

   (iii)    approving any (A) settlement with the Non-Settlement Parties; (B) notice to members of the Ontario Class Action and U.S. Class Action further to any such settlement; (C) distribution protocol (*i.e.* plan of allocation) setting forth the distribution of the funds to class members from such settlement (less Class Action Counsel's fees and litigation expenses); and (D) Class Action Counsel's request for fees to be paid from such settlement;

- 16 -

(iv)     permitting the plaintiffs in the Ontario Class Action to apply to the Commercial List to obtain an expedited hearing for an order granting leave under the *Securities Act* (Ontario) further to their prosecution or settlement of the Ontario Class Action against any Non-Settlement Parties;

(v)     at Class Action Counsel's option, permitting the plaintiffs in the Ontario Class Action and Cross-Border Action to apply to the Commercial List to obtain an expedited hearing for an order certifying the Ontario Class Action and Cross-Border Action under the *Class Proceedings Act, 1992* (Ontario) (as necessary) against any Non-Settlement Parties;

(vi)     directing an expedited hearing date on the Commercial List of the claims in the Ontario Class Action and Cross-Border Action against any Non-Settlement Parties under the provisions of the *Class Proceedings Act, 1992* (Ontario) (as necessary) or pursuant to the Commercial List's statutory or discretionary powers on behalf of the classes defined in the Ontario Class Action and Cross-Border Action;

(vii)     permitting the Securities Claimant Trust to obtain on an expedited basis a joint trial date for the claims in the Ontario Class Action, Cross-Border Action and any of the Assigned Claims including the claims of the Securities Claimant Trust against any Non-Settlement Parties; and

(viii)     prohibiting any other action from being commenced or prosecuted in Canada against any Released Parties or any Non-Settlement Parties alleging facts substantially the same or similar as those alleged in the Ontario Class Action, Cross-Border Action or the Assigned Claims held by the Securities Claimant Trust.

3.02     **Additional Acknowledgements and Agreements of Class Action Lead Plaintiffs and Class Action Counsel**

The Class Action Lead Plaintiffs and Class Action Counsel acknowledge and agree:

(a)     the terms of the CCAA Plan, other than those terms that relate to the settlement of the Securities Claims and any related claims (which terms will be consistent with the Term Sheet and this Agreement), will be at the sole discretion of the CannTrust Group, including any terms that relate to the proposed treatment of any Claims other than Securities Claims. Class Action Counsel shall have the opportunity to review the CCAA Plan for compliance with the Term Sheet and this Agreement;

(b)     the Definitive Documents will provide that when the aggregate amount recovered by Securities Claimants and the Securities Claimant Trust from Additional Settlement Parties and Non-Settlement Parties, whether pursuant to settlements or prosecution of the Actions and Assigned Claims, exceeds $250 million net of litigation fees and expenses, then CannTrust Holdings will be entitled to paid up to $50 million in staged amounts from the Securities Claimant Trust (such staged amounts to be

agreed between the Agreement Parties in the Definitive Documents), acting reasonably;

(c)     the Definitive Documents will include releases and injunctions in favour of the Released Parties in respect of the Released Claims and Securities-Related Section 5.1(2) Claims, including one or more orders (whether pursuant to the CCAA Sanction Order or otherwise), satisfactory to the CannTrust Group in its sole discretion, enjoining, barring and/or extinguishing the Released Claims and Securities-Related Section 5.1(2) Claims against the Released Parties to the fullest extent permitted by applicable law (including an order "channeling" the Securities-Related Section 5.1(2) Claims to the Securities Claimant Trust) (the "**Bar Order**");

(d)     the Definitive Documents will provide that the Securities Claimants and the Securities Claimant Trust jointly and severally agree and undertake (A) not to seek any damages from any Co-Defendant nor threaten, make or settle any claim or take any proceeding against any other Person, which in either case could result in a Securities-Related Indemnity Claim or any other claim for damages against any of the Released Parties in any jurisdiction that is permitted to proceed notwithstanding the Bar Order, and (B) to obtain a full and final release satisfactory to the Released Parties if the Securities Claimants or Securities Claimant Trust settle with any Non-Settlement Parties (with the form of such release to be finalized between the Agreement Parties on or before January 29, 2021 or as soon as practicable thereafter);

(e)     with respect to the U.S. Class Action:

(i)      U.S. Class Action Lead Plaintiffs and the applicable Released Parties will seek preliminary approval of the settlement in the U.S. Class Action and thereafter final approval of the settlement of the U.S. Class Action after entry of the CCAA Sanction Order.  U.S. Class Action Lead Plaintiffs and the applicable Released Parties will cooperate and jointly file any motions in support of preliminary approval and final approval of the settlement in the U.S. Class Action.  The California Action will be voluntarily dismissed with prejudice;

(ii)     to the extent permitted, notice to the putative class in the U.S. Class Action of the settlement will be given in conjunction with any notice required in connection with the CCAA Proceedings.  If a joint notice is not permitted or feasible, notice will be given to the putative class in the U.S. Class Action in a form as may be agreed or as directed by the U.S. court.

(A)     Any notice provided in connection with the settlement will caution putative class members that U.S. Class Action Lead Plaintiffs and the applicable Released Parties believe that the claims of any opt-outs will be barred by the Bar Order and principles of comity;

- 18 -

(B)   Any notice or administration expenses prior to the CCAA Sanction Order being granted shall be paid by the Applicants, following which such costs will be funded from the Securities Claimant Trust;

(iii)   the relevant Agreement Parties will jointly seek entry of the U.S. Approval Order.  Such Agreement Parties will request that the U.S. Approval Order recite that it is without prejudice to, and does not limit, the applicability of the Bar Order;

(iv)   U.S. Class Action Lead Plaintiffs will request that the U.S. Class Action be stayed against the Non-Settlement Parties to enable the claims to be litigated in the Cross-Border Action;

(i)   U.S. Class Action Lead Plaintiffs will request that the U.S. Class Action shall be dismissed after the Cross-Border Action is filed.

