**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In Re: CANNTRUST HOLDINGS INC. SECURITIES LITIGATION | No. 1:19-cv-06396-JPO<br><br>Judge J. Paul Oetken |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS AND
ALLOCATION AND DISTRIBUTION SCHEME**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 5

I.    THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE, AND WARRANT FINAL APPROVAL ...................................................... 5

    A.    The Law Favors and Encourages Settlement of Class Action Litigation ............... 5

    B.    The Standards for Final Approval ........................................................................... 5

    C.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the U.S. Settlement Class ................................................................................................... 7

    D.    The Settlements Were Reached after Robust Arm's-Length Negotiations ............ 9

    E.    The Relief Provided by the Settlements Is Adequate ........................................... 10

        1.    The Complexity, Expense, and Likely Duration of Litigation with the Settling Defendants Support Approval of the Settlements ................. 10

        2.    The Risks of Establishing Liability and Damages with Respect to Settled Claims Support Approval of the Settlements ............................... 12

    F.    The Effective Process for Distributing Relief to the U.S. Settlement Class .......... 16

    G.    The Settlements Do Not Excessively Compensate Lead Counsel ........................ 17

    H.    Application of the Remaining *Grinnell* Factors Supports Approval of the Settlements ........................................................................................................ 18

        1.    The Reaction of the U.S. Settlement Class to the Settlements ................. 18

        2.    The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlements ..................... 19

        3.    The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and all the Attendant Risks of Litigation Support Approval of the Settlements ........................................ 20

II.    FINAL CERTIFICATION OF THE U.S. SETTLEMENT CLASS, FOR SETTLEMENT PURPOSES ONLY .............................................................................. 21

III.    THE ALLOCATION AND DISTRIBUTION SCHEME GOVERNING
        SETTLEMENT PAYMENTS IS FAIR AND REASONABLE AND TREATS
        ALL CLAIMANTS EQUITABLY RELATIVE TO ONE ANOTHER AND
        SHOULD BE APPROVED BY THIS COURT ..............................................................22

IV.     NOTICE TO THE U.S. SETTLEMENT CLASS SATISFIED THE
        REQUIREMENTS OF RULE 23 AND DUE PROCESS...................................................24

CONCLUSION.........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alloy, Inc. Sec. Litig.*,
   No. 03-1597, 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ........................................11, 12, 13

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ........................................................................................12

*In re AOL Time Warner, Inc.*, *Sec. and ERISA Litig*.,
   No. 02 cv 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................................................12

*In re Apollo Grp., Inc. Sec. Litig.*,
   No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008),
   *rev'd*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) .........................................12

*In re Barrick Gold Sec. Litig*.,
   314 F.R.D. 91 (S.D.N.Y. 2016) ........................................................................................7

*In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................................. *passim*

*In re Citigroup Inc. Sec. Litig.*,
   No. 09 MD 2070 (SHS), 2014 WL 2112136 (S.D.N.Y. May 20, 2014) ...................................6

*City of Detroit v. Grinnell Corp.*
   495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by,*
   *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).....................................6, 7, 12

*City of Providence v. Aeropostale Inc. et al.*,
   No. 11 civ. 7132, 2014 WL 1883494 (S.D.N.Y. May 9, 2014),
   *aff'd, Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015) .............................................9, 10

*In re Comverse Techs. Inc. Sec. Litig.*,
   No. 06-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ..................................................18

*In re Deutsche Telekom AG Sec. Litig.*,
   No. 00-CV-9475 (NRB), 2005 WL 7984326 (S.D.N.Y. June 14, 2005) ................................18

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
   *aff'd*, 674 F. App'x. 37 (2d Cir. 2016).............................................................................9, 10

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM)(PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............10, 11, 22

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................23

*In re Gilat Satellite Networks*, *Ltd.*,
  No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007) ...........................11

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................15, 16

*In re GSE Bonds Antitrust Litig.*,
  No. 19-CV-1704 (JSR), 2019 WL 6842332 (S.D.N.Y. Dec. 16, 2019) .................10

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ...............................................................6, 16, 22

*In re Initial Pub. Offering Sec. Litig.*,
  671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...........................................................11, 22

*In re Marsh & McLennan Cos. Sec. Litig.*,
  No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................25

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................23

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. 2007) ........................................................................21

*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*,
  602 F. Supp. 2d 277 (D. Mass. 2009) .................................................................14

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ...............................................................................20

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997) ...........20, 22

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  828 F. App'x. 760 (2d Cir. 2020) ........................................................................21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) .......................................................................7, 10

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ...........................................................................8

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ..........................................................................12

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..............................................................11, 12

*Teachers Ret. Sys. of La.*, *v. A.C.L.N. LT.D*,
 No. 01-cv-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...........................20

*In re Telik, Inc. Sec. Litig.*,
 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..............................................................11, 16

*Vaccaro v. New Source Energy Partners L.P.*,
 No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .............21

*In re Veeco Instruments Inc. Sec. Litig.*,
 No. 05 MDL 01695 (CM), 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ...............10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005) ..................................................................... *passim*

*In re Warner Chilcott Ltd. Sec. Litig.*,
 No. 06 Civ. 11515, 2009 WL 2025160 (S.D.N.Y. July 10, 2009) .........................19

**Statutes**

15 U.S.C. § 78u-4(a)(7) ...............................................................................................24

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................................22

Fed. R. Civ. P. 23(b)(3) ...............................................................................................22

Fed. R. Civ. P. 23(c)(2)(B) ..........................................................................................25

Fed. R. Civ. P. 23(e) .........................................................................................1, 5, 7, 24

Fed. R. Civ. P. 23(e)(2) .........................................................................................5, 6, 7

Fed. R. Civ. P. 23(e)(2)(A) .............................................................................................7

