**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In Re: CANNTRUST HOLDINGS INC. SECURITIES LITIGATION | No. 1:19-cv-06396-JPO<br><br>Judge J. Paul Oetken |

**DECLARATION OF JAMES W. JOHNSON IN SUPPORT OF**
**LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION**
<u>**SETTLEMENTS AND ALLOCATION AND DISTRIBUTION SCHEME**</u>

I, JAMES W. JOHNSON, declare as follows, pursuant to 28 U.S.C. §1746:

1.    I am a member of the law firm of Labaton Sucharow LLP and am admitted to practice before this Court.  Labaton Sucharow serves as Court-appointed Lead Counsel for Lead Plaintiffs Granite Point Master Fund, LP and Granite Point Capital Scorpion Focused Ideas Fund (collectively, "Lead Plaintiffs," "U.S. Class Action Lead Plaintiffs," or "Granite Point") and the proposed class in the above-captioned class action (the "U.S. Class Action" or "Action"). I have been actively involved in prosecuting and resolving the Action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein based upon my supervision and participation in all material aspects of the Action.

2.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, I submit this declaration in support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlements and Allocation and Distribution Scheme.  The motion has the full support of Lead Plaintiffs.  *See* Declaration of C. David Bushley on behalf of Granite Point, dated October 20, 2021, attached hereto as Exhibit 1.[1]

3.    After extensive negotiations over the course of many months and under the auspices of a mediator appointed by the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), defendant CannTrust Holdings Inc. ("CannTrust") and the majority of the defendants in this Action have reached a global resolution of the claims asserted against them in this case, as well as actions pending in Canada and California (the "Actions").[2] The proposed

---

[1]    Citations to "Exhibit" or "Ex.___" herein refer to exhibits to this Declaration.  For clarity, citations to exhibits that have attached exhibits will be referenced as "Ex. __-__."  The first numerical reference is to the designation of the entire exhibit attached hereto and the second alphabetical reference is to the exhibit designation within the exhibit itself.

[2]  The Settlements involve all defendants in this U.S. Class Action, except for KPMG LLP. Defendants CannTrust; Cannamed Financial Corp.; Cajun Capital Corporation; Mark Dawber; Greg Guyatt; John Kaden; Robert Marcovitch; Shawna Page; Mitchell Sanders; Eric Paul; Mark

Settlements, *see* §IV below, will be implemented pursuant to CannTrust's Fourth Amended & Restated Plan of Compromise, Arrangement and Reorganization, as amended and restated from time to time (the "CCAA Plan"), under Canada's Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended, which was approved by the Canadian Court by a "sanction order" entered on July 16, 2021 (the "CCAA Sanction Order").

4.     The primary terms of the Settlements are set forth in the CCAA Plan, the Restructuring Support Agreement, effective as of January 19, 2021 (as amended from time to time, the "RSA"),[3] and the minutes of settlement with the other settling parties, previously filed with the Court. *See* ECF Nos. 150-3 to 150-12; *see also* Exhibit 2, attached hereto, for a list of the agreements.

## I.     PRELIMINARY STATEMENT

5.     The CCAA Plan, and the proposed Settlements reached to date to be implemented through the CCAA Plan, will create, among other things, a Class Compensation Fund for eligible investors in the amount of approximately C$83,000,000, before the deduction of approved fees, expenses, taxes, and set-offs required by the Settlements.[4]  The Class Compensation Fund will be administered by a Securities Claimant Trust for the benefit of Securities Claimants both within

---

Ian Litwin; Ian Abramowitz; Peter Aceto; Canaccord Genuity LLC; Citigroup Global Markets Inc.; Credit Suisse Securities (USA) LLC; Jefferies LLC; Merrill Lynch, Pierce, Fenner & Smith Incorporated; and RBC Dominion Securities Inc. are collectively the "Settling Defendants," for purposes of this motion. U.S. Class Action Lead Plaintiffs and the Settling Defendants are collectively referred to as the "Settling Parties."

[3]  All capitalized terms not defined herein have the same meanings as defined in the CCAA Plan (ECF No. 150-3), the RSA (ECF No. 150-4), the Order preliminarily approving the Settlements (the "Preliminary Approval Order") (ECF No. 153), or the proposed Allocation and Distribution Scheme governing the calculation of investors' claims ("A&DS") (ECF No. 150-5).

[4]  For informational purposes, at the time the Settlements were reached (January 19, 2021 to May 24, 2021), the C$/US$ exchange rate ranged from C$1.20 to C$1.28 per US$1.00 with an average of C$1.25 per US$1.00.  Accordingly, at the time of the Settlements, C$83,000,000 was equivalent to approximately US$66,400,000.

and outside the United States. Any additional settlements and recoveries obtained through ongoing claims against non-Settlement Parties will also be administered by the Securities Claimant Trust.

6. As detailed herein, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement represents a very favorable result in light of the significant risks of continuing to litigate the Action. Lead Plaintiffs and Lead Counsel are well-informed of the strengths and weaknesses of the claims being settled. In agreeing to settle, Lead Plaintiffs and Lead Counsel took into consideration, principally, CannTrust's ability to satisfy a judgment, other defendants' abilities to pay, as well as the duration and complexity of the legal proceedings that remained ahead. As discussed below, had the Settlements not been reached, there were considerable barriers to a greater recovery, or any recovery at all.

