LC28CANC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

In Re: CANNTRUST HOLDINGS INC.          19 Cv. 6396 (JPO)
SECURITIES LITIGATION,

------------------------------x          Remote Conference

                                         December 2, 2021
                                         12:30 p.m.

Before:
                    HON. J. PAUL OETKEN

                                         District Judge

                         APPEARANCES

LABATON SUCHAROW, LLP
     Attorneys for Lead Plaintiff
BY:  JAMES W. JOHNSON
     NICOLE M. ZEISS
          -and-
STROSBERG SASSO SUTTS
BY:  DAVID WINGFIELD (Canadian counsel)

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
     Attorneys for Defendant
BY:  SUSAN L. SALTZSTEIN
     SCOTT MUSOFF
     JEFFREY GEIER
          -and-
McCARTHY TETRAULT
BY:  JAMES GAGE (Canadian counsel)

SHEARMAN & STERLING
     Attorneys for Underwriters
BY:  DANIEL LEWIS

JAMES BLUNT
     Attorney for Objector Benjamin Taylor

LC28CANC

(Court and parties appearing via teleconference)

(Case called)

THE DEPUTY CLERK:  Starting with the lead plaintiff, counsel, please state your name for the record.

MR. JOHNSON:  Good afternoon, your Honor.  This is James W. Johnson, from Labaton Sucharow, LLP, representing the lead plaintiff, Granite Point entities.  And with me is my partner in charge of settlements, Nicole Zeiss.  And, your Honor, since this is a cross-border case, I have invited one of the plaintiffs' counsel in Canada, David Wingfield, from the Strosberg Sasso Sutts law firm in Toronto, to join us as well.

THE COURT:  Could you repeat the name of that law firm?

MR. JOHNSON:  Strosberg Sasso Sutts.

THE COURT:  Thank you.

That's counsel for lead plaintiff.  I guess next I will ask for the name of counsel for settling defendants.

MS. SALTZSTEIN:  Good afternoon, your Honor and counsel.  This is Susan Saltzstein from Skadden Arps.  I am joined by my colleagues Scott Musoff and Jeff Geier, appearing on behalf of CannTrust Holdings Inc., Cajun Capital Corporation, Mark Dawber, John Kaden, Robert Marcovitch, Shawna Page, and Mitchell Sanders.

Your Honor, we too have invited our counsel from McCarthy Tetrault, James Gage, who is on the line.

LC28CANC

THE COURT:  Good afternoon.

Anyone else?

MR. LEWIS:  Good afternoon, your Honor.  This is Daniel Lewis, from Shearman & Sterling, on behalf of the underwriter defendants.

THE COURT:  Good afternoon.

Anyone else?

MR. BLUNT:  Good morning, your Honor.  My name is James Blunt.  I am here on behalf of a US settlement class member named Benjamin Taylor.  I haven't entered a formal appearance but your clerk said it was OK for me to attend this hearing.  It's your pleasure.  We are here to lodge an objection.

THE COURT:  Thank you.  I did receive your e-mail attaching a letter from Benjamin Taylor, and that will be docketed.  And that's fine to have you appear because it's a public fairness hearing on a settlement.

Is there anyone else who wanted to state their name for the record, either an objector or anyone representing a party or anyone else?

All right.  I guess that covers who needs to appear.  Again, this is Judge Oetken.  I would appreciate it if you would state your name each time you wish to speak so that the court reporter can create a clear transcript.

I granted preliminary approval of this class action

settlement on September 2nd of this year. My understanding from the briefing by counsel for lead plaintiff is that there were four exclusions and there was one objection. And with the letter received this morning, that would make it two objections.

I have reviewed the papers on the terms of settlement and the plan of allocation. I want to ask Mr. Johnson, or whoever else wants to address it, just to give some high level description of the settlement, the allocation plan, and if you could explain a little bit about the relationship with the Canadian litigation. And then, I think it's my understanding that I don't have to resolve anything with respect to attorneys' fees or costs, because that's all contingent on resolution of the Canadian litigation, but if you could explain all of that to me I would appreciate it.

Mr. Johnson, do you want to speak?

MR. JOHNSON: Yes, I would, your Honor. Thank you.