(f)   all fees and costs of the Class Action Lead Plaintiffs, Class Action Counsel, the Trustee and the Securities Claimant Trust will be paid from amounts held in the Securities Claimant Trust from time to time in accordance with the terms of the Trust Declaration and any other applicable Definitive Documents and following CCAA Court Approval; and

(g)   without delay after implementation of the CCAA Plan, they will cause the Actions in Canada to be dismissed against the Settlement Parties without costs.

3.03   **Other Acknowledgements and Agreements**

The Agreement Parties agree that:

(a)   half of the Trustees will be designated by Ontario Class Action Counsel and half of the Trustees will be designated by U.S. Class Action Counsel for appointment pursuant to the Trust Declaration;

(b)   the Trustees will appoint Class Action Counsel as counsel to the Securities Claimant Trust; and

(c)   from and after the Plan Implementation Date, the Trustees of the Securities Claimant Trust will have the sole authority to prosecute and resolve the Assigned Claims.

3.04   **Additional Settlement Parties**

By written agreement between CannTrust Holdings and Class Action Counsel, , such agreement not to be unreasonably withheld, a Co-Defendant or Insurer may be designated as an Additional Settlement Party for the purposes of this Agreement and the CCAA Plan if such proposed Additional Settlement Party has signed a restructuring support agreement, in form and content satisfactory to the Agreement Parties, acting reasonably, pursuant to which such proposed Additional Settlement Party has agreed, among other things:

- 19 -

(a)     to make a Cash Contribution to the Securities Claimant Trust on the Plan Implementation Date in an amount acceptable to Class Action Counsel;

(b)     to assign its Assigned Claims (if any) to the Securities Claimant Trust on the Plan Implementation Date; and

(c)     to support the CCAA Plan in a manner consistent with this Agreement.

## ARTICLE 4 - CONDITIONS

4.01    **Conditions to Implementation of CCAA Plan**

(1)     Unless otherwise provided in the CCAA Plan or the CCAA Sanction Order, implementation of the CCAA Plan will be conditional on the satisfaction of each of the following conditions on or before the Plan Implementation Date:

(a)     the CCAA Plan will have been approved by the required majorities of Affected Creditors at the Meetings;

(b)     the CCAA Sanction Order will have been issued by the CCAA Court;

(c)     the U.S. Approval Order will have been issued by the U.S. Court;

(d)     to the extent not contained within the CCAA Sanction Order, the Bar Order will have been issued by the CCAA Court;

(e)     the terms of the Settlement-Related Agreements and any other Definitive Documents not otherwise expressly addressed in this Section 4.01(1) will have been settled in form and substance satisfactory to each of the Agreement Parties, acting reasonably, and each of the Definitive Documents will have become effective in accordance with its terms, subject only to the occurrence of the Plan Implementation Date (if applicable);

(f)     the conditions set out in the CCAA Plan and each of the other Definitive Documents will have been satisfied or waived in accordance with the terms of the applicable Definitive Document;

(g)     all relevant Persons will have executed, delivered and filed all consents, agreements, documents and other instruments that, in the opinion of the CannTrust Group, acting reasonably, are necessary to implement the provisions of the CCAA Plan and the other Definitive Documents;

(h)     all applicable consents, approvals and orders of, and all applicable submissions and filings with, Governmental Authorities having jurisdiction for the completion of the steps and transactions contemplated by the CCAA Plan will have been obtained or made, as the case may be, in each case to the extent deemed necessary or advisable by the CannTrust Group, in form and substance satisfactory to the CannTrust Group, acting reasonably; and

- 20 -

(i)    no action or proceeding will be pending by any third party to enjoin or prohibit the implementation of the CCAA Plan.

(2)    In the event that any of the foregoing conditions precedent is not satisfied by the Outside Date, this Agreement will be of no further force and effect and each of the Agreement Parties will be released from any and all obligations under this Agreement and the Definitive Documents.

## ARTICLE 5 - AMENDMENT AND TERMINATION

### 5.01    Amendments and Waivers

No amendment to this Agreement will be valid or binding unless set forth in writing and duly executed by the Agreement Parties.  No waiver of any breach of any provision of this Agreement will be effective or binding unless made in writing and signed by the Agreement Party purporting to give the same and, unless otherwise provided, will be limited to the specific breach waived.

### 5.02    Termination

(1)    This Agreement may be terminated prior to the Outside Date:

(a)    by the CannTrust Group, on written notice to the Class Action Lead Plaintiffs and Class Action Counsel, if:

(i)    the Class Action Lead Plaintiffs or Class Action Counsel fail materially to comply with any material obligation under this Agreement or any of the Definitive Documents;

(ii)    the CCAA Sanction Order or the U.S. Approval Order is refused;

(iii)    it is entitled to do so in accordance with the Supplemental Letter Agreement; or

(iv)    the consent of the plaintiff and counsel in the California Action to the settlement of Securities Claims, Securities-Related Claims, Securities-Related Section 5.1 (2) Claims and Securities-Related Indemnity Claims on the basis contemplated by this Agreement is not obtained.

(b)    by the Class Action Lead Plaintiffs and Class Action Counsel, on written notice to the CannTrust Group, if:

(i)    the CannTrust Group fails materially to comply with any material obligation under this Agreement or any of the Definitive Documents, or

(ii)    the CCAA Sanction Order or the U.S. Approval Order is refused.