Fed. R. Civ. P. 23(e)(2)(B) .............................................................................................9

Fed. R. Civ. P. 23(e)(2)(C) .....................................................................................10, 16

Fed. R. Civ. P.23(e)(2)(C)(i) .........................................................................................10

Fed. R. Civ. P. 23(e)(3) ..................................................................................................6

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs Granite Point Master Fund, LP and Granite Point Capital Scorpion Focused Ideas Fund ("Lead Plaintiffs," "Granite Point," or "U.S. Class Action Lead Plaintiffs"), on behalf of themselves and all other members of the proposed settlement class (the "U.S. Settlement Class"),[1] respectfully submit this memorandum of law in support of their motion for: (i) final approval of eight proposed settlements (the "Settlements"), as they relate to this action (the "U.S. Class Action");[2] (ii) approval of the proposed allocation plan governing the calculation of claims and the distribution of the settlement proceeds (the "Allocation and Distribution Scheme" or "A&DS"), as it relates to members of the U.S. Settlement Class; and (iii) final certification of the U.S. Settlement Class, for settlement purposes only.

## PRELIMINARY STATEMENT

After extensive negotiations over the course of many months and under the auspices of a mediator appointed by the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), defendant CannTrust and the majority of the defendants in this class action have reached a global resolution of the claims asserted against them in this case, as well as actions

---

[1] All capitalized terms not defined herein have the same meanings as in the Order preliminarily approving the Settlements (the "Preliminary Approval Order") (ECF No. 153), CannTrust Holdings Inc.'s Fourth Amended & Restated Plan of Compromise, Arrangement and Reorganization, as amended and restated from time to time (the "CCAA Plan") (ECF No. 150-3), the Restructuring Support Agreement ("RSA") (ECF No. 150-4), or the proposed Allocation and Distribution Scheme governing the calculation of investors' claims (ECF No. 150-5).

[2] The Settlements involve all defendants in this U.S. Class Action, except for KPMG LLP. Defendants CannTrust; Cannamed Financial Corp.; Cajun Capital Corporation; Mark Dawber; Greg Guyatt; John Kaden; Robert Marcovitch; Shawna Page; Mitchell Sanders; Eric Paul; Mark Ian Litwin; Ian Abramowitz; Peter Aceto; Canaccord Genuity LLC; Citigroup Global Markets Inc.; Credit Suisse Securities (USA) LLC; Jefferies LLC; Merrill Lynch, Pierce, Fenner & Smith Incorporated; and RBC Dominion Securities Inc. are collectively the "Settling Defendants," for purposes of this memorandum. U.S. Class Action Lead Plaintiffs and the Settling Defendants are collectively referred to as the "Settling Parties."

pending in Canada and California (the "Actions").[3]  It is respectfully submitted that the proposed

Settlements, as they relate to this U.S. Class Action, are eminently fair, reasonable, and adequate

and should be approved by this Court (the "Court" or "U.S. Court").

The proposed Settlements will be implemented pursuant to CannTrust's CCAA Plan,

under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended,

which was approved by the Canadian Court by a "sanction order" entered on July 16, 2021 (the

"CCAA Sanction Order"). *See* ECF No. 150-2.  Among other things, in the CCAA Sanction

Order, the Canadian Court concluded that the CCAA Plan had been approved by the requisite

majority of creditors, and that "the CCAA Plan and all of the matters and transactions

contemplated thereby are fair and reasonable."  *Id*. ¶5.  Accordingly, the Canadian Court

approved the CCAA Plan, and directed that all steps be taken to implement the CCAA Plan.  *Id*.

¶7.  The Canadian Court also approved the releases and injunctions requested as part of

implementing the Settlements, to become effective upon "the Effective Time" (as defined in the

CCAA Sanction Order) (*id*. ¶¶21-33) of the CCAA Plan, and approved the proposed Allocation

and Distribution Scheme. *Id*. ¶6.  The Canadian Court further requested "the aid and recognition

of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the

United States, or abroad, to give effect to this Sanction Order and to assist the Applicants, the

---

[3] The primary terms of the Settlements are set forth in the CCAA Plan, the RSA, and the minutes of settlement with the other settling parties, which were previously filed with the Court. *See* ECF Nos. 150-1 to 150-12.  Given the number of Settling Parties and agreements, the Court is respectfully referred to Exhibit 2 of the accompanying Declaration of James W. Johnson in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlements and Allocation and Distribution Scheme (the "Johnson Declaration" or "Johnson Decl.") for a list of the agreements, some of which were not filed due to their sensitive nature.  The confidential agreements can be provided to the Court either *in camera* or under seal.  The documents require confidentiality because they relate to matters that, if disclosed, could incentivize certain persons or entities to undertake litigation positions that would be detrimental to the interests of Lead Plaintiffs and the proposed class.

Monitor and their respective agents in carrying out the terms of this Sanction Order and the CCAA Plan." *Id*. ¶70.

The CCAA Plan, and the proposed Settlements reached to date to be implemented through the CCAA Plan, will create, among other things, a Class Compensation Fund for eligible investors in the amount of approximately C$83,000,000, before the deduction of approved fees, expenses, taxes, and set-offs required by the Settlements.[4] The Class Compensation Fund will be administered by a Securities Claimant Trust for the benefit of Securities Claimants both within and outside the United States. Any additional settlements and recoveries obtained through ongoing claims against non-Settlement Parties will also be administered by the Securities Claimant Trust.

Implementation of the CCAA Plan requires, among other things, approval of the Settlements as they relate to the U.S. Class Action by this Court. The CCAA Plan provides for, *inter alia*, the restructuring of CannTrust so that it can emerge from its insolvency proceedings under the CCAA, the administration of the Settlements for the benefit of CannTrust's investors, and the handling of unsettled claims related to the alleged wrongdoing at issue in the Actions. The proposed Settlements are a key part of the CCAA Plan.