7. In contrast with the above challenges, the Settlements, in the aggregate, are well above industry trends. The C$83,000,000 recovery, equivalent to approximately US$66,400,000, is significantly above the median settlement amount of $9 million for securities class actions between 1996 and 2019, is higher than the median recovery in 2020 of $10.1 million, and is well-above the $9.4 million median recovery within the 2nd Circuit from 2011-2020. *See*, Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2020 Review and Analysis, at 1 and 20 (Cornerstone Research 2021), Ex. 3. Thus, compared to other similarly situated cases in 2020, and during the span of the PSLRA, the Settlements are a very favorable outcome for the U.S. Settlement Class.

8. Moreover, based on the allegations in this case, Lead Plaintiffs' consulting damages expert, Dr. Surana, has estimated maximum aggregate damages to Securities Claimants of approximately C$510 million. Of those damages, approximately C$48 million are attributable

to the Offering claims, and C$461.5 million are attributable to secondary market claims. Using these estimates, the Settlements represent approximately 16% of maximum damages, an amount that compares very favorably to recoveries in other securities class actions.

9.      In addition to seeking approval of the Settlements, in relation to the U.S. Class Action, and certification of the U.S. Settlement Class for purposes of the Settlements, Lead Plaintiffs seek approval of the proposed allocation plan governing the calculation of claims and the distribution of the settlement proceeds. As discussed below, the proposed Allocation and Distribution Scheme ("A&DS") was developed with the assistance of Lead Plaintiffs' damages expert, and provides for the distribution of the Class Compensation Fund to claimants who submit Claim Forms that are approved for payment on a *pro rata* basis based on their losses attributable to the alleged wrongdoing.

10.      It is respectfully submitted that the proposed Settlements, and the allocation plan, as they relate to this U.S. Class Action, are eminently fair, reasonable, and adequate and should be preliminarily approved by the Court.

## II.      HISTORY OF THE U.S. CLASS ACTION

### A.      Appointment of Lead Plaintiffs and Lead Counsel and the Complaint

11.      During the Class Period, CannTrust was a publicly traded company and its shares primarily traded on the Toronto Stock Exchange ("TSX") and on the New York Stock Exchange ("NYSE"). (Its shares currently trade on the OTC Market.) Its share price declined following the announcement by CannTrust on July 8, 2019 that it had received a compliance report from Health Canada notifying it that its greenhouse facility in Pelham, Ontario was non-compliant with certain regulations as a result of observations by the regulator regarding the growing of cannabis in five unlicensed rooms and inaccurate information provided to the regulator by CannTrust employees. Class actions in Canada and the United States were commenced against,

among others, CannTrust, certain of its directors and officers, the underwriters of its May 2019 secondary share offering ("Offering Shares"), and its auditors, KPMG LLP.

12.     Following CannTrust's disclosures on July 8, 2019, several class actions were commenced in Ontario making substantially similar allegations on behalf of CannTrust shareholders. By Order dated January 28, 2020, carriage of the CannTrust securities class actions was granted to Ontario Class Action Counsel and all other proposed class actions in Ontario relating to the same subject matter were stayed. Proposed class actions were also commenced in British Columbia, Alberta and Québec. Several individual actions were also filed in Canada.

13.     On July 10, 2019, a class action complaint was filed in this Court under the caption *Huang v. CannTrust Holdings Inc., et al.*, No. 19-cv-06396-JPO. ECF No. 1. Three other class action complaints were subsequently filed setting forth substantially the same allegations against CannTrust and its officers and directors: *Alvarado v. CannTrust Holdings, Inc., et al.*, No. 19-cv-6438; *Jones v. CannTrust Holdings, Inc., et al.*, No. 19-cv-6883; and *Justiss v. CannTrust Holdings, Inc., et al.*, No. 19-cv-7164 (JPO).

14.     By Order dated April 16, 2020, this Court ordered that the cases be consolidated and recaptioned as *In re CannTrust Holdings Inc. Securities Litigation,* Civil Action No. 1:19-cv-06396-JPO; appointed Granite Point Master Fund, LP and Granite Point Capital Scorpion Focused Ideas Fund as lead plaintiffs; and appointed Labaton Sucharow LLP as lead counsel for a proposed U.S. class. ECF No. 80.

15.     On June 26, 2020, Lead Plaintiffs filed and served their Consolidated Class Action Complaint (the "Complaint"). ECF No. 89. The Complaint asserts claims under Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act allegations") against CannTrust; CannTrust's auditor, KPMG LLP; and several of CannTrust's senior executives and

directors: former Chief Executive Officer Peter Aceto, former Chief Financial Officer and current CEO Greg Guyatt, former CFO Ian Abramowitz, former President and Chief Operating Officer Brad Rogers, former Chairman of the Board and CEO Eric Paul, and members of CannTrust's Board of Directors: Mark E. Dawber, Mitchell J. Sanders, John T. Kaden, Mark I. Litwin, Shawna Page, and Robert F. Marcovitch. The Complaint separately asserts claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act allegations") against Defendants: CannTrust, KPMG, Paul, Aceto, Guyatt, Litwin, Sanders, Marcovitch, Dawber, Page, Kaden, as well as against Merrill Lynch, Pierce, Fenner & Smith Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Jefferies LLC, RBC Dominion Securities Inc., Canaccord Genuity LLC, Cannamed Financial Corp., and Cajun Capital Corporation.