We are here today for two purposes, and the first is obviously for final approval of the eight proposed settlements that we have obtained that total 83 million dollar Canadian currency.

As I will discuss in a few minutes, we have obtained additional settlement contributions from certain nonparties that bring the total settlement value now to Canadian 130 million dollars, or approximately 102 US million dollars.

Second, as your Honor has indicated, we are here for approval of the proposed plan of allocation.

To date, the claims administrator has sent out more than 115,000 notices to US class members, and we have already received more than 3200 claims, and we expect that number to substantially increase given that the claim deadline doesn't expire until March 16, 2022.

I will note, your Honor, that this final settlement hearing is the culmination of a very lengthy and rather complicated approval process. As your Honor knows from the papers we submitted, the reorganization plan of CannTrust has been approved by the Canadian court, as have the various settlements that are currently before this Court, as well as the plan of allocation. In addition, the California state court case alleging Section 11 claims has been dismissed by the agreement of the parties. Thus, the last remaining step to effectuate this cross-border settlement is to obtain the approval of the settlements by this Court. Should the Court grant final approval, CannTrust can emerge from its reorganization and class members will obtain a significant recovery.

So as your Honor requested, I will give an overview of the various settlements that we have obtained.

First is the CannTrust settlement, which the settlement terms are set forth in the restructuring support

LC28CANC

agreement in which the company has agreed to pay Canadian 50 million dollars, plus the company's assignment of its claims against KPMG, it's outside auditor, who is the only remaining defendant in the case.

We also have a settlement with Eric Paul and the Paul family trust. Mr. Paul was a cofounder of CannTrust and its CEO until October 1 of 2018, and they have agreed to pay Canadian 12 million dollars.

Our third settlement is with the underwriters, and that is with a payment of US 8 million dollars. And that, your Honor, relates to the secondary offering that was completed on May 6th of 2019.

The fourth settlement is with the Litwin Group for Canadian 11 million dollars. And these were individuals that we sued, and also the Canadians sued, and were primarily sued in their capacity as seller of shares in the offering, as well as Mark Litwin's role as a director of CannTrust.

We then have settlements with Ian Abramowitz and Peter Aceto. Mr. Abramowitz was the company CFO through February 19th of 2019. And Mr. Aceto has been CEO of the company since October 1 of 2018. As part of the mediation process, your Honor, we obtained extensive financial holdings from them and understood that because of their financial situation, they had an inability to pay any amount towards the settlement, and so we have obtained their cooperation, extensive cooperation, to

LC28CANC

bring our claims against KPMG.

The seventh settlement is with Kenneth Green, who was a defendant in the Canadian action, not this action.  He has also agreed to cooperate with us in our claims against KPMG.

And the eighth settlement is with the Zola Plaintiffs. Zola Plaintiffs are Canadian opt-out plaintiffs, who brought a separate claim against certain of the individual defendants alleging that they were induced to buy shares in the company based on private representations made to them.  They have assigned their claims to the class plaintiffs, and we have agreed to give them a specific portion of the funds being allocated to class members.

Finally, your Honor, at the beginning I had mentioned that we had obtained an additional settlement in the amount of 36.9 million U.S. dollars.  And this money comes from nonparties who were the director and officer carriers for the company.  They are not parties either to the U.S. class action or the Canadian action, but they settled because there were claims made by the director and officers of the company, as well as the company against the carriers, for coverage under the allegations set forth in the U.S. and Canadian action.  The carriers have agreed to settle those claims and in return the director and officers have agreed to turn over the entire settlement amount to the settlement fund for distribution to the class.

LC28CANC

Briefly, CannTrust had multiple layers of D&O insurance. For purposes of our discussion here, I will divide the carriers into two groups: The ABC tower and the DIC tower. The ABC tower consists of the first six layers of D&O coverage, and they have agreed to pay 30 million dollars U.S. currency to settle the claims. And the DIC tower, which comprised the remaining four layers, has agreed to pay the remaining 6.9 million U.S. dollars. So that brings the total, as I said, your Honor, to approximately 102 million U.S. dollars.

I think your Honor's next question was the relationship with the Canadian litigation.