- 21 -

(2)    In the event that this Agreement is terminated, this Agreement will be of no further force and effect, each of the Agreement Parties will be released from any and all obligations under this Agreement and the Agreement Parties will be restored to their respective positions prior to this Agreement to the maximum extent possible.

## ARTICLE 6 - GENERAL

### 6.01   **Entire Agreement**

This Agreement and the Supplemental Letter Agreement constitute the entire agreement between the Agreement Parties with respect to the subject matter hereof and cancels and supersedes any prior understanding and agreements between the Agreement Parties with respect thereto. There are no representations, warranties, terms, conditions, undertakings or collateral agreements, express, implied or statutory, between the Agreement Parties other than as expressly set forth in this Agreement or the Supplemental Letter Agreement.

### 6.02   **Assignment**

This Agreement may not be assigned by any Agreement Party without the prior written consent of the other Agreement Parties.

### 6.03   **Benefit of the Agreement**

This Agreement will enure to the benefit of and be binding upon the respective heirs, executors, administrator, other legal representatives, successors and permitted assigns of the Agreement Parties.

### 6.04   **No Third Party Beneficiaries**

This Agreement is solely for the benefit of the Agreement Parties and their respective heirs, executors, administrators, other legal representatives, successors and permitted assigns, and this Agreement will not be deemed to confer upon or give to any other Person any remedy, claim, liability, reimbursement, cause of action or other right.

### 6.05   **Notices**

Any demand, notice or other communication to be given in connection with this Agreement must be given in writing and will be given by personal delivery or by electronic means of communication addressed to the recipient as follows:

- 22 -

**To the CannTrust Group**:

c/o CannTrust Holdings Inc.
7300 Keele Street, Suite 200
Vaughan ON  L4K 0E5

Fax No.:              1-844-295-6641
Attention:           Greg Guyatt
E-mail:              gguyatt@canntrust.ca

with a copy to:

McCarthy Tétrault LLP
Suite 4700, Toronto Dominion Bank Tower
Toronto-Dominion Centre
Toronto, ON  M5K 1E6

Fax No.:              416 868-0673
Attention:           Jamey Gage, Paul Steep and Shane D'Souza
E-mail:              jgage@mccathy.ca; psteep@mccarthy.ca;
                     sdsouza@mccarthy.ca

**To the Class Action Lead Plaintiffs and Class Action Counsel**:

c/o Class Action Counsel at the street addresses, facsimile numbers or e-mail
addresses (as the case may be) set forth below on the signature pages for Class
Action Counsel,

or to such other street address, facsimile number or e-mail address as may be designated by notice
given by an Agreement Party to the other Agreement Parties.  Any demand, notice or other
communication given by personal delivery will be conclusively deemed to have been given on the
day of actual delivery thereof and, if given by electronic communication, on the day of transmittal
thereof if given during the normal business hours of the recipient and on the Business Day during
which such normal business hours next occur if not given during such hours on any day.

6.06    **Governing Law**

        This Agreement will be governed by and construed in accordance with the laws the Province
of Ontario and the laws of Canada applicable therein, without regard to any conflicts of law
provision that would require the application of the law of any other jurisdiction.

6.07    **Attornment**

        For the purpose of all legal proceedings, this Agreement will be deemed to have been
performed in the Province of Ontario and the CCAA Court will have jurisdiction to determine any
dispute arising under this Agreement.

- 23 -

6.08    **English Language**

The Agreement Parties hereto have expressly agreed that this Agreement be executed in the English Language.  Les parties ont expressément convenu que la présente Convention soit rédigée en langue anglaise.

6.09    **No Curative Provision**

A breach of any term of this Agreement is a breach of the entire agreement by the defaulting or breaching Agreement Party.

6.10    **Counterparts**

This Agreement (and any modifications, amendments, supplements or waivers in respect hereof) may be executed in any number of counterparts by manual or facsimile signature of each undersigned Agreement Party, each of which when executed and delivered will be deemed to be an original and all of which when taken together will constitute one and the same agreement.  This Agreement may be delivered by facsimile or email.

- 24 -

IN WITNESS WHEREOF the Agreement Parties have executed this Agreement.

THE CANNTRUST GROUP:

CannTrust Holdings Inc.

By:  _____
      (Authorized Signature)

CannTrust Inc.

By:  _____
      (Authorized Signature)

CTI Holdings (Osoyoos) Inc.

By:  _____
      (Authorized Signature)

Elmcliffe Investments Inc.

By:  _____
      (Authorized Signature)

MT DOCS 20699095v1

- 25 -

**ONTARIO CLASS ACTION LEAD PLAINTIFFS:**

Witness: _____    Patrick Hrusa _____

Witness: _____    **Dharambir Singh** _____

189

- 25 -

**ONTARIO CLASS ACTION LEAD PLAINTIFFS:**

_____
Witness:

Gurpreet Kalsi

Witness:

GURPREET KALSI

_____
Patrick Hrusa

_____
Dharambir Singh

- 26 -

**ONTARIO CLASS ACTION COUNSEL:**

for: **A. Dimitri Lascaris Law Professional Corporation**

By: _____
      (Authorized Signature)

*Address for Notices:*

Street Address:      _____
                            _____
                            _____

Facsimile:           _____
Attention:           Dimitri Lascaris
Email Address:     alexander.lascaris@gmail.com

**Henein Hutchinson LLP**

By: _____
      (Authorized Signature)

*Address for Notices:*

Street Address:      _____
                            _____
                            _____

Facsimile:           _____
Attention:           Marie Henein
Email Address:     mhenein@hhllp.ca