The Settlements were reached only after Lead Plaintiffs, Lead Counsel, and Ontario Class Action Counsel, had a well-developed understanding of the strengths and weaknesses of the claims being settled. As more fully described in the Johnson Declaration,[5] by the time the

---

[4] For informational purposes, at the time the Settlements were reached (January 19, 2021 to May 24, 2021), the C$/US$ exchange rate ranged from C$1.20 to C$1.28 per US$1.00 with an average of C$1.25 per US$1.00. Accordingly, at the time of the Settlements, C$83,000,000 was equivalent to approximately US$66,400,000.

[5] The Johnson Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Actions and the CCAA Proceedings; the nature of the claims asserted; the

Settlements were agreed to, Lead Counsel had engaged in a thorough factual investigation that included, among other things, the review and analysis of: (i) press releases, news articles, transcripts, and other public statements issued by or concerning CannTrust and the individual defendants; (ii) research reports issued by financial analysts concerning the cannabis industry and CannTrust's business; (iii) CannTrust's filings with the U.S. Securities and Exchange Commission ("SEC"), Canada's System for Electronic Document Analysis and Retrieval ("SEDAR"); (iv) news articles, media reports, videos, social media posts and other publications concerning CannTrust, the cannabis industry and Canadian regulations; and (v) other publicly available information and data concerning CannTrust, its securities, and the markets therefor. Lead Counsel consulted with experts in accounting, auditor/underwriter due diligence policies and procedures, and cannabis; located 51 potential witnesses with knowledge of the alleged events; conducted interviews with eight former employees of CannTrust and others with relevant knowledge; and reviewed a significant body of Canadian rules and regulations governing the growth, storage and sale of medicinal and recreational cannabis. Counsel also conferred with experts on the issues of damages and loss causation. *See generally* Johnson Decl. ¶¶11-32.

Lead Plaintiffs respectfully submit that the Settlements, as they relate to this case, warrant final approval by this Court given that they are the result of lengthy rigorous arm's-length negotiations by experienced counsel, during the course of more than 20 formal mediation sessions, overseen by a court-appointed mediator, and represent a very favorable recovery that

---

negotiations leading to the Settlements; the terms of the Settlements; and the risks and uncertainties of continued litigation, among other things. Citations to "¶" in this memorandum refer to paragraphs in the Johnson Declaration.

All exhibits herein are annexed to the Johnson Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Johnson Declaration and the second reference is to the exhibit designation within the exhibit itself.

falls well within the range of possible approval, and readily meet all of the approval factors required by Fed. R. Civ. P. 23(e) and Second Circuit precedent.

Additionally, Lead Plaintiffs request that the Court approve the proposed Allocation and Distribution Scheme, as it relates to members of the U.S. Settlement Class, which was set forth in full in the Notice sent to U.S. Settlement Class Members. The A&DS, which was developed by Lead Counsel and Ontario Class Action Counsel in consultation with Lead Plaintiffs' consulting damages expert, provides a reasonable and equitable method for allocating the Class Compensation Fund among eligible Claimants who submit valid claims. The A&DS is fair and reasonable, and should likewise be approved.

## ARGUMENT

## I. THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE, AND ADEQUATE, AND WARRANT FINAL APPROVAL

### A. The Law Favors and Encourages Settlement of Class Action Litigation

Public policy favors the settlement of disputed claims among private litigants, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*") ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'").[6] This policy would be well-served by approval of the Settlements of the majority of the claims in this complex securities class action, which absent resolution, would consume years of additional time of this Court.

### B. The Standards for Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval. A settlement should be approved if a court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In ruling on final approval of a class

---

[6] All internal quotations and citations are omitted unless otherwise stated.

settlement, courts in the Second Circuit have held that a court should examine both the negotiating process leading to the settlement, and the settlement's substantive terms. *See Visa*, 396 F.3d at 116; *In re Citigroup Inc. Sec. Litig.*, No. 09 MD 2070 (SHS), 2014 WL 2112136, at *2-3 (S.D.N.Y. May 20, 2014); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).

Pursuant to the amendments to Rule 23(e)(2), a court may approve a settlement as "fair, reasonable, and adequate" after considering the following four factors:

> (A)      whether the class representatives and class counsel have adequately represented the class;
>
> (B)      whether the proposal was negotiated at arm's length;
>
> (C)      whether the relief provided for the class is adequate, taking into account:
>
>> i.      the costs, risks, and delay of trial and appeal;
>>
>> ii.      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> iii.      the terms of any proposed award of attorneys' fees, including timing of payment; and
>>
>> iv.      any agreement required to be identified under Rule 23(e)(3); and
>
> (D)      whether the proposal treats class members equitably relative to each other.

In *City of Detroit v. Grinnell Corp.*, the Second Circuit held that the following factors should be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by, Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also Visa*, 396 F.3d at 117; *In re Bear Stearns, Inc. Sec. Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265-66 (S.D.N.Y. 2012).

The Advisory Committee Notes to the 2018 amendments to the Federal Rules of Civil Procedure indicate that the factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the Court of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 (e)(2) Advisory Committee Notes to 2018 Amendments. Indeed, "[t]he Court understands the new Rule 23(e) factors to add to, rather than displace, the Grinnell factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

Accordingly, Lead Plaintiffs will discuss the fairness, reasonableness, and adequacy of the Settlements principally in relation to the four factors set forth in Rule 23(e)(2), and will also discuss the application of relevant, non-duplicative factors traditionally considered by the Second Circuit. For the reasons discussed herein, the proposed Settlements readily meet the criteria set forth by the Second Circuit and the federal rules.