16. Among other things, the Complaint alleges that Defendants made materially false and misleading statements and omissions concerning CannTrust's compliance with relevant cannabis regulations and an alleged scheme to increase the Company's cannabis production. The Complaint's Exchange Act allegations allege that the price of CannTrust publicly traded common stock was artificially inflated as a result of Defendants' allegedly false and misleading statements, and declined when the truth was allegedly revealed from July 8, 2019 through September 17, 2019. The Complaint's Securities Act allegations allege that the Company's registration statement and related documents incorporated therein (the "Offering Documents") issued in connection with the Company's Offering Shares contained materially false and misleading statements, allegedly injuring investors when the truth was revealed.

17. As set forth below, in preparation for filing the Complaint, Lead Counsel thoroughly investigated the claims in the Action, including conducting interviews with numerous

former employees of CannTrust, and an extensive review of filings with the U.S. Securities and Exchange Commission ("SEC"), Canada's System for Electronic Document Analysis and Retrieval ("SEDAR"), news reports, press releases, transcripts, videos, social media posts, and analyst reports concerning the Company and its purported compliance with relevant Canadian cannabis regulations.

18. While Lead Plaintiffs were preparing the Complaint to be filed, CannTrust, Lead Plaintiffs and the Ontario Class Action Lead Plaintiffs began to explore the possibility of a resolution of the claims and to discuss the parameters for an early mediation, given the financial situation of the Company. On May 6, 2020, the Canadian Court overseeing CannTrust's CCAA Proceeding issued a Mediation Order and appointed the Hon. Dennis O'Connor, Q.C. as the court-appointed Mediator to mediate a settlement of the claims against CannTrust pending in Canada.

19. On June 26, 2020 Lead Plaintiffs filed the Complaint. Around the time the Complaint was filed, Lead Plaintiffs agreed to participate voluntarily in the CCAA ordered mediation on behalf of U.S. investors. On July 6, 2020, the parties to the U.S. Class Action filed a letter and stipulation with the Court requesting that the Court stay the U.S. Class Action pending ongoing mediation in the CCAA Proceeding. ECF No. 126. On July 7, 2020, the Court entered a Stipulation and Order staying the U.S. Class Action until such time as (i) the court-appointed Mediator declared that the mediation process had concluded; or (ii) the Canadian Court lifted the stay of proceedings in Canada. ECF No. 127.

### B. Lead Plaintiffs' Investigation of the Claims

20. After their appointment, Lead Plaintiffs, through Lead Counsel, continued their investigation into the claims for the purpose of drafting a comprehensive consolidated complaint that would survive the strictures of the PSLRA. During this process, Lead Counsel engaged in a thorough factual investigation that included, among other things, the review and analysis of:

(i) press releases, news articles, transcripts, and other public statements issued by or concerning CannTrust and the individual defendants; (ii) research reports issued by financial analysts concerning the cannabis industry and CannTrust's business; (iii) CannTrust's filings with the SEC and SEDAR; (iv) news articles, media reports, videos, social media posts and other publications concerning CannTrust, the cannabis industry and Canadian regulations; and (v) other publicly available information and data concerning CannTrust, its securities, and the markets therefor.

21.     As part of their investigation and in furtherance of the allegations against Defendants, Lead Counsel consulted with experts in accounting and auditor/underwriter due diligence policies and procedures; located 51 potential witnesses with knowledge of the alleged events; conducted interviews with eight former employees of CannTrust and others with relevant knowledge; and reviewed a significant body of Canadian rules and regulations governing the growth, storage and sale of medicinal and recreational cannabis.  Counsel also conferred with experts on the issues of damages and loss causation.

22.     Lead Counsel also conducted an extensive review of publicly available information regarding the individual defendants' employment and compensation agreements throughout their tenure at the Company. Counsel analyzed the individual defendants' compensation utilizing data provided by Bloomberg and engaged in a comparative analysis of their CannTrust stock sales before and during the class period in order to support Lead Plaintiffs' allegations that the Company's executive officers had motive and opportunity to misrepresent CannTrust's regulatory compliance. Lead Counsel's review of these various sources of compensation information was fruitful, difficult and time consuming.

23.     Lead Counsel also reviewed numerous research reports issued by financial analysts concerning the Company's business and operations, as well as transcripts of conference calls hosted by Defendants during which analysts asked relevant questions concerning the Company's operations, production capacity, and growth prospects.  Counsel also reviewed numerous presentations and publications about the cannabis industry relating to Defendants, other cannabis companies in the U.S. and Canada, and regulatory agencies.  These reports, conference calls, and publications provided invaluable insight into CannTrust's cannabis operations, production capacity, growth prospects and compliance with Canadian cannabis regulations.

24.     In consultation with Lead Plaintiffs' consulting damages expert, Lead Counsel reviewed statistically significant stock price movements for an extended period both before and after the class period alleged in the initial complaint.  Based on this review and the ongoing review of developments in the Action, Lead Counsel identified allegedly statistically significant stock price declines and related disclosures, which were included in the consolidated complaint as allegedly corrective disclosures.

25.     On June 26, 2020, Lead Plaintiffs filed their 275 page Consolidated Class Action Complaint (ECF No. 89).

## III.     CCAA PROCEEDINGS AND MEDIATED SETTLEMENT NEGOTIATIONS

26.     The proposed Settlements resulted from a thoughtful and demanding process.

27.     On March 31, 2020, defendant CannTrust and certain other related parties commenced insolvency proceedings under the Companies' Creditors Arrangement Act in the Canadian Court, and obtained an order for a stay of proceedings against them, including stays of the Action.