Your Honor, because the company traded its stock on both the New York Stock Exchange as well as the Toronto Stock Exchange, when the fraud was revealed in 2019, separate actions were filed in Canada and the United States. After your Honor appointed Granite Point as lead plaintiffs and Labaton Sucharow as lead counsel, we had reached out to our Canadian counterparts because we had been following that litigation and we were aware that the Canadian court, because of the financial issues suffered by CannTrust as a result of its licenses being pulled by the Canadian government, ordered that all parties in Canada participate in a mediation before Dennis O'Connor, an esteemed retired appellate judge from the appellate court in Ontario. We, representing the United States claimants, voluntarily agreed to participate in that mediation, and the

LC28CANC

parties jointly requested that your Honor stay the U.S. action pending that mediation, which you did.  And all of the settlements arose through that mediation process in Canada.

The next issue your Honor raised was the attorneys' fees and costs.  And it is correct, your Honor, that we are not asking the Court to rule on our fee request and expenses.  We disclosed in the notice to the U.S. claimants that we would be seeking a fee before the Canadian court of no more than 25 percent plus our costs.  And those papers will be filed with the Canadian court next week.

We decided for a variety of reasons that it would be more efficient to have the Canadian court adjudicate the fees because we are working in this cross-border case with just one claims administrator and one settlement fund, all of which is based in Canada.  We will certainly advise the Canadian judge of the appropriate standards by which fees are awarded in the United States and the Southern District of New York standards and ask the presiding judge to make that award consistent with applicable standards in this district.

THE COURT:  All right.  Thank you.  That's helpful.

Am I correct that there are four exclusions and that -- well, tell me first whether there are four exclusions.

MR. JOHNSON:  Yes, your Honor, there are four exclusions.  Two of the requests for exclusions did not submit any information regarding their ownership of shares in

LC28CANC

CannTrust.  The remaining two opt-outs represent just 1,000 shares, which, according to our calculation, represents .00033 percent of the outstanding damage shares in the company.  And I will note that no institutional investor or pension fund requested exclusion from the class.

THE COURT:  With respect to objections, you addressed in your reply papers the objection filed by Mr. Myron Guidry.

Is Mr. Guidry on the line?

All right.  As I mentioned, there was a letter filed on behalf of Mr. Benjamin Taylor by Mr. Blunt who is on the line.

Mr. Blunt, did you want to address that letter?

MR. BLUNT:  Yes, your Honor.  Thank you for the opportunity.

Mr. Taylor contacted me last night.  He received the notice yesterday afternoon in the mail, which is the first time that he has heard about the settlement.  Mr. Taylor had originally invested in CannTrust back in November 15th of 2018 when he purchased, according to this -- what I am looking at here is his investment statement that we attached to the letter -- he purchased 2,000 shares of the stock and lost, essentially, $11,897.95 when the stock became worthless.

So the way that Mr. Taylor understands the proposed settlement, based on the time that he purchased the stock, it's his understanding that he thinks that he is going to be

LC28CANC

entitled to no money out of this settlement.  He hasn't had a chance to really process it, because the notice just came yesterday, to understand whether or not he wants to participate in it, object to it, or go on ahead and pursue a remedy individually.

So, your Honor, we are just basically lodging the objection that the notice was not sufficient, one-day notice prior to the hearing is not enough time, and at this time we just ask your Honor to deny the motion to approve the settlement to give appropriate notice time to the class members such as Mr. Taylor.

THE COURT:  Mr. Johnson, would you like to respond?

MR. JOHNSON:  Yes, I would, your Honor.

Let me take them in reverse order, if I may, since my first point may bring Mr. Taylor and Mr. Blunt some happiness.

With all due respect to Mr. Blunt, he and his client are completely misreading the plan of allocation.  What the plan of allocation says is, if an investor purchased stock between June 1 of 2018 and sold that stock before July 7th of 2019, you receive zero because you benefited from the inflation in the stock price before the first disclosure was revealed and the inflation started leaking out of the stock price.  If Mr. Taylor held on to his stock through July 7, 2019, he will be able to participate in this, in my opinion, exceptional settlement, and will greatly benefit from his participation.