- 27 -

**Kalloghlian Myers LLP**

By: _____
(Authorized Signature)

*Address for Notices:*

Street Address:        _____
                       _____
                       _____
Facsimile:             _____
Attention:             Serge Kalloghlian
Email Address:         serge@kalloghlianmyers.com

**Strosberg Sasso Sutts LLP**

By: _____
(Authorized Signature)

*Address for Notices:*

Street Address:        _____
                       _____
                       _____
Facsimile:             _____
Attention:             David Wingfield
Email Address:         dwingfield@strosbergco.com

- 28 -

**U.S. CLASS ACTION LEAD PLAINTIFFS:**

**Granite Point Master Fund, LP**

By:    _____
(Authorized Signature)

**Granite Point Capital Scorpion Focussed Ideas Fund**

By:    _____
(Authorized Signature)

MT DOCS 20899095v11

- 29 -

U.S. CLASS ACTION COUNSEL:

Labaton Sucharow LLP

By: _____
(Authorized Signature)

Address for Notices:

Street Address:     140 BROADWAY
                    23N FLOOR
                    NY NY 10005
Facsimile:          212 818 0477
Attention:          JAMES W JOHNSON
Email Address:      JJohnson@LABATON.com

Weisz Fell Kour LLP

By: _____
(Authorized Signature)

Address for Notices:

Street Address:     100 King St. W.
                    Suite 5600
                    Toronto, ON M5X 1C9
Facsimile:          416.613.8290
Attention:          Steve Weisz
Email Address:      sweisz@wfklaw.ca

## SCHEDULE A

### Actions

*Hrusa et al. v. CannTrust Holdings Inc. et al.,* Court File No. CV-19-00623567-00CP (ON SC)

*Webb v. CannTrust Holdings Inc. et al.,* Court File No. CV-19-1554 (ON SC)

*Jeff Dyck v. CannTrust Holdings Inc. et al.,* Court File No. 217559 (BC SC)

*Selanders v. CannTrust Holdings Inc. et al.,* Court File No. 1910983 (AB QB)

*Diran Avedian v. CannTrust Holdings Inc. et al.,* Court File No. 500-06-001011-192 (QC CS)

*Zola Finance Holdings Ltd. v. CannTrust Holdings Inc. et al.,* Court File No. CV-19-00002329-00CP (ON SC)

*In Re: CannTrust Holdings Inc. Securities Litigation*, No. 1:19-CV-06396 (JPO)

*Alvarado v. CannTrust Holdings Inc. et al.*, 1:19-CV-6438 (JPO)

*Jones v. CannTrust Holdings Inc. et al.*, 1:19-CV-6883 (JPO)

*Justiss v. CannTrust Holdings Inc. et al.*, 1:19-CV-7164 (JPO)

*Huang v. CannTrust Holdings Inc. et al.*, 1:19-CV-6396 (JPO)

*Owens v. CannTrust Holdings Inc. et al.,* Court File No. 19CV352374 (California Superior Court, Santa Clara County)

MT DOCS 20899095v11

**SCHEDULE B**

**Term Sheet**

Proposed Settlement Framework
Securities Claimants and CannTrust (collectively, the "Parties")

**Settlement Framework**

1.    The "**Cash Contribution**" is comprised of:

    (a)    a voluntary contribution by the insurers in an amount acceptable to Class Counsel (defined below), failing which the claims of CannTrust and the Original Settlement Parties against the insurers will be assigned to the Securities Claimants Trust (defined below);

    (b)    voluntary contributions by any Additional Settlement Parties (defined below) in amounts acceptable to Class Counsel; and

    (c)    an additional contribution of $50M by CannTrust.

2.    The Cash Contribution will be paid to a trust (the "**Securities Claimants' Trust**") for the benefit of the Plaintiffs and putative class members in the proposed class action(s) brought in Ontario by the Consortium (the "**Ontario Class Action**") and in the United States by Labaton Sucharow (the "**US Class Action**", and collectively with the Ontario Class Action, the "**Actions**") (collectively, counsel for the Plaintiffs in the Ontario Class Action and the US Class Action are "**Class Counsel**") and described below, and such other claimants (collectively, the "**Securities Claimants**") as may be agreed to by CannTrust and Class Counsel.

3.    The trustees of the Securities Claimants' Trust (the "**Trustees**") will be those members of the law firms comprising Class Counsel as selected by Class Counsel with half of the Trustees appointed by counsel for the Ontario Class Action and the other half appointed by counsel for the US Class Action. The Trustees will appoint Class Counsel as counsel to the Securities Claimants' Trust. The Trustees of the Securities Claimants' Trust will have the power and discretion to prosecute or settle the claims held by the Securities Claimants' Trust as described herein.

4.    This settlement also is contingent on obtaining the agreement of the Plaintiff in the California state court action (the "**California Action**") to all terms hereof .

5.    CannTrust and Class Counsel will cooperate in good faith during the mediation and the pendency of the CCAA proceedings to seek a mutually-agreeable settlement with and contribution from (A) each other person or entity named as a defendant in the Actions and/or (B) that is an insurer of (i) an Original Settlement Party (defined below), or (ii) a defendant in the Actions that is a current or former director or officer of CannTrust (together, the **"Other Parties"** and each such Other Party that settles, an "**Additional Settlement Party**"), except for Shawna Page, Robert Marcovitch, Mark Dawber, John Kaden, Mitchell Sanders,

- 32 -

Greg Guyatt, Ilana Platt and Cajun Capital Corporation (collectively with CannTrust, the "**Original Settlement Parties**"; the Original Settlement Parties and the Additional Settlement Parties, if any, are collectively the "**Released Parties**").