**C. Lead Plaintiffs and Lead Counsel Have Adequately Represented the U.S. Settlement Class**

In determining whether to approve a class action settlement, a court should consider whether the "class representatives and class counsel have adequately represented the class." Rule 23(e)(2)(A). *See also In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 99 (S.D.N.Y. 2016) (noting that "the adequacy requirement 'entails inquiry as to whether: 1) plaintiffs' interests are antagonistic to the interest of other members of the class and 2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation'").

There can be little doubt that Lead Plaintiffs and Lead Counsel have adequately represented the U.S. Settlement Class. Lead Plaintiffs, like all other members of the U.S. Settlement Class, acquired shares of CannTrust during the Claim Period, when its value was allegedly artificially inflated by false and misleading statements and omissions. *See* ECF No. 68-1. Thus, the claims of the U.S. Settlement Class and Lead Plaintiffs would prevail or fail in unison, and the common objective of maximizing recovery from defendants aligns the interests of Lead Plaintiffs and all members of the U.S. Settlement Class. *See, e.g., In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Further, Lead Plaintiffs were active and informed participants during the litigation and throughout the lengthy settlement process. Lead Plaintiffs (i) regularly communicated with Lead Counsel regarding the prosecution of the claims and developments in the Actions; (ii) reviewed the significant pleadings and memoranda filed with the Court and the Canadian Court; (iii) monitored and consulted with counsel during lengthy settlement discussions over the course of more than six months; and (iv) evaluated and approved the proposed Settlements. *See* Declaration of C. David Bushley on behalf of Granite Point, dated October 20, 2021, Exhibit 1 at ¶¶4-5.

Additionally, throughout the process, Lead Plaintiffs had the benefit of the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. During the course of the litigation, Labaton Sucharow developed a deep understanding of the facts of the case and the merits of the claims. *See* generally Johnson Decl. §§II-V. Moreover, Lead Counsel is highly qualified and experienced in securities litigation, as set forth

in its firm resume (*see* Ex. 5), and was able to successfully conduct the litigation and negotiate with highly skilled opposing counsel. Accordingly, the U.S. Settlement Class has been, and remains, well represented.

### D. The Settlements Were Reached after Robust Arm's-Length Negotiations

In weighing approval of a class-action settlement, the Court must consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). A settlement is entitled to a "presumption of fairness, adequacy, and reasonableness" when "reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Visa*, 396 F.3d at 116; *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *3 (S.D.N.Y. Nov. 9, 2015), *aff'd*, 674 F. App'x. 37 (2d Cir. 2016).

The Settlements here merit such a presumption of fairness because they were achieved after protracted arm's-length negotiations between well-informed and experienced counsel, under the supervision of an experienced court-appointed mediator, the Hon. Dennis O'Connor, Q.C., and after an extensive investigation into the claims. *See* Johnson Decl. ¶¶11-32. More than 80 attorneys, representing 30 separate parties, participated in the mediation process. Since the beginning of the mediation process, counsel for the plaintiffs in the Actions, on behalf of all Securities Claimants, attended more than 20 formal mediation sessions with counsel to CannTrust, co-defendants, and/or insurers and participated in countless informal discussions with the Mediator, the CCAA Monitor, and other mediation participants. *Id*. ¶¶ 26-32.

As noted above and in the Johnson Declaration, Lead Plaintiffs and Lead Counsel, as well as the other plaintiffs and their counsel, were also well informed about the strengths and weakness of the case before agreeing to settle. The judgment of Lead Counsel—a law firm that is highly experienced in securities class action litigation—that the Settlements are in the best interests of the U.S. Settlement Class is entitled to "great weight." *City of Providence v.*

*Aeropostale Inc. et al.*, No. 11 civ. 7132, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd*, *Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015).

Moreover, as noted above, Lead Plaintiffs took an active role in the litigation and the mediation process, as envisioned by the PSLRA, and endorse the Settlement. *See* Ex. 1. A settlement reached "with the endorsement of a sophisticated institutional investor . . . is 'entitled to an even greater presumption of reasonableness.'" *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007).

### E.    The Relief Provided by the Settlements Is Adequate

In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal," as well as other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). "This inquiry overlaps significantly with a number of Grinnell factors, which help guide the Court's application of Rule 23(e)(2)(C)(i)." *In re GSE Bonds Antitrust Litig.*, No. 19-CV-1704 (JSR), 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019). Indeed, "[t]his assessment implicates several *Grinnell* factors, including: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36.

### 1.    The Complexity, Expense, and Likely Duration of Litigation with the Settling Defendants Support Approval of the Settlements

Securities class actions like this one are by their nature complicated, and district courts in this Circuit have long recognized that "[a]s a general rule, securities class actions are 'notably difficult and notoriously uncertain' to litigate." *In re Facebook,* 2015 WL 6971424, at *3; *Bear Stearns,* 909 F. Supp. 2d at 266; *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400

(CM)(PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010); *In re Gilat Satellite Networks*, *Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007) ("Securities class actions are generally complex and expensive to prosecute.").

This case is no exception. As discussed in the Johnson Declaration, at the time the Settlements were reached, there were unusual and sizable risks facing Lead Plaintiffs with respect to recovering anything from CannTrust and related defendants in light of the CCAA Proceedings and CannTrust's financial situation, as well as pleading and establishing liability, loss causation, and damages with respect to the settled claims, from the motions to dismiss stage through trial, and the inevitable post-trial appeals. *See In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 481 (S.D.N.Y. 2009) (finding that the complexity, expense, and duration of continued litigation supports final approval where, among other things "motions would be filed raising every possible kind of pre-trial, trial and post-trial issue conceivable").