28.     On May 8, 2020, the Canadian Court appointed the Hon. Dennis O'Connor, Q.C. as a neutral third party to mediate a global settlement of the various actions and claims made against CannTrust and others (the "Mediation Process"). More than 80 attorneys, representing 30 separate parties, participated in the Mediation Process.

29.     Lead Counsel and Ontario Class Action Counsel agreed to work together as a single negotiating unit (the "Coalition") to advance the interests of all Securities Claimants represented by them in the Mediation Process. On January 29, 2021, the Canadian Court issued an order (the "CCAA Representation Order") appointing the Ontario Class Action Lead Plaintiffs and Granite Point as CCAA Representatives and their counsel as CCAA Representative Counsel.

30.     In tandem with the Mediation Process, Lead Counsel and Ontario Class Action Counsel conducted an extensive legal and factual investigation, which included: (i) reviewing CannTrust's public disclosure documents and other publicly available information regarding CannTrust; (ii) holding discussions with an alleged CannTrust whistleblower and obtaining relevant emails; (iii) retaining and communicating with private "fact" investigators; (iv) identifying and interviewing potential "fact" witnesses; (v) communicating, to date, with over 1,300 individual Securities Claimants; (vi) retaining a cannabis consultant to advise counsel; (vii) considering expert opinion regarding applicable accounting standards by Cyrus Khory, managing director at Froese Forensic Partners Ltd.; (viii) considering expert opinion regarding applicable auditing standards by Professor Efrim Boritz, Ph.D., FCPA, FCA, CISA; (ix) retaining James Miller to provide an expert opinion regarding applicable underwriting standards; (x) retaining Sunita Surana, Ph.D., of Forensic Economics to provide an expert economic opinion on market efficiency, materiality, and damages; and (xi) reviewing CannTrust's

responsive insurance policies and other non-public information provided to Lead Counsel and Ontario Class Action Counsel in the course of the Mediation Process.

31.     Throughout the Mediation Process, the various constituencies prepared and exchanged detailed written submissions addressing liability and damages for the parties' and Mediator's review.  The exchanges allowed each side to better understand the other's positions and provided Lead Plaintiffs with valuable insight into the risks of establishing Defendants' liability and the protracted process of seeking to do so.

32.     Since the beginning of the Mediation Process, counsel for the plaintiffs in the Canadian Action and the Action, on behalf of all Securities Claimants, attended more than 20 formal mediation sessions with counsel to CannTrust, co-defendants, and/or insurers and participated in countless informal discussions with the Mediator, the CCAA Monitor, and other mediation participants.  In January 2021, following protracted negotiations over six months, Class Action Counsel and CannTrust reached the framework reflected in the RSA.  In the ten months since then, the RSA yielded seven additional settlements as more fully set forth in §IV, *infra*.

33.     On April 16, 2021, CannTrust and certain other related entities filed a plan of compromise, arrangement, and reorganization pursuant to the CCAA (the CCAA Plan) in order to, among other things, implement the global resolution of the Actions, and address other claims against the CannTrust entities.

34.     By Order dated July 16, 2021, the Canadian Court entered the CCAA Sanction Order, which, among other things, authorized the implementation of the proposed Settlements, approved the A&DS, and authorized the creation of the Securities Claimant Trust.

## IV.    TERMS OF THE SETTLEMENTS

35.    Overall, in exchange for the releases and dismissals contemplated by the CCAA Plan and the Settlements, the Settling Defendants have agreed to, among other things, cause payments totaling approximately C$83,000,000, which, along with any interest earned, will be distributed after the deduction of court-awarded attorneys' fees and litigation expenses, taxes, notice and administration expenses and fees, ongoing litigation costs, and other fees and expenses allowed by the CCAA Plan and the A&DS, to U.S. Securities Claimants and Canadian and Non-U.S. Securities Claimants (collectively, "Securities Claimants") who submit valid and timely Claim Forms and are found to be eligible to receive a distribution from the Class Compensation Fund.  Certain Settling Defendants have also agreed to assign claims that they have to the Securities Claimant Trust and/or to cooperate with Class Action Counsel so that the Class Action Lead Plaintiffs can pursue litigation against, or obtain settlements with, non-settling insurers and KPMG in Canada.

36.    **The RSA --** The settlement reflected in the RSA is with CannTrust and the other CCAA applicants, Mark Dawber, Greg Guyatt, John Kaden, Robert Marcovitch, Shawna Page, Ilana Platt, Mitchell Sanders and Cajun Capital Corporation ("Original Settlement Parties").  *See* ECF No. 150-4.  The RSA provided an orderly mechanism for the Class Action Lead Plaintiffs and Class Action Counsel, with the Original Settlement Parties' cooperation, to obtain additional settlements and provide releases to additional parties.  In exchange for releases of liability:

(a)    CannTrust will pay a Cash Contribution of C$50,000,000 to the Securities Claimant Trust;

(b)    the Original Settlement Parties will assign their Assigned Claims, notably certain claims against KPMG, to the Securities Claimant Trust;

(c)     CannTrust will provide information and cooperation to the Class Action Plaintiffs in the prosecution of the continuing litigation; and

(d)     if the aggregate amount recovered by Securities Claimants and the Securities Claimant Trust from Additional Settlement Parties and Non-Settlement Parties, whether pursuant to settlements or continued litigation, exceeds C$250 million net of litigation fees and expenses, then CannTrust Holdings will be entitled to be repaid up to C$50 million in staged amounts from the Securities Claimant Trust (such staged amounts to be agreed upon at a future date).