LC28CANC

As to the timing, we obviously just received the notice of this objection within the past hour, but we were able to contact the claims administrator, who has advised us that Mr. Taylor's notice and name -- his name was provided to Epiq by his broker Fidelity.  What happened, your Honor, is that, consistent with your preliminary approval order, Epiq requested all brokers to send them the names of class members no later than September 17.  Fidelity did not honor that date and instead sent the names of their investors on October 13.  And Epiq mailed the notice to Mr. Taylor on November 3.

I am not sure why it took over a month for Mr. Taylor to receive it, but I will note, your Honor, that there is no requirement that every class member receive notice.  The standard is the best notice possible.  Obviously, we believe that has more than been complied with in this case.  We will also note that summary notice went out in the Wall Street Journal, as well as a press release, and the extensive press coverage that the settlement has received.

THE COURT:  So based on the timing, is Mr. Taylor precluded or is he within the group of people who can submit claims, assuming it's within the allocation plan?

MR. JOHNSON:  He is absolutely within the class and can submit a claim, and he has until March of 2022 to do that.

THE COURT:  Can you tell from the attachment to the letter what bang he is going to get for his buck?

LC28CANC

MR. JOHNSON:  Your Honor, unfortunately, I can't do that, primarily because it depends on how many claimants file valid claims.  It's always a pro-rata distribution.

THE COURT:  Right.  But based on what you described earlier, he is entitled to something based on your understanding of the allocation plan, is that right?

MR. JOHNSON:  That is correct.

THE COURT:  Mr. Blunt, do you want to follow up with any of that?

MR. BLUNT:  Yes, your Honor.  Thank you.

I apologize if we misread the notice and the terms of the settlement, and I understand what plaintiffs' counsel is saying about his right to submit a claim.

According to the notice, the notice came out of Canada.  I don't know if he said that it was mailed in the beginning of November.  That's fine.  But Mr. Taylor didn't receive it until yesterday.  And just looking over the pleadings that have been filed in the case, there was a declaration by Luis Granati that was filed, he was the project manager for Epiq, and according to this, they were still mailing out notices to class members such as Mr. Taylor on November 24th of 2021.  That's the day before Thanksgiving. And here we have a hearing today, December 2nd.

So, like Mr. Taylor, I think that all of those class members haven't been given sufficient notice, haven't had time

to consult with their own counsel, haven't had time to make a determination as to whether they have any valid objections or not. So, again, I just think that the notice was not sufficient.

Now, Mr. Taylor does not subscribe to the Wall Street Journal. He did not see anything on the newswire. I did look it up, and I saw that there was a press release done early this year; however, Mr. Taylor did not see that. He was most certainly paying attention to this matter because he lost almost $12,000, and so he was watching his mail. Maybe because we're in Tennessee, and this is all the way up in Canada and New York, that's why he missed it. But the fact of the matter is he didn't receive notice until just yesterday, less than 24 hours ago, and that's just not enough time for Mr. Taylor as a class member to appropriately assess the situation and determine what his actions should be.

THE COURT: Well, it does say in the declaration that Epiq through November 24th has disseminated 79,000 notice packets. I think the significance of the November 24th date is simply that's the date of the declaration, saying as of now.

MR. BLUNT: The way it reads to me, it seems like they were still doing it on November 24. I may be wrong about that.

THE COURT: Mr. Johnson did say that it was November 4th or something that the claims administrator stated it was sent to -- now, admittedly, maybe it took close to a month

LC28CANC

because it was coming from Canada and holidays and everything.

MR. JOHNSON:  Your Honor, the U.S. claim notices were issued from Epiq in the United States.

MR. BLUNT:  I don't have the notice in front of me, but I understand from Mr. Taylor that it came from Canada.  We will get that and see.  I don't want to make a misstatement to the Court.

THE COURT:  In any event, it seems like he is protected because the notice did go to his broker and his broker is involved, and he has until March to submit a claim.  So in terms of timing, he is not out of the loop in terms of being able to be here at this hearing.

Turning to a substantive issue, do you have any objection to the settlement given what Mr. Johnson has clarified about the allocation plan?