6.    During the mediation and pendency of the CCAA proceedings, CannTrust will not compromise or settle any of its potential claims against any of the Other Parties without Class Counsel's consent.

7.    In the case of any Other Parties that are not the Released Parties ("**Non-Settlement Parties**") at the time that CannTrust implements its CCAA plan of arrangement (the "**CCAA Plan**"), CannTrust will assign to the Securities Claimants' Trust all claims that CannTrust (or its affiliates) has against the Non-Settlement Parties arising out of loss or damage caused to CannTrust in relation to the allegations in the Actions up to the date the court approves the CCAA Plan (the "**CannTrust Claims**"), and all claims that each of the other Original Settlement Parties has against the insurers in relation to the facts alleged in the Actions (collectively with the CannTrust Claims, the "**Assigned Claims**").

8.    Class Counsel, counsel for the Securities Claimants' Trust (collectively, "**Prosecution Counsel**") and CannTrust will negotiate a Cooperation Agreement. The Cooperation Agreement will stipulate, among other things, the general principles stated in Appendix "A".

9.    Pursuant to the CCAA Plan, and conditional on the plaintiffs in the Actions or Class Counsel, acting on behalf of the Securities Claimants**,** voting in favour of the CCAA Plan and approval of the CCAA Plan by the Court, CannTrust will consent to orders:

    (i)    (a) appointing the law firm of Weisz Fell Kour LLP , in association with Labaton Sucharow LLP, as the Canadian representative for plaintiffs in the US Class Action; and (b) allowing US plaintiffs to file an action (with Weisz Fell Kour LLP as counsel) on the Commercial List against any Non-Settlement Parties, or establish a subclass in the Ontario Class Action, with a class defined in same way as the class is defined in the US Class Action and subject to US law in respect to the causes of action (the "**Cross-Border Action**");

    (ii)    continuing the Representation Order (described below) permitting the plaintiffs in the Actions to settle the Ontario Class Action, US Class Action, and Cross-Border Action or prosecute the Ontario Class Action and Cross-Border Action against any Non-Settlement Parties under the terms of such order;

    (iii)    approving any settlement with the Non-Settlement Parties; approving notice to members of the Canadian Class Action and US Class Action further to the such settlements; a distribution protocol (*i.e.* plan of allocation) setting forth the distribution of the funds to class members from the Securities Claimants' Trust (less attorneys' fees and litigation expenses) that is consistent with the Securities Claimants' Trust's obligations in paragraph 11 herein; and

- 33 -

approving Class Counsel's request for attorneys' fees to be paid from the Securities Claimants' Trust;

(iv)     permitting the plaintiffs in the Ontario Class Action to apply to the Commercial List and obtaining an expedited hearing for an order granting leave under the Securities Act (Ontario) further to their prosecution or settlement of the Ontario Class Action against any Non-Settlement Parties;

(v)      at Class Counsel's option, permitting the plaintiffs in the Ontario Class Action and Cross-Border Action to apply to the Commercial List and obtaining an expedited hearing for an order certifying the Ontario Class Action and Cross-Border Action under the Class Proceedings Act (Ontario) against any Non-Settlement Parties;

(vi)     directing an expedited hearing date on the Commercial List of the claims in the Ontario Class Action and Cross-Border Action against any Non-Settlement Parties under the provisions of the Class Proceedings Act (Ontario) or pursuant to the Commercial List's statutory or discretionary powers on behalf of the classes defined in the Ontario Class Action and Cross-Border Action;

(vii)    permitting the Securities Claimants' Trust to obtain on an expedited basis a joint trial date for the claims in the Ontario Class Action, Cross-Border Action and any of the Assigned Claims including the claims of the Securities Claimants' Trust against any Non-Settlement Parties; and

(viii)   prohibiting any other action from being commenced or prosecuted against any Released Parties or any Non-Settlement Parties alleging facts substantially the same or similar as those alleged in the Actions  Cross-Border Action or the Assigned Claims held by the Securities Claimants' Trust.

10.    The Securities Claimants' Trust and Class Counsel agree that where the aggregate amount recovered from the Additional Settlement Parties and Non-Settlement Parties, whether pursuant to settlements or prosecution of the Class Actions and Assigned Claims, exceeds $250 million net of litigation fees and expenses then CannTrust will be entitled to receive in staged amounts to be agreed up to the settlement amount of $50 million.

- 34 -

11.    In relation to the CCAA Plan, whether in the sanction order or a separate order, the Court will grant an order, satisfactory to the Released Parties, enjoining, barring and/or extinguishing to the fullest extent permitted by applicable law all claims against the Released Parties in any jurisdiction that have been asserted in the Actions or are based on the events giving rise to the Actions, and all potential claims relating to those claims, including all indemnity, contribution and set off claims, as well as all claims that relate to or arise out of facts and transactions alleged in any of the pending actions against CannTrust or the Released Parties in any jurisdiction (the "**Bar Order**"). Additionally:

    (a)    The Securities Claimants and the Securities Claimants' Trust jointly and severally agree and undertake (i) not to seek any damages from any defendant, (ii) not to threaten, make or settle any claim or take any proceeding against any other person or entity, which in either case might result in a claim over, contribution or indemnity or any other claim for damages, being made against any of the Released Parties in any jurisdiction that is permitted to proceed notwithstanding the Bar Order, and (iii) to obtain a full and final release satisfactory to the Released Parties and to be finalized with the Securities Claimants and the Securities Claimants Trust on or before January 31, 2021, if the Securities Claimants or the Securities Claimants' Trust settle with any Non-Settlement Parties;

    (b)    Class Counsel and the representative plaintiffs will enter into a supplemental letter containing additional terms that are confidential.