Indeed, the trial of the settled claims here would have required extensive expert testimony on numerous contested issues, including scienter, causation and damages, all within the esoteric context of the cannabis industry in Canada. Courts routinely observe that these sorts of disputes—requiring dueling testimony from experts—are particularly difficult for plaintiffs to litigate. *See*, *e.g.*, *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (in a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited").

Of course, even if Lead Plaintiffs had prevailed against with Settling Defendants at trial, it is virtually certain that appeals would be taken, which would have substantially delayed any recovery for the U.S. Settlement Class, assuming funds were available. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[E]ven if a

shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery."). At worst, there is always a risk that the verdict could be reversed by the trial court or on appeal. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice in securities action); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *cf. In re Apollo Grp., Inc. Sec. Litig.*, No. CV-04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008), *rev'd*, No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) (trial court overturned unanimous verdict for plaintiffs, later reinstated by the Ninth Circuit Court of Appeals, and judgment re-entered after denial of *certiorari* by the U.S. Supreme Court).

### 2. The Risks of Establishing Liability and Damages with Respect to Settled Claims Support Approval of the Settlements

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463. While Lead Plaintiffs and Lead Counsel believe the claims asserted against the Settling Defendants are very strong, they recognize that continued proceedings presented several significant risks to achieving a litigated judgment greater than the amounts offered by the Settlements. Securities class actions also present numerous hurdles to proving liability and damages that are difficult for any plaintiff to meet. *See In re AOL Time Warner, Inc.*, *Sec. and ERISA Litig.*, No. 02 cv 5575, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation"). *In re Alloy,*

*Inc. Sec. Litig.*, No. 03-1597, 2004 WL 2750089, at *1 (S.D.N.Y. Dec. 2, 2004) (finding that issues present in securities action presented significant hurdles to proving liability).

The primary consideration with respect to continuing to litigate the claims against CannTrust and CannTrust-related defendants was that since CannTrust was engaged in the CCAA Proceedings, and certain of its insurers had denied coverage, any judgment after trial could result in a contested liquidation over CannTrust's assets. Johnson Decl. ¶¶47-51. With respect to CannTrust, the Coalition and Lead Plaintiffs had access to ongoing financial information of the Company through periodic reports issued by Ernst & Young in its capacity as the CCAA court-appointed monitor of CannTrust. Pursuant to these reports, Lead Plaintiffs understood that CannTrust's projected ending cash balance on January 31, 2021 was approximately C$63.0 million. That amount was projected to decrease steadily until CannTrust emerged from the CCAA reorganization process. *Id.* The individual defendants, other than defendants Paul and Litwin,[7] did not have material sources for a recovery and had limited legal exposure. The extent to which investors could meaningfully collect on a judgment was therefore questionable and the time it would take to obtain a recovery was unknown. The RSA with CannTrust and the other Original Settlement Parties also provides an orderly mechanism for the Class Action Lead Plaintiffs to (i) obtain additional settlements with additional parties, and (ii) to prosecute, on an expedited basis, the remaining Class Action claims and Assigned Claims in a single forum.

Thus, in the event of protracted litigation—with defense costs mounting exponentially—there was no guarantee that the Settling Defendants' insurance (what might have been available given the challenges to coverage) and wasting cash reserves would be sufficient to satisfy a

---

[7] The Litwin Group will be contributing C$11 million to the Securities Claimant Trust and the Paul Settling Parties will be contributing C$12 million to the Securities Claimant Trust.

judgment greater than the Class Settlement Amount. Regardless of how strong a liability case is, "you can't get blood from a stone." *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 281 (D. Mass. 2009).

With respect to establishing the Settling Defendants' liability for the Exchange Act claims, in addition to the obstacles involved in continuing to litigate only against those defendants not impacted by stays in connection with the CCAA Proceedings, the main challenge Lead Plaintiffs would have faced was pleading and proving that each defendant acted with the required intent to defraud or severe recklessness necessary to establish the element of scienter. There would have been significant factual disputes concerning, for instance, who had knowledge of the unlicensed cannabis activities, the extent to which operations were not complaint with regulations, and the defendants' knowledge of compliance requirements. Johnson Decl. ¶¶ 52-53.

With respect to establishing liability for the Securities Act claims, among other things, Lead Plaintiffs would need to establish that their, and the class's, purchases were pursuant or traceable to the May 2019 secondary offering, rather than an earlier offering. While tracing can be straight-forward where claims arise from an initial public offering, here the Settling Defendants would have strenuously contested Lead Plaintiffs' assertions that purchases were traceable to the offering. *Id*. ¶¶55-56. Additionally, the Securities Act claims are subject to a "due diligence" defense. Many of the Settling Defendants, in particular the underwriter defendants, would have argued that they had no knowledge of any wrongdoing at CannTrust, that the unlicensed activities were hidden, and that they satisfied their obligations to perform the requisite due diligence, thereby immunizing them from liability. To overcome the defense, Lead Plaintiffs would have had to convince a jury that these defendants did not conduct a reasonable investigation into whether the offering documents contained misrepresentations. *Id*.

Furthermore, even once the hurdles to establishing the Settling Defendants' liability were overcome, Lead Plaintiffs would have confronted challenges in proving loss causation with respect to the Exchange Act claims and damages with respect to both the Exchange Act and Securities Act claims. Establishing loss causation and damages is a "complicated and uncertain process, typically involving conflicting expert opinion about the difference between the purchase price and the [shares] 'true' value absent the alleged fraud." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004).