37.     KPMG was CannTrust's auditor during the period when defendants allegedly issued false and misleading financial statements.  KPMG is a defendant in the Class Actions and faces statutory claims by shareholders.  During the Mediation Process, Class Action Counsel determined, in their judgment, that CannTrust also may have a potentially valuable auditor's negligence claim against KPMG.  Class Action Counsel believe that CannTrust has claims against KPMG in connection with its audit of CannTrust's 2018 annual financial statements and Q1 2019 review engagement.  Pursuant to the CCAA Plan and CCAA Sanction Order, claims of this nature against KPMG that are not indemnity claims, contribution claims or other claims over will be assigned to the Securities Claimant Trust and will be litigated in Canada.

38.     **Paul Settling Parties Settlement -** The settlement is with defendant Eric Paul and the Paul Family Trust and provides for payment of a Cash Contribution of C$12,000,000 and assignment of Paul's claims against his Insurer to the Securities Claimant Trust in exchange for releases of liability.  *See* ECF No. 150-6.  As a result of the settlement and the transfer of his Assigned Claims, Paul gave up his rights to insurance coverage that would respond to regulatory or criminal proceedings.  Accordingly, the settlement provides that the Securities Claimant Trust

will reserve C$1 million in respect of legal costs to defend against any such proceedings provided such proceedings are instituted no later than July 25, 2025. Any funds remaining after the final disposition of such proceedings will revert back to the Securities Claimant Trust.

39. **The Underwriters Settlement -** The settlement is with defendant Canaccord Genuity LLC, Canaccord Genuity Corp., defendant Citigroup Global Markets Inc., Citigroup Global Markets Canada Inc., Credit Suisse Securities (Canada) Inc., defendant Credit Suisse Securities (USA) LLC, Jefferies Securities, Inc, defendant Jefferies LLC, Merrill Lynch Canada Inc., defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated, and defendant RBC Dominion Securities Inc. and provides for a Cash Contribution of US$8,000,000 in exchange for releases of liability. *See* ECF No. 150-7.

40. **Litwin Group Settlement -** The settlement is with defendant Mark Ian Litwin, Fred Litwin, Stan Abramowitz, defendant Cannamed Financial Corp., Forum Financial Corporation, Mar-Risa Holdings Inc., York Capital Funding Inc., and Sutton Management Limited and provides for a Cash Contribution of C$11,000,000 in exchange for releases of liability. *See* ECF No. 150-8. Fred Litwin allegedly controlled Forum Financial Corporation, which was a significant shareholder of CannTrust. Fred Litwin is not a defendant to any of the Class Actions, however, he faces a claim by the Zola Plaintiffs for negligent misrepresentation in connection with a direct sale of 1,000,000 shares to them in September 2018.

41. **Abramowitz Settlement -** The settlement is with defendant Ian Abramowitz and provides that he will provide cooperation to the Class Action Lead Plaintiffs and assignment of his claims against his Insurer to the Securities Claimant Trust, excluding any claims, rights or entitlement that he may have to insurance coverage for criminal, regulatory or administrative proceedings, in exchange for releases of liability. *See* ECF No. 150-9. The settlement provides

that the Securities Claimant Trust will pay the costs of Abramowitz's legal representation to aid his cooperation obligations up to a maximum of C$100,000. Subsequently, Class Action Lead Plaintiffs and Abramowitz reached an agreement whereby Abramowitz will release all claims to insurance coverage and the Securities Claimant Trust will provide indemnification of up to C$1 million for the costs of responding to regulatory or criminal investigations and proceedings, or certain other litigation expenses, provided such proceedings are instituted no later than July 25, 2025. *See* ECF No. 150-10.

42.     **Aceto Settlement -** The Class Action Lead Plaintiffs have agreed to settle with defendant Peter Aceto and release him from liability in exchange for his cooperation. *See* ECF No. 150-11. A Cash Contribution will be made on his behalf by certain Insurers, assuming the settlement with them is finalized, and he will not be treated as a Released Party unless and until the Cash Contribution has been made. As a result of the settlement, Aceto will give up his rights to insurance coverage that would respond to regulatory or criminal proceedings. Accordingly, the settlement provides that the Securities Claimant Trust will reserve up to C$1 million in respect of legal costs to defend against any such proceedings, provided such proceedings are instituted no later than July 25, 2025.

43.     **Green Settlement –** Kenneth Brady Green is a defendant in the Ontario Class Action. The Class Action Lead Plaintiffs have agreed to settle with Green and release him from liability in exchange for his cooperation.

44.     **Zola Plaintiffs Settlement -** Class Action Lead Plaintiffs have entered into a settlement with opt-out plaintiff Zola Finance Holdings Ltd. and Igor Gimelshtein, who had commenced a separate action against CannTrust in Canada and elected not to be represented by the class representatives. *See* ECF No. 150-12. The Zola Plaintiffs are Securities Claimants and

fall under the definition of class members in the Ontario Class Action. However, they were excluded from the CCAA Representation Order and have their own counsel in the CCAA Proceedings. The Zola Plaintiffs filed a proof of claim in the CCAA Proceedings of C$45 million. From before the commencement of the CCAA Proceedings, the Zola Plaintiffs announced an intention to opt-out of the Ontario Class Action and pursue their own claims. The Zola Plaintiffs commenced an individual action against CannTrust and others in November of 2019. The Zola Action makes unique allegations and brings claims based on the Zola Plaintiffs' direct conversations with certain defendants, as well as its direct purchase of shares from Fred Litwin. The Zola Plaintiffs agreed to support the CCAA Plan and assign their claims to the Securities Claimant Trust, in exchange for a defined allocation from the Class Settlement Amount of C$3.25 million and a *pro rata* payment from the Class Compensation Fund, which were authorized by the CCAA Court.