MR. BLUNT:  Well, Mr. Taylor, according to what we understand, there are several different settlements based on the grouping, and we don't understand how it was determined who gets what based on the dates that they purchased the stock and all that stuff.  Honestly, your Honor, I don't know whether it's fair or not because I just haven't had a chance to dive into all of the pleadings in the case to figure it out.  So again, as far as the substantive problems with the class, honestly, I don't know because I haven't had a chance to dive into it to research it and figure out whether he does have a

LC28CANC

substantive objection.

THE COURT:  Mr. Johnson.

MR. JOHNSON:  Your Honor, the response I have again is that the standard is the best notice possible.  In my experience, we have issues with brokers cooperating, in terms of timely getting the list of their clients to the claims administrator so that notices can be issued promptly.  Obviously, many notices have gone out and we have only had two objections, both of which were directed to the plan of allocation, not to the settlement itself.

In terms of Mr. Blunt's references to the plan of allocation, I would simply note that, if his client held the stock through July 8th of 2019, that he will receive a substantial amount of money in recovery.  And the inflation table that's in the plan of allocation depends on how long the stock was held, because, obviously, as more of the news came out regarding the alleged fraud, the inflation leaks out of the stock, and so, therefore, the amount allocated to those shares decreases.

THE COURT:  Right.  I understand.

One other question I would like to ask you, Mr. Johnson, which is, my understanding is that this doesn't entirely close the case because there are still claims against KPMG.  Is that correct?  And can you tell me anything about the status of those or any other remaining claims?

LC28CANC

MR. JOHNSON:  That is correct, your Honor.

The status is that, should the Court grant final approval, we will be able to implement the effective date of the settlement, allowing CannTrust to emerge from reorganization, and at that point the Canadian and U.S. plaintiffs' counsel can commence their actions against KPMG.

As we have indicated in our papers here, we are asking the Court to continue to stay the U.S. action with respect to KPMG until that effective date occurs.  And then, as we have set forth in our settlement agreement with CannTrust, the U.S. class action plaintiffs will request that the class action be dismissed upon the Canadian court allowing us to pursue our U.S. securities claims against KPMG in Canada.

THE COURT:  So they won't be pursued ultimately in this litigation?

MR. JOHNSON:  That is our intention, your Honor.  And what I would like to suggest is that we could file a status report with the Court at some point in February or March, because if that effective date becomes effective, and we have commenced those actions and the Canadian court agrees to hear our claims against KPMG, we would then, I assume with KPMG's cooperation, agree to dismiss the claims before your Honor.

THE COURT:  All right.  That's fine.  If you could give me a status letter by March 15, that would be fine.

Is there anyone else who wants to address the

LC28CANC

settlement and/or raise any objections to the settlement?

All right.  I have reviewed the submissions and I have considered the terms of the settlement, the allocation plan, and the objections.  I do overrule the objections and I approve the settlement as fair, reasonable and adequate upon consideration.

I will note that the objection of Mr. Guidry, which was on the docket, is overruled for the reasons given in response in the reply brief of lead plaintiffs.

With respect to the objection of Mr. Taylor received this morning, I don't know exactly what happened with the notice.  When you're dealing with tens of thousands of individual notices, some of which are going through brokers, there are some that slip through the cracks, and it's not necessarily required to give notice to every single individual affected by a class settlement like this, and that's why there is also published notice.

I do find that the notice here was reasonable under the circumstances for the reasons indicated in my preliminary approval; and, as explained in the declaration of the settlement administrator, I do find that it is reasonable and adequate.  I will also note that given the clarification as to the allocation plan, it appears that -- and my understanding of the allocation plan is that it is fair and reasonable and likely will compensate someone in the position of Mr. Taylor

LC28CANC

for the reasons stated by Mr. Johnson.

Therefore, the two objections are overruled, and I find the settlement is fair, reasonable and adequate.

I will sign the proposed order and judgment approving the settlement. And I will look forward to a status update with respect to the remaining claims by March 15, 2022. And I won't close the cases formally on the docket, but I will keep them stayed as a legal matter.

That concludes this conference unless there is anything else. Is there anyone else who wanted to speak?

Thanks very much. We are adjourned.

(Adjourned)