12.    The Securities Claimants will support a CCAA Plan and Court Orders in Canada and the United States, and sign appropriate agreements, releases and other documents acceptable to the Released Parties which shall include, without limitation, releases of all United States and Canadian claims against the Released Parties, and documents reasonably necessary and acceptable to CannTrust in order for it to exit CCAA protection. This also includes settlement papers in the United States class actions, whereby releases will be approved by the Court releasing all United States-based federal and state claims.

13.    With respect to the US Action:

    (a)    Class Counsel and the applicable Released Parties will seek preliminary approval of the settlement in the US Class Action after the CCAA sanction order is granted. Class Counsel and the applicable Released Parties shall cooperate and jointly file any motions in support of preliminary approval and final approval of the settlement in the US Class Action. The California Action shall be voluntarily dismissed with prejudice;

    (b)    The parties shall endeavor to rely on notices given in the CCAA proceedings to the maximum extent practicable.

    (c)    Any notice provided in connection with the settlement shall caution putative class members that Class Counsel and the applicable Released Parties believe that the claims of any opt-outs have been barred by the CCAA sanction order and principles of comity;

- 35 -

(d)     The final order in the US Class Action (the "**US Approval Order**") shall contain customary broad releases by the putative class of any claims that were or could have been asserted in the Actions (including the California Action).

(e)     US Approval Order shall contain a bar order in customary form  (the "**US Settlement Discharge**"), which will contain such judgment reduction provisions as may be required by the *Private Securities Litigation Reform Act*.  The Parties shall request that the US Approval Order recite that the US Settlement Discharge is without prejudice to and does not limit the applicability of the Bar Order.

(f)     Class Counsel shall request that the US Class Action be stayed against the Non-Settlement Parties to enable these claims to be litigated in Cross-Border Action.

(g)     The US Class Action shall be dismissed after the Cross-Border Action is initiated.

(h)     At the option of the Original Settlement Parties, the settlement may be terminated if: (i) the court in the US Class Action does not approve a settlement containing classwide releases and the US Settlement Discharge in a form acceptable to the Original Settlement Parties; or (ii) if they are otherwise entitled to do so pursuant to the supplemental letter.

## *Process to Implement Proposed Settlement*

1.     Pursuant to the Mediation, CannTrust will seek to negotiate and enter into a restructuring support agreement (the "**RSA**") with Class Counsel pursuant to which the Parties would agree to pursue the settlement of all claims by the Securities Claimants and related matters on terms consistent with the "Settlement Framework" above, which will be reflected in a term sheet (the "**Term Sheet**") and attached to the RSA (some of which settlement terms are summarized in paragraph 4 below), following the steps and process described below.  The RSA would include other terms customary for a support agreement in a CCAA context and would be in form and content satisfactory to the parties.

2.     After the RSA is settled and signed, CannTrust will seek a representation order in the CCAA proceedings ("**Representation Order**").  The order will amongst other things:

(a)     appoint the plaintiffs in the Ontario Class Action as the court-appointed representatives of all holders of Securities Claims in Canada ("**Canadian Securities Claimants**") for the purposes of the CCAA proceedings (the "**Canadian Representatives**") and appoint Class Counsel in the Ontario Class Action as counsel for the Canadian Representatives in the CCAA proceedings, with authority to act on behalf of all Canadian Securities Claimants in the CCAA proceedings and for the purposes of carry out the transactions contemplated in the RSA;

(b)     appoint the plaintiffs in the US Action as the court-appointed representatives of all holders of Securities Claims in the US ("**US Securities Claimants**") for the purposes of the CCAA proceedings (the "**US Representatives**" and collectively with the Canadian Representatives, the "**Representatives**") and appoint Class Counsel in the

- 36 -

US Action as counsel for the US Representatives in the CCAA proceedings, with authority to act on behalf of all US Securities Claimants in the CCAA proceedings and for the purposes of carry out the transactions contemplated in the RSA; and

(c)     establish a process to notify Securities Claimants of the appointment of the Representatives and their counsel and the terms of the settlement contemplated by the RSA, and if necessary, an opportunity for individual Securities Claimants to opt out of representation by the applicable Representatives for the purposes of the CCAA proceedings (the "**Opt Out Claimants**").

3.     Any notice or administration expenses prior to the CCAA Sanction Order being granted shall be paid by the Applicants, following which such costs will be funded from the Securities Claimant Trust.

4.     CannTrust and the Representatives (with assistance from counsel), consistent with their obligations under the RSA, will negotiate and finalize the terms of the CCAA Plan, the form of CCAA sanction order to be proposed to the court and other definitive documents.  The CCAA Plan would contemplate the following features, among other things, consistent with the Term Sheet attached to the RSA:

(a)     the creation of the Securities Claimants' Trust on or before the plan implementation date, to which contributions from CannTrust and any Additional Settlement Party would be made to fund distributions to Securities Claimants;

(b)     appointing the Trustees and counsel to the Securities Claimants' Trust as contemplated in section 3 of the settlement framework above;

(c)     the payment by the insurers, if applicable, on the plan implementation date, of their share of the Cash Contribution to the Securities Claimants Trust;

(d)     the payment by CannTrust, on the plan implementation date, of its share of the Cash Contribution to the Securities Claimants Trust;

(e)     the payment by the other Settlement Parties, if applicable, on the plan implementation date, of their respective contributions to the Securities Claimants Trust;

(f)     the assignment of the Assigned Claims to the Securities Claimants Trust on the plan implementation date;

(g)     broad releases in favour of the Released Parties by way of:

(i)     the CCAA Plan and sanction order;