Here, Lead Counsel and Ontario Class Action Counsel consulted with an expert in damages and loss causation who has worked on numerous securities class action matters, and who analyzed class wide damages in light of the facts and circumstances presented in the case and developed through the Mediation Process. Damages assessments are very expert driven and depend on the dates of the alleged misrepresentations and corrective disclosures, the price impacts of those events, and the existence of confounding information on the stock price reaction. Changes to the underlying assumptions, or to the misrepresentation or correction dates, could cause significant differences. *Id*. ¶58.

Based on the allegations in this case, Lead Plaintiffs' consulting damages expert, Dr. Surana, has estimated maximum aggregate damages to Securities Claimants of approximately C$510 million. Of those damages, approximately C$48 million are attributable to the Offering claims, and C$461.5 million are attributable to secondary market claims. Using these estimates, the Settlements represent approximately 16% of maximum damages. *Id*. ¶59.

While Lead Counsel would work extensively with Lead Plaintiffs' damages expert with a view towards presenting compelling arguments to the jury and prevailing on these matters at trial, the Settling Defendants would have put forth well-qualified experts of their own who were

likely to opine at trial that the U.S. Settlement Class suffered damages of significantly less. As Courts have long recognized, the substantial uncertainty as to which side's experts' view might be credited by the jury presents a serious litigation risk. *See IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *Telik,* 576 F. Supp. 2d at 579-80 (in this "'battle of experts', it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found…"); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 459 ("[P]roof of damages in securities cases is always difficult and invariably requires expert testimony which may, or may not be, accepted by a jury.").

Given all of these risks with respect to liability, loss causation, and damages, Lead Plaintiffs and Lead Counsel respectfully submit that it is in the best interests of the U.S. Settlement Class to accept the certain and substantial benefits conferred by the Settlements.

### F. The Effective Process for Distributing Relief to the U.S. Settlement Class

Rule 23(e)(2)(C) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The proceeds of the Settlements will be distributed with the assistance of an experienced claims administrator. The Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), will employ a well-tested protocol for the processing of claims in a securities class action. Namely, a claimant will submit, either by mail, e-mail, or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate by, among other things, calculating their respective "Recognized Claims" based on the Court-approved allocation plan, and ultimately determine each eligible claimant's *pro rata* portion of the Class Compensation Fund. *See* A&DS, Ex. 4-A,

Appendix A, ¶¶7-12. Lead Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to contest the rejection of their claims. *Id.* at ¶¶26-29.

After the Settlements become effective and the claims process is completed, eligible U.S. Settlement Class Members and Canadian and Non-US Securities Claimants will be issued payments, as long as their payments calculate to C$50.00 or more, given the costs of issuing payments. *Id.* at ¶14. If there are un-claimed funds after the initial distribution, and it would be feasible and economical to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, taxes, and unpaid notice and administration expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions. At this point, if there are unclaimed funds, Class Action Counsel will donate the remaining funds to a non-sectarian charitable organization certified under U.S. Internal Revenue Code §501(c)(3) and/or a Canadian charity or other non-profit group to be designated by Class Counsel. *Id.* at ¶22.

### G.    The Settlements Do Not Excessively Compensate Lead Counsel

As an initial matter, the Settlements do not contemplate any specific fee award to U.S. or Canadian Class Counsel. Class Action Counsel will be compensated out of the aggregate Class Settlement Amount, and any additional recoveries as a result of ongoing litigation, and will not be compensated by the Settling Defendants. The reasonableness of attorneys' fees will be decided by the Canadian Court after Canadian and U.S. Class Counsel file an application for attorneys' fees in an amount not to exceed 25% of the aggregate Class Settlement Amount, plus

applicable taxes and accrued interest, if any.[8]  U.S. Class Action Counsel, in its sole discretion, may allocate a portion of its fee award to Levi & Korsinsky, additional counsel in the U.S. Class Action, and Girard Sharp LLP and Gibbs Law Group LLP, counsel in the California Action. Class Action Counsel will make additional fee applications if additional recoveries are obtained as a result of litigation.  Class Action Counsel will also apply for payment of their litigation expenses and costs incurred in prosecuting and settling the Actions, including the hourly legal fees charged by Weisz Fell Kour LLP and incurred by Labaton and reimbursement to the Class Action Lead Plaintiffs for their reasonable costs and expenses (including lost wages) related to their representation of the Securities Claimants.

### H. Application of the Remaining *Grinnell* Factors Supports Approval of the Settlements

#### 1. The Reaction of the U.S. Settlement Class to the Settlements

The reaction of a class to a proposed settlement is a significant factor to be weighed in considering its fairness and adequacy.  *See, e.g.*, *Bear Stearns*, 909 F. Supp. 2d at 266-67. Pursuant to the Preliminary Approval Order, Epiq has mailed copies of the Notice Packet (consisting of the Notice and Claim Form) to record holders identified in CannTrust's transfer records, potential U.S. Settlement Class Members, and nominees.  *See* Declaration of Luis Granati Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion, dated October 28, 2021, at ¶¶2-9, Ex. 4.  As of October 27, 2021, Epiq has mailed 37,436 copies of the Notice Packet to potential U.S.

---

[8] This amount is in line with the fee percentages that courts in the Second Circuit have approved in class actions with comparable recoveries.  *See, e.g., In re Monster Inc. Sec. Litig.*, 07-cv-2237-JSR, ECF No. 139 (awarding 25% of $47.5 million settlement); *In re NQ Mobile, Inc. Sec. Litig.*, Case No. 1:13-cv-07608-WHP, slip op. at 1, ECF No. 170 (S.D.N.Y. Mar. 11, 2016) (awarding 30% of a $60.5 million settlement); *In re Deutsche Telekom AG Sec. Litig.,* No. 00-CV-9475 (NRB), 2005 WL 7984326, at *4 (S.D.N.Y. June 14, 2005) (awarding 28% of $120 million settlement); *In re Comverse Techs. Inc. Sec. Litig.,* No. 06-1825, 2010 WL 2653354, at *6 (E.D.N.Y. June 24, 2010) (awarding 25% of $225 million settlement).