45. **Dismissal of the California Action** - In light of the Settlements, the plaintiff in the California Action moved for the action to be voluntarily dismissed, and the action was dismissed with prejudice on October 13, 2021.

## V. RISKS OF CONTINUED LITIGATION

46. Based on their experience and close knowledge of the facts of the case and law governing the claims, Lead Counsel and Lead Plaintiffs have determined that settlement with the Settling Defendants at this juncture is in the best interests of the U.S. Settlement Class. As described herein, at the time the Settlements were reached, there were unusual and sizable risks facing Lead Plaintiffs with respect to recovering ***anything*** from CannTrust and related defendants in light of the CCAA proceeding and CannTrust's financial situation, as well as pleading and establishing liability, loss causation, and damages.

## A. Risks Concerning Ability to Pay

47. Lead Plaintiffs' ability to collect on a judgment against the Settling Defendants after trial and likely appeals, years down the road, if at all, was the primary factor militating in favor of an early settlement.

48. With respect to CannTrust, the Coalition and Lead Plaintiffs had access to ongoing financial information of the Company through periodic reports issued by Ernst & Young in its capacity as the CCAA court-appointed monitor of CannTrust. Pursuant to these reports, Lead Plaintiffs understood that CannTrust's projected ending cash balance on January 31, 2021 was approximately C$63.0 million. That amount was projected to decrease steadily until CannTrust emerged from the CCAA reorganization process. Lead Plaintiffs believe that had they not reached a settlement with CannTrust, it is certain that CannTrust would not have emerged from CCAA reorganization as a going concern, would likely cease operations (with the loss of hundreds of jobs), exhaust its remaining cash assets on litigation and litigation-related claims and would not have any resources to satisfy any judgment.

49. Since CannTrust was engaged in the CCAA Proceedings and certain of its insurers had denied coverage, any judgment after trial could result in a contested liquidation over CannTrust's remaining and dwindling assets. The individual defendants, other than defendants Paul and Litwin,[5] were believed to not be material sources of recovery because they had limited legal exposure or financial means. The extent to which investors could meaningfully collect on a judgment was therefore questionable and the time it would take to obtain a recovery was unknown.

---

[5] The Litwin Group will be contributing C$11 million to the Securities Claimant Trust and the Paul Settling Parties will be contributing C$12 million to the Securities Claimant Trust.

50.    The RSA with CannTrust and the other Original Settlement Parties also provides an orderly mechanism for all of the Class Action Lead Plaintiffs to (i) obtain additional settlements with additional parties, and (ii) to prosecute, on an expedited basis, the remaining Class Action claims and Assigned Claims in a single forum.

51.    Thus, in the event of protracted litigation—with defense costs mounting exponentially—there was no guarantee that the Settling Defendants' insurance (what might have been available given the challenges to coverage) and wasting cash reserves would be sufficient to satisfy a judgment greater than the Class Settlement Amount.   Regardless of how strong a liability case is, "you can't get blood from a stone." *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 602 F. Supp. 2d 277, 281 (D. Mass. 2009).

**B.    Risks Related to Liability**

**1.    Scienter**

52.    In addition to the obstacles involved in continuing to litigate only against those defendants not impacted by stays in connection with the CCAA proceedings, Lead Plaintiffs anticipated that in Defendants' upcoming motions to dismiss, and during continued litigation of the Exchange Act claims, Defendants would have strenuously maintained, among other things, that they did not act with the required intent to defraud or severe recklessness necessary to establish the element of scienter. If Defendants were successful, the case could have been dismissed outright at the motion to dismiss stage.  Lengthy appeals, even if Lead Plaintiffs were to have prevailed after the motions to dismiss, summary judgment and trial, could have ensued, with no certainty of any recovery for the U.S. Settlement Class, particularly given the Company's precarious financial position.

53. For instance, there would have been significant factual disputes concerning who had knowledge of the alleged unlicensed cannabis activities, the extent to which operations were not complaint with regulations, and the defendants' knowledge of compliance requirements.

54. Scienter would have remained a key issue well beyond the motions to dismiss.

### 2. Challenges with Respect to Securities Act Claims

55. With respect to establishing liability for the Securities Act claims, among other things, Lead Plaintiffs would need to establish that their, and the class's, purchases were pursuant or traceable to the May 2019 secondary offering, rather than an earlier offering. While tracing can be straight-forward where claims arise from an initial public offering, here the Settling Defendants would have strenuously contested Lead Plaintiffs' assertions that purchases were traceable to the offering.

56. Additionally, the Securities Act claims are subject to a "due diligence" defense. Many of the Settling Defendants, in particular the underwriter defendants, would have argued that they had no knowledge of any wrongdoing at CannTrust, that the unlicensed activities were hidden, and that they satisfied their obligations to perform the requisite due diligence, thereby immunizing them from liability. To overcome the defense, Lead Plaintiffs would have had to convince a jury that these defendants did not conduct a reasonable investigation into whether the offering documents contained misrepresentations.