(ii)     the US Approval Order; and

- 37 -

    (iii)    a contractual release, authorized by the CCAA Plan and sanction order and delivered by the Representatives on behalf of Securities Claimants (other than Opt Out Claimants);

(h)    to the fullest extent permitted by applicable law and without limitation to the releases described above, a sanction order that enjoins Non-Settlement Parties in any jurisdiction from asserting any claims against the Released Parties that have been asserted in the Actions or are based on the events giving rise to the Actions, and all potential claims relating to those claims, including all indemnity, contribution and set off claims, as well as all claims that relate to or arise out of facts and transactions alleged in any of the pending actions against CannTrust or the Released Parties; and

(i)    after the CCAA sanction order and US approval order are obtained, CannTrust will consent to:

    (i)    (a) appointing the law firm of Weisz Fell Kour LLP as the Canadian representative for plaintiffs in the US Class Action; and (b) allowing US plaintiffs to file the Cross-Border Action;

    (ii)    continuing the Representation Order permitting the plaintiffs in the Actions to settle the Ontario Class Action, US Class Action, and Cross-Border Action or prosecute the Ontario Class Action and Cross-Border Action against any Non-Settlement Parties under the terms of this order;

    (iii)    approving any settlement with the Non-Settlement Parties; approving notice to members of the Canadian Class Action and US Class Action further to such settlements; a distribution protocol (*i.e.* plan of allocation) setting forth the distribution of the funds to class members from the Securities Claimants' Trust (less attorneys' fees and litigation expenses) that is consistent with the Securities Claimants' Trust's obligations to Released Parties; and approving Class Counsel's request for attorneys' fees to be paid from the Securities Claimants' Trust;

    (iv)    permitting the plaintiffs in the Ontario Class Action to apply to the Commercial List and obtaining an expedited hearing for an order granting leave under the Securities Act (Ontario) further to their prosecution or settlement of the Ontario Class Action against any Non-Settlement Parties;

    (v)    at Class Counsel's option, permitting the plaintiffs in the Ontario Class Action and Cross-Border Action to apply to the Commercial List and obtaining an expedited hearing for an order certifying the Ontario Class Action and Cross-Border Action under the Class Proceedings Act (Ontario) against any Non-Settlement Parties;

    (vi)    directing an expedited hearing date on the Commercial List of the claims in the Ontario Class Action and Cross-Border Action against any Non-Settlement Parties under the provisions of the Class Proceedings Act

- 38 -

(Ontario) or pursuant to the Commercial List's statutory or discretionary powers on behalf of the classes defined in the Ontario Class Action and Cross-Border Action;

(vii)    permitting the Securities Claimants' Trust to obtain on an expedited basis a joint trial date for the claims in the Ontario Class Action, Cross-Border Action and any of the Assigned Claims including the claims of the Securities Claimants' Trust against KPMG and/or any other Non-Settlement Parties as the Securities Claimants' Trust chooses; and

(viii)    prohibiting any other action from being commenced or prosecuted against any Released Parties or any Non-Settlement Parties alleging facts substantially the same or similar as those alleged in the Actions, Cross-Border Action or the Assigned Claims held by the Securities Claimants' Trust.

5.    CannTrust would file its CCAA Plan with the court and bring a related motion for (i) if necessary, a claims process in respect of Securities Claims and (ii) a meeting order (the "**Meeting Order**").  Among other things, the Meeting Order would:

(a)    order creditor meetings to be held to enable affected creditors (including, if necessary, Securities Claimants including Opt Out Claimants), or their proxies, to vote on the CCAA Plan;

(b)    approve the form of materials to be distributed and the notice procedures for the meetings;

(c)    if a supplemental claims process and/or a vote is conducted, authorize the Representatives to file a "global" proof of claim in the CCAA claims process, and act as voting proxy, on behalf of all Securities Claimants other than the Opt Out Claimants. Purely for voting purposes, the number of Securities Claimants and aggregate amount of the claims for which the Representatives act as proxy would be agreed by CannTrust and the Representatives and confirmed in the Meeting Order; and

(d)    if a supplemental claims process and/or a vote is conducted, require each of the Opt Out Claimants to prove the amount of its Securities Claim individually, although CannTrust with Monitor approval would be authorized to consent to the amount of individual Securities Claims by Opt Out Claimants for voting purposes only.

6.    Creditor meetings would be held to vote on the CCAA Plan in accordance with the Meeting Order.

7.    If the CCAA Plan is approved by the requisite majorities of affected creditors, CannTrust will bring a motion for the CCAA sanction order in respect of the CCAA Plan.  If approved by the CCAA court, the CCAA Plan will be binding on all Securities Claimants including Opt Out Claimants (subject to the CCAA Plan thereafter being implemented in accordance

- 39 -

with its terms).

8.       After the CCAA sanction order is granted, CannTrust and the US Representatives would seek approval of the US Approval Order.

9.       After the US Approval Order is granted, CannTrust with the support of the Representatives would proceed to implement the CCAA Plan and the transactions contemplated by the definitive documents on the plan implementation date, including:

(a)       funding of the Cash Contributions and assignment of the Assigned Claims to the Securities Claimant Trust;

(b)       delivery of the contractual releases;

(c)       dismissal of all actions in the US and Canada as against the Released Parties;

(d)       disbursement of funds from the Securities Claimants' Trust to the extent permitted by the definitive documents; and

(e)       provision by CannTrust of the information and cooperation contemplated in the RSA in relation to the Assigned Claims, as summarized in Schedule C.