Settlement Class Members. *Id.* at ¶9. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire* on September 28, 2021. *Id.* at ¶10.

While the deadline set by this Court for U.S. Settlement Class Members to object or request exclusion (November 11, 2021) has not yet passed, to date, no member of the U.S. Settlement Class has objected or requested exclusion. *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515, 2009 WL 2025160, at *2 (S.D.N.Y. July 10, 2009) (no class member objections since preliminary approval supported final approval). As provided in the Preliminary Approval Order, Lead Plaintiffs will file reply papers no later than November 25, 2021 addressing any objections and requests for exclusion.

### 2. The Stage of the Proceedings and the Amount of Information Available to Counsel Support Approval of the Settlements

In considering this factor, "the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *Bear Stearns*, 909 F. Supp. 2d at 267.

Here, as detailed in the Johnson Declaration, Lead Counsel, together with Ontario Class Counsel, conducted a robust cross-border investigation, which included, among other things, the review and analysis of: (i) press releases, news articles, transcripts, and other public statements issued by or concerning CannTrust and the individual defendants; (ii) research reports issued by financial analysts concerning the cannabis industry and CannTrust's business; (iii) CannTrust's filings with the SEC and Canada's SEDAR; (iv) news articles, media reports, videos, social media posts and other publications concerning CannTrust, the cannabis industry and Canadian regulations; and (v) other publicly available information and data concerning CannTrust, its

securities, and the markets therefor. Lead Counsel consulted with experts in accounting, auditor/underwriter due diligence policies and procedures, and cannabis; located 51 potential witnesses with knowledge of the alleged events; conducted interviews with eight former employees of CannTrust and others with relevant knowledge; and reviewed a significant body of Canadian rules and regulations governing the growth, storage and sale of medicinal and recreational cannabis. Counsel also conferred with experts on the issues of damages and loss causation. *See generally* Johnson Decl. at §§II-III.

Armed with this substantial base of knowledge, Lead Plaintiffs and Lead Counsel were in a position to balance the proposed settlements with a well-educated assessment of the likelihood of overcoming the barriers to a greater recovery after trial. Accordingly, Lead Plaintiffs and Lead Counsel respectfully submit that they had "a clear view of the strengths and weaknesses of their case[]" and of the range of possible outcomes at trial. *Teachers Ret. Sys. of La.*, *v. A.C.L.N. LT.D,* No. 01-cv-11814, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004). The Court thus should find that this factor also supports approval.

### 3. The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and all the Attendant Risks of Litigation Support Approval of the Settlements

Courts agree that the determination of a "reasonable" settlement "is not susceptible of a mathematical equation yielding a particularized sum." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Instead, "in any case there is a range of reasonableness with respect to a settlement…." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Lead Plaintiffs' consulting damages expert, Dr. Surana, has estimated maximum aggregate damages to Securities Claimants of approximately C$510 million. Of those damages, approximately C$48 million are attributable to the Offering claims, and C$461.5

million are attributable to secondary market claims. Using these estimates, the Settlements represent approximately 16% of maximum damages. Johnson Decl. ¶59.

This percentage of recovery is well above the ranges of recoveries that have received approval within this District. *See, e.g.*, *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x. 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) (approving settlement representing 6.5% of the maximum recoverable damages and noting that the settlement amount is "in line with other settlements in securities class actions"); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (approving settlement that was "between approximately 3% and 7% of estimated damages").

Moreover, the approximately C$83,000,000 (US$66,400,000) recovery is significantly above the median settlement amount of $9 million for securities class actions between 1996 and 2019, is higher than the median recovery in 2020 of $10.1 million, and is well-above the $9.4 million median recovery within the 2nd Circuit from 2011-2020. *See*, Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements – 2020 Review and Analysis*, at 1 and 20 (Cornerstone Research 2021), Ex. 3. Thus, compared to other similarly situated cases in 2020, and during the span of the PSLRA, the Settlements are a very favorable outcome for the U.S. Settlement Class.

## II.    FINAL CERTIFICATION OF THE U.S. SETTLEMENT CLASS, FOR SETTLEMENT PURPOSES ONLY

In the Preliminary Approval Order (ECF No. 153), the Court preliminarily certified the U.S. Settlement Class for settlement purposes. There have been no developments in the case that would undermine that determination and, for all the reasons stated in the Memorandum of Law

in Support of Lead Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlements (ECF No. 149), incorporated herein by reference, Lead Plaintiffs now request that the Court reiterate its prior certification of the U.S. Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3), for settlement purposes, and the appointment of Lead Plaintiffs as Class Representatives and Labaton Sucharow as Class Counsel for the U.S. Settlement Class.

### III. THE ALLOCATION AND DISTRIBUTION SCHEME GOVERNING SETTLEMENT PAYMENTS IS FAIR AND REASONABLE AND TREATS ALL CLAIMANTS EQUITABLY RELATIVE TO ONE ANOTHER AND SHOULD BE APPROVED BY THIS COURT

A plan for allocating settlement proceeds, like the settlement itself, should be approved if it is fair, reasonable, and adequate. *See IMAX*, 283 F.R.D. at 192; *Bear Stearns*, 909 F. Supp. 2d at 270. A plan of allocation with a "rational basis" satisfies this requirement. *FLAG Telecom*, 2010 WL 4537550, at *21; *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d at 497. A plan of allocation that reimburses class members based on the relative strength and value of their claims is reasonable. *See IMAX*, 283 F.R.D. at 192. However, a plan of allocation does not need to be tailored to fit each and every class member with "mathematical precision." *PaineWebber*, 171 F.R.D. at 133.