### C. Risks Concerning Loss Causation and Damages

57. Assuming that Lead Plaintiffs overcame the above risks at the motion to dismiss stage, summary judgment, and trial, Lead Plaintiffs would also have had the burden of proving loss causation with respect to the Exchange Act claims and damages with respect to both the Exchange Act and Securities Act claims.

58. Here, Lead Counsel and Ontario Class Action Counsel consulted with an expert on damages and loss causation who has worked on numerous securities class action matters, and who analyzed class wide damages in light of the facts and circumstances presented in the case and developed through the Mediation Process. Damages assessments are very expert driven and depend on the dates of the alleged misrepresentations and corrective disclosures, the price impacts of those events, and the existence of confounding information on the stock price reaction. Changes to the underlying assumptions, or to the misrepresentation or correction dates, could cause significant differences.

59. Based on the allegations in this case, Lead Plaintiffs' consulting damages expert, Dr. Surana, has estimated maximum aggregate damages to Securities Claimants of approximately C$510 million. Of those damages, approximately C$48 million are attributable to the Offering claims, and C$461.5 million are attributable to secondary market claims. Using these estimates, the Settlements represent approximately 16% of maximum damages.

60. As the case continued, the Parties' respective damages experts would strongly disagree with each other's assumptions and their respective methodologies, resulting in a "battle of the experts," the results of which were far from certain. The risk that the Court or a jury would credit Defendants' experts' anticipated damages positions over those of Lead Plaintiffs would have considerable consequences in terms of the amount of a recovery for the U.S. Settlement Class, even assuming liability were proven. More importantly, the protracted litigation necessary to overcome Defendants' arguments in connection with the motions to dismiss, class certification, summary judgment, and trial would be extremely costly and significantly deplete, if not entirely exhaust, available insurance policy limits.

## VI. LEAD PLAINTIFFS' COMPLIANCE WITH PRELIMINARY APPROVAL ORDER AND REACTION OF THE U.S. SETTLEMENT CLASS TO DATE

61.     On August 26, 2021, Lead Plaintiffs moved for preliminary approval of the proposed Settlements, as they relate to the U.S. Class Action.  ECF No. 148.  On September 2, 2021, the Court entered the Preliminary Approval Order, authorizing that notice of the Settlements be sent to U.S. Settlement Class Members and scheduling the Settlement Hearing for December 2, 2021 to consider whether to grant, in relation to the U.S. Class Action, final approval to the Settlements.  ECF No. 153.

62.     Pursuant to the Preliminary Approval Order, the Court appointed Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Claims Administrator and instructed Epiq to disseminate copies of the Notice of Pendency of U.S. Class Action and Proposed Settlements (the "Notice") and Claim Form (collectively, with the Notice, the "Notice Packet") by mail and to publish the Summary Notice of Pendency of U.S. Class Action and Proposed Settlements (the "Summary Notice").

63.     The Notice, attached as Exhibit A to the Declaration of Luis Granati Regarding: (A) Mailing of the Notice and Claim Form; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion, dated October 28, 2021 ("Mailing Decl." or "Mailing Declaration") (Exhibit 4 hereto), provides potential U.S. Settlement Class Members with information about the terms of the Settlements and contains, among other things: (i) a description of the U.S. Class Action and the proposed Settlements; (ii) the terms of the proposed Allocation and Distribution Scheme for calculating claims; (iii) an explanation of U.S. Settlement Class Members' right to participate in the Settlements; (iv) an explanation of U.S. Settlement Class Members' rights to object to the Settlements or the Allocation and Distribution Scheme, or

exclude themselves from the U.S. Settlement Class; and (v) the manner for submitting a Claim Form in order to be eligible for a payment from the net proceeds of the Settlements.

64.     As detailed in the Mailing Declaration, Epiq mailed and/or e-mailed Notice Packets to potential U.S. Settlement Class Members as well as banks, brokerage firms, and other third party nominees whose clients may be U.S. Settlement Class Members.  Ex. 4 at ¶¶2-9.  To disseminate the Notice, Epiq obtained the names and addresses of potential U.S. Settlement Class Members from data provided by CannTrust's transfer agent, Lead Counsel, Ontario Class Action Counsel, directly from interested investors, and from banks, brokers and other nominees whose clients may be U.S. Settlement Class Members.  *Id.*  In total, to date, Epiq has mailed 37,436 Notice Packets to potential nominees and U.S. Settlement Class Members.  *Id.* at ¶9.

65.     On September 28, 2021, Epiq also caused the Summary Notice to be published in *The Wall Street Journal* and to be transmitted over the internet using *PR Newswire*.  *Id.* at ¶10 and Exhibit B thereto.

66.     Epiq maintains and posts information regarding the Settlements on a dedicated website, www.CannTrustSecuritiesSettlement.ca, to provide investors with information concerning the Settlements, as well as downloadable copies of the Notice Packet and an online claim portal.  *Id*. at ¶¶14-15.  Labaton Sucharow also posted the Notice Packet on its website.

67.     Pursuant to the terms of the Preliminary Approval Order, the deadline for U.S. Settlement Class Members to submit objections to the Settlements and the allocation plan, or to request exclusion from the U.S. Settlement Class is November 11, 2021.  To date, no member of the U.S. Settlement Class has objected to the Settlements or the allocation plan, or has requested exclusion from the U.S. Settlement Class.