**SCHEDULE C**

**Cooperation Agreement – General Principles**

A.  A material factor influencing CannTrust's decision to execute the Cooperation Agreement is the desire to limit its burden and expense in complying with the agreement. Accordingly, Prosecution Counsel agree to exercise good faith in seeking cooperation from CannTrust and agree not to seek information that is unnecessary, cumulative or duplicative and agree otherwise to avoid imposing undue or unreasonable burdens or expense on CannTrust.

B.  The scope of CannTrust's cooperation shall be limited to the allegations asserted in the Actions as presently filed and the Assigned Claims.

C.  All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided.

D.  CannTrust shall not be required to provide cooperation: (i) in violation of any law or Order from a court of competent jurisdiction; (ii) that waives any privilege; or (iii) with regard to conduct outside the scope of the Assigned Claims.

E.  Within ● days after the CCAA Plan is implemented:

(a)   CannTrust will provide all non-privileged documents (including electronically stored documents) relevant to the Actions and the Assigned Claims in a form mutually acceptable to the Parties. CannTrust makes no representation regarding, and shall bear no liability with respect to, the accuracy of, or that they have, can or will produce a complete set of any of the documents or information, and the failure to do so shall not constitute a breach or violation of the Cooperation Agreement.

(b)   If any documents protected by any privilege, including solicitor-client, litigation, attorney work product, settlement, common-interest or joint defence privilege, or any other privilege, doctrine or law, and/or any privacy law or other rule or law of Ontario, Quebec or any other jurisdiction, are accidentally or inadvertently disclosed or produced, such documents shall be promptly returned to CannTrust and the documents and the information contained therein shall not be disclosed or used directly or indirectly, except with the express written permission of CannTrust, and the production of such documents shall in no way be construed to have waived in any manner any privilege, doctrine, law, or protection attached to such documents.

(c)   CannTrust's counsel will meet with Prosecution Counsel to provide an evidentiary proffer which will include information that is not covered by privilege, including solicitor-client, litigation, attorney work product, settlement, common-interest or joint defence privilege, or any other privilege relating to the Actions and the Assigned Claims. The Parties agree that there shall be no audio or video recording or written transcription or record of any statements made or information provided by CannTrust's counsel at the proffer, and that Prosecution Counsel may only make written notes of their own thoughts and impressions at the proffer for the purpose of formulating legal advice, pursuing litigation and/or for the purpose of advancing

MT DOCS 20899095v11

- 41 -

settlement discussions in the interests of the Securities Claimants and the Securities Claimant Trust, as applicable. Notwithstanding any other provision of the Cooperation Agreement, and for greater certainty, it is agreed that any such written notes, and all statements made and information provided by CannTrust's counsel are privileged, will be kept strictly confidential, may not be directly or indirectly disclosed to any other party, and shall not be used by Prosecution Counsel for any purpose other than for their own internal use in connection with the prosecution of the Actions and Assigned Claims and for no other purpose whatsoever.

F.  Prosecution Counsel agree that all documents and information made available or provided by CannTrust under the Cooperation Agreement shall be used only in connection with the prosecution of the Actions and the Assigned Claims, and shall not be used directly or indirectly for any other purpose, except to the extent that the documents or information are already publicly available prior to the time of production from CannTrust or subsequently become publicly available other than through the actions of Prosecution Counsel, the Securities Claimants or the Securities Claimant Trust. Prosecution Counsel agree they shall not disclose the documents and information provided by CannTrust beyond what is reasonably necessary for the prosecution of the Actions or Assigned Claims or as otherwise required by law, and acknowledge that they are bound by the deemed undertaking and Rule 30.1 of the Rules of Civil Procedure and the equivalent rules in other Provinces or jurisdictions, except to the extent that the documents or information are publicly available.

G.  Prosecution Counsel may request to interview certain of CannTrust's current or former officers, directors or employees under oath. CannTrust will make best efforts to encourage witnesses to attend the interviews but will not compel witnesses to provide witness statements or other testimony under oath.[1] The Securities Claimant Trust will bear the reasonable costs of counsel retained by CannTrust and witnesses to assist in their interactions with Prosecution Counsel. It shall not be a breach of cooperation if any person or entity asserts any right against self-incrimination or similar privilege.

H.  The Securities Claimants and the Securities Claimant Trust agree that section 7 is the exclusive means by which they may obtain discovery or information or documents from CannTrust's current or former officers, directors or employees. They agree not to pursue any other means of discovery against, or seek to compel the evidence of CannTrust's current or former officers, directors or employees, whether in Canada or elsewhere and whether under the rules or laws of this or any other Canadian or foreign jurisdiction, unless that person does not cooperate pursuant to section 7.

I.  Subject to the rules of evidence or any court Order, CannTrust agrees to use reasonable efforts to produce at trial or through acceptable affidavits for use at trial a current representative qualified to establish the authenticity of the documents provided by CannTrust pursuant to the Cooperation Agreement (after Class Counsel and counsel for the Securities Claimant Trust, as applicable, has used best efforts to authenticate documents for use at trial without a live witness).

---

[1] **NTD:** CannTrust has taken the same position with law enforcement since July 2019.

MT DOCS 20899095v11

- 42 -

J.  To the extent any of CannTrust's cooperation obligations require any current or former employees of CannTrust to travel from their principal place of business or residence to another location, the Securities Claimant Trust shall reimburse that person for reasonable expenses incurred by any such person in connection with fulfilling CannTrust's cooperation obligations.

K.  The failure of a specific officer, director, employee or former employee of CannTrust to agree to make him or herself available shall not constitute a violation of the Cooperation Agreement.

L.  Any dispute regarding the Cooperation Agreement will not invalidate the CCAA Plan and shall be resolved by way of confidential mediation/arbitration, in a manner to be agreed among the Parties.