Here, the proposed Allocation and Distribution Scheme, which was developed by Lead Counsel and Ontario Class Action Counsel in consultation with Lead Plaintiffs' consulting damages expert, provides a fair and reasonable method to allocate the Class Compensation Fund among Claimants who submit valid Claim Forms. The plan is set forth in full in the Notice. *See* Ex. 4-A at Appendix A. It provides for the distribution of the Class Compensation Fund based upon each Claimant's "Recognized Claim," as calculated by the formulas described in the Notice, which are consistent with the theories of liability and alleged damages under the Exchange Act and Securities Act. It was approved by the Canadian Court in the CCAA Sanction

Order on July 16, 2021. Johnson Decl. ¶75.

The plan is designed to provide compensation based on: (a) the period of time during which shares were acquired; (b) the amount of alleged artificial inflation in the prices of CannTrust shares from June 1, 2018 through September 17, 2019, as estimated by Lead Plaintiffs' expert; (c) the date on which the shares were sold or if they are still held; and (d) whether they were acquired pursuant to the May 2019 Offering or on the secondary market. Here, the alleged wrongdoing was disclosed from July 8, 2019 through September 17, 2019. Accordingly, under the plan, purchases at or after 3:13 p.m. ET on September 17, 2019 are not eligible for a recovery because the full truth about the wrongdoing alleged in this case was allegedly revealed by this point in time. The plan also provides an enhancement on losses arising from purchases in the May 2019 Offering, given that such claims do not require Lead Plaintiffs to prove that Defendants acted with scienter. Johnson Decl. ¶ 71.

Epiq, as the Court-approved Claims Administrator, will determine each eligible Claimant's *pro rata* share of the Class Compensation Fund based upon each eligible Claimant's total Recognized Claim compared to the aggregate Recognized Claims of all eligible Claimants, as calculated according to the Allocation and Distribution Scheme. Accordingly, the proposed Allocation and Distribution Scheme is designed to fairly and rationally allocate the proceeds of the Settlements among eligible Claimants.

For these reasons, Lead Counsel believes that the Allocation and Distribution Scheme provides a fair and reasonable method to equitably allocate the proceeds of the Settlements. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011) ("[i]n determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (same). Moreover, as noted

above, as of October 27, 2021, 37,436 copies of the Notice, which contains the plan and advises U.S. Settlement Class Members of their right to object to the proposed plan, have been sent to potential U.S. Settlement Class Members and their nominees. Ex. 4 at ¶9. To date, no U.S. Settlement Class Member has objected to the proposed plan. Johnson Decl. ¶74.

## IV. NOTICE TO THE U.S. SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

Lead Plaintiffs have provided the U.S. Settlement Class with notice of the proposed Settlements that satisfied all the requirements of Rule 23(e) and due process, which require that notice of a settlement be "reasonable"—*i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Visa*, 396 F.3d at 114. Both the substance of the Notice and the method of its dissemination to potential members of the U.S. Settlement Class satisfied these standards.

The Notice provided all of the necessary information for U.S. Settlement Class Members to make an informed decision regarding the Settlements and the allocation plan. The Notice informed U.S. Settlement Class Members of, among other things: (1) the amounts of the Settlements; (2) the reasons why the Settling Parties are proposing the Settlements; (3) the estimated average recovery per affected share of CannTrust; (4) the identity and contact information for the representatives of Lead Counsel who are reasonably available to answer questions from U.S. Settlement Class Members concerning matters contained in the Notice; (6) the right of U.S. Settlement Class Members to object to the Settlements; (7) the binding effect of a judgment on U.S. Settlement Class Members; and (8) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. § 78u-4(a)(7); Ex. 4-A. The Notice also contained the Allocation and Distribution Scheme and provided U.S. Settlement Class Members with

information about how to submit a Claim Form in order to be eligible to receive a distribution from the Class Compensation Fund.

In addition, Epiq caused the Summary Notice to be published in *The Wall Street Journal* and to be released over the internet using *PR Newswire* on September 28, 2021. Ex. 4 at ¶10. Epiq also created a website for the Settlements, www.CannTrustSecuritiesSettlements.ca, to provide members of the U.S. Settlement Class and other interested persons with information about the Settlements and the applicable deadlines, as well as access to copies of the Notice, the Claim Form, the settlement agreements, the CCAA Plan, the CCAA Sanction Order, and the Preliminary Approval Order, among other documents. Ex. 4 at ¶14-15. Lead Counsel also posted copies of the Notice and Claim Form on its website. Johnson Decl. ¶66.

This combination of individual first-class mail to those who could be identified with reasonable effort, supplemented by notice in an appropriate publication, transmitted over a newswire, and set forth on internet websites, was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *12-13 (S.D.N.Y. Dec. 23, 2009).

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve, in relation to the U.S. Class Action, the proposed Settlements as fair, reasonable, and adequate with respect to the U.S. Settlement Class; certify the U.S. Settlement Class, for settlement purposes only; and approve the Allocation and Distribution Scheme as fair, reasonable, and adequate with respect to the U.S. Settlement Class. A proposed judgment is filed herewith.

DATED: October 28, 2021                    **LABATON SUCHAROW LLP**

*/s/ James W. Johnson*
James W. Johnson

Michael H. Rogers
David J. Schwartz
James T. Christie
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Emails: jjohnson@labaton.com
       mrogers@labaton.com
       dschwartz@labaton.com
       jchristie@labaton.com

*Counsel for Lead Plaintiffs Granite Point*
*Master Fund, LP and Granite Point Capital*
*Scorpion Focused Ideas Fund, and*
*Lead Counsel for the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 28, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

<u>/s/ *James W. Johnson*</u>
JAMES W. JOHNSON