68.     Should any objections or requests for exclusion be received, Lead Plaintiffs will address them in their reply papers, which are due to be filed with the Court on November 25, 2021.

## VII.    THE ALLOCATION AND DISTRIBUTION SCHEME GOVERNING SETTLEMENT PAYMENTS

69.     Pursuant to the Preliminary Approval Order, and as set forth in the Notice, all U.S. Settlement Class Members who wish to participate in the distribution of the Class Compensation Fund must submit a valid Claim Form, including all required information, postmarked no later than March 16, 2022. After the deduction of court-awarded attorneys' fees and litigation expenses, taxes, notice and administration expenses and fees, ongoing litigation costs, and other fees, expenses, and liabilities allowed by the CCAA Plan, the Class Compensation Fund will be distributed to U.S. Settlement Class Members and Canadian and Non-U.S. Securities Claimants according to the allocation plan approved by the Courts.

70.     The proposed Allocation and Distribution Scheme, which is set forth in full in the Notice (Ex. 4-A at Appendix A), was designed to achieve an equitable and rational distribution of the Class Compensation Fund. Lead Counsel and Ontario Class Action Counsel developed the allocation plan in close consultation with Lead Plaintiffs' consulting damages expert and believe that the plan provides a fair and reasonable method to equitably distribute the Class Compensation Fund among eligible Securities Claimants.

71.     The plan of allocation provides for distribution of the Class Compensation Fund among eligible Securities Claimants on a *pro rata* basis based on their "Recognized Claims," calculated according to the plan's formulas, which are consistent with the theories of liability and alleged damages under the Exchange Act and Securities Act. The plan is designed to provide compensation based on: (a) the period of time during which shares were acquired; (b) the amount

of alleged artificial inflation in the prices of CannTrust shares from June 1, 2018 through September 17, 2019, as estimated by Lead Plaintiffs' expert; (c) the date on which the shares were sold or if they are still held; and (d) whether they were acquired pursuant to the May 2019 Offering or on the secondary market. Here, the alleged wrongdoing was disclosed from July 8, 2019 through September 17, 2019. Accordingly, under the plan, purchases at or after 3:13 p.m. ET on September 17, 2019 are not eligible for a recovery because the full truth about the wrongdoing alleged in this case was allegedly revealed by this point in time. The plan also provides an enhancement on losses arising from purchases in the May 2019 Offering, given that such claims do not require Lead Plaintiffs to prove that Defendants acted with scienter.

72.     The Court-approved Claims Administrator, under Lead Counsel and Ontario Class Action Counsel's direction, will calculate claimants' Recognized Claims using the transactional information provided in their Claim Forms. Claims may be submitted to the Claims Administrator through the mail, e-mail, online using the settlement website, or for large investors with thousands of transactions, through Epiq's electronic filing team. (Neither the settling parties nor the Claims Administrator independently have claimants' transactional information.) The Lead Plaintiffs' losses will be calculated in the same manner.

73.     Once the Claims Administrator has processed all submitted claims and provided claimants with an opportunity to cure deficiencies or challenge rejection determinations, payment distributions will be made to eligible Securities Claimants whose entitlement is equal or greater than C$50.00 using checks and, in some instances, wire transfers. After an initial distribution, if there is any balance of unclaimed funds remaining after at least six (6) months from the date of initial distribution, Lead Counsel and Ontario Class Action Counsel will, if feasible and economical, re-distribute the balance among eligible Claimants who have cashed

their initial distributions and would receive at least C$50.00. Re-distributions will be repeated until the balance is no longer economically feasible to distribute. *See* Ex. 4-A, Appendix A. Any balance that still remains in Class Compensation Fund after re-distribution(s), which is not economical to reallocate, after payment of any outstanding fees and expenses or taxes, will be donated to a non-sectarian charitable organization(s) certified under §501(c)(3) of the U.S. Internal Revenue Code and/or a Canadian charity or other non-profit group to be designated by Lead Counsel and Ontario Class Action Counsel. *Id.*

74. To date, there have been no objections to the Allocation and Distribution Scheme by any members of the U.S. Settlement Class.

75. By Order dated July 16, 2021, the Canadian Court entered the CCAA Sanction Order, which, among other things, approved the Allocation and Distribution Scheme.

76. In sum, the proposed allocation plan, developed in consultation with Lead Plaintiffs' consulting damages expert, was designed to fairly and rationally allocate the Class Compensation Fund among eligible Claimants. Accordingly, Lead Counsel respectfully submits that the proposed plan is fair, reasonable, and adequate and should also be approved by the Court.

## VIII. MISCELLANEOUS EXHIBITS

77. Attached hereto as Exhibit 5 is the firm resume of Labaton Sucharow LLP.

## IX. CONCLUSION

78. In view of the very favorable recovery for the U.S. Settlement Class and the substantial risks of continuing to litigate the claims against the Settling Defendants, as described above and in the accompanying memorandum of law, Lead Plaintiffs and Lead Counsel respectfully submit that the proposed Settlements should be approved as fair, reasonable, and

adequate and that the proposed Allocation and Distribution Scheme should likewise be approved as fair, reasonable, and adequate.

     I declare under penalty of perjury that the foregoing is true and correct.  Executed this 28th day of October, 2021.

                          */s/ James W. Johnson*

                          JAMES W. JOHNSON

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants.

/s/ *James W. Johnson*
JAMES W. JOHNSON